# **Exhibit C**

**BLANK ROME LLP**
John D. Kimball
Thomas H. Belknap
Marc E. Richards
Michael B. Schaedle
Alan M. Root (*pro hac vice* admission pending)
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Tel: (212) 885-5000
Fax: (212) 885-5001

*Attorneys for the Custodian and Foreign Representative*
*of Daehan Shipbuilding Co., Ltd.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| --------------------------------------------------------------- X | Chapter 15 | |
| In re: : | | |
| : | Case No. 14-_____ (   ) | |
| **DAEHAN SHIPBUILDING CO., LTD.,** : | | |
| : | | |
| Debtor in a Foreign Proceeding : | | |
| --------------------------------------------------------------- X | | |

<u>**DECLARATION OF WAN SHIK LEE OF LEE & KO**</u>

I, Wan Shik Lee, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of
perjury as follows:

1.      I am an attorney licensed, and in good standing, to practice in the Republic of
Korea.  I am a member of the law firm of Lee & Ko, a law firm located in the Republic of
Korea.

2.      Lee & Ko has been retained by Daehan Shipbuilding Co., Ltd. (the
"Company"), with the authorization of the Korean Bankruptcy Court (as defined below), to
represent the Company in connection with this Chapter 15 case.

3.    I have been practicing law in Korea for 25 years.  The focus of my practice is litigation, bankruptcy and corporate restructuring.  I was educated in Korean law at Seoul National University.  I graduated in 1988 with a bachelor's degree in law.   I have extensive experience with bankruptcy and corporate restructuring cases in Korea.

4.    This declaration is comprised of matters that are statements of legal opinion and/or statements of fact.  Where the matters stated in this declaration are statements of legal opinion, such statements reflect Korean law based on my education and years of experience practicing Korean law in Korea.  Where the matters stated in this declaration are statements of fact they are either (a) based on my personal knowledge, and are known to me to be true and accurate, or (b) if not within my personal knowledge, are derived from documents and/or information supplied to me by or on behalf of the Petitioner Byung Mo Lee, the existing chief executive officer and the custodian and foreign representative of the Company, and are true to the best of my knowledge, information and belief.

5.    I submit this declaration in support of the petition for recognition of a foreign main proceeding, and related relief made pursuant to Chapter 15 of title 11 of the United States Code (the "Bankruptcy Code").

6.    The Company is organized under the laws of the Republic of Korea, with a registered address of 498 Joseonso-gil , Hwawon-myeon, Haenam-gun, Jeollanam-do, Korea

7.    The Company is engaged in the shipbuilding and repair business.

**The Korean Bankruptcy Proceeding**

8.    On 27, 2014, the Company applied for rehabilitation (the "Application") in Korea under the Debtor Rehabilitation and Bankruptcy Act (as amended, the "DRBA").  A copy of the Application in English translation is attached hereto as **Exhibit "A"**.

2

9.      The 4th Bankruptcy Division of the Seoul Central District Court (the "Korean Bankruptcy Court") received the Application and, on July 7, 2014, issued a commencement order commencing the rehabilitation proceeding with respect to the Company ("Commencement Order").  Pursuant to Articles 74(3), 74(4) and 640 of the DRBA, Byung Mo Lee (the "Petitioner"), the existing chief executive officer of the Company, assumed the role of custodian and "foreign representative" of the Company in the rehabilitation proceeding, with the power to conduct all of the Company's business and manage all of its property, and carry out relevant activities overseas for domestic bankruptcy procedures under the conditions prescribed by the relevant foreign legislation, subject to the Korean Bankruptcy Court's supervision.  A certified copy of the Commencement Order in English translation is attached hereto as **Exhibit "B"**.

**Reasons for and Anticipated Results of the Korean Bankruptcy Filing.**

10.     As of June 27, 2014, the Company's total liabilities were in excess of its assets by KRW 89,053,000,000.  The Company has suffered from a serious liquidity crisis due to the global economic recession since 2008 and the financial difficulties that its affiliate company had suffered from, which resulted in the downgrading of the Company's credit rating and subsequent failure on the part of the Company to maintain and/or procure investments for its business.  In addition, the Company suffered a major loss from the currency fluctuations following the economic recession in the currency option derivatives trading which were worsened by the inflation in personnel expenses and distribution costs in the shipbuilding market.  However, as the Company possesses leading-edge technology in shipbuilding and an extensive client base based on a long and historical relationship of trust, the Company hopes to improve its current financial difficulties through a debt-equity swap

3

and postponement of repayment of its debts through the process of rehabilitation and eventually regain its position as a leading shipbuilding company in the industry.

11.     Further details regarding the Company and its Korean Bankruptcy Proceeding can be found in the Application attached hereto as Exhibit A.

**Overview of Rehabilitation Proceedings under Korean Law.**

12.     This section sets forth the parts of the DRBA that govern the Company's Korean rehabilitation filing and related rehabilitation proceeding.  Under Article 34 of the DRBA[1], the debtor company may file the application for commencement of the rehabilitation proceeding with respect to the debtor company under the following circumstances: (i) such debtor cannot repay its debts as they come due without significantly burdening its business operations; or (ii) there is a likelihood that an event which may cause the debtor to become insolvent may occur.  For circumstance (ii) above, a creditor or creditors holding claims amounting to ten percent (10%) or more of the company's paid-in capital or shareholders holding ten percent (10%) or more of the debtor company's total issued and outstanding shares may also file the application for commencement of the rehabilitation proceeding.

13.     Upon commencement of the rehabilitation proceeding, new attachments by creditors over the properties of a debtor company are prohibited.  DRBA Art. 58(1).  All current attachments by creditors on the properties of the debtor company are suspended. DRBA Art. 58(2).

14.     Upon commencement of the rehabilitation proceeding, in principle, the court will appoint a custodian.  DRBA Art. 50.  However, where the debtor is an individual, a small or medium sized company, or any person who is prescribed by the rules of the

---

[1]  The references cited herein are references to the DRBA, an English translation of which is attached hereto as Exhibit "C".

Supreme Court, the court may choose not to appoint a custodian; in such a case, if the debtor

is a company, the existing management is deemed custodian of the debtor.  DRBA Art.

74(3)-(4).  The custodian is required to occupy, obtain, and manage the properties belonging

to the debtor company.  DRBA Art. 89.  Generally, the rehabilitation custodian in principle

exercises discretion in managing and administering the debtor company's properties.  DRBA

Arts. 56, 61, 89.

15.    The creditors of a debtor subject to a rehabilitation proceeding are required to

assert their claims in that proceeding.  DRBA Arts. 147, 148.  More specifically, upon the

commencement of the rehabilitation proceeding, the custodian will prepare a list of the

creditors' claims.  If the claims are correctly specified in such list, the filing of proofs of

claims will not be required.  However, if the claims are not specified or specified incorrectly,

the creditors must file their claims and proofs of claims within a period of time designated by

the court, and failure to do so will either nullify their claims or fix their claims as specified in

the list. Thereafter, the custodian, the debtor and/or the rehabilitation creditors (who have

filed claims or have had claims specified by the custodian) are entitled to inspect the

existence, context and cause of filed and specified claims within a timeframe set by the court

(the "Inspection Period").  If the custodian, the debtor, or a rehabilitation creditor does not

accept the filing of a claim, the subject creditor must file an application for confirmatory

action within one month from the last day of the Inspection Period or from a special

inspection date determined by the court.  DRBA Art. 170(2).  Once a confirmatory action is

filed, the court reviews the filing and gives its decision.  Any party that objects to the court's

decision may file an objection within one month from receipt of the decision, following

which the case is moved to the ordinary court and is reviewed in accordance with ordinary civil procedure.

16.    The first interested parties' meeting is held within four (4) months from the commencement of the proceeding mainly for the presentation of the custodian's report, which will include information on the financial condition of the company, its prospects for recovery and the status of the secured and unsecured rehabilitation claims against the company. After the first interested parties' meeting is held, the court orders the submission of the draft rehabilitation plan. After a draft of the plan is prepared and submitted to the court, the interested parties meet again to review the draft plan. Finally, the interested parties meet to vote on the rehabilitation plan.

17.    A rehabilitation plan may call for rescheduling of the debtor's debt over a period not to exceed, in principle, 10 years, except when corporate debentures are issued pursuant to the rehabilitation plan.    Any secured rehabilitation claims and unsecured rehabilitation claims which are not recognized under the court-approved rehabilitation plan would be irrevocably extinguished even if the rehabilitation proceeding is subsequently terminated by the court.

18.    In practice, if the debtor company completes the performance of its obligations under the rehabilitation proceeding or the court deems that the debtor company will perform its obligations without any problems, the court may terminate the rehabilitation proceeding with respect to the company at which point the company will no longer be subject to the proceeding.    However, if the rehabilitation proceeding is discontinued due to the company's failure to comply with the rehabilitation plan and the grounds for bankruptcy

exist, the court will terminate the rehabilitation proceeding and declare the company
bankrupt.

*[**Remainder of Page Intentionally Left Blank**]*

19.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at Seoul, Republic of Korea on August /8, 2014.

WAN SHIK LEE
MEMBER
LEE & KO

# **EXHIBIT A**

(Application for Rehabilitation filed in Korean Bankruptcy Proceeding)

# Application for Order for Commencement of Rehabilitation Procedure

| | |
|---|---|
| Applicant and Debtor | Daehan Shipbuilding Co., Ltd.<br>4006 ho (Hangangro 2 ga, Yongsan Ipia Daeju Fiore), Cheongpa-ro 20-gil 9, Yongsan-gu, Seoul, Korea<br>CEO Byung Mo Lee |
| Representative | Bae, Kim and Lee LLC<br>Hankook Tire Bldg. 10FL, 133 Teheran-ro, Gangnam-gu, Seoul<br>Attorneys in Charge: Young Bo Roh, Hyun Wook Park, Sung Joon Hong, Seung Jin Choi, Young Jae Chang, Suk Jae Hong<br>Mobile Phone:   010-9340-2144<br>Telephone:       02-3404-0000<br>Fax Number:     02-3404-0006<br>Email:            efile@bkl.co.kr |

## Purpose of this Application

We respectfully ask the court to render an order to commence the rehabilitation procedure in regards to the Debtor.

# Reason for Application

**I.**    **Summary of the Debtor**

1.  Name of Debtor: Daehan Shipbuilding Co., Ltd. (the "Debtor")

2.  Purpose of Business
    -   Ship building
    -   Repair of ships
    -   Building of steel vessels
    -   Manufacturing and import/export of ship parts and equipment
    -   Manufacturing / sales of steel structures
    -   Construction on land and sea
    -   Steel construction
    -   Building services
    -   Marine shipping
    -   Manufacturing of ship parts
    -   Vocational training (including education)
    -   Electrical construction
    -   Real estate and lease
    -   Ancillary businesses relating to the above businesses

3.  Address of the Main Office:
    Joseonso-gil 498, Hwawon-myeon, Haenam-gun, Jeollanam-do, Korea

4.  Date of Establishment: September 30, 1987

5.  CEO: Byung Mo Lee

6.  Details and Status of the Debtor's Businesses
    A.  Details of Businesses
        i.  The Debtor's main business is shipbuilding as majority of its revenues are
            generated therefrom, although on the statement of profit and loss, the

2

revenues are categorized into revenues from shipbuilding, ship repairs and others (revenues from lease and/or sales of remaining steel materials after shipbuilding).

ii.   Access to/exit from the shipbuilding industry is not easy as it is a capital-intensive industry that requires a considerable investment in building the infrastructure at the start of the business, and also a labor-intensive market that requires specialized labor in all processes of shipbuilding such as cutting, assembly, design and painting such that mechanization and automation of the processes are limited to a certain extent.   Another characteristic of the shipbuilding industry is that it is a single global market where the contract prices are high and paid in foreign currency (and as such contributes to increase in export from national perspective).   Also, as shipbuilding for each vessel has to cater to individual needs of the owner, mass-production is not possible.

iii.  The Debtor possesses Plant 1 and Plant 2 that produces component part blocks of ships and Haenam Shipyard where the blocks are assembled to complete the construction of ships to launch them[1], and is equipped with material and personnel base for undertaking the entire process for shipbuilding as it maintains personnel for design, production and management of ships.

iv.   The Debtor currently obtains shipbuilding orders by (i) entering into contracts directly with buyers, or (ii) by entering into subcontracts with Daewoo Shipbuilding and Marine Engineering Co., Ltd. ("Daewoo").

As the shipbuilding/shipping market went into a recession and the number of orders for ships has decreased due to global financial crisis in 2008, the Debtor also faced difficulty in obtaining new orders for ships as the demand for bulk carriers, which are the Debtor's main products, has stayed low since then.   Due to the low number of ships being built, the Debtor had to stop operating the dock, and the Debtor filed an application to put the company under a debt workout plan by the creditor financial institutions pursuant to the Corporate Restructuring Promotion Act.   In June 2011, the Debtor

---

[1] This is a facility located in shipyards or at harbor to build/repair ships where blocks produced at plants are assembled and the completed ships are launched to sea.

entered into a contract for management consignment (the "Consignment") with Korea Development Bank ("KDB") and Daewoo, the world's 2nd biggest shipbuilder, and has since been building ships ordered via subcontracts with Daewoo (with regard to the workout plan, please refer to Article IV. 4 below).   Although the number of ships that can be built in one dock is limited to 9-12 ships per year, Daewoo has become capable of accepting orders in excess of its capacity to build ships thanks to the subcontracts with the Debtor, and the Debtor was able to continue operating the plants and the shipyard without closing them thanks to such arrangement.

In the meantime, the Debtor also operates the block production business at Plant 1 and Plant 2, in addition to the shipbuilding business.

v.   The Debtor's revenues from the past 3 years are: (i) 2011: KRW 527,600,000,000, (ii) 2012: KRW 247,900,000,000, and (iii) 2013: KRW 140,400,000,000.   The revenue for 2014 as of April 30 is KRW 102,400,000,000.

*Annex 31. Statement of Profits and Losses

B.   Status and Market Share in the Domestic Shipbuilding Industry

i.   Based on the amount of orders for ships, the Debtor's market share in the domestic market is: (i) 2010: approximately 2.4%, (ii) 2011: approximately 3.2%, and (iii) 2012: approximately 2.5%.   70% of the domestic market shared among Hyundai Heavy Industries, Daewoo and Samsung Heavy Industries (which three Korean companies occupy about 6.7% of the world market, according to Clarkson Order book of England issued in April 2014).

ii.   The Debtor has been making efforts to diversify the types of ships to build, and since late 2013, has obtained orders for 24 ships directly, which amounts to approximately 2.7% of the 900 ship orders that Korean shipbuilders have obtained in the world as of April, 2014.

*Annex 25. Current status of shipbuilding orders; Annex 26. Market size and status of competition

4

7.  Current Status of Officers and Employees and Organization

The Debtor's officers consist of 1 CEO, 3 directors (1 internal director, 2 outside directors), 1 auditor and 20 unregistered directors.   Among the aforementioned directors, 9 are from Daewoo who have been dispatched pursuant to the Consignment.

| No. | Position | Name | Note |
|---|---|---|---|
| 1 | CEO / Executive Director | Byung Mo Lee | Registered Director / Daewoo dispatch |
| 2 | Outside Director | Dong Hyun Choi | Registered Director |
| 3 | Outside Director | Jae Gun Chung | Registered Director |
| 4 | Auditor | Hak Soo Shin | Registered Director |
| 5 | Internal Director | Jong Ho Seo | Registered Director / Daewoo dispatch |
| 6 | Advisor | Soon Kyu Park | Unregistered Director |
| 7 | Advisor | Byung Hwan Han | Unregistered Director |
| 8 | Managing Director/Head of Department | Doo Gun Chung | Unregistered Director |
| 9 | Managing Director/General Manager | Gun Young Gal | Unregistered Director |
| 10 | Director/Team Leader | Jae Bum Shin | Unregistered Director |
| 11 | Director/Team Leader | Myung Oh Kang | Unregistered Director |
| 12 | Director/Team Leader | Il Hwan Seo | Unregistered Director |
| 13 | Director/Team Leader | Choon Kyung Jeon | Unregistered Director |
| 14 | Director/Team Leader | Chang Jin Chang | Unregistered Director |
| 15 | Director/Team Leader | Sam Young Park | Unregistered Director |
| 16 | Director/Team Leader | Jae Seo Park | Unregistered Director |
| 17 | Director/ Team Leader | Hong Soon Park | Unregistered Director |
| 18 | Director/ Group Leader | Jae Hong Lee | Unregistered Director |
| 19 | Senior Managing Director/Head of Department | Young Sub Je | Daewoo dispatch |
| 20 | Senior Managing Director/Head of Department | Dae Sung Chung | Daewoo dispatch |
| 21 | Managing Director/Head of Department | Sang Yong Son | Daewoo dispatch |
| 22 | Director/ Team Leader | Si Baek Ryu | Daewoo dispatch |
| 23 | Director/ Team Leader | Jun Sik Son | Daewoo dispatch |
| 24 | Director/ Team Leader | Young Gil Seo | Daewoo dispatch |
| 25 | Director/ Team Leader | Young Ho Chung | Daewoo dispatch |

The executive director, Byung Mo Lee, who was dispatched from Daewoo, is the CEO of the Debtor, and the Debtor is organized into the Management Renovation Department, Management Planning Department and Advisory, which are organized into subgroups in support, external work, internal work, technology and marketing areas.   The support group is organized into HR/welfare, ethics, procurement, quality management, and information operation teams; external work group into production planning, official work, HSE, external work operation, loading, design, painting, test-drive teams; internal work group into internal work operation, cooperative companies operation, processing, assembly 1, and assembly 2 teams; technology group into comprehensive design, vessel body design, design plan 1, and design plan 2 teams, and; marketing group into marketing and business management teams (1 executive director, 5 groups and 25 teams).

*Annex 2. Certificate of registered items; Annex 3. Current status of management; Annex 4. Resumes; Annex 5. Organizational map

8.  Current Status of Employees

   A.  Number of Employees and Current Status
      i.   Total 608 employees (as of May 26, 2014, excluding the 9 dispatched directors from Daewoo)
      ii.  16 directors, excluding the dispatched directors from Daewoo (3 registered directors, 13 unregistered directors), 592 employees (office work: 178; production management: 121; design: 148, and; production: 145).
         *Annex 3. Current status of management; Annex 6. Employee status

   B.  Establishment of Labor Union
      The Debtor has a labor union (number of members: 9) which was established on April 4, 2005.

   C.  Delay in Payments to Employees
      As of this date of application, the Debtor has not delayed any payments of employee salaries or retirement payments.

   D.  Efforts made by Employees for Rehabilitation of the Debtor

6

Employees of the Debtor are willing to comply with the restructuring and sacrifices of the Debtor and are performing their duties as such.

9.  Current Status of Main Office, Business Office and Plants

The address of the main office is Joseonso-gil 498, Hwawon-myeon, Haenam-gun, Jeollanam-do, Korea, where Haenam Shipyard (area: total of 247,933.88 ㎡, consisting of 148,760.33 ㎡ of agricultural industrial complex and 99,173.55 ㎡ of Hwawon shipbuilding industry complex, construction for which has been halted. Employees: 297) equipped with docks that can build 9-12 ships per year is located. As for the Hwawon shipbuilding industry complex, construction for which has been halted due to issues relating to procurement of funds, the Debtor has almost completed the purchase of 2082644.55 ㎡ of land and plans to complete the construction by 2016 for which the Debtor has obtained the governmental approval for alteration of the shipbuilding industrial complex plan and has secured government funds for building support facilities such as access roads, electricity facilities and industrial water supply.

The Debtor possesses internal work Plant 1 (land area: 175,206.61 ㎡; plant area: 76,033.06 ㎡; employee: 120) that is equipped with facilities for preconditioning, assembly, preliminary design, and painting and primarily produces curved blocks, located at Block 23, Daebul Industrial Complex, Yongang-ro 290, Samho-eup, Yeongam-gun, Jeollanam-do, Korea (which land is owned by Debtor), and internal work Plant 2 (land area: 198,347.1 ㎡; plant area: 82,644.63 ㎡; employee: 120) that primarily produces regular blocks, located at Daebul Industrial Complex, 252 Daebulsandan6-ro, Samho-eup, Yeongam-gun, Jeollanam-do, Korea (which land is owned by Debtor).

In addition, the Debtor operates a vocational training facility and its dormitories at 1100, 1120, Gwangwang leisure-ro, Samho-eup, Yeongam-gun, Jeollanam-do, Korea. The vocational training facility has so far produced about 1,000 trainees, and the dormitories, which can accommodate up to 1,300 occupants, are currently occupied by about 900 occupants.

7

The Debtor's Seoul office (employees: 4) is located at 4006 ho (Hangangro 2 ga, Yongsan Ipia Daeju Fiore), Cheongpa-ro 20-gil 9, Yongsan-gu, Seoul, Korea, which the Debtor has been renting since 2010 to handle management related works such as finance, accounting and management and fund management works of the creditor financial institutions.

*Annex 7. Current Status of Office; Annex 16. Current Status of Plants

10. Current Status of Affiliated Companies

The Debtor used be an affiliated company of Dae Ju Group, but has been severed from therefrom through the workout plan.   Currently, the Debtor has no affiliated companies.

11. Paid-in Capital and Shareholding Details

   A.   Current Status of Paid-in Capital and Issued Shares
        The Debtor underwent a 30:1 capital reduction without refund in regards to the existing shares on July 1, 2009 via the workout plan, and converted the existing claims of KRW 5.1 billion held by the creditor financial institutions into equity on July 3, 2009.   Subsequently, the Debtor again converted the existing claims of KRW 270 billion held by the creditor financial institutions into equity on September 21, 2011 and underwent a 100:1 capital reduction in regards to the existing shares on February 28, 2014.

        The Debtor has issued registered common shares, the details of which are as follows:

| Shares | Amount |
|---|---|
| Shares to be issued | 50,000,000 |
| Existing shares | 277,340 |
|  |  |
| Price of 1 share | KRW 10,000 |
| Capital | KRW 2,773,400,000 |

   B.   Listing and Registration

8

Debtor is an unlisted company.

## C.  Details of Changes in Capital

| Date of Issuance | Type of Issuance | Contents of the Issued Shares | | | | Total Capital (KRW) |
|---|---|---|---|---|---|---|
| | | Type | Amount (shares) | Par value (KRW) | Total No. of Shares Issued | |
| 2004/07/26 | Approved for alteration for company restructuring | Common | 750,000 | 10,000 | 750,000 | 7,500,000,000 |
| 2005/12/28 | Capital Increase with Consideration | Common | 562,429 | 10,000 | 1,312,429 | 13,124,290,000 |
| 2007/09/10 | Capital Increase with Consideration | Common | 400,000 | 10,000 | 1,712,429 | 17,124,290,000 |
| 2007/11/21 | Capital Increase without Consideration | Common | 3,000,000 | 10,000 | 4,712,429 | 47,124,290,000 |
| 2008/01/03 | Equity spin-off | Common | -376,994 | 10,000 | 4,335,435 | 43,354,350,000 |
| 2008/02/27 | Capital Increase with Consideration | Common | 2,000,000 | 10,000 | 6,335,435 | 63,354,350,000 |
| 2008/08/27 | Capital Increase with Consideration | Common | 240,000 | 10,000 | 6,575,435 | 65,754,350,000 |
| 2008/09/10 | Capital Increase with Consideration | Common | 30,000 | 10,000 | 6,605,435 | 66,054,350,000 |
| 2009/07/01 | Capital Increase without Consideration | Common | -6,385,245 | 10,000 | 220,190 | 2,201,900,000 |
| 2009/07/03 | Capital Increase with Consideration | Common | 513,800 | 10,000 | 733,990 | 7,339,900,000 |
| 2011/09/21 | Capital Increase with Consideration | Common | 27,000,000 | 10,000 | 27,733,990 | 277,339,900,000 |
| 2014/02/08 | Capital Increase without Consideration | Common | -27,456,650 | 10,000 | 277,340 | 2,773,400,000 |

*Annex 9. Details of capital investment and increase

## D.  Details Regarding Share Ownership

Debtor has conducted capital reduction through the process of workout plan and converted the existing claims held by the creditor financial institutions into equity, as a result of which KDB, which is one of the major creditor banks of the Debtor, has become the largest shareholder of the Debtor as of April 30, 2014. The share ownership of the Debtor is as follows:

| No | Shareholder | No. of Shares Held | Share Ratio |
|---|---|---|---|
| 1 | KDB | 147,536 | 53.197% |
| 2 | Shinhan Bank | 50,715 | 18.286% |
| 3 | Korea EXIM Bank | 28,634 | 10.325% |
| 4 | KEMCO 1st Joint Venture Special Purpose Company | 24,528 | 8.844% |
| 5 | Woori Bank | 23,725 | 8.554% |
| 6 | Daehan Shipbuilding | 803 | 0.290% |

9

| 7 | H&H Leisure | 493 | 0.178% |
|---|---|---|---|
| 8 | GS Construction | 342 | 0.123% |
| 9 | Jae Ho Hou | 465 | 0.168% |
| 10 | Gil Soon Hwang | 10 | 0.004% |
| 11 | You Jung Hou | 10 | 0.004% |
| 12 | Ho Jin Hou | 10 | 0.004% |
| 13 | Hye Jin Hou | 10 | 0.004% |
| 14 | Seung Woo Hou | 10 | 0.004% |
| 15 | Jung Woo Hou | 10 | 0.004% |
| 16 | Jung Yun Hou | 10 | 0.004% |
| 17 | Jin Woo Hou | 10 | 0.004% |
| 18 | Yun Shik Yang | 4 | 0.001% |
| 19 | Woo Jung Yang | 4 | 0.001% |
| 20 | Sung Oh Yang | 4 | 0.001% |
| 21 | Gun Woo Shin | 6 | 0.002% |
| 22 | Gun Ho Shin | 1 | 0.000% |
| Total | | 277,340 | 100.000% |

*Annex 8. List of Sharholders

E.  Dividends to Shareholders in Past 3 Years
Debtor has not distributed dividends in the recent 3 years.

F.  Issuance of Share Certificates
Share certificates have not been issued.

12. Main Financial Institution

Debtor's main financial institution is KDB.

13. Bankruptcy

Debtor has not experienced bankruptcy.

14. Details of Companies with Dealings with Debtor and Cooperative Companies

There are 687 companies that have purchase deals with Debtor including Dong Yang
Environment, and there are 88 subcontractors including Bescotech, and there are 121

10

companies that have sales deals with Debtor including Daewoo which gives ship orders to Debtor.

*Annex 10. Details of Purchase Trading Companies; Annex 11. Details of Sales Trading Companies; Annex 12. Details of Subcontractors

15. Details of Working Funds

The average working funds of the Debtor for the past 5 years for production, sales and management amount to KRW 37.5 billion per month.   If the Debtor maintains its size of operation after the commencement of the rehabilitation procedure, Debtor is expected to operate on similar working funds.

*Annex 21. Details of Average Constitution of Working Funds per Month

16. Default in regards to Tax and 4 Major Insurance Payments

Debtor has not defaulted on tax or insurance payments until now.

17. Pending Litigation

  A.   Current Status of Litigation
   i.    There are no lawsuits where Debtor is participating as plaintiff, but there are 3 lawsuits where Debtor is the defendant.   Namely, Samyoung MSC and Samyoung have filed a claim against Debtor for breach of contract or tortious act in the amount of (partial claim) KRW 200 million.
   ii.    In the meantime, Mr. Yee Soo Oh, who used to hold the position of the executive director of the Debtor and Daehan Shipping, abused his power and made a guarantee in the name of Debtor for Daehan Shipping's obligations under a charter party without obtaining the resolution of the board of directors of Debtor.   Debtor, while unaware of the existence of such guarantee, has become aware thereof as Rimpacific and Wonder Enterprises, both of which are ship owner companies, brought a suit against Debtor in a court in England.   Rimpacific and Wonder Enterprises won the case in the English court and respectively brought a lawsuit against Debtor in Korea (amount  KRW  49,896,155,644)  and  New  York,  USA  (amount  USD 54,538,682.24) for execution of judgment based on the case in England. Mr. Oh has received criminal penalties for breach of trust in regards to the

11

aforementioned guarantee, and the Debtor is actively seeking defense against
the lawsuits filed in Korea and New York.

   B.  Compulsory Execution, Provisional Attachment, Injunctive Relief
       2 provisional attachments in the total amount of KRW 7,661,929,218 have been
placed on the Debtor's real property which have been issued on behalf of
Rimpacific and Wonder Enterprises.
*Annex 42. Current Status of Pending Lawsuits; Annex 43. Current Status of
Provisional Attachment and Injunctive Relief

18. Whether Debtor is subject to External Audit / Accounting Firm in Charge

Debtor falls under the category of companies that are subject to external audit, as the
size of its capital exceeds KRW 100 million.   Dong Myung Accounting Firm has
been in charge of the external audit for the 25th period (2011), 26th period (2012), and
27th period (2013).

## II.    History of the Debtor

1.  History

| Date | History |
|------|---------|
| 1987/09/30 | Establishment of Shinyong Shipbuilding Co., Ltd. |
| 2004/07/26 | Daehan Cement Co., Ltd. acquired Shinyong Shipbuilding Co., Ltd. in a corporate reorganization process (common shares KRW 10,000 x 750,000 shares = KRW 7,500,000,000).   Capital: KRW 7,500,000,000 |
| 2004/08/23 | Name change (Shinyong Shipbuilding Co., Ltd. to Daehan Shipbuilding Co., Ltd.) |
| 2005/08 | Haenam agricultural industrial complex in Haenam-gun (148,760.331 ㎡) was designated for Debtor for shipyard construction |
| 2005/09 | Commencement of Haenam shipyard construction |
| 2005/12/28 | Increase of capital with consideration (common shares KRW 10,000 x 562,429 shares = KRW 5,624,290,000).   Capital: KRW 13,124,290,000 |
| 2007/06 | Commencement of operation of Daehan Heavy Industries (Internal Work Plan 1) |
| 2007/07/18 | Selected to perform the development of Haenam Hwawon industry complex (Daehan Shipbuilding Co., Ltd.) |
| 2007/09/01 | Main office moved from Yeosu to Haenam |
| 2007/09/10 | Increase of capital with consideration (common shares KRW 10,000 x 400,000 shares = KRW 4,000,000,000).   Capital: KRW 17,124,290,000 |

12

| 2007/10/18 | Construction business of Haenam Hwawon agricultural industry complex approved |
| 2007/11 | Opening of technology training institute and residence at dormitories began |
| 2007/11/21 | Increase of capital without consideration (common shares KRW 10,000 x 3,000,000 shares = KRW 30,000,000,000).   Capital: KRW 47,124,290,000 |
| 2008/01/03 | Equity spin-off (common shares KRW 10,000 x (-)376,994 shares = KRW (-)3,769,940,000).   Capital: KRW 43,354,350,000 |
| 2008/01/07 | Yeosu office equity spin-off |
| 2008/02/27 | Increase of capital with consideration (common shares KRW 10,000 x 2,000,000 shares = KRW 20,000,000,000).   Capital: KRW 63,354,350,000 |
| 2008/06/27 | Delivery of No. 1 170,500DWT[2] Bulk Carrier (MYSTIC) |
| 2008/08/27 | Increase of capital with consideration (common shares KRW 10,000 x 240,000 shares = KRW 2,400,000,000).   Capital: KRW 65,754,350,000 |
| 2008/09/10 | Increase of capital with consideration (common shares KRW 10,000 x 30,000 shares = KRW 300,000,000).   Capital: KRW 66,054,350,000 |
| 2008/09/11 | Delivery of No. 2 170,500DWT Bulk Carrier (KING ROBERT) |
| 2008/11/19 | Delivery of No. 3 170,500DWT Bulk Carrier (C.WINNER) |
| 2009/03/10 | Delivery of No. 4 170,500DWT Bulk Carrier (GOLDEN FENG) |
| 2009/05/11 | Delivery of No. 5 170,500DWT Bulk Carrier (GOLDEN SHUI) |
| 2009/05/29 | Commencement of debt workout plan under co-management by the creditor financial institutions |
| 2009/07/01 | Increase of capital without consideration (common shares KRW 10,000 x (-)6,385,245 shares = KRW (-)63,852,450,000).   Capital: KRW 2,201,900,000 |
| 2009/07/03 | Increase of capital with consideration (common shares KRW 10,000 x 513,800 shares = KRW 5,138,000,000).   Capital: KRW 7,339,900,000 |
| 2009/08/26 | Delivery of No. 6 170,500DWT Bulk Carrier (BETTERSEA) |
| 2009/10/29 | Delivery of No. 7 170,500DWT Bulk Carrier (BELGRAVIA) |
| 2010/01/01 | Delivery of No. 8 170,500DWT Bulk Carrier (CAPE RAMBERT) |
| 2010/01/19 | Delivery of No. 9 180,000DWT Bulk Carrier (CAPE BREEZE) |
| 2010/02/25 | Delivery of No. 10 170,500DWT Bulk Carrier (CAPE NORTHVILLE) |
| 2010/03/24 | Completion of construction of Taejun Heavy Industries (Internal work Plant 2) |
| 2010/04/12 | Delivery of No. 11 170,500DWT Bulk Carrier (CAPE PROVIDENCE) |
| 2010/05/19 | Delivery of No. 12 170,500DWT Bulk Carrier (CAPE SPENCER) |
| 2010/06/28 | Delivery of No. 13 180,000DWT Bulk Carrier (CAPE VENTURE) |
| 2010/07/30 | Delivery of No. 14 170,500DWT Bulk Carrier (BESIKTAS KAZAKHSTAN) |
| 2010/09/10 | Seoul office (Seoul branch) established and operation commenced |
| 2010/09/15 | Delivery of No. 15 170,500DWT Bulk Carrier (BESIKTAS AZERBAIJAN) |
| 2010/11/11 | Delivery of No. 16 180,000DWT Bulk Carrier (BLUE EVEREST) |
| 2010/12/10 | Delivery of No. 17 180,000DWT Bulk Carrier (BLUE ANNAPURNA) |
| 2011/01/26 | Delivery of No. 18 170,500DWT Bulk Carrier (HOMER HULBERT) |
| 2011/03/09 | Delivery of No. 19 180,000DWT Bulk Carrier (BLUE LHOTSE) |
| 2011/04/26 | Delivery of No. 20 180,000DWT Bulk Carrier (BLUE CHO OYU) |

---

[2] Dead Weight Tonnage which is a measurement unit used to show the carriage capacity of a vessel.

| | |
|---|---|
| 2011/06 | Consignment entered with Daewoo |
| 2011/06/20 | Executive Director Byung Mo Lee assumed office |
| 2011/07/12 | Delivery of No. 21, 22 180,000DWT Bulk Carrier (WISDOM OF THE SEA 1/WISDOM OF THE SEA 2) |
| 2011/09/06 | Delivery of No. 23 180,000DWT Bulk Carrier (BESIKTAS TURKMENISTAN) |
| 2011/09/21 | Increase of capital with consideration (common shares KRW 10,000 x 27,000,000 shares = KRW 270,000,000,000).   Capital: KRW 277,339,900,000 |
| 2011/10/21 | Delivery of No. 24 180,000DWT Bulk Carrier (BESIKTAS) |
| 2011/12/08 | Delivery of No. 25 180,000DWT Bulk Carrier (HANJIN NEWCASTLE) |
| 2012/01/26 | Delivery of No. 26 180,000DWT Bulk Carrier (HANJIN PORT WALCOTT) |
| 2012/03/29 | Delivery of No. 27 207,000DWT Bulk Carrier (SAMJOHN DREAM) |
| 2012/04/01 | Issuance of the first Non-Guaranteed Convertible Bond (Daewoo) |
| 2012/05/29 | Delivery of No. 28 207,000DWT Bulk Carrier (SAMJOHN VISION) |
| 2012/07/19 | Obtained certificates for ISO 9001(quality management systems), OHSAS 14001(occupational health and safety management systems) |
| 2012/09/05 | Merged with Daehan Heavy Industries and Taejun Heavy Industries, obtained ISO 14001 (environment management systems) certificate |
| 2013/02/06 | Delivery of No. 29 82,000DWT Bulk Carrier (LIBERTY DAWN) |
| 2013/03/19 | Delivery of Floating Dock(RD-5) |
| 2013/05/02 | Delivery of No. 30 82,000DWT Bulk Carrier (LIBERTY DESIRE) |
| 2013/08 | Amendment to the Consignment (term extended from 2014/06/30 to 2016/12/31) |
| 2014/02/08 | Increase of capital without consideration (common shares KRW 10,000 x (-)27,456,650 shares = KRW (-)274,566,500,000).   Capital: KRW 2,773,400,000 |

*Annex 13. History of Debtor


2.  Growth of Debtor and Current Status of Business

    A.  Beginning of Shipbuilding business
        i.   Debtor was established on September 30, 1987 as Shinyong Shipbuilding
             Co., Ltd. and has engaged in ship repairs as its main business at its main
             office and manufacturing plant located in Dolsan-eup, Yeosu-si, Jeollanam-
             do, Korea.   Due to difficulties in management, Debtor applied for corporate
             reorganization and obtained the order for commencement of corporate
             reorganization on November 12, 1997 (Gwangju District Court 97Pa693)
             and was thereafter acquired by Daehan Cement, an affiliate company of
             Daeju Group on May 16, 2004.   Debtor received an order to terminate the
             reorganization procedure on August 20, 2004 and changed its name to its
             current name, Daehan Shipbuilding Co., Ltd. on August 24, 2004.

        ii.  The new management of the Debtor, with a view to the booming
             shipbuilding industry at the time, sought access to the shipbuilding industry
             in addition to the ship repair business.   In the meantime, as Yeosu office
             was only equipped with facilities for the repair business, Debtor proceeded
             to establish a shipyard in an area in front of Hyundai Samho Heavy

Industries located in Haenam-gun, Jeollanam-do.  Debtor devised a plan to construct 4 docks ("Docks 1-4") in a 3 stage process from 2006 to 2011 in the above mentioned area in Haenam-gun, and, as the first stage, commenced the construction of Dock 1 by constructing Haenam agricultural industrial complex in Haenam-gun (148,760.331 ㎡) in Gurim-ri, Hwawon-myeon, Haenam-gun, Jeollanam-do, Korea.  In June 2006, concurrently with the construction of the shipyard, the Debtor completed the construction of ship block plant, and operated the plant through its 100% subsidiary company, Daehan Heavy Industries.  In August 2007, the construction of the agricultural industrial complex in Haenam business site was completed and finally started building a bulk carrier at Dock 1 located in the agricultural industrial complex.  Debtor focused on building bulk carriers at the time as the bulk carrier building market was at its peak at that time.  As a result, the Debtor won contracts for building 21 ships at Dock 1 alone by the end of 2007 and won 22 shipbuilding contracts to be built at Dock 2 for USD 1,930,000,000 even though the construction of Dock 2 has not even begun yet.  In the meantime, on January 7, 2008, Yeosu business site and Haenam business site underwent an equity spin-off, and YS Heavy Industries, the company split off from the Debtor assumed operation of Yeosu business site.

iii.  Debtor received approval for construction of general industrial complex at the Haenam business site in March 2008 and directed its efforts at completing the construction of Dock 2.  In April 2008, the Debtor started operating the second block manufacturing plant (Taejun Heavy Industries, a 100% subsidiary of Debtor was in charge of operation thereof).  In less than 1 year from entering into the shipbuilding business, Debtor successfully delivered the 1st ship (HN-1001; MYSTIC) within the delivery deadline, and subsequently succeeded in delivering the second and third ships in September and November of 2008. As the Debtor focused on building bulk carriers, it became one of the most competitive shipbuilders in the world in building cape-size (180,000DWT) bulk carriers by end of 2008.

B.  Debt Work-out Plan and Efforts for Improving Management due to Global Economic Downturn

i.  However, as shown under IV. above, due to global recession and financial difficulties of its mother group, the Debtor went into a debt work-out process on May 29, 2009.  As the work-out plan commenced, construction of Dock

15

2 came to a halt, and the contracts for the 22 ships contemplated to be built at Dock 2 had to be cancelled.

ii.   Despite the developments above, the Debtor continued operating the shipyard without suspension thanks to the postponement of repayment of debts and the financial support of KRW 170 billion upon commencement of the work-out procedure and obtained operating profits of KRW 51.2 billion and net profit for the term of KRW 33.7 billion in 2009.   In the meantime, the Debtor, in its efforts to maximize the efficiency of Dock 1 following the discontinuation of construction of Dock 2, sought to extend the length of Dock 1 from 345 m to 460 m so that two ships may be built side to side at the same time, starting with the 8th ship ordered by applying the tandem method.   Also, Debtor established its Seoul office in 2010 for the purpose of strengthening its marketing capacity and smooth cooperation with creditor financial institutions where personnel in essential departments of the Debtor including finance, accounting and marketing and the fund management team dispatched from the major creditor banks have been operating since 2010 until now.

iii.   However, Debtor has been experiencing difficulty in obtaining new contacts for bulk carriers due to the continued recession in the bulk carrier market, and to overcome such circumstances and improve its management, entered into the Consignment.   As such, Debtor has been under consignment management by 11 Daewoo employees including 6 directors (including the current executive director) for 3 years, and, in September 2013, the term of the Consignment has been extended from June 2014 to December 2016. Also, on September 5, 2012, Debtor has merged Daehan Heavy Industries that has been operating internal work Plant 1 with Taejun Heavy Industries that has been operating internal work Plant 2 for improvement of profitability through cost reduction.

C.   Current Status of Business

i.   The Debtor has successfully obtained new contracts for 32 ships since early 2014 and has begun, or is getting ready for, construction of such new ships. Among the 32 ships, the Debtor has won the contracts for 24 by itself while the rest have been subcontracted through Daewoo.   Debtor is in the process of building 12 bulk carriers of the 24 ships the contracts for which the Debtor has obtained by itself and 8 product carriers the contracts for which it

16

received from Daewoo with RG[3] from KDB.   In addition, the Debtor has continuously been making efforts to diversify the types of ships to build recently, starting with the building of product carriers.

ii.   The current status of the remaining contracts are as follows:

| Total Remaining Ships | 32 total (20 bulk carriers, 12 product carriers) | Contract prices in total: KRW 1,792,918,577,062[4] |
|---|---|---|
| RG issued contracts among the contracts obtained by Debtor | 12 Bulk carriers | Contract price KRW 701,149,402,000, Price guaranteed by RG: USD 488,535,107 |
| Non-RG issued contracts among the contracts obtained by Debtor | 12 Bulk carriers | KRW 736,700,000,000 |
| Daewoo subcontracts | 8 product carriers (RG issued in the name of Daewoo) | Contract price KRW 355,069,175,062 |

*Annex 24. Details of construction of major ships; Annex 25. Current status of contracts; Annex 106. News articles, etc.

## III.   Financial Condition of the Debtor

1. Assets

   A.   Summary of Assets (as of April 30, 2014)
   - Current Assets:        KRW 128,134,753,742
   - Non-current Assets:  KRW 329,951,980,481
   - Total:                       KRW 458,086,734,223

   B.   Details of Assets per Item and Changes in Recent 5 Years
       (Unit: KRW 1 million)

---

[3] The shipowner requests guarantee for return of the advance payment to be repaid in case the shipbuilder fails to deliver the ship as scheduled under the contract, for which normally a bank or insurer issues a refund guarantee.   Issuance of RG means that the shipbuilding contract will be carried out in effect.

[4] Contracts based on USD are converted based on KRW 1,060/USD 1 currency.

| Details of Assets | 2014. 4.[5] | 2013. 12. | 2012. 12. | 2011. 12. | 2010. 12. |
|---|---|---|---|---|---|
| Current Assets | 128,135 | 58,162 | 45,751 | 202,646 | 286,575 |
| Cash and Cashable Assets | 5 | 10,989 | 318 | 123 | 12,651 |
| Accounts Receivable | 78,206 | 22,417 | 30,546 | 74,481 | 113,467 |
| Advance Payments | 16,779 | 6,651 | 10,005 | 13,813 | 35,204 |
| Prepaid Expenses | 9,457 | 8,829 | 257 | 3,350 | 1,985 |
| Inventories | 18,598 | 7,312 | 1,858 | 27,710 | 23,829 |
| Other Current Assets | 5,090 | 1,964 | 2,767 | 83,169 | 99,439 |
| Non-current Assets | 329,952 | 322,458 | 331,732 | 200,345 | 208,725 |
| Equity method Investment Stocks | - | - | - | 2,530 | 5,291 |
| Tangible Assets | 327,540 | 319,972 | 328,675 | 193,006 | 196,130 |
| Intangible Assets | 175 | 249 | 509 | 1,914 | 3,532 |
| Security Deposit | 2,237 | 2,237 | 2,548 | 2,895 | 3,772 |
| Total | 458,087 | 380,620 | 377,483 | 402,991 | 495,300 |

*Annex 30. Comparison financial condition table

C.  Current Assets

i.   Accounts Receivable of KRW 78.2 billion

The Debtor's accounts receivables are mostly derived from shipbuilding transactions and consist of credit account of KRW 1.8 billion (Daewoo: KRW 1.1 billion) for which Debtor has already made a claim, and KRW 65 billion (Daewoo: KRW 65 billion) which has been calculated based on the completion progress pursuant to business accounting standards and for which Debtor cannot make a claim yet, and foreign exchange credit account of KRW 11.2 billion (KTL Barnet Inc.: KRW 5.6 billion).

The accounts receivables which amounted to KRW 113.4 billion by late 2010 has decreased to KRW 22.4 billion by late 2013 due to the considerable decrease in Debtor's revenues, but increased to KRW 78.2 by April 2014 according to the current increase in revenues.

The liquidation value of the accounts receivable is calculated to be approximately KRW 1.4 billion, considering the Debtor's financial capacity, management condition, and the fact that the portion of the receivables whose due dates for payment have not arrived yet (the amounts calculated based on the completion progress) is not likely to be paid.

---

[5] Numbers from 2014 are figures that have not been audited by external auditor and have been calculated by Debtor.

ii.   Advance Payments of KRW 16.7 billion and Prepaid Expenses of KRW 9.4 billion

As of April 30, 2014, the advance payments of the Debtor consist of advance payments for the equipment used for shipbuilding and steel materials that have been made to Doosan Engine (advance payments: KRW 7.9 billion), Hyundai Heavy Industries (advance payments: KRW 4.6 billion), and STX Heavy Industries (advance payments: KRW 1.0 billion).   The liquidation value of the advance payments is calculated to be approximately KRW 200 million, considering the liquidation costs and possibility of refund.

The Debtor's advance payments consist of RG fees, commission fees of KRW 8.7 billion, fire insurance (KRW 42 million) and motor insurance (KRW 6 million).   As RG fees and commission fees are not subject to Debtor's right of refund at liquidation, the liquidation value is calculated to be KRW 14 million.

iii.   Inventories of KRW 18.5 billion

The Debtor's inventories consist of equipment used for shipbuilding and steel materials.   Considering that such inventories lack versatility, as the equipment options differ to cater to the respective shipowner's demands and the steel materials come in different quality and sizes, the liquidation value of the inventories is calculated to be KRW 5.6 billion, applying a 70% depreciation rate.

D.   Non-current Assets
   i.   Tangible Assets of KRW 327.5 billion
   Debtor's tangible assets consist of the land and buildings at the Haenam shipyard, internal work Plant 1 and Plant 2, structures related to shipbuilding such as docks, pier and curved block yards, and machinery including goliath crane (600 tonnage), and other equipment necessary for shipbuilding.   The liquidation value of the tangible assets is calculated as follows, considering the average auction price ratio per year (auction price/appraised value) at the location of the relevant tangible asset, disposability of the asset and liquidation costs:

19

(Unit: KRW 1 million)

| Category | Book Value | Value After Adjustment via Due Diligence | Liquidation Value | Note |
|---|---|---|---|---|
| Land | 77,357 | 91,424 | 28,868 | Sites of Haenam shipyard, internal work Plant 1 and Plant 2 |
| Building | 86,081 | 89,859 | 32,212 | Buildings of Haenam shipyard (including vocational training facility), internal work Plant 1 and Plant 2 |
| Structure | 57,323 | 54,633 | 13,900 | Dock 1 and pier at Haenam shipyard, structures at internal work Plant 1 and Plant 2 (curved block yard, etc.) |
| Machinery | 40,648 | 40,702 | 6,639 | Goliath crane(600 tonnage), dock gate, etc. |
| Total | 261,411 | 276,620 | 81,620 | |

Debtor's tangible assets under construction in the amount of KRW 57 billion are the costs related to Dock 2, the construction of which had begun in 2008 but halted due to financial difficulties (which consist mainly of construction costs for reclamation work for construction of industrial complex and fishery compensation in the amount of KRW 31.8 billion and advance payment for installation of the goliath crane (1,500 tonnage) in the amount of KRW 22 billion). As the assets in construction are of no value prior to completion of construction thereof, their value was not included when calculating the liquidation value.

ii. Security Deposit of KRW 2.2 billion

The Debtor's security deposit of KRW 2.2 billion (KRW 10.4 billion, prior to applying the allowance for bad debts) consist of security deposit for lease in the amount of KRW 800 million and golf club membership fee in the amount of KRW 1.4 billion. The liquidation value of the security deposit is calculated as KRW 8.7 billion, considering the liquidation costs expected to be incurred upon adjustment after due diligence (including application of the allowance for bad debts).

2. Current Status of Liabilities

A. Summary of Liabilities (as of April 30, 2014)
- Current Liabilities:           KRW 448,135,415,353
- Non-current Liabilities:       KRW 99,004,678,508

- Total: KRW 547,140,093,861

B. Details of Liabilities per Item and Changes in Recent 5 Years

(Unit: KRW million)

| Details of Liabilities | 2014. 4.[6] | 2013. 12. | 2012. 12. | 2011. 12. | 2010. 12. |
|---|---|---|---|---|---|
| Current Liabilities | 448,135 | 352,267 | 253,292 | 320,809 | 437,666 |
| Accounts Payable | 38,200 | 16,361 | 17,294 | 40,534 | 47,622 |
| Short Term Debt[7] | 267,013 | 222,191 | 221,827 | 230,275 | 345,039 |
| Prepaid Expenses | 115,616 | 91,471 | 838 | 36,208 | 24,846 |
| Other Current Liabilities | 27,306 | 22,244 | 13,333 | 13,792 | 20,159 |
| Non-Current Liabilities | 99,005 | 104,794 | 135,973 | 58,207 | 234,370 |
| Long Term Debt | 0 | 0 | 38,300 | 0 | 160,046 |
| Convertible Bond | 50,644 | 49,826 | 48,841 | 0 | 0 |
| Provisions[8] | 24,142 | 28,809 | 18,599 | 18,437 | 26,600 |
| Currency Forwards | 13,620 | 17,454 | 20,826 | 32,375 | 39,981 |
| Other Non-Current Liabilities | 10,599 | 8,705 | 9,406 | 7,395 | 7,743 |
| Total | 547,140 | 457,061 | 389,265 | 379,016 | 672,036 |

*Annex 30. Comparison Balance Sheet

C. Current Liabilities

   i. Accounts Payable of KRW 38.2 billion

Debtor's accounts payable consist of accounts payable incurred from purchases of equipment and steel materials necessary for shipbuilding, owed mainly to Hyndai Steel (KRW 5.1 billion), Hanbaek Steel (KRW 4.6 billion), Doosan Engine (KRW 3.3 billion), Man Fung Global Trading Company (KRW 3.0 billion), and Hanchang Engineering (KRW 1.9 billion).

   ii. Prepaid Expenses of KRW 115.6 billion

Debtor's prepaid expenses consist of the advance payments from shipowners for the ships in construction (16 vessels) and will be considered as revenue in accordance with the construction progress ratio in the future. Among the prepaid expenses, Debtor has received RG from KDB (total guarantee amount: USD 488,533,107 / amount proceeded: USD 75,575,010) for the 12 bulk carriers (contract price: USD 661,461,400).

   iii. Current / Non-current Financial Liabilities of KRW 317.6 billion

---

[6] Numbers from 2014 are figures that have not been audited by external auditor and have been calculated by Debtor.

[7] This includes current financial liabilities.

[8] This includes provisions for construction warranties, construction loss, loss from delay of construction, payment guarantee and loss from cancellation of contract.

21

As of April 30, 2014, Debtor's financial liabilities consist of current financial liabilities in the amount of KRW 267 billion and non-current financial liabilities in the amount of KRW 50.6 billion.  The current liabilities consist of short term debts in the amount of KRW 218.7 billion and current long term debts in the amount of KRW 48.3, while the non-current liabilities consist of convertible bonds in the amount of KRW 50.6 billion.

Debtor's short term debts consist of debts from financial institutions including KDB (KRW 164 billion), Shinhan Bank (KRW 32.9), and Woori Bank (KRW 12.4 billion) and debts from KEMCO 1st Joint Venture Special Purpose Company (KRW 7.1 billion), Daehan City Development Co., Ltd (KRW 400 million), and the current long term debts consist of long term debts from KDB (KRW 38.3 billion) and Shinhan Bank (KRW 10 billion) whose due dates for repayment will arrive within 1 year.  As regards the debts above, Debtor's tangible assets (Haenam shipyard, real property, machinery and heavy equipment of internal work Plant 1 and Plant 2) and accounts receivable are provided as collateral.

Debtor's convertible bonds consist of non-guaranteed convertible bonds issued on April 1, 2012 (face value KRW 50 billion, due on June 27, 2015) which are owned entirely by Daewoo.  The coupon rate for such convertible bonds is 2%, and the yield to maturity (YTM) is 5% (one time repayment of 110.3048% of the principal upon maturity).  In the event Daewoo or a third party other than the creditor financial institutions becomes the largest shareholder of the Debtor, it is possible to request advanced redemption.

D.   Non-current Liabilities
    i.   Provisions of KRW 24.1 billion
         Debtor's provisions consist of provisions for construction loss in the amount of KRW 11.3 billion and provisions for payment guarantee in the amount of KRW 12.5 billion.

         The provisions for construction loss are calculated by adding up the losses expected to be incurred from vessels under construction by the Debtor pursuant to the business accounting standards as of April 30, 2014.

         The provisions for payment guarantees consist of the expected losses in the amount of KRW 10.6 billion relating to payment guarantees made in respect to Daehan Shipping and in respect to loans made to YS Heavy Industries. As discussed under I. 17 above, in late 2007, Mr. Yee Soo Oh abused his power and made a guarantee in the name of Debtor for Daehan Shipping's obligations under a charter party without obtaining the resolution of the board of directors of Debtor, as a result of which Debtor is faced with obligation for guarantee (in the amount of KRW 57.8 billion in total)

(Debtor lost the case filed against it in England in October 2011, and lawsuits for execution of judgment are pending in Korea and New York, USA at this moment).    Related to the above, Debtor has engaged in negotiations with the shipowners (Rimpacific Navigation and Wonder Enterprises) in regards to the scope of payment guarantee to be paid in November 2011, and the amount of KRW 10.6 billion discussed at the time is recognized as provisions for payment guarantee.

ii.    Currency Forwards of KRW 13.6 billion
Debtor has entered into a currency forwards contract (USD 134,360,994) with KDB to avoid risks relating to currency fluctuations which may occur when depositing the prepaid expenses in foreign currency.    The difference between amounts calculated based on the currency exchange rate in the currency forwards contract and the current currency exchange rate as of April 30, 2014 is recognized as the currency forwards.

E.    Possibility of Occurrence of Contingent Liabilities
i.    Guaranteed liabilities
As discussed in D.(i) above, lawsuits by Rimpacific Navigation and Wonder Enterprises for execution of judgment are pending in Korea and New York. In the event the Debtor loses in such lawsuits, of the guaranteed liabilities in the amount of KRW 57.8 billion, KRW 47.2 billion which exceeds the provisions for payment guarantees in the amount of KRW 10.6 billion may be materialized, and such amount should be recognized as contingent liabilities.

ii.    Security Provided by Third Parties
Debtor has been provided with a vessel as a transferred security by Daewoo (guarantee amount of KRW 102.5 billion) in regards to KDB's support of funds for shipbuilding as regards the building of the vessels (8 vessels including HN5394) subcontracted from Daewoo.    Debtor has also been provided with real property as security whose value amounts to KRW 2.8 billion from Chairman Jae Ho Hou of the former Dae Ju Group.    As the Debtor has already recognized the loans from KDB as loans which are already sufficiently secured with Debtor's assets, it is not necessary to recognize such amount as contingent liabilities.

iii.    Lawsuits in Which Debtor Is Defendant
As of April 30, 2014, there are three lawsuits where Debtor is involved as defendant (total amount disputed: KRW 50 billion) (Annex 42. Current status of pending lawsuits).    Amounts disputed in such lawsuits are not recognized as liabilities, as the end results of such cases (please refer to the discussion on lawsuits filed by Rimpacific Navigation and Wonder Enterprises above in E.i) are not foreseeable at this stage.

iv.    Payment Guarantee Provided by Third Parties

23

Debtor has received RGs from KDB in regards to the prepaid expenses for 12 ships as of April 30, 2014.   There is a possibility that Debtor may bear the liabilities for compensation in the event KDB fails to perform the RGs, but as Debtor is expected to perform the shipbuilding contracts without fail, there is no need to recognize such payment guarantees as liabilities.

F.   Details of Rehabilitation Security Rights and Rehabilitation Claims (as of April 30, 2014)

| | | |
|---|---|---|
| Rehabilitation Security Rights[9] | Total: | KRW 255,661,070,535 |
| -financial institutions | | KRW 255,661,070,535 |
| Rehabilitation Claims | Total: | KRW 202,763,872,129 |
| -financial institutions[10] | | KRW 21,579,414,410 |
| -convertible bonds | | KRW 50,082,191,781 |
| -commercial transactions[11] | | KRW 48,208,093,758 |
| -unascertained compensation[12] | | KRW 77,970,737,956 |
| -guarantee | | KRW 2,280,000,000 |
| -guarantees for cooperative companies | | KRW 2,304,072,897 |
| -guarantees for lease | | KRW 339,361,327 |

3.   Status of Profits and Losses

(Unit: KRW million)

| Details of Profits and Losses | 2014. 4.[13] | 2013. 12. | 2012. 12. | 2011. 12. | 2010. 12. |
|---|---|---|---|---|---|
| Revenues | 102,423 | 140,411 | 247,909 | 527,568 | 733,876 |
| Gross Cost of Merchandise Sold | 111,775 | 185,570 | 266,297 | 522,233 | 661,484 |
| Gross Merchandise Margin | (9,352) | (45,159) | (18,388) | 5,335 | 72,392 |

---

[9] For details regarding provision of security, please refer to Annex 38. Details of provision of security for loans.

[10] For details, please refer to Annex 37. Status of Loans and Interests Per Year.

[11] Rehabilitation claims (commercial transactions) consist of debts that are actually required to be repaid, excluding accounts payable and unpaid amounts that have been accounted for on the balance sheet.

[12] Unascertained compensation debts are the amounts for which KDB provided RGs (Annex 41. Status of Payment Guarantee Provided by Third Parties).

[13] Numbers from 2014 are figures that have not been audited by external auditor and have been calculated by Debtor.

| Distribution/Management Costs | 3,684 | 10,254 | 9,665 | 21,318 | 23,792 |
|---|---|---|---|---|---|
| Operating Profits (Losses) | (13,036) | (55,413) | (28,053) | (15,983) | 48,600 |
| Non-Operating Income | 5,294 | 10,206 | 16,957 | 10,053 | 25,394 |
| Non-Operating Expenses | 4,869 | 20,709 | 23,860 | 50,642 | 74,892 |
| (Interest Expenses) | (4,440) | (20,303) | (17,385) | (27,095) | (29,433) |
| Income before Income Tax | (12,611) | (65,916) | (34,956) | (56,572) | (898) |
| Corporate Tax Expenses | 0 | 0 | 0 | 0 | 0 |
| Net Profit for the Term (Loss) | (12,611) | (65,916) | (34,956) | (56,572) | (898) |
| [Analysis of Rate] | | | | | |
| Rate of Cost to Selling Price | 109.1% | 132.2% | 107.4% | 99.0% | 90.1% |
| Gross-margin Ratio | -9.1% | -32.2% | -7.4% | 1.0% | 9.9% |
| Sales Management Costs to Sales | 3.6% | 7.3% | 3.9% | 4.0% | 3.2% |
| Operating Profit to Sales Ratio | -12.7% | -39.5% | -11.3% | -3.0% | 6.6% |
| Net Profit During Term Ratio | -12.3% | -46.9% | -14.1% | -10.7% | -0.1% |

*Annex 31. Comparison Profit/Loss Table

i. Majority of the Debtor's revenues are generated from shipbuilding. Normally, a vessel takes about 2 to 3 years from obtaining an order for its construction to delivery.  The Debtor's revenues, which used to be only KRW 40.6 billion in 2005 increased to KRW 733.8 in 2010, thanks to the unprecedented economic boom in the shipbuilding industry (especially, bulk carriers) that continued through 2007.

However, as the global financial crisis in 2008 resulted in global decrease in demand for shipbuilding and decrease in prices of ships, Korean shipbuilding industry also experienced financial difficulties, and the Debtor suffered from difficulties in obtaining new orders for ships.  In addition, due to financial difficulties, construction of Dock 2 came to a halt, and the contracts for the 22 ships contemplated to be built at Dock 2 had to be cancelled.  Such decrease in orders of ships led to decrease of revenues in 2011, and Debtor's revenues continued to decrease to KRW 140.4 in 2013, as the revenues from subcontracts from Daewoo according to the Consignment became the main source of revenues for Debtor.

Nevertheless, as shipbuilding industry has been recovering since late 2013, Debtor obtained new orders for 24 vessels in 2014 alone and procured orders for the next 3 years (32 vessels).   As a result, Debtor's revenues have been increasing and the revenues for 2014, as of April 30, are KRW 102.4 billion (as applied to 12 months, KRW 307.2).

ii. Debtor's rate of cost to selling price has been increasing steadily from 99% in 2011, 107% in 2012 to 132% in 2013 because, during the same period, despite the dramatic decrease in the Debtor's revenues, fixed costs (such as depreciation costs regarding large scale constructions and labor expenses for production workers) have continued to be incurred, as is characteristic of shipbuilding industry.  As such, Debtor has been recording gross losses since 2012.

25

iii.  Debtor's distribution/management costs consist of personnel expenses such as salary payments, retirement compensation and welfare expenses, depreciation costs and payment commissions.  Sales management costs to sales ratio has also increased from 3.2% in 2010, 4% in 2011, 3.9% in 2012, and 7.3% in 2013 because, despite the decrease in the Debtor's revenues, fixed costs such as labor expenses have continued to be incurred

iv.  Debtor has continuously recorded operating profits until 2010 (KRW 48.6 in 2010), but starting in 2011, has been recording operating losses until now (KRW 15.9 in 2011, KRW 28.0 in 2012, KRW 55.4 in 2013, and KRW 13.0 until April, 2014).

v.  In addition to the operating losses above, due to the interest expenses on the financial liabilities (KRW 69.2 in total since 2011), Debtor has recorded net losses of KRW 56.5 in 2011, KRW 34.9 in 2012, KRW 65.9 in 2013 and KRW 12.6 as of April, 2014.

## IV.    Cause for Application for Commencement of Rehabilitation Proceedings

1.  Investment Suspension due to Global Economic Downturn and Financial Difficulty of Its Mother Company

Due to global financial crisis triggered in 2008, the shipbuilding industry also suffered from rapid global economic downturn.  In addition, due to the liquidity crisis that its mother group, Dae Ju Group, faced, investments for the Debtor including the investment for the construction of Dock 2 have been suspended which resulted in the cancellation of contracts for the 22 ships contemplated to be built at Dock 2.  The investments made by the Debtor for the construction of Dock 2 have become losses.

2.  Increase in Liabilities regarding Currency Option Derivatives Trading due to Fluctuation in Currency Exchange Rate

In the shipbuilding industry, shipbuilders receive about 5 installments of prepaid payments over the period of 2 to 3 years and use such installments as expenses for building the ship.  As most of the ship building contracts are based on foreign currencies, Debtor, like companies that engage in export businesses, have entered into a currency option contract to minimize losses occurring due to currency exchange rate.  However, due to insecurity in the foreign exchange market following the global economic downturn, currency exchange rates increased dramatically, and, as a result, Debtor suffered a major loss of KRW 136 billion in the currency option derivatives trading.  In January 2009, Debtor received a C rating (i.e., rating for

companies subject to reorganization) from credit risk evaluation by financial institutions, which aggravated the situation.

3.   Increase of Personnel Costs and Logistics Costs

Suspension of the construction of Dock 2 and cancellation of the contracts for 22 ships due to the global economic downturn and liquidity crisis at Dae Ju Group have disrupted the plans for constructing a shipbuilding cluster, supply and demand for personnel and procurement of equipment, and as personnel costs and logistics costs have increased, the price for shipbuilding has also increased accordingly.   Especially, losses relating to the labor costs were made worse as Debtor had to carry the burden of the labor costs for personnel who have been employed in advance for shipbuilding after the anticipated completion of construction of Dock 2, which did not happen. As such, Debtor was not able to recuperate the investments that it made for construction and relocation of Haenam business site.

In addition, as the shipbuilding market trend was moving from commercial carriers towards marine equipment, workers with high-level skills were also moving towards the marine equipment construction market, which in turn caused the Debtor to spend more money for procuring workers.   Also, in its efforts to diversify the types of vessels to build in addition to bulk carriers, Debtor has been spending more on personnel costs to procure the relevant employees.

4.   Progress of Work-out Plan and Current Status

As discussed above, Debtor failed to overcome the liquidity crisis that occurred due to the economic recession in the shipbuilding market and financial problems of its mother group following the global financial crisis, and filed for a debt work-out plan at its main bank, KDB.   The work-out plan commenced on May 29, 2009, following the resolution by the creditor financial institutions committee.

Details of new funds supported by, and losses borne by, the creditor financial institutions in the process of the work-out procedure are as follows:

| Dates | Content |
|---|---|
| 2009/02/27 | Urgent supply of operating funds: KRW 70 billion in total |
| 2009/04/24 | creditor financial institutions committee resolution for debt-for-equity swap for existing claims: KRW 5,138 million<br>Supply of new funds: KRW 170 billion in total |
| 2010/01/25 | Supply of new funds: KRW 60 billion in total<br>Provision of RG for new orders: USD 67,272,000<br>(principal USD 65,640,000 + USD 1,632,000)[14] |

---

[14] All of the RGs other than the RG dated December 2, 2013 below relate to transactions that have been completed by delivery of respective vessels as of April 30, 2014.

| 2010/06/25 | Provision of RG for new orders: USD 148,300,000,000 (principal USD 143,500,000 + USD 4,800,000) |
|---|---|
| 2010/12/20 | Provision of RG for new orders: USD 498,000,000 Provision of new letter of credit: limit—USD 20,000,000 |
| 2011/06/01 | Creditor financial institutions committee resolution for debt-for-equity swap for their claims: KRW 270 billion Issuance of convertible bonds for Daewoo: KRW 50 billion |
| 2013/07/04 | Supply of new funds: KRW 102.5 billion |
| 2013/12/02 | Request for provision of RG for new orders: USD 550,385,000 (principal USD 520,162,000 + USD 30,223,000)[15] |
| 2014/02/28 | Increase of capital without consideration 100:1 |
| Total | Debt-equity swap: KRW 275,138,000,000 Supply of funds: KRW 402.5 billion Provision of RG for on-going obtainment of new contracts: USD 550,385,000 |

The financial structure of Debtor has not improved easily even though the creditor financial institutions supplied new funds and increased capital without consideration by conducting debt-equity swap.   In the meantime, Shinhan Bank and KEMCO 2nd Joint Venture Special Purpose Company who have initially participated in the work-out process as creditor financial institutions have expressed their desire not to support the Debtor by exercising their appraisal right on July 4, 2013, and Woori Bank has also exercised their appraisal right in January 2014.   Accordingly, KDB in effect is the only remaining creditor financial institution that is capable of supporting the Debtor such that it has become quite difficult to proceed the work-out plan under agreement by creditor financial institutions.   In addition, it is also possible that additional debts may be incurred, as Rimpacific and Wonder Enterprises, as creditors who are not participating in the work-out plan, have filed lawsuits against the Debtor.

*Annex 97. Cause of Application for Commencement of Rehabilitation Proceedings; Annex 98. Progress of Work-out Plan

## V.    **Rehabilitation Value of Debtor**

1.  Liquidation Value of Debtor

Assuming that the liquidation value will be based on the assets of the Debtor as of the time of this application, the liquidation value based on sales of individual assets of the Debtor is calculated as KRW 104.9 billion as shown in the table below and in Annex 99.

---

[15] RGs for 12 vessels the contracts for which have been procured by Debtor.

The numbers in the table below and Annex 99 have been calculated by (i) subtracting the amounts collected after the date of the balance sheet from the respective relevant amounts on the current balance sheet as of April 30, 2014, and then (ii) subtracting from (i) the liquidation losses that are expected to be incurred in the event the assets of Debtor are separated and immediately sold at this point.  Especially, when calculating the liquidation losses, the financial conditions of the relevant debtor of the Debtor in respect to the relevant accounts receivable and advance payments have been taken into consideration, and average auction price ratio (auction price/book value) has been applied to the book value in respect to real property, structures, and machinery.

[Liquidation Value and Liquidation Value Ratio per Asset]
(Unit: KRW 1 million)

| Category | Amount on Balance Sheet | Liquidation Value | Liquidation Value Ratio |
|---|---|---|---|
| Current Assets | | | |
|   Cash and Cashable Assets | 5 | 5 | 100.00% |
|   Accounts Receivable | 78,206 | 1,472 | 1.88% |
|   Uncollected Amount | 267 | 213 | 79.99% |
|   Advance Payments | 16,779 | 216 | 1.29% |
|   Prepaid Expenses | 9,010 | 15 | 0.16% |
|   Prepaid Construction Fee | 447 | 0 | 0.00% |
|   Prepaid Corporate Tax | 1 | 1 | 100.00% |
|   Surtax | 4,822 | 4,822 | 100.00% |
|   Inventories | 18,598 | 5,630 | 30.27% |
| Non-current Assets | | | |
|   Tangible Assets | 327,539 | 83,788 | 25.58% |
|   Intangible Assets | 175 | 0 | 0.00% |
|   Security Deposit | 2,237 | 8,784 | 392.59% |
| Total | 458,086 | 104,946 | 28.06% |

2.  Going-Concern Value of Debtor

Assuming that Debtor would continue to exist, the estimated flow of cash based on estimated profits/losses is as contemplated in Annex 104, and the current value, remaining value and the going-concern value of Debtor (which is calculated by adding the preceding two values) based on the cash flow of the next 10 years is as shown in Annex 100.

A.  Estimated Flow of Cash based on Estimated Profits/Losses
The future flow of cash used to assess the Debtor's enterprise value is calculated by (i) subtracting from estimated operating profits (taking into consideration corporate taxes) non-cash expenses such as depreciation costs and provisions for construction losses, and then (ii) taking into consideration the cash flows from working capital investment and investment activities (Annex 100. Details of Going-Concern Value).

29

B.  Current Value of Cash Flow Occurring During the Estimation Period
The current value of cash flow that occurs during the cash flow estimation period (next 10 years) is calculated by multiplying (i) cash flow by (ii) present worth factor which is calculated based on optimal discount rate (9.35% as uniformly applied) which is derived via calculation formula notified to domestic accounting firms by Seoul Central District Court Management Committee in February 2006.

C.  Current Value of Cash Flow Occurring After the Estimation Period
The current value of cash flow that occurs after the cash flow estimation period (after 2025) is calculated by (i) on the assumption that the cash flow in 2024 will continue after 2024 (0% growth), converting such cash flow to the current value as of the end of 2024 [calculation method: cash flow in 2024/(optimal discount rate - growth rate)], and then (ii) converting the current value of the cash flow occurring after the estimation period to the current value as of April 30, 2014.

D.  Going-concern Value
The going-concern value is calculated by adding the current value of cash flow occurring during the cash flow estimation period to the current value of the cash flow occurring after such period.    Debtor's going-concern value is calculated as KRW 525.2 billion (Annex 100. Details of Going-Concern Value).

[Going-concern Value]
(Unit: KRW 1 million)

| Category | Amount |
|---|---|
| Current Value of Cash Flow Occurring During the Estimation Period (As of 2014/04/30) | 245,502 |
| Current Value of Cash Flow Occurring After the Estimation Period (As of 2014/04/30) | 279,752 |
| Going-concern Value (As of 2014/04/30) | 525,255 |

3.  Conclusion

As shown above, as the going-concern value of Debtor is KRW 525.2 billion while the liquidation value is KRW 104.9 billion, the going-concern value exceeds the liquidation value by more than KRW 420.3 billion.

## VI.    Likelihood of Debtor's Performance of Debt Repayment Plan

1.  Future Prospect of Business

Debtor has currently obtained a considerable amount of new orders, securing the amount for production until 2016, thanks to support from creditor financial institutions through the work-out process.    Also, the shipbuilding industry, both

30

domestic and foreign, seems to be recovering since the latter half of 2013 from recession.   As such, Debtor is expected to obtain 9 to 10 new orders for ships per year in the future (Annex 101. Business Plan).

2. Debt Repayment Plan for the Next 10 Years

As of April 30, 2014, Debtor's debts consist of: debts owed to financial institutions KRW 277.2 billion, debts incurred from commercial transactions KRW 48.2 billion, convertible bonds KRW 50 billion, debts incurred from payment guarantees for cooperative companies KRW 2.3 billion, debts incurred from lease guarantee KRW 300 million, payment guarantee KRW 2.2 billion and unascertained compensation KRW 77.9 billion.   Debtor plans to repay the debts above in the following manner;

In regards to the unascertained compensation of KRW 77.9 billion which correspond to the RGs from KDB provided for the prepaid expenses from shipowners, as Debtor is expected to perform the shipbuilding contracts without fail through the rehabilitation process, there is no possibility that such RGs would need to be performed.   As such, such unascertained compensation should not be recognized as liabilities and should be excluded from the repayment plan, and the actual amount of debts that Debtor would need to repay would be KRW 380.2 billion.

As regards the rehabilitation secured claims of KRW 255.6 billion, after a 3 year grace period, Debtor plans to repay 20% annually for 2 years from 2018 to 2019, 12% annually for 5 years from 2020 to 2024, with 3% interest accrued after commencement of rehabilitation process.   As regards the rehabilitation claims, 85% of the debts owed to financial institutions and convertible bonds will be converted into equity, and, after a 5 year grace period, Debtor plans to repay the remaining 15% by 20% annually for 5 years from 2020 to 2024.   As regards the debts from commercial transactions, 75% will be converted into equity, and 80% of the remaining debts will be repaid in 2015 and the remaining 20% will be repaid in 2016. 50% of the debts incurred from payment guarantees for cooperative companies will be converted into equity, and 80% of the remaining debts will be repaid in 2015 and the remaining 20% will be repaid in 2016.   In the event the relevant debtors fail to repay their debts, 85% of the payment guarantee will be converted into equity, and the remaining 15% will be paid by 20% annually for 5 years from 2020 to 2024 after a 5 year grace period.   As for the debt from lease guarantee, Debtor plans to repay

31

the full amount with security deposit received for new lease upon the expiration of the current lease.    The rehabilitation claims currently subject to pending lawsuits or over which disputes may arise are estimated to amount to KRW 58.3 billion—if such debts are materialized, Debtor plans to repay them in a manner that other rehabilitation claims that are most similar to such rehabilitation claims are planned to be repaid.

If the principal and interest of the Debtor's debts are readjusted through the process of rehabilitation as above, Debtor is expected to be able to repay all of the converted debts from commercial transactions and debts owed to financial institutions and procure a stable financial structure (Annex 105. Debts Repayment Plan).

Debtor operates the operating funds through a loan checking account at KDB which the Debtor needs to maintain from 2014 to 2015 to secure cash flow for carrying out the currently executed shipbuilding contracts.    As KDB is willing to continue supplying new funds to support rehabilitation of the Debtor, the Debtor wishes to maintain the said loan checking account at least until 2015 by loaning new funds with approval from the court through the rehabilitation process.

## VII.    Repercussions of Failure to Commence Rehabilitation Process

As shown above, the going-concern value of Debtor far exceeds the liquidation value of the Debtor while there is a high possibility that Debtor would be able to carry out the debt repayment plan.    If the court nevertheless rejects this application for commencement of rehabilitation process and Debtor goes into bankruptcy, the following repercussions would take place.

1.  Damages to Employees

As of May 26, 2014, there are 608 employees of Debtor, including directors / officers. If the court rejects this application for commencement of rehabilitation process and Debtor goes into bankruptcy, the employees who have been trying to revive the Debtor will become unemployed and their families will suffer.    Also, the local economy of the Debtor's business sites where the Debtor's shipyards and block plants are located will inevitably be negatively affected.

32

2.  Chain Reaction Bankruptcies of Cooperative Companies

Bankruptcy of a shipbuilding company like the Debtor can give rise to serious financial difficulties to small/medium sized cooperative companies who are engaged in supply of raw materials to, or subcontracts with, such shipbuilding company. There is a high possibility that many of the Debtor's 520 cooperative companies whose debts owed by Debtor amount to KRW 48.8 billion will go bankrupt if Debtor goes bankrupt.

3.  Loss of Technology

Debtor is a medium sized shipbuilding company that has constructed 36 vessels until 2013, who possesses a world-renowned technology regarding construction of bulk carriers.   However, if Debtor goes bankrupt at this point, the hard-earned technology will be lost which will also be a considerable national loss.

## VIII.   Conclusion

As shown above, Debtor is currently in a state where its liabilities exceed its assets and will not be able to repay its debts that are due unless by causing considerable hindrance to continuation of its business. As such, it is apparent that the Debtor satisfies the requirement for commencement of rehabilitation process as stipulated in Article 34(1) of the Debtor Rehabilitation and Bankruptcy Act (the "Act"), namely, "where it is feared that bankruptcy may accrue to the debtor" and/or "where the debtor finds it impossible to repay his/her obligations in the repayment period without any serious hindrance to the continuation of his/her business."   In addition, considering that Debtor's going-concern value far exceeds its liquidation value and that Debtor is highly likely to successfully carry out the debt repayment plant, allowing the commencement of rehabilitation process for Debtor will be more beneficial for the creditors.   Please consider the factors above and render a decision to commence the rehabilitation process for the Debtor.

## IX.   Opinion regarding Forming Creditors' Committee

It seems reasonable to form the creditors' committee according to the size of respective creditors' claims.   The top 10 creditors are enumerated in Annex 108.

33

## X.   Opinion regarding Appointment of Custodian

As the Debtor's financial difficulties were not caused by diversion or concealment of assets or poor corporate governance by the management body of the Debtor, in the event the rehabilitation process commences, the custodian for the Debtor would be the representative of the Debtor pursuant to Article 74(2) of the Act.

It is important for the Debtor to carry out the shipbuilding contracts and continue making efforts to obtain new orders for ships in order to continue its business and rehabilitate after the commencement of rehabilitation process.   Especially, in order for Debtor to win new contracts for different types of ships which is essential for rehabilitation of Debtor, capacity of the current executive director, Byung Mo Lee, who has 30 years of experience in shipbuilding industry and extensive human network and good relations with the main creditor bank, KDB, is quite important.   As such, it would be appropriate to appoint Byung Mo Lee as the custodian for the Debtor or to not select or appoint a custodian at all pursuant to Article 74(3) of the Act.

## XI.   Opinion regarding Progress of Rehabilitation Process

It was unavoidable for the Debtor to apply for the rehabilitation process as it was impossible for the Debtor to continue proceeding the work-out plan due to the exercise of appraisal rights by some creditors and occurrence of contingent liabilities even though Debtor has improved its financial structure through debt-equity swap and large-scale capital reduction and has obtained a considerable amount of new orders.   However, as there would be no problem for the Debtor to carry out the current contracts and to win new contracts if the debts are readjusted through the rehabilitation process and KDB continues to provide support, Debtor will likely be rehabilitated in a short period of time.

However, it is very important that the rehabilitation process should commence and terminate at the earliest date possible so that the Debtor can prevent unrest on the part of the shipowners and receive RGs from financial institutions so as to obtain additional contracts and carry out the current ones.

As such, Debtor is applying for commencement of rehabilitation process with cooperation from the main creditor bank who took the initiative in the work-out process. In consideration of the above factors, Debtor wishes that the first meeting of persons

34

concerned will be proceeded with the report on the result of inspection by the custodian pursuant to Article 92 of the Act.   The creditor financial institutions including the main creditor bank are planning to submit a draft rehabilitation plan prior to such first meeting of persons concerned based on Article 223 of the Act.

In consideration of the above, Debtor respectfully asks the court to apply a fast track approach to this application and to allow many creditors including the main creditor bank to participate in the rehabilitation process so that the Debtor may return to the market as quickly as possible.

# EXHIBIT B

(Certified Commencement Order)

[제41호 서식]

Registered No.    2014    －    1695

# NOTARIAL  CERTIFICATE

### KYUNG HYANG LAW NOTARY OFFICE

(2ga, Myung-Dong)64,Namdaemun-ro,
Jung-Ku, Seoul, Korea



TEL:(02) 752-4280
FAX:(02) 752-7815

# Seoul Central District Court

# The 4th Bankruptcy Division

## Decision

| | |
|---|---|
| Case No.: | 2014 HoeHap 100064 Rehabilitation |
| Applicant and Debtor: | Daehan Shipbuilding Co., Ltd.<br>Joseonso-gil 498, Hwawon-myeon, Haenam-gun, Jeollanam-do, Korea<br>- CEO: Byung Mo Lee<br>- Representatives of the Debtor for application of the rehabilitation procedure: Bae, Kim & Lee LLC (Hyunwook Park, Sungjoon Hong) |

## Decision

1. The rehabilitation procedure shall be commenced with respect to the Debtor.
2. A custodian for the Debtor shall not be appointed separately, and the chief executive officer of the Debtor shall assume the role of the custodian.
3. The submission period for the respective lists of the rehabilitation creditors, rehabilitation secured creditors and shareholders will be from July 7, 2014 to July 21, 2014.
4. The reporting period for the rehabilitation claims, rehabilitation security rights and shares will be from July 21, 2014 to August 4, 2014.
5. The investigation period for the rehabilitation claims and rehabilitation security rights will be from August 4, 2014 to August 14, 2014.
6. The first meeting of the persons concerned shall be held on September 5, 2014 at 16:00 in the Annexed Building 3, 2nd floor, Court 1.

## Reason

1. Admissions
   Based on the records relating to this case and the testimony of the representative of the Debtor, the parties admit to the following facts:

   A. Purpose of the Business

1

The Debtor was established on September 30, 1987 as Shinyong Shipbuilding Co., Ltd. and was acquired by Daehan Cement Co., Ltd.   The Debtor was then renamed Daehan Shipbuilding Co., Ltd. on August 23, 2004 and has been since engaged in the shipbuilding and repair business.

B.  Capital and Shareholders



The Debtor is an unlisted company, the total number of whose outstanding shares is 277,340 (KRW 10,000 per share) and whose paid-in capital is KRW 2,773,400,000.   Korea Development Bank, Shinhan Bank and Korea EXIM Bank own 53.19%, 18.28%, and 10.32% of the outstanding shares respectively.

C.  Current Status of Assets, Liabilities, Revenues and Profits/Losses

The status of assets, liabilities, revenues and profits/losses of the Debtor are as provided in the Annex.

D.  The Reason for Economic Collapse

The Debtor suffered from a serious liquidity crisis due to the economic recession arising from the global financial crisis in 2008 and the financial difficulty that its mother company, Dae Ju Construction Industry Co., Ltd. had suffered from, as a result of which the Debtor's credit rating plummeted and investments for the Debtor have stopped.   This in turn led to cancellation of the 22 shipbuilding contracts that the Debtor had previously won.   In addition, the Debtor suffered a major loss of KRW 136,000,000,000 from the currency fluctuations following the economic recession in the currency option derivatives trading which were made worse by the inflation in the personnel expenses and distribution costs for shipbuilding.   As such, the Debtor filed an application to put the company under a debt workout plan by the creditor financial institutions in May 2009, which commenced on May 29, 2009.   However, the Debtor has continuously recorded business losses and net losses during the terms since 2011.

2.  Judgment

According to the admitted facts above, as the Debtor is in a state where the Debtor would not be able to repay its debts that are due without creating a considerable hindrance to the continuation of its business and there is a possibility of bankruptcy, the court finds that there is a reason for commencing the rehabilitation procedure in accordance with Article 34(1) of the Debtor Rehabilitation and Bankruptcy Act (the "Act") and no reason to dismiss the application for commencement of the rehabilitation procedure as are enumerated under Article 42 of the Act.

3.  Conclusion

2

As the court finds that there is a valid reason for this application, the rehabilitation procedure shall commence with respect to the Debtor, and a custodian for the Debtor shall not be appointed separately according to Article 74(3) of the Act, as the chief executive officer of the Debtor shall assume the role of the custodian according to Article 74(4) of the Act.   Also, the submission period for the respective lists of the rehabilitation creditors, rehabilitation secured creditors and shareholders, the reporting period for the rehabilitation claims, rehabilitation security rights and shares, and the investigation period for the rehabilitation claims, rehabilitation security rights and the time and location of the first meeting of the persons concerned have been determined as provided above under the Decision.

July 7, 2014, 14:00

| Presiding Judge | Judge | Jun Yoon |
| | Judge | Hoe Gun Goo |
| | Judge | Min Ho Yang |

3

## Current Status of Assets

(Unit: KRW million)

| Current Assets | 128,135 | 58,162 | 45,751 | 202,646 | 286,575 |
|---|---|---|---|---|---|
| Cash and Cashable Assets | 5 | 10,989 | 318 | 123 | 12,651 |
| Accounts Receivable | 78,206 | 22,417 | 30,546 | 74,481 | 113,467 |
| Advance Payments | 16,779 | 6,651 | 10,005 | 13,813 | 35,204 |
| Prepaid Expenses | 9,457 | 8,829 | 257 | 3,350 | 1,985 |
| Inventories | 18,598 | 7,312 | 1,858 | 27,710 | 23,829 |
| Other Current Assets | 5,090 | 1,964 | 2,767 | 83,169 | 99,439 |
| Non-current Assets | 329,952 | 322,458 | 331,732 | 200,345 | 208,725 |
| Equity method Investment Stocks | - | - | - | 2,530 | 5,291 |
| Tangible Assets | 327,540 | 319,972 | 328,675 | 193,006 | 196,130 |
| Intangible Assets | 175 | 249 | 509 | 1,914 | 3,532 |
| Security Deposit | 2,237 | 2,237 | 2,548 | 2,895 | 3,772 |
| Total | 458,087 | 380,620 | 377,483 | 402,991 | 495,300 |
| Year | 2014. 4. | 2013. 12. | 2012. 12. | 2011. 12. | 2010. 12. |

## Current Status of Liabilities

(Unit: KRW million)

| Current Liabilities | 448,135 | 352,267 | 253,292 | 320,809 | 437,666 |
|---|---|---|---|---|---|
| Accounts Payable | 38,200 | 16,361 | 17,294 | 40,534 | 47,622 |
| Short Term Debt | 267,013 | 222,191 | 221,827 | 230,275 | 345,039 |
| Prepaid Expenses | 115,616 | 91,471 | 838 | 36,208 | 24,846 |
| Other Current Liabilities | 27,306 | 22,244 | 13,333 | 13,792 | 20,159 |
| Non-Current Liabilities | 99,005 | 104,794 | 135,973 | 58,207 | 234,370 |
| Long Term Debt | 0 | 0 | 38,300 | 0 | 160,046 |
| Convertible Bond | 50,644 | 49,826 | 48,841 | 0 | 0 |
| Provisions | 24,142 | 28,809 | 18,599 | 18,437 | 26,600 |
| Currency Forwards | 13,620 | 17,454 | 20,826 | 32,375 | 39,981 |
| Other Non-Current Liabilities | 10,599 | 8,705 | 9,406 | 7,395 | 7,743 |
| Total | 547,140 | 457,061 | 389,265 | 379,016 | 672,036 |
| Year | 2014. 4. | 2013. 12. | 2012. 12. | 2011. 12. | 2010. 12. |

## Current Status of Revenues and Profits/Losses

(Unit: KRW million)

| Revenues | 102,423 | 140,411 | 247,909 | 527,568 | 733,876 |
|---|---|---|---|---|---|
| Gross Cost of Merchandise Sold | 111,775 | 185,570 | 266,297 | 522,233 | 661,484 |
| Gross Merchandise Margin | (9,352) | (45,159) | (18,388) | 5,335 | 72,392 |
| Distribution/Management Costs | 3,684 | 10,254 | 9,665 | 21,318 | 23,792 |
| Operating Profits (Losses) | (13,036) | (55,413) | (28,053) | (15,983) | 48,600 |
| Non-Operating Income | 5,294 | 10,206 | 16,957 | 10,053 | 25,394 |
| Non-Operating Expenses | 4,869 | 20,709 | 23,860 | 50,642 | 74,892 |
| (Interest Expenses) | (4,440) | (20,303) | (17,385) | (27,095) | (29,433) |
| Income before Income Tax | (12,611) | (65,916) | (34,956) | (56,572) | (898) |

4

| | | | | | |
|---|---|---|---|---|---|
| Corporate Tax Expenses | 0 | 0 | 0 | 0 | 0 |
| Net Profit for the Term (Loss) | (12,611) | (65,916) | (34,956) | (56,572) | (898) |
| [Analysis of Rate] | | | | | |
| Rate of Cost to Selling Price | 109.1% | 132.2% | 107.4% | 99.0% | 90.1% |
| Gross-margin Ratio | -9.1% | -32.2% | -7.4% | 1.0% | 9.9% |
| Sales Management Costs to Sales | 3.6% | 7.3% | 3.9% | 4.0% | 3.2% |
| Operating Profit to Sales Ratio | -12.7% | -39.5% | -11.3% | -3.0% | 6.6% |
| Net Profit During Term Ratio | -12.3% | -46.9% | -14.1% | -10.7% | -0.1% |
| Year | 2014. 4. | 2013. 12. | 2012. 12. | 2011. 12. | 2010. 12. |



# This is an authentic copy.

July 7, 2014

Seoul Central District Court

Court Officer Yul Lim Lee

> You can confirm whether the case report has been forged/falsified by checking the issue number at the bottom of this document through the computer located at customer service center at the court or by inquiry to the relevant court.



# 서 울 중 앙 지 방 법 원

## 제 4 파 산 부

## 결          정

| | |
|---|---|
| 사         건 | 2014회합100064  회생 |
| 신 청 인 겸 | 대한조선 주식회사 |
| 채  무  자 | 전남 해남군 화원면 조선소길 498 |
| | 대표이사 이병모 |
| | 신청대리인 법무법인(유) 태평양 담당변호사 박현욱, 홍성준 |

## 주          문

1. 채무자에 대하여 회생절차를 개시한다.
2. 채무자에 대하여 관리인을 선임하지 아니하고 채무자의 대표이사를 채무자의 관리
   인으로 본다.
3. 회생채권자, 회생담보권자 및 주주의 목록 제출기간을 2014. 7. 7.부터 2014. 7.
   21.까지로 한다.
4. 회생채권, 회생담보권 및 주식의 신고기간을 2014. 7. 21.부터 2014. 8. 4.까지로
   한다.
5. 회생채권, 회생담보권의 조사기간은 2014. 8. 4.부터 2014. 8. 14.까지로 한다.
6. 제1회 관계인집회의 기일 및 장소를 2014. 9. 5. 16:00 3별관 2층 제1호 법정으로
   한다.

## 이          유

1. 인정사실

   이 사건 기록과 채무자의 대표자에 대한 심문결과 등에 의하면, 다음 사실을 인정
할 수 있다.

   가. 사업목적

등록자:구회근, 등록일시:2014.07.07 16:49, 출력자:대한조선 주식회사, 다운로드일시:2014.07.07 17:03

채무자는 1987. 9. 30. 신영조선공업 주식회사로 설립되어, 2004. 7. 26. 대한시멘트(주)에게 인수된 후 2004. 8. 23. 현재 상호로 변경되었고, 선박 건조 및 수리 사업 등을 영위하고 있다.

나. 자본과 주주

채무자는 비상장법인으로서, 발행주식수는 보통주 277,340주(1주당 금액 10,000원)이고, 납입자본금은 2,773,400,000원이다. 위 주식 중 한국산업은행이 53.19%, 신한은행이 18.28%, 한국수출입은행이 10.32%를 각각 보유하고 있다.

다. 자산·부채 현황 및 매출액·손익 현황

채무자의 2010년 이후 자산·부채 현황과 매출액·손익 현황은 별지 기재와 같다.

라. 파탄원인

채무자는 2008년 세계 금융위기로 인한 경기침체와 모기업인 대주건설(주)의 자금난 등으로 인하여 심각한 유동성 위기를 겪게 되었고, 그 결과 신용이 하락하여 채무자에 대한 투자가 중단되는 바람에 이미 수주한 22척의 선박에 대한 계약이 모두 취소되었다. 또한 환율급등에 따른 손실을 줄이기 위해 체결한 통화옵션 파생상품 거래에서 세계 경기침체에 따른 환율급등으로 약 1,360억 원의 대규모 손실을 기록하였고, 선박건조를 위한 인건비 및 물류비가 상승하여 손실이 더욱 증가하였다. 이에 채무자는 2009. 5.경 채권금융기관에 의한 공동관리(워크아웃)절차를 신청하여 같은 달 29.부터 채권금융기관 공동관리절차가 개시되었다. 그러나 2011년 이후 지속적으로 영업손실 및 당기순손실을 기록하였다.

2. 판단

위 인정사실에 의하면, 채무자는 사업의 계속에 현저한 지장을 초래하지 아니하고는 변제기에 있는 채무를 갚을 수 없는 상황에 처해 있을 뿐만 아니라, 채무자에 파산의 원인인 사실이 생길 염려가 있으므로, 채무자 회생 및 파산에 관한 법률(이하 '법'이라고 한다) 제34조 1항에 정해진 회생절차 개시사유가 있고, 달리 법 제42조 각호에 정해진 회생절차개시신청의 기각사유가 있다고 볼 만한 자료가 없다.

3. 결론

그렇다면 이 사건 신청은 이유 있으므로, 채무자에 대하여 회생절차를 개시하고, 법 제74조 제3항에 의하여 관리인을 선임하지 아니하고 같은 조 제4항에 의하여 채무자의 대표이사를 채무자의 관리인으로 본다. 또한 회생채권자, 회생담보권자 및 주주의 목록의 제출기간, 회생채권, 회생담보권 및 주식의 신고기간, 회생채권·회생담보

권의 조사기간, 제 1 회 관계인집회기일에 관하여는 법 제50조 제 1 항에 의하여 주문과 같이 결정한다.

2014. 7. 7. 14:00

재판장    판사         윤준

판사         구회근

판사         양민호

등록자:구회근, 등록일시:2014.07.07 16:49, 출력자:대한조선 주식회사, 다운로드일시:2014.07.07 17:03

## 자산 현황

(단위 : 백만 원)

| 유동자산 | 128,135 | 58,162 | 45,751 | 202,646 | 286,575 |
|---|---|---|---|---|---|
| 현금및현금성자산 | 5 | 10,989 | 318 | 123 | 12,651 |
| 매출채권 | 78,206 | 22,417 | 30,546 | 74,481 | 113,467 |
| 선급금 | 16,779 | 6,651 | 10,005 | 13,813 | 35,204 |
| 선급비용등 | 9,457 | 8,829 | 257 | 3,350 | 1,985 |
| 재고자산 | 18,598 | 7,312 | 1,858 | 27,710 | 23,829 |
| 기타유동자산 | 5,090 | 1,964 | 2,767 | 83,169 | 99,439 |
| 비유동자산 | 329,952 | 322,458 | 331,732 | 200,345 | 208,725 |
| 지분법적용투자주식 | - | - | - | 2,530 | 5,291 |
| 유형자산 | 327,540 | 319,972 | 328,675 | 193,006 | 196,130 |
| 무형자산 | 175 | 249 | 509 | 1,914 | 3,532 |
| 보증금 | 2,237 | 2,237 | 2,548 | 2,895 | 3,772 |
| 합계 | 458,087 | 380,620 | 377,483 | 402,991 | 495,300 |
| 년도 | 2014. 4. | 2013. 12. | 2012. 12. | 2011. 12. | 2010. 12. |

## 부채 현황

(단위 : 백만 원)

| 유동부채 | 448,135 | 352,267 | 253,292 | 320,809 | 437,666 |
|---|---|---|---|---|---|
| 매입채무 | 38,200 | 16,361 | 17,294 | 40,534 | 47,622 |
| 단기차입금등 | 267,013 | 222,191 | 221,827 | 230,275 | 345,039 |
| 선수금 | 115,616 | 91,471 | 838 | 36,208 | 24,846 |
| 기타유동부채 | 27,306 | 22,244 | 13,333 | 13,792 | 20,159 |
| 비유동부채 | 99,005 | 104,794 | 135,973 | 58,207 | 234,370 |
| 장기차입금 | 0 | 0 | 38,300 | 0 | 160,046 |
| 전환사채 | 50,644 | 49,826 | 48,841 | 0 | 0 |
| 충당부채 | 24,142 | 28,809 | 18,599 | 18,437 | 26,600 |
| 통화선도부채 | 13,620 | 17,454 | 20,826 | 32,375 | 39,981 |
| 기타비유동부채 | 10,599 | 8,705 | 9,406 | 7,395 | 7,743 |
| 합계 | 547,140 | 457,061 | 389,265 | 379,016 | 672,036 |
| 년도 | 2014. 4. | 2013. 12. | 2012. 12. | 2011. 12. | 2010. 12. |

## 매출 및 손익 현황

(단위 : 백만 원)

| | | | | | |
|---|---|---|---|---|---|
| 매출액 | 102,423 | 140,411 | 247,909 | 527,568 | 733,876 |
| 매출원가 | 111,775 | 185,570 | 266,297 | 522,233 | 661,484 |
| 매출총이익 | (9,352) | (45,159) | (18,388) | 5,335 | 72,392 |
| 판매비와 관리비 | 3,684 | 10,254 | 9,665 | 21,318 | 23,792 |
| 영업이익(손실) | (13,036) | (55,413) | (28,053) | (15,983) | 48,600 |
| 영업외수익 | 5,294 | 10,206 | 16,957 | 10,053 | 25,394 |
| 영업외비용 | 4,869 | 20,709 | 23,860 | 50,642 | 74,892 |
| (이자비용) | (4,440) | (20,303) | (17,385) | (27,095) | (29,433) |
| 법인세차감전순이익 | (12,611) | (65,916) | (34,956) | (56,572) | (898) |
| 법인세비용 | 0 | 0 | 0 | 0 | 0 |
| 당기순이익(손실) | (12,611) | (65,916) | (34,956) | (56,572) | (898) |
| [비율분석] | | | | | |
| 매출원가율 | 109.1% | 132.2% | 107.4% | 99.0% | 90.1% |
| 매출총이익률 | -9.1% | -32.2% | -7.4% | 1.0% | 9.9% |
| 매출액대비판관비 | 3.6% | 7.3% | 3.9% | 4.0% | 3.2% |
| 영업이익률 | -12.7% | -39.5% | -11.3% | -3.0% | 6.6% |
| 당기순이익률 | -12.3% | -46.9% | -14.1% | -10.7% | -0.1% |
| 년도 | 2014. 4. | 2013. 12. | 2012. 12. | 2011. 12. | 2010. 12. |

등록자:구희근, 등록일시:2014.07.07 16:49, 출력자:대한조선 주식회사, 다운로드일시:2014.07.07 17:03

# 정본입니다.

2014. 7. 7.





서울중앙지방법원

법원사무관  이율림 

> ※ 각 법원 민원실에 설치된 사건검색 컴퓨터의 발급번호조회 메뉴를
> 이용하거나, 담당 재판부에 대한 문의를 통하여 이 문서 하단에 표시된
> 발급번호를 조회하시면, 문서의 위,변조 여부를 확인하실 수 있습니다.

[제45호 서식]

위 번역문은 원문과 상위 없음을
서약합니다.
            2014. 08. 18.

서약인    

등부  2014 년   제 1695 호

인    증

위    남 기 돈        은

본 공증인의 면전에서 위 번역문이
원문과 상위 없음을 확인하고
서명 날인하였다.

2014년 08월 18일

이 사무소에서 위 인증한다.

공증인가 경향합동법률사무소
소 속   서울중앙지방검찰청

서울·중구 남대문로 64 (명동2가)


공증담당변호사    

---

I swear that the attached translation
is true to the original
                    2014. 08. 18.

Signature

Registered No. 2014  -  1695

Notarial Certificate

NAM, GIDON   

personally appeared before me,
confirmed that the attached
translation is true to the original
and subscribed his(her) name.

This is hereby attested on this
18 day of Aug., 2014
at this office

KYUNG HYANG
LAW NOTARY OFFICE
Belong to the Seoul Central District
Prosecutor's Office

(2ga, Myung-Dong)64,Namdaemun-ro,
Jung-Ku, Seoul, Korea

Signature of the Notary Public
**OH SANG KIRL**
This office has been authorized by
the Minister of Justice, the Republic
of korea, to act as Notary Public
Since 1st day June, 1979. under
Law No.2254

210mm×297mm(보존용지(1종) 70g/㎡)

# EXHIBIT C

(English Translation of DRBA)

# DEBTOR REHABILITATION AND BANKRUPTCY ACT

```
Amended by Act No. 7428, Mar. 31, 2005
Amended by Act No. 7892, Mar. 24, 2006
        Act No. 7894, Mar. 24, 2006
        Act No. 7895, Mar. 24, 2006
        Act No. 8138, Dec. 30, 2006
        Act No. 8635, Aug.  3, 2007
        Act No. 8814, Dec. 27, 2007
        Act No. 8829, Dec. 31, 2007
        Act No. 8863, Feb. 29, 2008
        Act No. 9346, Jan. 30, 2009
        Act No. 9804, Oct. 21, 2009
        Act No. 10366, jun. 10, 2010
```

**Article 1 (Purpose)**

The purpose of this Act is to efficiently rehabilitate debtors who are faced with livelihood collapse due to financial difficulties, and their businesses through coordination of legal relations among interested persons, including creditors, shareholders and equity holders, etc. and to fairly liquidate and divide assets of debtors who are deemed difficult to rehabilitate.

**Article 2 (Status of Foreigners and Foreign Corporations)**

In the application of this Act, foreigners and foreign corporations shall have the same status as that of peoples of the Republic of Korea or corporations of the Republic of Korea.

**Article 3 (Jurisdiction)**

(1) Every rehabilitation case and every bankruptcy case shall be placed under the exclusive jurisdiction of the collegiate division of the principal district court having jurisdiction over the location of the principal office or the debtor's place of business of (when the debtor has his/her principal office or his/her place of business in any foreign country, this refers to his/her principal office or his/her place of business in the Republic of Korea): Provided, That when the debtor is an individual without his/her principal office or place of business, he/she shall come under the exclusive jurisdiction of the principal district court having jurisdiction over the general jurisdictional location of the debtor.

(2) Every individual rehabilitation case shall be placed under the exclusive jurisdiction of the principal district court having jurisdiction over the general jurisdictional location of the debtor.

(3) In case where no competent court referred to in the provisions of paragraphs (1) and (2) exists, the individual rehabilitation case shall be placed under the exclusive jurisdiction of the principal court of the district court having jurisdiction over the location of the debtor's property (in the case of any credit, a place in which a claim may be filed for a trial shall be deemed such location).

(4) Notwithstanding the provisions of paragraph (1), when the rehabilitation case or the bankruptcy case involving any affiliate provided for in the provisions of subparagraph 3 of Article 2 of the Monopoly Regulation and Fair Trade Act is pending, an application for commencing the rehabilitation procedures or an application for declaring bankruptcy for another company among affiliates may also be filed with the principal court of the district court in which the rehabilitation case or the bankruptcy case involving the affiliate is pending.

(5) Notwithstanding the provisions of paragraph (1), when a rehabilitation case or a bankruptcy case involving any corporation is pending, an application for commencing the rehabilitation procedures or an application for declaring the bankruptcy of the representative of such corporation may also be filed with the principal court of the district court in which the rehabilitation case or the bankruptcy case of such corporation is pending.

(6) Notwithstanding the provisions of paragraph (1), an application for the rehabilitation case and the bankruptcy case may be field with the principal court of the district court that is located in the high court having jurisdiction over the location of the debtor's principal office or place of business.

(7) Notwithstanding the provisions of paragraphs (1) and (2), when a rehabilitation case, bankruptcy case or individual rehabilitation case involving anyone falling under any of the following subparagraphs is pending, an application for commencing the rehabilitation procedures, an application for a declaration of bankruptcy or an application for commencing individual rehabilitation procedures for any other person provided for in the matter may be filed with the principal court of the district court in which the rehabilitation case, the bankruptcy case or the individual rehabilitation case is pending:

    1. The principal debtor and his/her guarantor;

    2. The debtor and the person who bears the same obligations together with the former; and

    3. The husband and his/her wife.

(8) The bankruptcy case involving any inherited property shall be placed under the exclusive jurisdiction of the principal court of the district court having jurisdiction over the place where the inheritance of such property commences.

(9) Every case that is placed under the jurisdiction of the Seoul Eastern District Court, the Seoul Southern District Court, the Seoul Northern District Court or the Seoul Western District Court shall be placed under the exclusive jurisdiction of the Seoul Central District Court.

**Article 4 (Transfer Aimed at Avoiding Damage or Delay)**

When it is deemed necessary to avoid any substantial damage or delay, the court may exercise, its inherent jurisdiction to transfer any rehabilitation case, any bankruptcy case or any individual rehabilitation case to the principal court of the district court that falls under any of the following subparagraphs:

1. The principal court of the district court having jurisdiction over the debtor's other place of business or other office of the location of the debtor's property;

2. The principal court of the district court having jurisdiction over the domicile or the residence of the debtor;

3. The principal court of the district court provided for in the provisions of Article 3 (4) through (7); and

4. When the rehabilitation case, the bankruptcy case or the individual rehabilitation case is pending in the relevant district court pursuant to the provisions of Article 3 (4) through (7), the principal court of the district court provided for in the provisions of Article 3 (1) through (3).

### Article 5 (Cooperation Among Courts)

In the procedures provided for in this Act, courts may seek legal cooperation among themselves.

### Article 6 (Declaration of Bankruptcy Following Discontinuation of Rehabilitation Procedures, etc.)

(1) Where a decision to discontinue rehabilitation procedures is confirmed after the rehabilitation plan is authorized for a debtor who is not declared bankrupt, the court shall, when it is recognized that the fact of causing the bankruptcy of such debtor exists, declare him/her bankrupt by its authority.

(2) Where the decision falling under any of the following subaparagraphs is confirmed on the debtor who is not declared bankrupt, the court may, when it is recognized that a cause for the bankruptcy of the debtor exists, declare him/her bankrupt by its authority or upon receiving an application filed by the debtor or any custodian:

1. The decision to dismiss an application filed for commencing the rehabilitation procedures;

2. The decision to discontinue the rehabilitation procedures before the rehabilitation plan is authorized; and

3. The decision not to authorize the rehabilitation plan.

(3) Where the bankruptcy is declared pursuant to the provisions of paragraphs (1) and (2), the commission of the register or the registration falling under any of the following subparagraphs shall be made together with the commission of the register or the registration of any bankruptcy:

1. The commission of the register provided for in the provisions of Articles 23 (1), and 24 (4) and (5); and

2. The commission of the registration provided for in the provisions of Article 24 (4) and (5) that are applied mutatis mutandis under the provisions of Article 27.

(4) Where the bankruptcy is declared pursuant to the provisions of paragraph (1) or (2), when no application is filed for the suspension of any payment or any bankruptcy prior to the declaration of such bankruptcy in the application of the provisions of Part III, an act falling under any of the following subparagraphs shall be deemed the suspension of such payment and the application filed for bankruptcy and public-interest claims shall be deemed foundation claims:

1. An application filed for commencing the restoration procedures; and

2. An act that is peformed by a director (including any executive officer and any other person corresponding thereto; hereinafter the same shall apply) of a corporate debtor that constitutes an offense

of fraudulent bankruptcy as provided for in the provisions of Article 650.

(5) Where the bankruptcy provided for in the provisions of paragraph (2) is declared before it is decided to authorize the rehabilitation plan, in the application of the provisions of Part III, the report on rehabilitation claims and the inspection or the confirmation of the objection provided for in Part II shall be deemed the report on the bankruptcy claims and the inspection or the confirmation of the objection that are all performed under the bankruptcy procedures: Provided, That the same shall not apply to the objection raised to any claim, the inspection or the confirmation provided for in the provisions of Articles 134 through 138.

(6) When the declaration of bankruptcy referred to in the provisions of paragraph (1) or (2) is made, the litigation procedures that are taken by any custodian and any preservative custodian shall be suspended. In this case, any trustee in bankruptcy and any other party may subrogate such litigation procedures.

(7) The bankruptcy is declared pursuant to the provisions of paragraph (1) or (2), any disposition, act, etc. that is taken and performed by any person falling under any of the following subparagraphs in the rehabilitation procedures pursuant to the provisions of Part II shall be deemed valid under the bankruptcy procedures in so far as they are not contrary to their nature. In this case, when it is deemed necessary, the court may prescribe the scope of the disposition, act, etc. that are deemed valid by its decision at the time that it makes a declaration of bankruptcy:

1. The court;

2. The custodian, the protective custodian, an inspection commissioner, the Custodial Committee, a member of the Custodial Committee and the creditors' consultative council;

3. The creditor, the secured creditor, a shareholder and an equity right holder (referring to employees of a company that is not a stock company and any other person who holds the position similar to that of the former; hereinafter the same shall apply); and

4. An interested person.

(8) When a decision to discontinue the rehabilitation procedures provided for in the provisions of Article 288 is confirmed after the bankruptcy procedures for a debtor who is declared bankrupt lose their effect on the grounds of a decision to authorize the rehabilitation plan, the court shall declare such debtor bankrupt by its authority.

(9) In the case of paragraph (8), in the application of the provisions of Part III, it shall be deemed that a petition is filed for bankruptcy at the time that a petition is filed for bankruptcy under the bankruptcy procedures that lose their effect by a decision to authorize the rehabilitation plan and public-interest claims shall be deemed foundation claims.

(10) The provisions of paragraphs (3), (6) and (7) shall apply mutatis mutandis to the case of paragraph (8).

**Article 7 (Public-Interest Claims, etc. Where Bankruptcy Procedures Continue)**

(1) When a decision falling under any of the following subparagraphs is confirmed on a debtor who is declared bankrupt and the bankruptcy procedures continue, public-interest claims shall be deemed

foundation claims:

　　1. A decision to dismiss an application filed for commencing rehabili tation procedures;

　　2. A decision to discontinue a rehabilitation procedures before an authorization is granted for a rehabilitation plan; and

　　3. A decision not to grant an authorization for a rehabilitation plan.

(2) The provisions of Articles 6 (5) through (7) shall apply mutatis mutandis to a case where the decision falling under any of each subparagraph of paragraph (1) is confirmed on a debtor who is declared bankrupt and that the bankruptcy procedures continue.

### Article 8 (Delivery)

(1) Every judgment that is given pursuant to the provisions of this Act shall be delivered ex officio.

(2) Documents may be delivered by standard post to the domiciles of the debenture holders, shareholders or equity right holders of a corporate debtor, when they report such domiciles pursuant to this Act and to the domiciles that are contained on the debenture register, the shareholders' roll, the employees' roll or the register book or to the domiciles of which they notify the corporate debtor.

(3) Documents may be delivered by standard post to the domiciles of secured creditors who hold registered security rights when they report such domiciles pursuant to the provisions of this Act or to the domiciles that are contained on the register book when they fail to report such domiciles.

(4) When the documents are delivered by standard post pursuant to the provisions of paragraphs (2) and (3), such documents shall be deemed delivered at the time when postal items can be routinely delivered.

(5) In the case of paragraphs (2) and (3), every senior clerk of the court, every clerk of the court, every junior clerk of the court and every assistant clerk of the court (hereinafter referred to as the "clerk, etc. of the court") shall each prepare a written statement and enter the matters falling under each of the following subparagraphs in such written statement and shall each ascribe his/her name and affix his/her seal to such written statement:

　　1. The names and domiciles of persons who are eligible to accept the service of documents; and

　　2. The date on which such documents are posted.

(6) The provisions of paragraphs (1) through (5) shall not apply when this Act expressly prescribes otherwise.

### Article 9 (Publication)

(1) The publication provided for in the provisions of this Act shall be by way of the Official Gazette or according to methods that are prescribed by the rules of the Supreme Court.

(2) The effect of the publication referred to in the provisions of paragraph (1) shall accrue on the day following the day on which it is published in the Official Gazette or on the day following the day on which it is made according to the methods that are prescribed by the rules of the Supreme Court.

(3) When any judgment is published pursuant to the provisions of paragraph (1), all persons concerned shall be deemed notified of such judgment: Provided, That the same shall not apply when this Act ex pressly prescribes otherwise.

**Article 10 (Publication in Lieu of Service)**

(1) Where the provisons of this Act require service, when it is difficult to identify the place at which such service has to be made and the grounds that are prescribed by the rules of the Supreme Court exist, publication thereof may substitute such service.

(2) The provisions of paragraph (1) shall not apply when this Act expressly prescribes otherwise.

**Article 11 (Cases Where Both Publication and Service are Required)**

(1) Where both publication and service are posting required pursuant to the provisions of this Act, such service may be made by posting documents.

(2) The publication referred to in the provisions of paragraph (1) shall have the effect of service such documents upon all of the persons concerned.

**Article 12 (Optional Argument and Ex Officio Inspection)**

(1) Any trial provided for in the provisions of this Act may be held without any oral submissions.

(2) The court may conduct the necessary inspection of any rehabilitation case, bankruptcy case, individual rehabilitation case and international bankruptcy case.

**Article 13 (Immediate Appeal)**

(1) Anyone who is interested in any judgment provided for in the provisions of this Act may immediately file an appeal against such judgment only when the provisions of this Act so prescribe.

(2) The immediate appeal referred to in the provisions of paragraph (1) shall be filed within 14 days from the date on which the judgment is published, when the judgment has been published.

(3) The immediate appeal referred to in the provisions of paragraph (1) shall have the effect of suspending any enforcement: Provided, That the same shall not apply to a case where this Act expressly prescribes otherwise.

**Article 14 (Methods of Raising Objection)**

Every objection to a judgment made pursuant to the provisions of this Act shall be raised in writing.

**Article 15 (Establishment of Custodial Committee)**

The Custodial Committee mandated to perform properly and speedily the proceedings of the procedures provided for in the provisions of this Act shall be set up in district courts that each is prescribed by the rules of the Supreme Court.

**Article 16 (Composition, etc. of Custodial Committee)**

(1) The Custodial Committee shall be composed of, from 3 members to not more than 15 members, including one chairman.

(2) The term of office for each member of the Custodial Committee shall be 3 years.

(3) The members of the Custodial Committee shall be commissioned by the head of the district court from among the persons falling under any of the following subparagraphs: *<Amended by Act No. 10303, May 17, 2010>*

1. An attorney-at-law or certified public accountant;

2. Anyone who has worked for a bank provided for in the Banking Act and a corporation prescribed by the Presidential Decree for not less than 15 years;

3. Anyone who has worked as officers for a listed company;

4. Anyone who has worked in a related field for not less than 7 years after acquiring a master's degree or higher in law, business administration or economics;

5. Anyone of profound learning and experience, who is corresponding to the persons referred to in the provisions of subparagraphs 1 through 4.

(4) Anyone who falls under any of the following subparagraphs shall be prohibited from being commissioned as a member of the Custodial Committee:

1. Anyone who is incompetent, quasi-incompetent or who is yet to be reinstated after he/she has been declared bankrupt;

2. Anyone who has been sentenced to imprisonment without prison labor or a heavier punishment and for whom 5 years have yet to ellapse from the date on which the execution of the sentence is terminated (in cluding a case where the execution of the sentence is deemed terminated) or the execution of the sentenced is exempted;

3. Anyone who has been sentenced to a stay of execution of imprisonment without prison labor or a heavier punishment and for whom 2 years have yet to ellapse from the date on which the stay period expires;

4. Anyone who is in a stay period after having been sentenced to a stay of execution of imprisonment without prison labor or a heavier punishment; and

5. Anyone whose qualifications are suspended or relinquished according to other Acts or court judgment.

(5) The Custodial Committee's meeting shall pass resolutions with the attendance of a majority of the total members on the register roll and with the concurrent vote of a majority of those present.

(6)The establishment, organization and operation of the Custodial Committee, the required qualifications of members of the Custodial Committee, the guarantee of their status and the disciplinary action against them, etc. shall be prescribed by the rules of the Supreme Court.

(7) Members of the Custodial Committee shall be deemed public officials in the application of the penal provisions of the Criminal Act and other Acts.

**Article 17 (Work and Authority of Custodial Committee)**

(1) The Custodial Committee shall perform the work falling under each of the following subparagraphs under the direction of the court:

1. The presentation of its opinions on the selection and appointment of custodians, protective custodians, inspection commissioners, trustees in bankruptcy, rehabilitation commissioners and international bankruptcy custodians;

2. The supervision and evaluation of the appropriateness of the work performed by custodians, protective custodians, inspection commissioners, trustees in bankruptcy and rehabilitation

commissioners;

3. The examination of any draft rehabilitation plan and any draft repayment plan;

4. The composition of the creditors' consultative council and the furnishing of information pertaining to creditors;

5. The assessment of the progress in the procedures provided for in this Act;

6. The work of the meeting of persons concerned and the meeting of creditors; and

7. Other work that is prescribed by the rules of the Supreme Court or other courts.

(2) The Custodial Committee may commission part of its work to its members in order to efficiently perform the work provided for in each subparagraph of paragraph (1).

(3) When the court recognizes that the work performed by any member of the Custodial Committee is inappropriate, the court may ask the Custodial Committee to commission other member to perform such work.

(4) When the Custodial Committee is not constituted, the matters falling under each of the following subparagraphs shall not apply:

1. Matters concerning the members of the Custodial Committee in Articles 6 (7), 18, 19 and 30 (1); and

2. Matters concerning the Custodial Committee in Articles 6 (7), 42, 43 (1), (3) and (4), 50 (1), 62 (2), 87 (1). 92, 114 (4), 132 (3), 257 (3) and (4), 287 (3), 288 (2) and 355 (1).

**Article 18 (Commission of Clerical Services Involving Permission to Members of Custodial Committee)**

The court may commission the clerical services involving the permission and the clerical services involving the permission for bankruptcy procedures, both of which belong to its ordinary work, from among acts provided for in each subparagraph of Article 61 (1), to members of the Custodial Committee. In this case, necessary matters concerning the scope of the commission of the clerical services and the procedures for commissioning the clerical services shall be prescribed by the rules of the Supreme Court.

**Article 19 (Raising of Objection to Acts by Members of Custodial Committee)**

(1) Anyone who is dissatisfied with a decision or disposition made or taken by any member of the Custodial Committee after being commissioned pursuant to the provisions of Article 18 shall raise an objection to such member of the Custodial Committee.

(2) When the relevant member of the Custodial Committee considers that the objection raised according to the provisions of paragraph (1) has the justifiable grounds, he/she shall promptly take an appropriate disposition therefor and then notify the court thereof.

(3) When the relevant member of the Custodial Committee recognizes that the objection raised according to the provisions of paragraph (1) has no justifiable grounds, he/she shall refer the objection to the court within 3 days from the date on which he/she receives such objection.

(4) The objection that is raised according to the provisions of paragraph (1) shall not have the effect of suspending any execution.

(5) The court shall, upon receiving the objection raised pursuant to the provisions of paragraph (3), determine based on the justifiable grounds and if the court considers that the objection has the justifiable grounds, it shall order the relevant member of the Custodial Committee to take an appropriate disposition to address such objection and then notify the person who raises the objection of the gist of such appropriate disposition.

**Article 20 (Composition of Creditors' Consultative Council)**

(1) The Custodial Committee (referring to the court when the Custodial Committee is not constituted; hereafter the same in this Article shall apply) shall establish a creditors' consultative council composed of major creditors of the debtor after an application is filed for commencing rehabilitation procedures or a petition of bankruptcy is filed: Provided, That when the debtor is an individual or a smalland medium-sized businessman, the Custodial Committee may not set up such creditors' consultative council.

(2) The creditors' consultative council shall be composed of not more than 10 persons.

(3) When it is deemed necessary, the Custodial Committee may cause any minority creditor to participate in the creditors' consultative council as its member.

**Article 21 (Function, etc. of Creditors' Consultative Council)**

(1) The creditors' consultative council may perform any of the following acts through the coordination of creditors' opinions:

1. The presentation of opinions with respect to rehabilitation procedures and bankruptcy procedures;

2. The presentation of opinions with respect to the selection, appointment or dismissal of custodians, trustees in bankruptcy and protective custodians;

3. The presentation of opinions with respect to the selection and appointment of the auditor (including any member of the audit committee provided for in the provisions of Article 415-2 of the Commercial Act) of a debtor who is a corporation;

4. A claim brought for the physical inspection of the actual governance of any company after an authorization is granted for its rehabilitation plan;

5. Other matters concerning the rehabilitation procedures and the bankruptcy procedures that are demanded by the court; and

6. Other acts that are prescribed by the Presidential Decree.

(2) The agenda of the creditors' consultative council shall be decided with the concurrent vote of a majority of the total members present.

(3) The court may determine that the debtor bear expenses necessary for the creditors' consultative council to carry out its activities.

(4) Necessary matters concerning the composition and operation of the creditors' consultative council shall be prescribed by the rules of the Supreme Court.

(5) When the creditors' consultative council is not constituted, matters concerning the creditors' consultative council in the provisions of Articles 50 (1), 62 (2), 132 (3), 203 (4), 259, 287 (3) and 288 (2) shall not apply.

**Article 22 (Provision of Materials to Creditors' Consultative Council)**

(1) The court shall provide the creditors' consultative council with copies of documents concerning rehabilitation procedures or bankruptcy procedures, written decisions, audit reports and other major materials that are prescribed by the rules of the Supreme Court.

(2) Custodians or trustees in bankruptcy shall submit major documents quarterly that are designated by the court to the creditors' consultative council from among the documents that they submit to the court.

(3) The creditors' consultative council may ask any custodian or any trustee in bankruptcy to provide necessary materials to it under the conditions prescribed by the rules of the Supreme Court.

(4) Anyone who is requested to provide the necessary materials under the provisions of paragraph (3) shall provide such necessary materials under the conditions prescribed by the rules of the Supreme Court.

(5) When any creditor who is not affiliated with the creditors' consultative council requests materials, the creditors' consultative council shall provide him/her with such materials that it has received pursuant to the provisions of paragraphs (1) through (3).

**Article 23 (Commission of Registers of Corporations)**

(1) In a case falling under any of the following subparagraphs, which involves a corporate debtor, the clerk, etc. of the court shall promptly commission by their authority the registry office in the seat of the office and place of business place (when his/her principal office or place of business is located in any foreign country, refers to his/her office or place of business located in the Republic of Korea) of such debtor to register the case by providing such registry office with a written commission accompanied by related documents including a certified copy or an abstract of the written decision:

1. Where it is decided to commence rehabilitation procedures or declare bankruptcy;

2. Where a decision to revoke the decision to commence rehabilitation procedures, a decision to discontinue rehabilitation procedures or a decision not to grant an authorization for a rehabilitation plan is confirmed, variously;

3. Where it is decided to grant an authorization for a rehabilitation plan or to complete rehabilitation procedures;

4. Where new shares are issued pursuant to the provisions of Article 266, bonds are issued pursuant to the provisions of Article 268, an allinclusive exchange of shares is performed pursuant to the provisions of Article 269, an all-inclusive transfer of shares is performed pursuant to the provisions of Article 270, companies are merged pursuant to the provisions of Article 271, any company is split or companies are merged after split pursuant to the provisions of Article 272 or a new company is incorporated pursuant to the provisions of Articles 273 and Article 274; and

5. Where it is decided to revoke a bankruptcy, to discontinue a bankruptcy or to terminate a bankruptcy.

(2) When a disposition provided for in the provisions of Article 43 (3), 74 (1), 355 or 636 (1) 4 is taken to a corporate debtor, the clerk, etc. of the court shall use their authority to promptly commission the registry office in the seat of the office and place of business of such debtor to register such disposition by providing such registry office with a written com mission accompanied by related documents including a

certified copy or abstract of such disposition. The same shall apply to a case where any registered disposition is changed or revoked.

(3) The names, titles, domiciles and offices of the custodian, the protective custodian, the trustee in bankruptcy or the international bankruptcy custodian shall be entered in the register of the disposition referred to in the provisions of paragraph (2). In this case, when any entered matter is changed, the clerk, etc. of the court shall commission the registry office in the seat of the office and the place of business the debtor to register such change.

### Article 24 (Commission of Register, etc. of Registered Rights)

(1) In a case falling under any of the following subparagraphs, the clerk, etc. of the court shall use their authority to promptly commission the registry office to register the commencement of rehabilitation procedures or protective disposition by providing such registry office with a written commission accompanied by a certified copy or abstract of the written decision. The same shall apply where the protective disposition referred to in subparagraph 2 or 3 is changed or revoked or loses its effect:

　　1. Where it is decided to commence the rehabilitation procedures for a non-corporate debtor when any right that belongs to the debtor's property is registered;

　　2. The protective disposition provided for in the provisions of Article 43 (1) is taken over any registered right that belongs to the debtor's property to be disposed of; and

　　3. The protective disposition provided for in the provisions of Article 114 (1) or (3) is taken over the registered right.

(2) Where the registered right is acquired, lost or changed before the implementation of a rehabilitation plan is carried out or a rehabilitation procedures provided for in this Act are completed, the court shall use its authority to promptly commission the registry office to register the acquisition, loss or change of such registered right: Provided, That the same shall not apply to a case where anyone other than the debtor, any creditor, any secured creditors, any shareholder, any equity right holder or any newly incorporated company is registered as a rightful claimant.

(3) The clerk, etc. of the court shall, when they learn of the register of a non-corporate debtor who has been declared bankrupt, use their authority to commission without delay the registry office to register his/her bankruptcy by providing the registry office with a written commission accompanied by the certified copy of the written bankruptcy decision. The same shall apply to a case where the clerk, etc. of the court learn of any registered right that belongs to the bankrupt organization.

(4) Where any trustee in bankruptcy renounces his/her right over which his/her bankruptcy is registered from the bankrupt organization and files an application for commissioning the register therof, the clerk, etc. of the court shall commission the registry office to register the waiver of such right by providing the registry office with a written commission accompanied by a certified copy of the written permission for the waiver of the right.

(5) The provisions of paragraphs (1) and (3) shall apply mutatis mutandis to the case of Article 23 (1) 1 through 3 and 5.

(6) When a protective disposition is taken, canceled or changed with respect to a registered right that belongs to a debtor's property under individual rehabilitation procedures, the clerk, etc. of the court shall use their authority to promptly commission the registry office to register such protective disposition by providing the registry office with a written commission accompanied by a certified copy or abstract of the written decision.

(7) Where a disposition provided for in the provisions of Article 636 (1) 3 or 4 is taken, when the clerk, etc. of the court learn of the registered right that belongs to the debtor's property, they shall use their authority to commission without delay by their authority the registry office to register such disposition by providing the registry office with a written commission accompanied by a certified copy or abstract of the written decision. The same shall apply to a case where the disposition provided for in the provisions of Article 636 (1) 3 is taken before it is decided to approve the foreign bankruptcy procedures provided for in the provisions of Article 635 (1).

### Article 25 (Duties of Registry Offices and Exemption of Registration Tax)

(1) Every registry office shall, when it is commissioned to perform the registration pursuant to the provisions of Article 23 or 24, perform without delay the commissioned registration.

(2) Every registry office shall, where the bankruptcy of any debtor is registered, when it intends to register the authorization of a rehabilitation plan, use its authority to cancel the registration of the bankruptcy of such debtor.

(3) Every registry office shall, where it intends to register the revocation of any rehabilitation plan authorization, if it finds a register that is cancelled pursuant to the provisions of paragraph (2), use its authority to restore such register.

(4) Registration tax shall not be levied on the registers referred to in the provisions of paragraphs (1) through (3).

### Article 26 (Register of Negation)

(1) When the act of causing registration is negated, any custodian, any trustee in bankruptcy or any holder of the right to negate in the individual rehabilitation procedures shall each file an application for the registration of such negation. The same shall apply to a case where the register is negated.

(2) Registration tax shall not be levied on the register referred to in the provisions of paragraph (1).

(3) The provisions of Article 23 (1) 1 through 3 and 5 shall apply mutatis mutandis to the case of paragraph (1).

(4) Where any custodian or any trustee in bankruptcy voluntarily sells the property on which the negation referred to in the provisions of paragraph (1) is registered and the cause of voluntarily selling such property is registered, the court shall, upon receiving an application filed by interested persons, commission the registry office to cancel the registration of the negation under pargraph (1), the register that is effected by the act of the negation, the negated registration and other registrations that are effected subsequent to such registers, which cannot counter any rehabilitative creditor or any bankrupting creditor.

**Article 27 (Application Mutatis Muntandis of Registered Rights)**

The provisions of Articles 24 through 26 shall apply mutatis mutandis only to registered right over the property of a debtor, a bankrupt organization or an individual organization undergoing rehabilitation.

**Article 28 (Perusal, etc. of Case Records)**

(1) Interested persons may claim the inspection and delivery of copies of case records (including documents and other items), written judgments, original or certified copies and abstracts of investigation records and certificates concerning cases.

(2) The provisions of paragraph (1) shall not apply to audiotapes or videotapes (including goods in which certain matters are recorded in a manner that audiotapes and videotapes are recorded; hereafter the same in this Article shall apply) among case records: Provided, That upon receiving an application filed by any interested person, the court may permit reproduction of them for him/her.

(3) Notwithstanding the provisions of paragraphs (1) and (2), anyone falling under any of the following subparagraphs shall be prohibited from filing the application referred to in the provisions of paragraphs (1) and (2) until a judgment that is prescribed in any item of the relevant subparagraph is given: Provided, that the same shall not apply to a case where the person is an applicant for the commencement of rehabilitation procedures:

1. An interested person other than the debtor:

    (a) A preservation disposition provided for in the provisions of Article 43 (1);

    (b) A preservation and management order provided for in the provisions of Article 43 (3);

    (c) A discontinuation order provided for in the provisions of Article 44 (1);

    (d) A general prohibition order provided for in the provisions of Article 45 (1); and

    (e) A determination of a the application filed for commencing rehabilitation procedures; and

2. The debtor;

    (a) A judgment provided for in any item of subparagraph 1;

    (b) The designation of the date on which submissions are made with respect to an application for commencing rehabilitation procedures; and

    (c) The designation of the date on which the debtor is summoned to answer questions.

(4) When it is feared to greatly obstruct the maintainance and rehabilitation of the debtor's business and to cause severe damage to the debtor's property, the court may not refuse to permit the inspection, copying, delivery of the original, certified copies and abstracts or the reproduction of audiotapes and videotapes.

(5) An immediate appeal may be filed against the decision made not to grant the permission provided for in the provisions of paragraph (4).

**Article 29 (Inquiry about Property, etc. of Debtor)**

(1) The court may, if it is deemed necessary, upon receiving an application filed by any custodian, any trustee in bankruptcy, or any interested person or by its inherent jurisdiction, inquire with any public institution, any financial institution and any organization, etc. that are each operating the computer network that holds information on the property and credit status of the debtor about the property that is

held in the name of such debtor.

(2) When any interested person who is entitled to immunity files an application referred to in the provisions of paragraph (1), he/she shall specifically designate any public institution, any financial institution or any organization to which inquiries are made. In this case, the court shall order such person to prepay expenses involved in making such inquiries.

(3) The provisions of Article 74 (3) and (4) and Article 75 (1) of the Civil Execution Act shall apply mutatis mutandis to the inquires referred to in the provisions of paragraph (1).

(4) Matters concerning the scope of public institutions, financial institutions and organizations, etc. to which the inquires are made, procedures for making inquires, expenses that have to be prepaid by interested persons, the management of the results of the inquiries etc. shall be prescribed by the rules of the Supreme Court.

### Article 30 (Remunerations of Custodians, etc.)

(1) The persons falling under any of the following subparagraphs are eligible for prepaid expenses, remuneration or special compensation. In this case, the court shall determine the amount of such remuneration and such special compensation:

    1. Custodians, proxy custodians, protective custodians, trustees in bankruptcy and proxy trustees in bankruptcy;

    2. Inspection commissioners, rehabilitation commissioners and advisors; and

    3. Members of the Custodial Committee who perform the duties of the aforementioned persons.

(2) The remuneration and the special compensation referred to in the provisions of paragraph (1) shall be the amount commensurate with their duties and responsibilities.

(3) An immediate appeal may be filed against the determination referred to in the provisions of paragraph (1).

### Article 31 (Compensation, etc. for Proxy Members of Custodial Committee)

(1) The court may permit the refunding of expenses or payment of compensation to the persons falling under any of the following subparagraphs within the scope of appropriateness. In this case, the court shall determine the amount of the expenses and the compensation:

    1. Creditors, secured creditors, shareholders, equity right holders, proxy members of the Custodial Committee or agents who are credited with having achieved restoration under bankruptcy procedures; and

    2. Persons who are credited with having managed a bankrupt organization or liquidation.

(2) An immediate appeal may be filed against a determination made pursuant to the provisions of paragraph (1).

### Article 32 (Suspension of Prescription)

In a case falling under any of the following subparagraphs, the effect of the suspension of a prescription accrues:

1. Submission of the list provided for in the provisions of Article 147 and the participation in rehabilitation procedures: Provided, That the same shall not apply to a case where any rehabilitation creditor or any rehabilitation secured creditor who is not entered on the list withdraws his/her report or his/her report is rejected;

2. Participation in the bankruptcy procedures: Provided, That the same shall not apply to a case where any bankruptcy creditor withdraws his/her report or his/her report is rejected; and

3. Submission of the list of the individual rehabilitation creditors provided for in the provisions of Article 589 (2) and participation in the individual rehabilitation procedures: Provided, That the same shall not apply to a case where any individual rehabilitation creditor who is not entered on the list withdraws his/her application for the final inspection judgment or his/her application is turned down.

### Article 32-2 (Prohibition of Discriminative Treatment)

No person shall be given any unfavorable treatment such as the restriction of employment or dismissal, without any justifiable reason, on account of the rehabilitation procedures, bankruptcy procedures or individual rehabilitation procedures in progress under this Act.

### Article 33 (Mutatis Mutandis Application of Civil Procedures Act and Civil Execution Act)

When rehabilitation procedures, bankruptcy procedures, individual rehabilitation procedures and international bankruptcy procedures are not prescribed in this Act, the Civil Procedure Act and the Civil Execution Act shall apply mutatis mutandis to them.

### Article 34 (Application Filed for Commencing Rehabilitation Procedures)

(1) In a case falling under any of the following subparagraphs, the debtor may file an application with the court for commencing the rehabilitation procedures:

1. Where the debtor finds it impossible to repay his/her obligations in the repayment period without any serious hinderance to the continuation of his/her business; and

2. Where it is feared that bankruptcy may accrue to the debtor.

(2) In the case of paragraph (1) 2, the person prescribed in each item of the relevant subparagraph may also file an application for commencement of rehabilitation procedures according to the classification of each of the following subparagraphs:

1. When the debtor is a stock company or a limited-liability company:

(a) A creditor who holds a claim equivalent to not less than 1/10 of the capital; and

(b) A shareholder or the equity right holder who holds the share or the equity share equivalent to not less than 1/10 of the capital; and

2. When the debtor is not a stock company or a limited-liability company:

(a) A creditor who holds a claim equivalent to not less than 50 million won; and

(b) An equity right-holder who holds an equity share of not less than 1/10 of the total amount of investment of any general partnership, any joint venture, any corporation or anyone corresponding thereto.

(3) The court may, when any creditor, any shareholder or any equity right holder files an application for commencement of rehabilitation procedures pursuant to the provisions of paragraph (2), order the debtor to submit materials concerning the management of his/her business and the current state of his/her property.

## Article 35 (Obligation to File Bankruptcy Petition and Application for Commencement of Rehabilitation Procedures)

(1) The liquidator of any debtor may file an application for commencement of rehabilitation procedures even when he/she files a petition of the bankruptcy of such debtor pursuant to another Act.

(2) When a corporate debtor, who is under liquidation or is declared bankrupt files an application for commencement of rehabilitation procedures, the provisions of Article 229 (1), 285 (2), 519 or 610 of the Commercial Act shall apply mutatis mutandis thereto.

## Article 36 (Written Application)

An application for commencement of rehabilitation procedures shall be filed in the form of a written application in which the matters falling under each of the following subparagraphs are entered:

1. The names and domiciles of the applicant and the legal representative;

2. Where the debtor is an individual, the name, the resident registration number (referring to the foreigner registration number or the domestic residence number in the case of anyone who has no resident registration number; hereinafter the same shall apply) and the domicile of such debtor;

3. Where the debtor is not an individual, the firm name, the location of the principal office or place of business (when the principal office or place of business is located overseas, refers to the principal office or place of business that is located in the Republic of Korea) and the name of the representative of the debtor (when the principal office or place of business is located overseas, this refers to the representative who resides in the Republic of Korea; hereinafter the same shall apply);

4. The purposes of the application;

5. The cause of commencing rehabilitation procedures;

6. The business objectives and the current business of the debtor;

7. The total number of shares or the total number of equity shares issued by the debtor, the amount of his/her capital, assets, obligations and current property;

8. Other procedures or any disposition involving the debtor's property, which is known to the applicant;

9. When the applicant holds an opinion on the rehabilitation plan, his/ her opinion;

10. When any creditor files an application for commencement of rehabilitation procedures, the amount and the basis of the claim that he/ she holds; and

11. When any shareholder or any equity right holder files an application for commencement of rehabilitation procedures, the number or the amount of the shares or the equity shares that is held by him/her.

## Article 37 (Keeping of Documents)

Documents concerning the application for commencement of rehabilitation procedures shall be kept in the court for perusal by interested persons.

### Article 38 (Explanations)

(1) Anyone who files an application for commencement of rehabilitation procedures shall vindicate the fact that is the basis for the commencement of such rehabilitation procedures. In this case, when the foreign bankruptcy procedures provided for in the provisions of subparagraph 1 of Article 628 are in process on any debtor, such debtor shall be presumed to be subject to the fact that is the basis for such bankruptcy.

(2) When any creditor, any shareholder or any equity right holder files an application for commencement of rehabilitation procedures, he/she shall substantiate the amount of the claim or the number and the amount of shares or equity shares that he/she holds.

### Article 39 (Prepayment, etc. of Expenses)

(1) When anyone files an application for commencement of rehabilitation procedures, the applicant shall prepay expenses involved in taking the rehabilitation procedures.

(2) The expenses referred to in the provisions of paragraph (1) shall be determined by the court taking into account the scale of the case, etc. In this case, when anyone other than the debtor files an application for commencement of rehabilitation procedures, the amount of expenses that are payable out of the debtor's property shall be taken into consideration after the rehabilitation procedures commence.

(3) When it is decided to commence the rehabilitation procedures after anyone other than the debtor files an application for commencement of such rehabilitation procedures, the applicant may have his/her expenses payed out of the debtor's property pursuant to the provisons of para graph (1).

(4) The applicant's right to claim the payment of his/her expenses pursuant to the provisions of paragraph (3) shall be made a public-interest claim.

### Article 40 (Notifications, etc. to Supervisory Administrative Agencies)

(1) When an application is filed for commencement of rehabilitation procedures for a debtor who is a stock company, the court shall notify the persons falling under each of the following subparagraphs of the gist of such application: <Amended by Act No. 8863, Feb. 29, 2008>

   1. The administrative agency in charge of supervising the debtor's business;

   2. The Financial Services Commission; and

   3. The head of the tax office having jurisdiction over the location of the principal office or place of business of the debtor (when the principal office or place of business is located overseas, this refers to the principal office or place of business located in the Republic of Korea).

(2) The court may, when it is deemed necessary, request the person falling under each of the following subparagraphs to state his/her opinion on the rehabilitation procedures: <Amended by Act No. 8863, Feb. 29, 2008; Act No. 10219, Mar. 31, 2010>

   1. The administrative agency in charge of supervising the debtor's business;

2. The Financial Services Commission;

3. The person who holds the authority to collect claims (referring to claims that may be collectable according to the example of collecting the national tax and the example of the disposition taken to collect the national tax or the local tax in arrears and their preferential collection order takes priority over that of general rehabilitation claims) that are collectable pursuant to the National Tax Collection Act and the Framework Act on Local Taxes.

(3) Anyone who falls under any of the subparagraphs of paragraph (2) may state his/her opinion on the rehabilitation procedures in the court.

**Article 41 (Questioning)**

(1) When an application is filed for commencement of rehabilitation procedures, the court shall question the debtor or the representative of such debtor.

(2) Notwithstanding the provisions of paragraph (1), the court may omit such questioning in cases falling under any of the following subparagraphs:

1. Where such questioning of the debtor is feared to greatly delay the rehabilitation procedures on the grounds that the debtor or his/her representative resides overseas; and

2. Where it is impossible to locate the whereabouts of the debtor or his/ her representative.

**Article 42 (Grounds for Turning Down Application Filed for Commencing Rehabilitation Procedures)**

In cases falling under any of the following subparagraphs, the court shall turn down any application for commencement of rehabilitation procedures. In this case, the court shall hear the opinion of the Custodial Committee:

1. Where expenses necessary for rehabilitation procedures are not prepaid;

2. Where the application for rehabilitation procedures is not bona fide; and

3. Where rehabilitation procedures are incompatible with the general interests of creditors.

**Article 43 (Provisional Seizure, Provisional Disposition and Preserva tion Disposition)**

(1) When an application is filed for commencing rehabilitation procedures, the court may grant an order of, through its inherent jurisdiction or upon receiving an application filed by interested persons, provisional seizure and provisional disposition on the debtor's business and assets or other disposition necessary to preserve the debtor's business and assets until a decision is made on the application for commencement of rehabilitation procedures. In this case, the court shall hear the opinion of the Custodial Committee.

(2) When any interested person files an application for the preservation disposition referred to in the provisions of paragraph (1), the court shall determine whether to grant the preservation disposition within 7 days from the date on which the application therefor is filed.

(3) When it is deemed necessary in addition to the preservation disposition referred to in the provisions of paragraph (1), the court may order any preservative custodian to manage the debtor's business and assets after hearing the opinion of the Custodial Committee. In this case, the court shall select and appoint one or multiple preservative custodians.

(4) The court may alter or rescind the preservative disposition referred to in the provisions of paragraph (1) or the preservation and management order referred to in the provisions of paragraph (3) after hearing the opinion of the Custodial Committee.

(5) The judgment as well as the judgment on the dismissal of the application therefor provided for in the provisions of paragraphs (1) (3) and (4) shall be made by determination.

(6) An immediate appeal may be filed against the determination that is made pursuant to the provisions of paragraph (5).

(7) The immediate appeal referred to in the provisions of paragraph (6) shall not have the effect of suspending any execution.

(8) When the court issues the preservation and management orders referred to in the provisions of paragraph (3) or changes or rescinds such order, it shall publish such measures.

### Article 44 (Order Given to Suspend Other Procedures, etc.)

(1) When it is deemed necessary upon receiving an application for commencing the rehabilitation procedures, the court may order the discontinuation of the procedures falling under any of the following subparagraphs by the time a decision is made on the application for commencing the rehabilitation procedures by its inherent jurisdiction or by an application filed by interested persons: Provided, That in the case of the procedures referred to in the provisions of subparagraph 2, the same shall not apply to a case where it is feared to inflict undue damage on any rehabilitation creditor or any rehabilitation secured creditor who is the applicant for the procedures: *<Amended by Act No. 10219, Mar. 31, 2010>*

   1. The bankruptcy procedures for the debtor;

   2. The auction procedures (hereinafter referred to as "compulsory execution based on the rehabilitation claim or the rehabilitation security right") that are already in progress on the debtor's assets for the compulsory execution, the provisional seizure, the provisional disposition or the exercise of the security right based on the rehabilitation claim or the rehabilitation security right;

   3. Litigation procedures for the debtor's assets;

   4. Procedures for the debtor's assets that are pending in an administrative agency; and

   5. Any disposition taken to collect taxes in arrears, the disposition taken to collect taxes in arrears according to the example of the disposition taken to collect national taxes in arrears (including the example of the disposition taken to collect national taxes and local taxes in arrears; hereinafter the same shall apply) or the disposal of goods that are offered as security for a tax obligation, as provided for in the National Tax Collection Act and the Framework Act on Local Taxes . In this case, the opinion of the person who holds the authority to collect taxes shall be heard.

(2) The prescription shall not proceed during the suspension period of the disposition provided for in the provisions of paragraph (1) 5.

(3) The court may alter or recind the discontinuation order referred to in the provisions of paragraph (1).

(4) When it is deemed especially necessary to rehabilitate the debtor, the court may order, upon receiving an application filed by the debtor (referring to the preservation custodian if he/she is selected and

appointed) or by its inherent jurisdiction, the cancellation of the compulsory execution, etc. based on any suspended rehabilitation claim or any suspended rehabilitation security right. In that case, the court may require security to be furnished.

**Article 45 (General Order Given to Prohibit Compulsory Execution, etc. Based on Rehabilitation Claims and Rehabilitation Security Rights)**

(1) When it is recognized that special circumstances are feared to prevent the full realization of the purposes of the rehabilitation procedures by the discontinuation order provided for in the provisions of Article 44 (1) after receiving an application for commencement of rehabilitation procedures, the court may order all rehabilitation creditors and rehabilitation secured creditors, by an application filed by interested persons or by its inherent jurisdiction, to bar the compulsory execution, etc. based on their rehabilitation claims or their rehabilitation security rights by the time a determination is made on the application filed for commencing rehabilitation procedures.

(2) The prohibition order (hereinafter referred to as a "general prohibition order") referred to in the provisions of paragraph (1) shall be limited to cases where the disposition or the order falling under either of the following subparagraphs is already taken or given with respect to the debtor's major assets or the general prohibition order, the disposition or the order falling under either of the following subparagraphs is given, taken or given:

　　1. The preservation disposition provided for in the provisions of Article 43 (1); and

　　2. The preservation and management order provided for in the provi sions of Article 43 (3).

(3) When any general prohibition order is given, the compulsory execution, etc. based on any rehabilitation claim or any rehabilitation security right that has already been enforced against the debtor's property shall be suspended.

(4) The court may alter or rescind the general prohibition order.

(5) When it is deemed particularly necessary to continue the debtor's business, the court may order the rescission of the compulsory execution based on any rehabilitation claim or any rehabilitation security right that has been suspended pursuant to the provisions of paragraph (3) upon receiving an application filed by the debtor (referring to the preservative custodian when he/she is selected and appointed). In this case, the court may require security to be furnished.

(6) An appeal may be immediately filed against the general prohibition order, the decision referred to in the provisions of paragraph (4) and the cancellation order referred to in the provisions of paragraph (5).

(7) The immediate appeal referred to in paragraph (6) shall not have the effect of suspending any execution.

(8) When the general prohibition order is given, the prescription of the rehabilitation claim and the rehabilitation security right shall not expire until the day on which 2 months have lapsed from the day following the day on which the effect of such order ceases.

**Article 46 (Publication and Service, etc. of General Prohibition Order)**

(1) When a general prohibition order is granted or a decision to alter or rescind such order, the court shall publish such decision and serve a written decision on the relevant debtor (referring to the preservative custodian if such preservative custodian is selected and appointed) and the relevant applicant, respectively and also serve on the rehabilitation creditor, the rehabilitation secured creditor and the debtor (referring to the preservative custodian when he/she is selected and appointed) a written statement setting out the main passage of the decision as far as they are all known to the court.

(2) The general prohibition order and a decision to change or revoke the general prohibition order shall take effect from the time when a written decision is delivered to the debtor (referring to the preservative custodian when he/she is selected and appointed).

(3) When a judgment (excluding any decision to alter or rescind the general prohibition order) is granted against the cancellation order provided for in the provisions of Article 45 (5) and the immediate appeal provided for in the provisions of paragraph (6) of the same Article, the court shall serve a written judgment on each of the parties thereto. In this case, the provisions of Articles 10 and 11 shall not apply thereto.

**Article 47 (Exclusion of Application of General Prohibition Order)**

(1) Where a general prohibition order is given and when it is recognized that the general prohibition order is feared to inflict undue damage on the rehabilitation creditor or the rehabilitation secured creditor who is the applicant for the compulsory execution, etc. based on the rehabilitation claim or the rehabilitation security right, the court may exclude the application of the general prohibition order on the rehabilitation creditor or the rehabilitation secured creditor by its inherent jurisdiction or upon receiving an application filed by the rehabilitation creditor or the rehabilitation secured creditor. In this case, the rehabilitation creditor or the rehabilitation secured creditor may enforce the compulsory execution, etc. against the debtor's assets based on the rehabilitation claim or the rehabilitation security right, and the procedures for compulsory execution based on the rehabilitation claim or the rehabilitation security right that is exercised by the rehabilitation creditor or the rehabilitation secured creditor before the general prohibition order is given may continue.

(2) When the provisions of Article 45 (8) apply to anyone who is subject to the decision referred to in the provisions of paragraph (1), the "date on which the effect of the order ceases" in Article 45 (8) shall be deemed the "date on which the decision provided for in the provisions of Article 47 (1) is made."

(3) An immediate appeal may be filed against the judgment that is issued on the application filed pursuant to the provisions of paragraph (1).

(4) The immediate appeal referred to in paragraph (3) shall not have the effect of suspending any execution.

(5) When a judgment is issued on the application referred to in para graph (1) and a judgment is issued on the immediate appeal referred to in paragraph (3), the court shall serve its written decision on each of the parties. In this case, the provisions of Article 10 shall not apply thereto.

**Article 48 (Restrictions on Withdrawal of Application for Commencing Rehabilitation Procedures, etc.)**

(1) Anyone who files an application for commencing rehabilitation procedures may withdraw his/her application only up until a decision is made to commence the rehabilitation procedures.

(2) No one shall withdraw his/her application for commencing rehabilitation procedures and his/her application for the preservation disposition without obtaining permission therefor from the court after the decision falling under any of the following subparagraphs is made:

1. A decision on the preservation disposition provided for in the provisions of Article 43 (1);

2. A decision on the preservation and management order provided for in the provisions of Article 43 (3);

3. A decision on the suspension order provided for in the provisions of Article 44 (1); or

4. A decision on the general prohibition order provided for in the provisions of Article 45 (1).

**Article 49 (Decision on Commencement of Rehabilitation Procedures)**

(1) When the debtor files an application for commencement of rehabilitation procedures, the court shall determine whether to commence such rehabilitation procedures within one month from the date such application is filed for commencement of rehabilitation procedures.

(2) The date and the time of the decision shall be setout in a written decision on the commencement of rehabilitation procedures.

(3) The effect of the decision on the commencement of rehabilitation procedures shall arise from the time such decision is made.

**Article 50 (Matters that Must Be Prescribed When Decision Made on Commencement of Rehabilitation Procedures)**

(1) When it is decided that rehabilitation procedures shall commence, the court shall select and appoint one or multiple custodians after hearing the opinions of the Custodial Committee and the Creditors' Consultative Council and prescribe matters falling under each of the following subparagraphs:

1. The date on which the first meeting of interested persons is held; in this case, the date shall be set within 4 months from the date on which a decision is made on the commencement of rehabilitation procedures;

2. The period during which custodians have to prepare and submit the list provided for in the provisions of Article 147 (1); in this case, the period shall be between at least 2 weeks to not more than 2 months from the date on which a decision is made on the commencement of rehabilitation procedures;

3. The reporting period for rehabilitation claims, rehabilitation security rights, shares or equity shares (hereinafter referred to as the "reporting period" in this Part); in this case, the reporting period shall be between at least one week to not more than one month from the last day of the submission period that is set pursuant to the provisions of subparagraph 2; and

4. The inspection period for rehabilitation claims and rehabilitation security rights that are entered in the list or reported (hereinafter referred to as the "inspection period" in this Part); in this case, the inspection

period shall be between at least one week to not more than one month from the last day of the reporting period.

(2) The court may extend or shorten the period referred to in each subparagraph of paragraph (1) on the grounds of special circumstances.

### Article 51 (Publication and Service of Commencement of Rehabilitation Procedures)

(1) When the court decides to commence the rehabilitation procedures, it shall publish without delay matters falling under each of the following subparagraphs:

1. The main sentence of the decision on the commencement of rehabilitation procedures;

2. The name or trading name of the custodian;

3. The period and the date that are set pursuant to the provisions of Article 50; and

4. For anyone who holds the debtor's assets for which the rehabilitation procedures commence or bears the debtor's obligations, a provision that he/she shall not transfer the assets to the debtor for whom the rehabilitation procedures commence. a provision that he/she shall not repay the debtor's obligations and an order providing that, within a certain period of time he/she must report to any custodian the fact that he/she holds the property of the debtor for whom the rehabilitation procedures commence or bears the debtor's obligations.

(2) The court shall serve a written statement that contains the matters referred to in each subparagraph of paragraph (1) upon the person or persons falling under each of the following subparagraphs:

1. The custodian;

2. The debtor;

3. Rehabilitation creditors, rehabilitation secured creditors, shareholders and equity right holders who are known to the court; and

4. Persons who hold the debtor's assets for which rehabilitation procedures commence or bear the debtor's obligations.

(3) The provisions of paragraphs (1) and (2) shall apply mutatis mutandis to cases where any change accrues in the matters referred to in paragraph (1) 2 through 4: Provided, That a change in the inspection period may not be published.

(4) Anyone who fails to make the report provided for in the provisions of paragraph (1) 4 intentionally or negligently shall compensate for any damage incurred to the debtor's property by his/her failure.

### Article 52 (Notification of Commencement of Rehabilitation Procedures)

When it is decided to commence the rehabilitation procedures for a debtor who is a stock company, the court shall notify the administrative agency in charge of supervising the debtor's business, the Minister of Justice and the Financial Services Commission of the matters referred to in each subparagraph of Article 51 (1). The same shall apply to cases where any modifications are made to the matters referred to in Article 51 (1) 2 and 3. *<Amended by Act No. 8863, Feb. 29, 2008>*

### Article 53 (Immediate Appeal Filed against Determination on Application for Commencing Rehabilitation Procedures)

(1) An immediate appeal may be filed against a determination on an application for commencing the rehabilitation procedures.

(2) The provisions of Articles 43 through 47 shall apply mutatis mutandis to cases where an immediate appeal referred to in the provisions of paragraph (1) is filed against a decision to decline an application for commencing rehabilitation procedures.

(3) The immediate appeal referred to in the provisions of paragraph (1) shall not have the effect of suspending any execution.

(4) When it is recognized that the procedures for the immediate appeal are in violation of Acts and the immediate appeal lacks grounds, the appellate court shall decline or dismiss such immediate appeal.

(5) When any immediate appeal is recognized to have grounds, the appellate court shall cancel the decision made by the court of original jurisdiction and remand the case to the court of origin.

**Article 54 (Cancellation of Decision on Commencement of Rehabilita tion Procedures)**

(1) When a decision to cancel a decision on the commencement of re habilitation procedures is confirmed, the court shall publish without delay the main passage of such decision.

(2) The provisions of Articles 51 (2) and 52 shall apply mutatis mutandis to the case of paragraph (1).

(3) When a decision to cancel the decision on the commencement of rehabilitation procedures is confirmed, the custodian shall repay publicinterest claims and in the case of the public-interest claims to which an objection is raised, deposit such public-interest claims for creditors.

**Article 55 (Capital Reduction, etc. after Commencement of Rehabilitation Procedures)**

(1) The debtor shall be prohibited from performing an act falling under any of the following subparagraphs without resorting to rehabilitation procedures between the time the rehabilitation procedures commence to the time the rehabilitation procedures are completed:

    1. The act of reducing the amount of capital or investment;

    2. The act of admitting equitable interest holders or issuing new shares or bonds;

    3. The act of increasing the amount of capital or investment;

    4. The act of performing an all-inclusive exchange of shares or allinclusive transfer of shares;

    5. The act of performing any merger, any split, any merger by split or any change in organization;

    6. The act of dissolving any company or keeping any company in existence; and

    7. The act of distributing profits or interest.

(2) Permission therefor shall be obtained from the court, when it is intended to amend the articles of incorporation of a corporate debtor without resorting to rehabilitation procedures between the time the rehabilita tion procedures commence until the time the rehabilitation procedures are completed.

**Article 56 (Management of Business and Assets after Commencement of Rehabilitation Procedures)**

(1) When it is decided to commence rehabilitation procedures, the authority to conduct the debtor's business, and manage and dispose of his/ her assets shall be exclusively vested in a custodian.

(2) The directors of a debtor who is an individual or the debtor who is not an individual shall be prohibited from infringing on, or interfering with the exercise of the authority of any custodian referred to in the

provisions of paragraph (1).

**Article 57 (Furnishing of Information, etc.)**

A custodian shall furnish information and materials pertaining to the debtor's business and enterprise to anyone who intends to perform an act falling under any of the following subparagraphs under the conditions as prescribed by the Supreme Court: Provided, That when any justifiable grounds exist, the custodian may refuse to furnish such information and materials:

1. The act of acquiring by transfer the whole or part of the debtor's business, enterprise and major assets;

2. The act of acquiring by transfer, the debtor's shares or equity shares with the aim of taking over the debtor's governance right; and

3. The act of performing an all-inclusive exchange and an all-inclusive transfer of the debtor's shares, any merger or merger by split of the debtor's business.

**Article 58 (Suspension, etc. of Other Procedures)**

(1) When it is decided to commence the rehabilitation procedures, an act falling under any of the following subparagraphs shall be prohibited from being performed:

1. The act of filing a petition of bankruptcy or filing an application for commencing the rehabilitation procedures;

2. The act of enforcing compulsory execution based on any rehabilita tion claim or any rehabilitation security right; or

3. The act of taking a disposition for the recovery of arrears based on a claim that is recoverable according to the example of a disposition taken to collect national taxes in arrears and whose ranking of collection priority is lower than that of the general rehabilitation claim.

(2) When it is decided to commence the rehabilitation procedures, the procedures falling under any of the following subparagraphs shall be suspended:

1. Bankruptcy procedures;

2. Procedures for compulsory execution, etc. that is already executed based on a rehabilitation claim or a rehabilitation claim on the debtor's assets; and

3. Procedures for a disposition for the recovery of arrears based on the claim that is collectable according to the example of collecting na tional taxes, whose ranking of collection priority is lower than that of the general rehabilitation claim.

(3) When it is decided to commence rehabilitation procedures, the disposition for the recovery of arrears against the debtor's assets based on a rehabilitation claim or a rehabilitation security right pursuant to the National Tax Collection Act and the Framework Act on Local Taxes, the disposition for the recovery of arrears on the claim that is collectible according to the example of collecting national taxes and whose rank of collection priority is lower than that of the general rehabilitation claim and the disposal of goods that are offered as security for a tax liability shall not be taken and executed. Any disposition that has already been taken shall be suspended during the period whose last day first arrives among the period

falling under each of the following subparagraphs. In this case, when it is deemed necessary, the court may extend the period within the scope of not more than one year by its inherent jurisdiction or upon receiving an application filed by any custodian: <Amended by Act No. 10219, Mar. 31, 2010>

    1. The period ranging from the date on which it is decided to commence rehabilitation procedures to the date until which the rehabilitation plan is authorized;

    2. The period ranging from the date on which it is decided to commence rehabilitation procedures until the date on which the rehabilitation procedures are completed; or

    3. The period ranging from the date on which it is decided to commence rehabilitation procedures until the date on which 2 years have lapsed thereafter.

(4) The prescription of the disposition shall not proceed during the period in which the disposition can not be taken or is suspended pursuant to the provisions of paragraph (3).

(5) When it is recognized that nothing prevents the rehabilitation, the court may order the continuation of the procedures or the disposition suspended pursuant to the provisions of paragraph (2) by its inherent jurisdiction or upon receiving an application filed by a custodian or the person who is authorized to collect claims provided for in the provisions of Article 140 (2). When it is deemed necessary for the rehabilitation, the court may order the cancellation of the procedures or the disposition suspended pursuant to the provisions of paragraph (2) by requiring or not requiring any security to be furnished by its inherent jurisdiction or upon receiving an application filed by any custodian: Provided, That the same shall not apply to bankruptcy procedures.

(6) Claims for expenses on the debtor for resuming the continuation of the procedures or the disposition pursuant to the provisions of paragraph (5) shall be made public-interest claims.

**Article 59 (Suspension, etc. of Litigation Procedures)**

(1) When it is decided to commence rehabilitation procedures, litigation procedures on the debtor's assets shall be suspended.

(2) Any custodian or any other party may subrogate any litigation procedures that are unrelated to the rehabilitation claim or the rehabilitation security right among those litigation procedures suspended pursuant to the provisions of paragraph (1). In this case, the claim for litigation expenses on the debtor shall be made public-interest claims.

(3) When the rehabilitation procedures are completed prior to the subrogation referred to in the provisions of paragraph (2), the debtor shall take subrogation of the litigation procedures as a matter of course.

(4) When the rehabilitation procedures are completed after the subrogation is made pursuant to the provisions of paragraph (2), the litigation procedures shall be suspended. In this case, the debtor shall subrogate the litigation procedures.

(5) In the case of paragraph (4), any other party may also subrogate the litigation procedures.

(6) The provisions of paragraphs (1) through (5) shall apply mutatis mutandis to cases involving the debtor's property that are pending in the administrative agencies at the time that rehabilitation procedures commence.

**Article 60 (Transfer)**

(1) The rehabilitation court (referring to the district court in which a rehabilitation case is pending; hereinafter the same shall apply) may, when any lawsuit involving the debtor's assets is pending in another court at the time that the rehabilitation procedures commence, claim the transfer of such lawsuit to it by its decision. The same shall apply to cases where such lawsuit is pending in another court after the rehabilitation procedures commence.

(2) When the decision referred to in paragraph (1) is made, the court shall, upon receiving the claim for the transfer of the lawsuit, transfer it to the rehabilitation court.

(3) The transfer referred to in paragraph (2) may be peformed even during the interruption or the suspension of the litigation procedures.

(4) The provisions of paragraphs (1) through (3) shall not apply to any lawsuit that is pending in an appellate court.

**Article 61 (Act Needed to Obtain Permission from Court)**

(1) When any custodian intends to perform an act falling under any of the following subparagraphs and it is deemed necessary, the court may require him/her to obtain its permission therefor:

   1. The act of disposing of any assets;

   2. The act of acquiring any assets by transfer;

   3. The act of leasing assets including the borrowing of any funds;

   4. The act of cancelling or terminating any contract pursuant to the provisions of Article 119;

   5. The act of filing a lawsuit;

   6. The act of making a compromise or concluding any arbitration agreement;

   7. The act of relinquishing any rights;

   8. The act of approving public-interest claims or rights of re-acquisition; and

   9. Other acts designated by the court.

(2) Every custodian shall be prohibited from performing acts falling under any of the following subparagraphs without obtaining permission therefor:

   1. The act of acquiring the debtor's business or assets by transfer;

   2. The act of transferring his/her business or assets to the debtor; and

   3. The act of effecting any transaction with the debtor in the interest of himself and any third person.

(3) The acts referred to in each subparagraph of paragraph (1) or (2) that is performed without obtaining the court's permission therefor shall be invalidated: Provided, That such act cannot set aside with any bona fide third person.

**Article 62 (Transfer of Business, etc.)**

(1) If it is deemed necessary to rehabilitate a debtor, any custodian may transfer the whole or the main part of the business or the enterprise of such debtor after obtaining the court's permission therefor after the rehabilitation procedures commence even before the rehabilitation plan is authorized.

(2) When the count grants the permission referred to in the provisions of paragraph (1), it shall hear the opinion of each person falling under the following subparagraphs:

1. The Custodial Committee;

2. The Creditors' Consultative Council;

3. The union that is organized by a majority of the debtor's workers; and

4. When the union referred to in subparagraph 3 is not organized, the person who represents a majority of the debtor's workers.

(3) In case where the permission referred to in the provisions of paragraph (1) is granted, the court shall determine ways to spend the transfer price.

(4) Where the permission referred to in paragraph (1) is granted, when the total amount of all obligations of the corporate debtor exceed his/her total amount of assets, the court may substitute such permission for a resolution passed at the general meeting of shareholders provided for in the provisions of Article 374 (1) of the Commercial Act by its inherent jurisdiction or upon receiving an application filed by the custodian. In this case, the provisions of Articles 374 (2) and 374-2 of the Commercial Act and the provisions of Article 191 of the Securities and Exchange Act shall not apply thereto.

(5) The provisions of Article 61 (3) shall apply mutatis mutandis to any act that is performed without obtaining the permission referred to in the provisions of paragraph (1).

**Article 63 (Service, etc. of Decision on Permission to Transfer Business, etc. of Stock Company)**

(1) The court shall, when it makes the decision provided for in the provisions of Article 62 (4), serve a written decision on any custodian and also serve a written statement containing summary of such decision on each of shareholders.

(2) The effect of a decision made pursuant to the provisions of Article 62 (4) shall accrue when it is served on the custodian.

(3) Any shareholder may immediately file an appeal against a decision that is made pursuant to the provisions of Article 62 (4).

**Article 64 (Act of Debtor after Commencement of Rehabilitation Procedures)**

(1) When the debtor performs any legal act in relation to his/her assets after the rehabilitation procedures commence, he/she shall be prohibited from claiming any effects that accrue from the rehabilitation procedures.

(2) In applying the provisions of paragraph (1), the legal act that is performed by the debtor on the date on which the rehabilitation procedures commence shall be presumed as having been performed after the rehabilitation procedures have commenced.

**Article 65 (Acquisition of Right after Commencement of Rehabilitation Procedures)**

(1) Notwithstanding anyone acquiring rights in the debtor's assets based on his/her rehabilitation claim or his/her rehabilitation security right without resorting to the debtor's act after the rehabilitation procedures commence, he/she shall not claim the effect of his/her acquisition thereof in relation to the rehabilitation procedures.

(2) The provisions of Article 64 (2) shall apply mutatis mutandis to the acquisition referred to in the provisions of paragraph (1).

### Article 66 (Recording and Registration after Commencement of Rehabilitation Procedures)

(1) Any recording and any provisional recording that are effected after the commencement of rehabilitation procedures on the grounds of the reason for recording that arises before the rehabilitation procedures commence for any real estate or any ship shall not claim their effects in relation to the rehabilitation procedures: Provided, That the same shall not apply to a case where the register authority effects the principal recording without knowledge of the fact that the rehabilitation procedures have commenced.

(2) The provisions of paragraph (1) shall apply mutatis mutandis to the registration and the provisional registration of the establishment, transfer or change of rights.

### Article 67 (Repayment Made to Debtor after Commencement of Rehabilitation Procedures)

(1) Any repayment made to the debtor without knowledge of the fact that rehabilitation procedures have commenced may claim its effect in relation to the rehabilitation procedures.

(2) Any repayment made to the debtor with knowledge of the fact that the rehabilitation procedures have commenced after such rehabilitation procedures commence may claim its effect only within the limit of the profits that accrue to the debtor's assets in relation to the rehabilitation procedures.

### Article 68 (Presumption of Good Faith or Bad Faith)

In applying the provisions of Articles 66 and 67, it shall be presumed that the fact of the commencement of rehabilitation procedures is not known before the rehabilitation procedures are published and it shall be pre sumed that the fact thereof is known after the rehabilitation procedures are published.

### Article 69 (Co-Ownership Relationship)

(1) Where the debtor jointly holds any property rights with any other person, notwithstanding they have an agreement that prohibits them from dividing such property right, any custodian may claim the division of such property rights at the time that rehabilitation procedures commence.

(2) In the case of paragraph (1), any co-owner may acquire the debtor's share after paying a fair price therefor.

### Article 70 (Reacquisition Rights)

The commencement of rehabilitation procedures shall not affect the right to reacquire any assets that do not belong to the debtor from such debtor,

### Article 71 (Reacquisition of Sold Goods in Transit)

(1) When any seller ships out his/her goods that is the object of the sale and purchase and rehabilitation procedures commence for the purchaser who fails to take over such goods at the destination of the goods after paying the price therefor in full, the seller may reacquire such goods. In this case, any custodian may require the delivery of such goods after paying the price therefor in full after obtaining permission therefor from the court.

(2) The provisions of paragraph (1) shall not exclude the application of the provisions of Article 119.

### Article 72 (Right to Reacquire by Commission Agents)

The provisions of Article 71 (1) shall apply mutatis mutandis to a case where any commission agent who is entrusted with the purchase of goods ships out such goods to anyone who entrusts such commission agent.

### Article 73 (General Reacquisition Rights)

(1) When the debtor transfers his/her assets that are subject to reacquisition rights before rehabilitation procedures commence, the reacquisition right holder may claim the transfer of the rights to claim the performance of the benefit in return. The same shall apply to a case where any custodian transfers any assets that are subject to reacquisition rights.

(2) In the case of paragraph (1), any custodian receives the performance of the benefit in return, the reacquisition right holder may claim the return of the assets that the custodian receives as the benefit in return.

### Article 74 (Selection and Appointment of Custodians)

(1) The court shall select and appoint persons who are fully qualified to perform duties as custodians after hearing the opinions of the Custodial Committee and the creditors' consultative council.

(2) The court shall select and appoint individual debtors and debtors' non-individual representatives as custodians with the exception of instances falling under each of the following subparagraphs:

    1. When the debtor's bankruptcy is caused by the property's diversion, or concealment of assets or poor corporate governance by a person falling under any of the following subparagraphs, for which the latter is wholly responsible:

        (a) An individual debtor;

        (b) The director of a non-individual debtor; and

        (c) The manager of the debtor;

    2. When the request from the Creditors' Consultative Council has any justifiable grounds; and

    3. When the debtor's rehabilitation is necessary.

(3) Notwithstanding the provisions of paragraph (1), where the debtor is an individual, a smalland medium-sized businessman and any person who is prescribed by the rules of the Supreme Court, any custodian may not be selected or appointed: Provided, That in case where it is recognized that the grounds referred to in any subparagraph of paragraph (2) exist at the time that the rehabilitation procedures are in progress, a custodian may be selected and appointed.

(4) Where no custodian is selected and appointed, the debtor (referring to the debtor's representative where the debtor is not an individual) shall be deemed the custodian provided for in the provisions of this Part.

(5) Where any custodian is selected and appointed, the court shall question the debtor or the debtor's representative, with the exception where acute circumstances exist.

(6) Any corporation may become a custodian. In this case, such corporation shall nominate a person from among its directors to perform the duties of the custodian and make a report thereon to the court.

**Article 75 (Performance of Duties by Multiple Custodians)**

(1) When multiple custodians are involved, they shall perform their duties jointly. In this case, they may share their duties after obtaining permission therefor from the court.

(2) When multiple custodians are involved, the wishes of third persons may be expressed to one custodian.

**Article 76 (Acting Custodians)**

(1) When it is deemed necessary, each custodian may select and appoint one or multiple acting custodians at his/her own risk to perform his/her duties.

(2) The selection and appointment of acting custodians as referred to in the provisions of paragraph (1) shall obtain permission therefor from the court.

(3) When the court grants the permission pursuant to the provisions of paragraph (2), it shall publish such permission. The same shall apply to a case where the court alters or rescinds its permission to select and appoint acting custodians.

(4) Where the debtor is a corporation, when the permission provided for in the provisions of paragraph (2) is granted, the clerk, etc. of the court shall promptly commission by their inherent jurisdiction the registry office to register the selections and appointments of acting custodians by providing such registry office with a written commission accompanied by a certified copy of the written decision. The same shall apply to a case where the permission to select and appoint acting custodians is altered or rescinded.

(5) Acting custodians may perform any act on behalf of custodians, with the exception of any act involving any trial or related to any trial.

**Article 77 (Advisers)**

Custodians may, when it is deemed necessary, select and appoint legal and corporate governance experts as their advisers after obtaining permission therefor from the court.

**Article 78 (Standing to Sue)**

Every custodian shall be a party in the lawsuit involving the debtor's assets.

**Article 79 (Inspection, etc. by Custodians)**

(1) Every custodian may ask anyone falling under any of the following subparagraphs to report on the current state of the debtor's business and assets, and may inspect the debtor's books, documents, cash and goods:

1. An individual debtor or his/her legal representative;

2. The director, auditor, liquidator and any other person corresponding thereto of a debtor who is not an individual; and

3. The debtor's manager or employee.

(2) If it is deemed necessary, any custodian may select and appoint any appraiser to perform the appraisal after obtaining permission therefor from the court.

(3) Every custodian may, when he/she performs the inspection referred to in the provisions of paragraph (1), ask for the assistance of any executor after obtaining permission therefor from the court.

**Article 80 (Management of Postal Items and Ceasation of their Management)**

(1) The court may commission any postal service agency, any transporter and any other person to deliver postal items, telegraphs and cargoes, any of which are sent to the debtor or to any custodian.

(2) The custodian may open the postal items, telegraphs and cargo that are delivered to him/her pursuant to the provisions of paragraph (1).

(3) The debtor may ask for the inspection of the postal items, telegrams and cargo provided for in the provisions of paragraph (2) and ask for the delivery of any of them to him/her that is unrelated to his/her property.

(4) The court may alter or rescind the commission referred to in the provisions of paragraph (1) upon receiving a claim filed by the debtor or by its inherent jurisdiction after hearing the opinion of the relevant custodian.

(5) When the rehabilitation procedures are completed, the court shall rescind the commission referred to in the provisions of paragraph (1).

**Article 81 (Supervision of Custodians)**

(1) Custodians shall be placed under the supervision of the court.

(2) The court shall deliver a written statement attesting the selection and appointment to each custodians.

(3) Every custodian shall, when he/she performs his/her duties, at the request of any interested person, produce his/her written statement referred to in the provisions of paragraph (2) to the latter.

**Article 82 (Obligations, etc. of Custodians)**

(1) Every custodian shall perform his/her duties with the due care of a good manager.

(2) When any custodian neglects to take the due care referred to in the provisions of paragraph (1), he/she shall be liable to indemnify any interested person for damage incurred by his/her negligence. In this case, when more than one custodian neglects to take such due care, they shall be jointly liable to indemnify him/her for such damage.

**Article 83 (Resignation and Dismissal of Custodians)**

(1) Every custodian may, when he/she has any justifiable grounds, resign as a custodian after obtaining permission therefor from the court.

(2) Upon receiving an application filed by any interested person, the court may dismiss any custodian by its inherent jurisdiction, on the grounds that fall under each of the following subparagraphs. In this case, the court shall question such custodian:

1. When the grounds provided for in the provisions of Article 74 (2) 1 are found in relation to the custodian after he/she is selected and appointed as a custodian;

2. When the custodian violates the duties provided for in the provisions of Article 82 (1);

3. When the custodian is found to lack management ability; or

4. When other extenuating grounds exist.

(3) An immediate appeal may be filed against a decision to dismiss any custodian under the provisions of paragraph (2).

(4) The immediate appeal referred to in the provisions of paragraph (3) shall not have the effect of suspending any execution.

(5) When the court selects and appoints a new custodian after dismissing a custodian pursuant to the provisions of paragraph (2), the provisions of Article 74 (2) shall not apply thereto.

### Article 84 (Obligation to Report Upon Completion of Duties)

(1) When any custodian completes his/her duties, such custodian or his/ her successor shall promptly make an accounting report to the court.

(2) Where pressing circumstances arise when any custodian completes his/her duties, such custodian or his/her successor shall take a necessary steps to manage the assets until the time his/her successor or the debtor is able to manage such assets.

### Article 85 (Authority of Preservative Custodians)

When the preservation and the management orders provided for in the provisions of Article 43 (3) are given, the debtor's authority to run his/ her business, manage his/her assets and take any disposition shall be exclusively vested in the preservative custodian until the time it is decided to commence the rehabilitation procedures.

### Article 86 (Mutatis Mutandis Application of Provisions Governing Custodians)

(1) The provisions of Articles 61, 74, 75, 78 through 84, and 89 shall apply mutatis mutandis to preservative custodians.

(2) The provisions of Article 59 (1) and (2) shall apply mutatis mutandis to a case where the preservation and the management orders are given and the provisions of Article 59 (3) through (5) shall apply mutatis mutandis to a case where the effect of the preservation and the management orders respectively lose.

(3) The provisions of Articles 59 (1) through (5) shall apply mutatis mutandis to cases involving the debtor's assets that are pending in any administrative agencies at the time that the preservation and the management orders are given. In this case, the "time the rehabilitation procedures are completed" in the provisions of Article 59 (3) and (4) shall be deemed the "time the preservation and the management order ceases to have effect".

### Article 87 (Inspectors)

(1) When it is deemed necessary, the court may select and appoint one or multiple inspectors after hearing the opinion of the Custodial Committee.

(2) The inspectors shall be selected and appointed from among persons of profound learning and experience in inspection, who have no interests in the rehabilitation procedures.

(3) When the court selects and appoints inspectors, it may requuire such inspectors to inspect the matters provided for in the provisions of Articles 90 through 92 for a fixed period and ask them to put forward their opinions as to whether it is appropriate to continue the rehabilitation procedures.

(4) When it is deemed necessary, the court may require the inspectors to inspect other matters than the matters referred to in the provisions of paragraph (3) and to report the result of such inspection.

(5) When reasonable grounds exist, the court may dismiss any inspector by its inherent jurisdiction or upon receiving an application filed by any interested person. In this case, the court shall question the relevant inspector.

**Article 88 (Mutatis Mutandis Application of Provisions Governing Inspectors)**

The provisions of Articles 79, and 81 through 83 (1) shall apply mutatis mutandis to the inspectors.

**Article 89 (Management of Debtor's Business and Property)**

Every custodian shall attend to the tasks of managing the debtor's business and assets immediately after he/she assumes his/her post.

**Article 90 (Appraisal of Asset Value)**

Every custodian shall appraise without delay the value of all of the assets that belong to the debtor at the time that rehabilitation procedures commence after he/she takes up his/her post. In this case, the relevant custodian shall allow the debtor to participate in the appraisal thereof, save when his/her participation is feared to delay the appraisal of such value.

**Article 91 (Preparation of Assets Inventory and Balance Sheet)**

Every custodian shall prepare an inventory of the debtor's assets and balance sheet at the time that the rehabilitation procedures commence and then submit them to the court immediately after assuming their posts.

**Article 92 (Inspection and Report by Custodians)**

Every custodian shall promptly inspect the matters falling under each of the following subpargraphs and then report the result of the inspection to the court and the Custodial Committee on or before the date on which the first meeting of persons concerned is held:

    1. Circumstances in which the debtor has to face the commencement of rehabilitation procedures;

    2. Matters concerning the debtor's business and assets;

    3. Whether circumstances exist that require the preservation disposition provided for in the provisions of Article 114 (1) or the final inspection judgment provided for in the provisions of Article 115 (1); and

    4. Other matters that are necessary for the debtor's rehabilitation.

**Article 93 (Other Reports, etc.)**

Every custodian shall report the current state of the management of the debtor's business and assets in addition to the matters provided for in the provisions of Articles 90 through 92 and other matters that are ordered by the court under the conditions as prescribed by the court and prepare the debtor's asset inventory and balance sheet as of the date on which the rehabilitation plan is authorized and as of the time that is set by the court, and submit a certified copy of the debtor's asset inventory and balance sheet to the court.

**Article 94 (Appraisal of Fixed Assets Used for Business)**

(1) Every custodian shall, when he/she prepares the debtor's asset inventory and balance sheet, prepare them according to accounting practices that are generally recognized as being fair and appropriate.

(2) Deleted. *<by Act No. 10281, May 14, 2010>*

**Article 95 (Keeping of Documents)**

The documents that are submitted to the court pursuant to the provisions of Articles 87, and 91 through 93 shall be retained by the court for the purpose of offering them for inspection by interested persons.

**Article 96 (Suspension of Business)**

Where the continuation of the debtor's business is recognized as being inappropriate on the grounds of special circumstances, any custodian may suspend the debtor's business after obtaining permission therefor from the court.

**Article 97 (Means, etc. to Keep Assets)**

The court may prescribe means to keep money and other assets and necessary matters concerning cash revenues and expenditure.

**Article 98 (First Meeting of Persons Involved)**

A custodian shall report the outlines of the matters specified in Article 92 at the first meeting of persons involved.

**Article 99 (Court's Hearing of Opinions)**

At the first meeting of persons concerned, the court shall hear the opinions of persons falling under each of the following subparagraphs with respect to the selection and appointment of custodians and inspectors, the management of the debtor's business and assets, and whether the continuation of rehabilitation procedures is appropriate:

1. Custodians and inspectors;

2. The Debtor; and

3. Rehabilitation creditors, rehabilitation secured creditors, shareholders and equity right holders who are entered in the list provided for in the provisions of Article 147 (1) or reported.

**Article 100 (Negational Act)**

(1) Any custodian may set aside acts falling under any of the following subparagraphs for the debtor's assets after rehabilitation procedures commence:

1. An act performed by the debtor with knowledge that such act damages any rehabilitation creditor or any rehabilitation secured creditor: Provided, That the same shall not apply to a case where anyone who receives any benefit from the act without the knowledge that the act causes damage to such rehabilitation creditor or such rehabilitation secured creditor at the time that such act is performed;

2. An act that causes damage to any rehabilitation creditor or any rehabilitation secured creditor, furnishing any security or extinguishing any obligation, which is performed by the debtor after the payment is suspended, an application is filed for commencement of rehabilitation procedures or a petition is filed for bankruptcy; Provided, That it is limited to the time anyone who receives any benefit from the act is aware of the fact that the payment, etc. is suspended and the act causes damage to any rehabilitation creditor or any rehabilitation secured creditor at the time that such act is performed;

3. The act of furnishing any security or extinguishing any obligation, which is performed by the debtor within 60 days before or after the date on which the debtor suspends his/her payment, etc. and such act does not pertain to the debtor's obligations and the method and the time of such act do not belong to the debtor's obligation: Provided, That the same shall not apply to a case where the debtor learns of the fact that the debtor's act undermines the equality with other rehabilitation creditor or other rehabilitation secured creditor at the time that he/she performs such act (when the act is performed after the payment is suspended, limited to a case where the debtor learns that such payment is suspended); and

4. Any gratuitous act or act for valuable consideration that may be deemed identical to the former, which is performed by the debtor before or after 6 months from the date on which the debtor suspends his/her payment.

(2) The provisions of paragraph (1) shall not apply to the debtor's act of furnishing any security or extinguishing any obligation for anyone who holds the authority to collect claims provided for in the provisions of Article 140 (1) and (2).

**Article 101 (Special Rules Governing Act Performed for Specially Related Persons as Other Parties)**

(1) In the application of the provisions of the proviso to Article 100 (1) 2, when any person who receives any benefit is in a special relationship with the debtor, the scope of which is prescribed by the Presidential Decree, (hereafter in this Article, refers to the "specially related person"), the specially related person shall be presumed to be aware of the fact that the payment, etc. are suspended and he/she causes damage to any rehabilitation creditor or any rehabilitation secured creditor at the time that he/she performs such act.

(2) In applying the provisions of Article 100 (1) 3, when any act is performed in relation to the specially related person as another party, "60 days" provided for in the provisions of the main sentence of the same subparagraph shall be deemed "one year" and in applying the proviso to the same subparagraph, it is presumed that the specially related person is aware of the fact that the debtor undermines equality with other rehabilitation creditors or other rehabilitation secured creditor at the time that the debtor performs the act that undermines such equality.

(3) In applying the provisions of Article 100 (1) 4, any act is performed in relation to the specially related person as another party, "60 days" provided for in the same subparagraph shall be deemed "one year."

**Article 102 (Exception of Payment of Obligations of Bill)**

(1) The provisions of Article 100 (1) shall not apply to a case where anyone who is entitled to claim payment of any bill by the debtor, if he/she fails to be paid such bill, loses his/her right on bills to be paid by one or multiple debtors.

(2) In the case of paragraph (1), when any final obligor for compensation or anyone who commissions the issuance of bills learns of the payment suspension, etc. or fails to become aware due to negligence, any custodian may cause him/her to refund the amount paid by the debtor.

**Article 103 (Negation of Requirements for Establishing Alteration of Right and Requirements for Counteraction)**

(1) Where any necessary act is performed to establish, transfer or alter rights with the aim of countering any third person after payment, etc. is suspended, when such necessary act is performed with the knowledge that the payment, etc. is suspended after the lapse of 15 days from the date on which such necessary act is performed to establish, transfer or alter the rights, such necessary act may be set aside: Provided, That the same shall not apply to a case where any principal registration or any principal recording is effected based on any provisional registration or any provisional recording after such provisional registration or such provisional registration is effected.

(2) The provisions of paragraph (1) shall apply mutatis mutandis to any registration or any recording that effects the acquisition of rights.

### Article 104 (Negation of Execution Act)

The right to set aside may be exercised when the source of the execution right that holds the authority to execute the act subject to be set aside, or the act is performed by the act of execution.

### Article 105 (Methods of Exercising Right to Set Aside)

(1) Every custodian shall exercise the right to set aside by means of lawsuit, a claim filed for avoidance or defence.

(2) The court may order any custodian to exercise the right to set aside by its inherent jurisdiction or upon receiving an application filed by any rehabilitation creditor, any rehabilitation secured creditor, any shareholder and any equity right holder.

(3) The lawsuit and the case of claim for avoidance shall be placed under the exclusive jurisdiction of the rehabilitation court.

### Article 106 (Claims Filed for Avoidance)

(1) Every custodian shall, when he/she files a claim for avoidance, substantiate the factual basis for such avoidance.

(2) Any judgment that cites a claim for avoidance or declines a claim for negation shall be made based on a decision that is accompanied by reasons therefor.

(3) When the court makes the decision referred to in paragraph (2), it shall examine other parties.

(4) When the court decides to cite a claim for avoidance, it shall deliver a written decision thereon to each of the parties.

### Article 107 (Lawsuit Filed against Decision to Cite Claim for Avoidance)

(1) Anyone who is dissatisfied with any decision to cite a claim for avoidance may file a lawsuit against such decision within one month from the date on which he/she takes the delivery of such decision.

(2) The period referred to in the provisions of paragraph (1) shall be invariable.

(3) The lawsuit referred to in the provisions of paragraph (1) shall be placed under the exclusive jurisdiction of the rehabilitation court.

(4) The judgment on the lawsuit filed pursuant to the provisions of paragraph (1) shall authorize, alter or revoke the decision to cite the claim for avoidance: Provided, That the same shall not apply to a case where the lawsuit is declined on the grounds of being unlawful.

(5) When a judgment that authorizes the whole or part of the decision (limited to the part of the decision that is authorized in the judgment) to cite the claim for avoidance is confirmed, the decision shall have the same effect as the effect of the final decision. The same shall apply to the decision to cite the claim for avoidance in case where the lawsuit referred to in the provisions of paragraph (1) is not filed, is withdrawn or is declined within the period that is set pursuant to the provisions of the same paragraph.

**Article 108 (Effect, etc. of Exercise of Negation Right)**

(1) The exercise of the right to set aside shall restore the debtor's assets to their original status.

(2) Where the act provided for in the provisions of Article 100 (1) 4 is set aside, when the other party is not aware of the payment suspension, etc. at the time that such act is performed, a refund may be made within the limit of the existing benefits.

(3) Where the debtor's act is set aside, any other party may exercise his/ her right according to the classification falling under any of the following subparagraphs:

1. When the benefit in return that is paid to the debtor does not exist among the debtor's assets, the right to claim the refund of such benefit in return;

2. When all of the profits that accrue from the benefit in return paid to the debtor exist among the debtor's assets, the right to claim the refund of the existing profits in the capacity of a public-interest creditor;

3. When the profits that accrue from the benefit in return paid to the debtor does not exist among the debtor's assets, the right to claim the refund of the value of the benefit in return in the capacity of a rehabilitation creditor; and

4. When part of the profits that accrue from the benefit in return paid to the debtor exist among the debtor's assets, the right to claim the refund of the existing profits in the capacity of a public-interest creditor and the right to claim the refund of the difference between the benefit in return and the existing profits in the capacity of a rehabilitation creditor.

**Article 109 (Restoration of Claims of Other Parties)**

(1) Where an act of the debtor is set aside, when the other party refunds any payment that is made to him/her or refunds the value of such payment, the claim of the other party shall be restored to its original status.

(2) When an act of the debtor is set aside after the meeting of persons concerned that is called to deliberate on a draft rehabilitation plan or it is decided to propose a written resolution provided for in the provisions of Article 240 in the agenda of such meeting, notwithstanding the provisions of 152 (3), the other party may subsequently supplement his/her report within one month from the date on which the act of the debtor is set aside.

**Article 110 (Right to Set Aside against Subsequent Purchasers)**

(1) In cases falling under any of the following subparagraphs, the right to set aside may also be exercised against any subsequent purchaser:

1. Where the subsequent purchaser becomes aware of the fact forming the grounds for setting aside exists for the former at the time that the subsequent purchase is effected;

2. Where the subsequent purchaser is a specially related person provided for in the provisions of Article 101: Provided, That the same shall not apply to a case where the subsequent purchaser does not become aware of the fact that the grounds for setting aside exists for the former at the time that the subsequent purchase is effected; and

3. Where the subsequent purchaser effects the subsequent purchase on the grounds of a gratuitous act or an act for valuable consideration that may be deemed identical to a gratuitous act, when the grounds for setting aside exists for the former.

(2) The provisions of Article 108 (2) shall apply mutatis mutandis to a case where the right to set aside is exercised pursuant to the provisions of paragraph (1) 3.

**Article 111 (Restrictions on Setting Aside Effected on Grounds of Knowledge of Payment Suspension)**

Any act that is performed one year prior to the date on which an application is filed for commencement of rehabilitation procedures shall not be set aside on the grounds of knowledge of the fact that the payment is suspended.

**Article 112 (Period for Exercise of Right to Set Aside)**

The right to set aside shall not be exercised when 2 years lapse from the date on which rehabilitation procedures commence. The same shall apply to a case where 10 years lapse from the date on which an act provided for in any subparagraph of Article 100 (1) is performed.

**Article 113 (Stay of Proceedings Filed by Creditors for Revocation)**

(1) When a lawsuit that is filed by any rehabilitation creditor pursuant to the provisions of Article 406 (1) of the Civil Act and a lawsuit for avoidance filed according to bankruptcy procedures are pending at the time that rehabilitation procedures commence, the proceedings thereof shall be stayed.

(2) The provisions of Article 59 (2) through (5) shall apply mutatis mutandis to the case of paragraph (1). In this case, "debtor" in paragraphs (2) and (3) of the same Article shall be deemed "rehabilitation creditor" or "trustee in bankruptcy."

**Article 114 (Disposition Taken to Preserve Properties of Corporate Directors, etc.)**

(1) When it is deemed necessary after a decision is made to commence the rehabilitation procedures for a corporate debtor, the court may take a disposition to preserve the assets of directors, etc. by its inherent jurisdiction or upon receiving an application filed by any custodian in order to preserve the right to claim investments and to claim compensation for damage based on the responsibilities of directors, etc. to the debtor's promoters, directors (including a deemed director under the provisions of Article 401-2 (1) of the Commercial Act), auditors, inspectors or liquidators (hereafter, in this Article through Article 116 referred to as "directors, etc.").

(2) When a custodian does not become aware of the fact that the claim referred to in the provisions of paragraph (1) exists, he shall file an application with the court for a disposition taken to preserve such claim pursuant to the provisions of paragraph (1).

(3) When it is deemed expedient, the court may take the preservation disposition referred to in the provisions of paragraph (1) by its inherent jurisdiction or upon receiving an application filed by the debtor (when any preservative custodian is selected and appointed, this refers to such preservative custodian) even before a decision is made to commence rehabilitation procedures.

(4) The court may alter or rescind the preservation disposition referred to in the provisions of paragraph (1) or (3) after hearing the opinion of the Custodial Committee.

(5) An immediate appeal may be filed against the preservation disposition referred to in the provisions of paragraph (1) or (3) and the decision referred to in the provisions of paragraph (4).

(6) The immediate appeal referred to in the provisions of paragraph (5) shall not have the effect of staying any execution.

(7) When a judgment is given on the preservation disposition referred to in the provisions of paragraph (1) or (3) or on the decision referred to in the provisions of paragraph (4) and on the immediate appeal filed against such decision, a written decision shall be delivered to each of the parties.

**Article 115 (Final Inspection Judgment on Right to Claim Compensation for Damage, etc.)**

(1) When it is deemed necessary after a decision is made to commence the rehabilitation procedures for a corporate debtor, the court may give a final and conclusive judgment by its inherent jurisdiction or upon receiving an application filed by any custodian, which calls for inspecting whether the right to claim investments by the directors, etc. or the right to claim compensation for damage based on the responsibility of directors exists and their contents.

(2) When a custodian becomes aware of the fact that the right of claim referred to in the provisions of paragraph (1) exists, he/she shall file an application with the court for the judgment referred to in the provisions of paragraph (1).

(3) When a custodian files the application referred to in the provisions of paragraph (1), he/she shall substantiate the factual grounds for such application.

(4) When the court commences the inspection and confirmation proce dures by its inherent jurisdiction, it shall decide on the purposes thereof.

(5) When the application referred to in the provisions of paragraph (1) is filed and a decision is made to commence the inspection and confirmation procedures referred to in the provisions of paragraph (4), the stay of prescription shall give rise to the presumption that a claim has been filed for a judgment.

(6) Any judgment that dismisses a judgment on the inspection confirmation referred to in the provisions of paragraph (1) and an application for confirming the inspection shall be granted by a decision accompanying the reasons thereof.

(7) When the court makes the decision referred to in the provisions of paragraph (6), it shall examine interested persons in advance.

(8) The inspection confirmation procedures (excluding any inspection confirmation procedures after a decision is made on the inspection confirmation) shall be completed when the rehabilitation procedures concluded.

(9) When a decision is made on the inspection confirmation, a written decision shall be delivered to each of the parties.

### Article 116 (Lawsuit Filed to Raise Objection)

(1) Anyone who is dissatisfied with a judgment on the inspection confirmation provided for in the provisions of Article 115 (1) may file a lawsuit against such judgement within one month from the date on which the judgment is delivered to him/her.

(2) The period referred to in the provisions of paragraph (1) shall be invariable.

(3) When persons who file the lawsuit referred to in the provisions of paragraph (1) are directors, etc., the custodians shall be adjoined as defendants and when custodians file the lawsuit, the directors shall be adjoined as defendants, respectively.

(4) The lawsuit referred to in the provisions of paragraph (1) shall be placed under the exclusive jurisdiction of the rehabilitation court. Arguments may be put forward only after one month lapses from the date on which a decision is delivered on such lawsuit.

(5) When multiple lawsuits are pending simultaneously, the court shall combine arguments.

(6) A judgment on the lawsuit referred to in the provisions of para graph (1) shall authorize, alter or rescind the decision of paragraph (1): Provided, That the same shall not apply to a case where the lawsuit is declined on the grounds of unlawfulness.

(7) The judgment that authorizes or alters a decision on the inspection confirmation shall have the same effect as the effect of the confirmation judgment that orders execution with respect to compulsory execution.

### Article 117 (Effect of Final Inspection Judgment)

When the lawsuit provided for in the provisions of Article 116 (1) is not filed within the period provided for in the provisions of the same paragraph, is withdrawn or is declined, the judgment on the inspection confirmation shall have the same effect as the effect of the confirmation judgment that orders the execution.

### Article 118 (Rehabilitation Claims)

Claims falling under any of the following subparagraphs shall be made rehabilitation claims:

1. Asset claims based on grounds that arise before rehabilitation procedures commence for the debtor;

2. Interest that accrues after rehabilitation procedures commence;

3. Compensatory damages and penalties incurred by non-performance after rehabilitation procedures commence; and

4. Costs incurred from participating in rehabilitation procedures.

### Article 119 (Options when Both Parties Fail to Fulfill Bilateral Contract)

(1) When the debtor and another party have yet to complete performance of their bilateral contract at the time rehabilitation procedures com mence, any custodian may cancel or terminate such bilateral contract and request the debtor to meet his/her obligations and require the other party to fulfill his/her obligations: Provided, That the custodian shall not cancel or terminate the bilateral contract after the meeting of

persons concerned held to deliberate on a draft rehabilitation plan or a decision is made to place the case in a written resolution of the meeting of persons concerned pursuant to the provisions of Article 240.

(2) In the case of paragraph (1), the other party may compel the custodian to cancel or terminate the bilateral contract or to definitive answer whether the latter intends to implement the bilateral contract. In this case, when the custodian fails to provide a definitive answer within 30 days from the date on which he/she is so compelled, the custodian shall be deemed to have relinquished right of the cancellation and the right of termination right referred to in the provisions of paragraph (1).

(3) The court may extend or shorten the period referred to in the provisions of paragraph (2) by its inherent jurisdiction or upon receiving an application filed by the custodian or the other party.

(4) The provisions of paragraphs (1) through (3) shall not apply to any collective agreement.

### Article 120 (Special Rules Governing Payment and Settlement System, etc.)

(1) Where rehabilitation procedures have commenced for any participant in the payment and settlement system designated by the Governor of the Bank of Korea after consulting with regard thereto with the Financial Services Commission in order to ensure the completedness of the payment and settlement system (hereafter in this paragraph refers to as "payment and settlement system"), the effects of transfer instructions or payment, execution thereof, settlement, deductions, deposit funds, the furnishing of security, disposition, appropriation and settlement involving the participant shall accrue under the conditions as prescribed by the person who operates the payment and settlement system, notwithstanding the provisions of this Act and they shall not be subject to cancelation, termination, revocation or setting aside. Specific matters concerning the payment and settlement system shall be prescribed by Presidential Decree. *<Amended by Act No. 8863, Feb. 29, 2008>*

(2) Where rehabilitation procedures have commenced for any participant in liquidation and settlement system operated by any person in charge of liquidation and settlement of securities and derivative financial transactions provided for in the Financial Investment Services and Capital Markets Act, and other Acts and subordinate statutes and other persons prescribed by Presidential Decree, the effects of the assumption of obligations, adjustment, deduction, deposit money, the furnishing of security, disposition, appropriation and settlement involving the participant shall occur under the conditions prescribed by the person who operates the liquidation and settlement system, notwithstanding the provisions of this Act and they shall not be subject to such cancellation, termination, revocation and negation. *<Amended by Act No. 8635, Aug. 3, 2007>*

(3) Where rehabilitation procedures have commenced for either of the parties who effects transactions (hereafter in this paragraph referred to as "qualified financial transaction") falling under each of the following subparagraphs based on a single contract (hereafter in this paragraph referred to as "base contract") that prescribes fundamental matters concerning certain financial transactions, the effects of the termination and the settlement of the qualified financial transaction shall accrue under the conditions prescribed by the parties in their base contract, notwithstanding the provisions of this Act and they shall not be subject to the cancellation, termination, revocation and negation, and transaction referred to in

subparagraph 4, and shall not be subject to the suspension order and the general prohibition order: Provided, That the same shall not apply to cases where the debtor and the other party conspire to effect any financial transaction with the aim of prejudicing any rehabilitation creditor or any rehabilitation secured creditor:

    1. Derivative financial transactions in forward deliveries, options, swaps, etc. that are prescribed by Presidential Decree and are performed on the prices and the interest rates of currencies, securities, equity shares, general goods, credit risk, energy, weather conditions, freights, frequencies and environment, or the index numbers and the indicators based thereon;

    2. Exchange transactions in goods, repurchase transactions in securities, financial transactions in securities and transactions in security calls;

    3. The combined transactions referred to in subparagraphs 1 through 2; and

    4. The furnishing, the disposal and the appropriation of security that are all involved in transactions referred to in subparagraphs 1 through 3.

**Article 121 (Cancellation and Termination of Bilateral Contracts Unfulfilled by Both Parties)**

(1) When any contract is canceled or terminated pursuant to the pro visions of Article 119, the other party may exercise his/her right as a rehabilitation creditor on the compensation for damage.

(2) Where any contract is cancelled or terminated pursuant to the provisions of paragraph (1), when any benefit in return that is paid to the debtor exists among the debtor's assets, the other party may claim the refund of such benefit in return and where such benefit in return doesn't exist among debtor's assets, the other party may exercise his/her right as a public-interest creditor to claim the refund of the value thereof.

**Article 122 (Bilateral Contract Aimed at Continued Payments)**

(1) The other party of a bilateral contract that requires the debtor to perform continued provision cannot not refuse to perform his/her obligations on the grounds that the debtor fails to repay any rehabilitation claim or any rehabilitation security right that accrues from the provision before an application is filed for commencing the rehabilitation procedures after such application is filed for commencing the rehabilitation procedures.

(2) The provisions of paragraph (1) shall not apply to any collective agreement.

**Article 123 (Takeover of Bills of Exchange, etc. After Commencement)**

(1) Where rehabilitation procedures commence for a debtor who is an issuer of bills of exchange or an endorser, when any payer or any interim payer performs the takeover or the payment thereof without knowledge of such fact, the payer or the interim payer may exercise his/her right on a claim that accrues therefrom as a rehabilitation creditor.

(2) The provisions of paragraph (1) shall apply mutatis mutandis to securities that are primarily used to pay for checks, money, goods or securities.

(3) The provisions of Article 68 shall apply mutatis mutandis to the application of paragraphs (1) and (2).

**Article 124 (Rental Contracts, etc)**

(1) When rehabilitation procedures commence for a debtor who is a renter, a disposition taken to make the prepayment of rent or to claim rent shall not claim its effect in relation to the rehabilitation procedures, with the exception of rent for the current term and the following term at the time that such rehabilitation procedures commence.

(2) Anyone who suffers damage on the grounds of his/her failure to claim its effect in relation to such rehabilitation procedures may exercise his/ her right to claim compensation for such damage in the capacity of a rehabilitation creditor.

(3) The provisions of paragraphs (1) and (2) shall apply mutatis mutandis to surface rights.

(4) Where rehabilitation procedures commence for a debtor who is a landlord, when the tenant falls under any of the following subparagraphs, the provisions of Article 119 shall not apply to the latter:

   1. When he/she meets the requirements for opposition provided for in the provisions of Article 3 (1) of the Housing Lease Protection Act; and

   2. When he/she meets the requirements for opposition provided for in the provisions of Article 3 of the Commercial Building Lease Protection Act.

### Article 125 (Mutual Accounts)

(1) A mutual account shall be closed, when the rehabilitation procedures commence for either of the parties thereto. In this case, either party may close the account and claim the payment of any balance.

(2) A claim that is held by the other party of the debtor under the provisions of paragraph (1) shall be made a rehabilitation claim.

### Article 126 (Debtor Liable to Entirely Fulfill Obligations Jointly with Other Persons)

(1) In case where multiple persons are liable to entirely fulfill each individual obligation, when the rehabilitation procedures commence for the whole or part of such persons, the creditors may exercise their rights on the total amount of the claims they hold at the time that such rehabilitation procedures commence as rehabilitation creditors in each rehabilitation procedure.

(2) In the case of paragraph (1), even when persons who are liable to entirely fulfill each individual obligation complete repayment and extinguish their obligations to any creditor (hereafter in this Article referred to as "repayment, etc.")after the rehabilitation procedures commence, such creditors may exercise their rights on the total amount of the claims they hold at the time that the rehabilitation procedures commence, save when the total amount of the claims are extinguished.

(3) In the case of paragraph (1), anyone who holds the right to claim reimbursement from the debtor, which is possibly expected to be exercised in the future, may participate in the rehabilitation procedures for the total amount of his/her claim for reimbursements: Provided, That the same shall not apply to a case where any creditor participates in the rehabilitation procedures for the total amount of the claim that he/she holds at the time that the rehabilitation procedures commence.

(4) Where any creditor participates in rehabilitation procedures pursuant to the provisions of paragraph (1) and anyone who holds the claim for reimbursement, who is possibly expected to exercise his/her right to claim such reimbursement from the debtor in future and the total amount of his/her claim is extinguished

on the grounds of repayment, etc. to the creditor after the rehabilitation procedures commence, the creditor may exercise the right that he/she holds within the scope of his/her right to claim reimbursements.

(5) The provisions of paragraphs (2) through (4) shall apply mutatis mutandis to a case where any third person who provides security for the debtor's obligations pays back such obligations to the creditors and holds the right to claim reimbursements, which he/she is expected to exercise on the obligations in the future.

### Article 127 (Obligations for Guarantee Borne By Debtor)

When rehabilitation procedures commence for a debtor who is a guarantor, any creditor may exercise his/her right over the total amount of the claim that he/she holds at the time that such rehabilitation procedures commence as a rehabilitation creditor.

### Article 128 (Participation in Rehabilitation Procedures for Persons Who Hold Unlimited Liabilities for Corporation's Obligations Where Rehabilitation Procedures Commence)

Where it is decided to commence rehabilitation procedures for persons who hold unlimited liabilities for a corporation's obligations, the creditors of the relevant corporation may participate in the rehabilitation procedures for the total amount of claims that they hold at the time that the rehabilitation procedures commence.

### Article 129 (Participation in Rehabilitation Procedures by Persons Who Hold Limited Liabilities for Corporation's Obligations Where Rehabilitation Procedures Commence)

(1) Where it is decided to commence rehabilitation procedures for employees who hold limited liabilities for a corporation's obligations, the creditors of the corporation shall be prohibited from participating in such rehabilitation procedures.

(2) In case where it is decided to commence the rehabilitation procedures for any corporation, the creditors of such corporation shall be prohibited from exercising their rights on employees who hold limited liabilities for the corporation's obligations.

### Article 130 (In the Case of Partial Guarantee)

Where multiple guarantors each bear part of the obligations, the provisions of Articles 126 and 127 shall apply mutatis mutandis to the part of the obligations they bear.

### Article 131 (Prohibition on Repayment of Rehabilitation Claims)

The act (excluding any exemption) of extinguishing rehabilitation claims by repaying them, receiving the repayment thereof, etc. without following the provisions of the rehabilitation plan shall not be performed after the rehabilitation procedures have commenced, save when the provisions of this Act especially prescribe otherwise: Provided, That the same shall not apply to a case where any custodian makes repayment after obtaining permission therefor from the court, and to a case that falls under the claim provided for in the provisons of Article 140 (2) and falls under any of the following subparagraphs:

1. Where a disposition for the recovery of arrears is taken, the disposal of any collateral property is performed or continuation thereof is permitted; and

2. Where a third party debtor arbitrarily transfers the debtor's claims (including claims that are affected by the effect of seizure) that are seized according to a disposition for the recovery of arrears to the person who holds the authority to make collections in the period during which the disposition for the recovery of arrears is suspended.

### Article 132 (Permission to Repay Rehabilitation Claims)

(1) When a smalland medium-sized businessman who is a transaction partner of the debtor is feared to face hardship in the continuation of his/her business unless he/she receives the repayment of a small-sum claim that he/she holds, the court may grant permission to pay back the whole or part of such small-sum claim to him/her upon receiving an application filed by any custodian, any preservative custodian or the debtor even before it decides to authorize a confirmation of the rehabilitation plan.

(2) When it is recognized that the debtor's rehabilitation is feared to face considerable hardship unless the rehabilitation claims are repaid, the court may permit the payment of the whole or part of such rehabilitation claims upon receiving an application filed by any custodian, any preservative custodian or the debtor even before it is decided to authorize a confirmation of the rehabilitation plan.

(3) When the court intends to grant the permission referred to in the provisions of paragraphs (1) and (2), it shall hear the opinions of the Custodial Committee and the creditors' consultative council and take into account all circumstances including current transactions between the debtor and the creditors, the debtor's current assets and the interests, etc. of interested persons.

### Article 133 (Rights of Rehabilitation Creditors)

(1) Every rehabilitation creditor may participate in rehabilitation procedures based on the claim that he/she holds.

(2) Every rehabilitation creditor shall hold a voting right on the claim provided for in the provisions of Articles 134 through 138 according to the amount that is calculated on the basis of those provisions and on other claims according to the amount of such other claims.

### Article 134 (Interest-Free Claim with Time Limit)

An interest-free claim, the deadline of which arrives after rehabilitation procedures commence shall be the amount obtained by deducting the interest from the amount of the claim after the total amount of the in terest, based on the statutory interest and the principal are calculated to be the amount of the claim at the time that the deadline arrives during the period ranging from the time the rehabilitation procedures commence to the deadline.

### Article 135 (Claim For Money Payable by Periodic Installments)

The provisions of Article 134 shall apply mutatis mutandis to any claim for money payable by periodic installments, the amount and the period of which are not confirmed.

### Article 136 (Interest-Free Claims of Indefinite Time Limit, etc.)

Interest-free claims, the time limits of which are indefinite shall be the amount that is appraised at the time that rehabilitation procedures commence. The same shall apply to a case where the amount of the claim for money payable by periodic installment or the period, for which are indefinite.

### Article 137 (Non-Monetary Claims, etc.)

When the purpose of any claim is not monetary, the amount of any claim is indefinite and any claim is set in foreign currency, such claim shall be the amount appraised as at the time that rehabilitation procedures commence.

### Article 138 (Conditional Claims and Future Claims)

(1) Conditional claims shall be the amount appraised as at the time rehabilitation procedures commence.

(2) The provisions of paragraph (1) shall apply mutatis mutandis to future claims that can be exercised to the debtor.

### Article 139 (Calculation of Period of Priority Right)

When any priority rights are held on the amount of claim within a certain period, such certain period shall be calculated retroactively from the time rehabilitation procedures commence.

### Article 140 (Reduction of and Exemption from Fines and Taxes, etc.)

(1) Details affecting the reduction and the exemption and the right to charge any fine, any fine for negligence, any criminal proceedings costs, any additional levy and any claim for the fine for negligence, shall not be prescribed in the rehabilitation plan.

(2) When details concerning claims, whose collection is deferred for not more than 3 years (including claims that are collectible according to the example of a disposition taken to collect national taxes, and their collection priority order takes precedence over general rehabilitation claims), which are collectable under the National Tax Collection Act or the Framework Act on Local Taxes and the deferment liquidating assets according to a disposition for the recovery of arrears are prescribed in the rehabilitation plan, the opinions of persons who are authorized to collect taxes shall be heard. *<Amended by Act No. 10219, Mar. 31, 2010>*

(3) When details concerning the deferment of the collection of the claims referred to in the provisions of paragraph (2) for the period of not less than 3 years, details concerning the deferment of liquidating assets according to a disposition for the recovery of arrears, or details affecting the succession of obligations, the reduction and the exemption of taxes and other rights are prescribed in the rehabilitation plan, agreement shall be obtained from the persons who hold the authority to collect such claims.

(4) The persons who hold the authority to collect the claims referred to in the provisions of paragraph (2) may provide the agreement referred to in the provisions of paragraph (3).

(5) The prescription shall not proceed during the period in which the collection is deferred pursuant to the provisions of paragraphs (2) and (3) and the liquidation of assets is deferred on the grounds of the disposition for the recovery of arrears.

### Article 141 (Rights of Rehabilitation Secured Creditors)

(1) Rehabilitation claims or claims on assets of persons, other than the debtor, both of which accrue from causes before the rehabilitation procedures commence and are secured by any lien, any pledge, any mortgage, any right to collateral, any right of provisional registered security, any security right under the Act on Security over Movable Property, Claims, etc., any rental right or any preferential privilege shall be

made a rehabilitation security right: Provided. That any interest or compensation for damage and any claim for penalties that are caused by the failure to fulfill obligations shall be limited to compensation for damage and claims for the penalties caused prior to the date on which a decision is made to commence rehabilitation procedures. *<Amended by Act No. 10366, Jun. 10, 2010>*

(2) The provisions of Articles 126 through 131, and 139 shall apply mutatis mutandis to rehabilitation security rights.

(3) Any rehabilitation secured creditor may participate in the rehabilitation procedures based on his/her interest in rehabilitation security rights.

(4) Any rehabilitation secured creditor may participate in the rehabili tation procedures as a rehabilitation creditor on the portion in excess of the value (when any priority security right exists, this refers to the amount obtained by deducting the amount of the claim secured as such priority security right from the value that is the object of the security right; hereafter in this Article the same shall apply) that is the object of the security right among his/her claimed amount.

(5) Each rehabilitation secured creditor shall hold voting rights in proportion to the value of the security right's purpose: Provided, That when the amount of a secured claim is less than the value of the security right's purpose, each rehabilitation secured creditor shall hold voting rights in proportion to the amount of the secured claim.

(6) The provisions of Articles 133 (2), and 134 through 138 shall apply mutatis mutandis to the voting rights of every rehabilitation secured creditor.

## Article 142 (Proxy Commissioners)

(1) Rehabilitation creditors, rehabilitation secured creditors, shareholders and equity right holders may individually or jointly select and appoint one or multiple proxies commissioners.

(2) The authority of every proxy shall be attested to in writing.

(3) Proxies may perform every act in rehabilitation procedures for rehabilitation creditors, rehabilitation secured creditors, shareholders and equity right holders who select and appoint them.

(4) Where there are several proxies, they shall exercise their authority jointly. However wishes as expressed by any third person may be performed by anyone of them.

(5) When any proxy exercises his/her authority in a manner that is deemed grossly unfair, the court may revoke the permission referred to in the provisions of paragraph (1).

(6) Any rehabilitation creditor, any rehabilitation secured creditor, any shareholder and any equity right holder shall, when they dismiss any proxy, report without delay such fact to the court.

## Article 143 (Trustee Companies)

(1) Every trustee company provided for in the provisions of the Secured Bond Trust Act may perform all acts involving the report of rehabilitation claims or rehabilitation security rights, the exercise of its voting right and other rehabilitation procedures for all of the debenture holders according to a resolution passed at a meeting of the debenture holders.

(2) When any trustee company performs the acts referred to in the provisions of paragraph (1) for all of the debenture holders, it need not indicate each of such debenture holders.

### Article 144 (Right of Setoff)

(1) Where any rehabilitation creditor or any rehabilitation secured creditor bears obligations for the debtor at the time that rehabilitation procedures commence, when both of the claims and the obligations can be offset against each other prior to the expiration of the reporting period, the relevant rehabilitation creditor or the relevant rehabilitation secured creditor may perform such setoff without resorting to the rehabilitation procedures only within such reporting period. The same shall apply to a case where the obligations are time-fixed.

(2) The rent and the obligation of the current term and the following term after the rehabilitation procedures of any rehabilitation creditor and any rehabilitation secured creditor commence may be offset against each other pursuant to the provisions of paragraph (1): Provided, That when there is any security deposit, any rent and any obligation may be offset against each other thereafter.

(3) The provisions of paragraph (2) shall apply mutatis mutandis to land rents.

### Article 145 (Prohibition on Setoff)

In cases falling under any of the following subparagraphs, the setoff shall be prohibited from being performed:

1. Where any rehabilitation creditor or any rehabilitation secured creditor bears obligations for the debtor after the rehabilitation procedures commence;

2. Where any rehabilitation creditor or any rehabilitation secured creditor bears obligations for the debtor with knowledge of the fact that an application is filed for commencing rehabilitation procedures or a petition of bankruptcy is filed: Provided, That the same shall not apply to the instances falling under any of the following items:

    (a) When such obligations are borne on grounds prescribed by Acts;

    (b) When such obligations that are borne on grounds that accrue before any rehabilitation creditor or any rehabilitation secured creditor becomes aware of the fact that the payment is suspended, an application is filed for commencement of rehabilitation procedures or a petition of bankruptcy is filed; and

    (c) When such obligations are borne on grounds that arise not more than one year prior to the earliest of the time when rehabilitation procedures commence, and the time when bankruptcy is declared;

3. When debtors of the debtor, for whom rehabilitation procedures commence acquires any rehabilitation claim or any rehabilitation security right that is held by any other person after such rehabilitation procedures commence; and

4. When debtors of the debtor, for whom rehabilitation procedures commence acquires any rehabilitation claim or any rehabilitation security right with knowledge of the fact that payment is suspended or a petition of bankruptcy is filed: Provided, That the same shall not apply to the time when such act falls under any item in subparagraph 2.

**Article 146 (Rights of Shareholders and Equity Right Holders)**

(1) Every shareholder and every equity right holder may participate in rehabilitation procedures with the shares and the equity shares that he/ she holds.

(2) Every shareholder and every equity right holder shall hold voting rights in proportion to the number or amount of shares or equity shares he/she holds.

(3) When the debtor's total obligations exceed his/her total assets at the time that rehabilitation procedures commence, shareholders and equity right holders shall not have any voting rights: Provided, That the same shall not apply to a case where the total amount of the debtor's assets is in excess of the total amount of his/her obligations at the time that a draft plan for changing the rehabilitation plan provided for in the provisions of Article 282 is submitted.

(4) When the debtor's total obligations exceed his/her total assets at the time that a draft plan for amending the rehabilitation plan is submitted pursuant to the provisions of Article 282, shareholders and equity right holders shall not have any voting rights on such draft plan for amending the rehabilitation plan.

**Article 147 (List of Rehabilitation Creditors, Rehabilitation Secured Creditors, Shareholders and Equity Right Holders)**

(1) Every custodian shall prepare a list of rehabilitation creditors, the list of rehabilitation secured creditors, and the list of shareholders and equity right holders (hereinafter referred to as the "lists" in this Part) and submit them within the period provided for in the provisions of Article 50 (1) 2.

(2) The matters falling under each of the following subparagraphs shall be noted in the lists:

    1. List of rehabilitation creditors:

        (a) The names and domiciles of rehabilitation creditors;

        (b) The details of and grounds for such rehabilitation claims;

        (c) The amount of voting rights; and

        (d) When there are claims that have general priority rights, the gist thereof;

    2. List of rehabilitation secured creditors:

        (a) The names and domiciles of rehabilitation secured creditors;

        (b) The details of, and grounds for such rehabilitation security rights, the purposes for the security rights, their values and when anyone other than the debtor for whom the rehabilitation procedures commence is a debtor, his/her name and domicile; and

        (c) The amount of voting rights; and

    3. List of shareholders and equity right holders:

        (a) The names and domiciles of shareholders and equity right holders; and

        (b) The kinds and the number of shares or equity shares.

(3) The court shall make it possible for interested persons to inspect the lists during the reporting period.

(4) Any custodian may alter or correct the matters noted on the lists after obtaining permission therefor from the court under the conditions prescribed by the rules of the Supreme Court by the last day of the reporting period.

**Article 148 (Report on Rehabilitation Claims)**

(1) Any rehabilitation creditor who intends to participate in the rehabilitation procedures shall report the matters falling under each of the following subpragraphs to the court and submit evidential documents thereof, or certified copies or abridged copies of such evidential documents to the court within the reporting period:

1. His/her name and domicile;

2. The details and grounds for his/her rehabilitation claim;

3. The amount of his/her voting rights; and

4. When his/her claim holds a general priority right, the gist thereof.

(2) Any rehabilitation creditor shall report separately the portion of the general priority right among his/her rehabilitation claims.

(3) When any lawsuit is pending at the time that the rehabilitation procedures commence for rehabilitation claims, the relevant rehabilitation creditor shall report the court, parties, the case name and the case number, other than the matters that are prescribed in the provisions of paragraphs (1) and (2).

**Article 149 (Report on Rehabilitation Security Rights)**

(1) Any rehabilitation secured creditor who intends to participate in rehabilitation procedures shall report the matters falling under each of the following subparagraphs to the court and submit evidential documents thereof, or certified copies or abridged copies of such documents to the court within the report period:

1. His/her name and domicile;

2. The details of, and grounds for his/her rehabilitation security right;

3. The purpose for and value of his/her rehabilitation security right;

4. The amount of his/her voting rights; and

5. When anyone is a debtor, other than the debtor for whom the rehabilitation procedures commence, the former's name and domicile.

(2) The provisions of Article 148 (3) shall apply mutatis mutandis to cases under paragraph (1).

**Article 150 (Report on Shares and Equity Shares)**

(1) Any shareholder or any equity right holder who intends to participate in rehabilitation procedures shall report the matters falling under each of the following subparagraphs to the court and submit his/her share certificate or his/her equity share certificate and evidential documents or certified copies or abridged copies thereof to the court:

1. His/her name and domicile; and

2. The kinds, the number or the amount of his/her shares or his/her equity shares.

(2) The court may order the list of shareholders to be closed to the public for a fixed period. In this case, the fixed period shall not exceed 2 months.

(3) The provisions of Article 148 (3) shall apply mutatis mutandis to cases under paragraph (1).

**Article 151 (Legal Fiction of Reporting)**

Rehabilitation claims, rehabilitation security rights, shares or equity shares that are noted on the list shall be deemed to have been reported pursuant to the provisions of Articles 148 through 150.

**Article 152 (Post-Reporting Supplementations)**

(1) When any rehabilitation creditor or any rehabilitation secured creditor fails to make the report within the reporting period on grounds for which he/she has no responsibility, he/she may supplement such report within one month after such grounds cease to be relevant.

(2) The period referred to in the provisions of paragraph (1) shall be an invariable period.

(3) The report referred to in the provisions of paragraph (1) shall not be made in instances falling under either of the following subparagraphs:

1. After a meeting of persons concerned that is held to examine a draft rehabilitation plan comes to a close; or

2. After a decision is made to refer a draft rehabilitation plan to a written resolution provided for in the provisions of Article 240.

(4) The provisions of paragraphs (1) through (3) shall apply mutatis mutandis to cases where any rehabilitation creditor or any rehabilitation secured creditor alters reported matters so as to cease loses of profits to any other rehabilitation creditor or any other rehabilitation secured creditor on the grounds for which the rehabilitation creditor or the rehabilitation secured creditor has no responsibility.

**Article 153 (Report on Rehabilitation Claims, etc. after Lapse of Reporting Period)**

(1) With respect to any rehabilitation claim and any rehabilitation security right that accrue after the lapse of the reporting period, a report thereon shall be made within one month from the date on which such claim and such right accrue.

(2) The provisions of Article 152 (2) through (4) shall apply mutatis mutandis to the report referred to in the provisions of paragraph (1).

**Article 154 (Change of Names)**

(1) Anyone who has acquired any rehabilitation claim or any rehabilitation security right that is entered in the list or is reported may change his/her reported name even after the lapse of the reporting period.

(2) Anyone who intends to change his/her name pursuant to the provisions of paragraph (1) shall report the matters falling under both of the following subparagraphs to the court or submit an evidential document or a certified copy or an abridged copy thereof to the court:

1. The name and domicile; and

2. The right that he/she acquires, the date on which he/she acquires it and the cause for acquiring it.

**Article 155 (Additional Report on Shares and Equity Shares)**

(1) When it is deemed appropriate, the court may reset a reporting period after the lapse of a reporting period in order to allow for additional reports on shares or equity shares. In this case, the court shall publish the gist thereof and then deliver a written statement in which such gist is entered to the person falling under each of the following subparagraphs:

    1. The custodian;

    2. The debtor; and

    3. Any person who fails to make a report as a shareholder or an equity right holder with the knowledge of such report.

(2) The provisions of Articles 162 through 165 shall apply mutatis mutandis to cases under paragraph (1).

**Article 156 (Report on Fines and Taxes, etc.)**

(1) Anyone who holds claims provided for in the provisions of Article 140 (1) and (2) shall promptly report to the court the amount of such claims, the cause for his/her holding such claim and the details of his/her security rights.

(2) The provisions of Article 167 (1) shall apply mutatis mutandis to claims reported pursuant to the provisions of paragraph (1).

**Article 157 (Dissatisfaction with Fine, etc. Prior to Commencement of Rehabilitation Procedures)**

(1) When the cause of any claim that is reported pursuant to the provisions of paragraph (1) is a disposition for which an administrative trial, a lawsuit or an appeal is permitted, any custodian may file an application for appeal in a manner that the debtor is entitled to with regard to his/her claim.

(2) The provisions of Articles 172, 175 and 176 (1) shall apply mutatis mutandis to the application for appeal.

**Article 158 (Table of Rehabilitation Creditors, Rehabilitation Secured Creditors and Shareholders and Equity Right Holders)**

The clerk, etc, of the court shall prepare a table of rehabilitation creditors, a table of rehabilitation secured creditors and a table of shareholders and equity right holders based on rehabilitation claims, rehabilitation security rights, shares or equity shares that are recorded on the list or reported, categorize them according to the nature of their rights and then the matters falling under each of the following subparagraphs in such tables:

    1. Table of rehabilitation creditors:

        (a) The names and domiciles of rehabilitation creditors;

        (b) The contents and grounds for rehabilitations claims;

        (c) The amount of voting rights; and

        (d) When claims have general priority rights, the gist thereof;

    2. Table of rehabilitation secured creditor:

        (a) The names and domiciles of rehabilitation secured creditors;

        (b) The details of, and grounds for rehabilitation security rights, the reasons for and values of the security rights, and when any person who is a debtor other, than the debtor, his/her name and domicile; and

        (c) The amount of voting rights; and

    3. Table of shareholders and equity right holders:

(a) The names and domiciles of shareholders and equity right holders; and

(b) The kinds, the number or amount of shares or equity shares.

**Article 159 (Delivery of Certified Copies)**

The clerk, etc. of the court shall deliver to custodians the certified copies of the table of rehabilitation creditors, the table of rehabilitation secured creditors and the table of shareholders and equity right holders.

**Article 160 (Perusal of Documents During Inspection Period)**

The documents falling under each of the following subparagraphs shall be held in the court for inspection by interested persons during the inspection period:

1. The catalog;

2. Documents concerning reports and objections; and

3. The table of rehabilitation creditors, the table of rehabilitation secured creditors, and the table of shareholders and equity right holders.

**Article 161 (Objections, etc. Raised to Rehabilitation Claims and Rehabilitation Security Rights)**

(1) Anyone falling under any of the following subparagraphs may raise a written objection to the court with respect to any rehabilitation claim and any rehabilitation security right entered in the list or reported within the inspection period:

1. The custodian;

2. The debtor; and

3. Any rehabilitation creditor, any rehabilitation secured creditor, any shareholder and any equity right holder who are all entered in the list or are reported.

(2) When has been decided to alter the inspection period, the court shall deliver a written decision to each of the persons referred to in the provisions of paragraph (1).

(3) The delivery referred to in the provisions of paragraph (2) may be made in the same manner that any document is mailed.

**Article 162 (Inspection of Rehabilitation Claims and Rehabilitation Security Rights Reported after Reporting Period)**

The court shall set a special date (hereinafter referred to as the "special inspection date") for inspecting any rehabilitation claim and any rehabilitation security right that are all reported pursuant to the provisions of Articles 152 (1) and 153 (1). In this case, expenses incurred to conduct such inspection shall be borne by the relevant rehabilitation creditor or the relevant rehabilitation secured creditor.

**Article 163 (Delivering Notification of Special Inspection Date)**

When the court decides to set the special inspection date, it shall deliver a written decision to the persons falling under each of the following subparagraphs:

1. The custodian;

2. The debtor; and

3. The rehabilitation creditor, the rehabilitation secured creditor, the shareholder and the equity right holder who are all recorded on the list or are reported.

**Article 164 (Presence of Persons Concerned)**

(1) The representative of an individual debtor or the representative of the non-individual debtor shall be present on the special inspection date to state his/her opinion: Provided, That he/she may cause his/her agent to be present on the special inspection date when justifiable grounds therefor exist.

(2) Any rehabilitation creditor, any rehabilitation secured creditor, any shareholder, any equity right holder or his/her agent may be present on the special inspection date to raise objections to any other rehabilitation claim or any other rehabilitation security right.

(3) The agent referred to in the provisions of paragraphs (1) and (2) shall submit a written statement attesting to the authority for his/her agency.

**Article 165 (Presence of Custodians)**

The inspection of any rehabilitation claim and any rehabilitation security right shall not be conducted without the presence of the relevant custodian on the special inspection date.

**Article 166 (Confirmation of Rehabilitation Claims and Rehabilitation Security Rights, etc.)**

When no objection is raised by any custodian, any rehabilitation creditor, any rehabilitation secured creditor, any shareholder and any equity right holder during the inspection period or on the special inspection date, the features of the rights and the amount of the voting rights falling under both of the following subparagraphs shall be confirmed, and with respect to any claim with the priority rights, its priority right shall be confirmed:

1. Rehabilitation claims and rehabilitation security rights that are reported; and

2. When any rehabilitation claim or any rehabilitation security right that is reported is nonexistent, the rehabilitation claim or the rehabili tation security right that is recorded on the list submitted by any custodian.

**Article 167 (Recording on Table of Rehabilitation Creditors and Table of Rehabilitation Secured Creditors)**

(1) The clerk, etc. of the court shall record the results of the inspection of rehabilitation claims and rehabilitation security rights on the table of rehabilitation creditors and the table of rehabilitation secured creditors. The same shall apply to any objections raised by debtors.

(2) The clerk, etc. of the court shall record the gist of confirmation in the evidential documents of the rehabilitation claims and the rehabilitation security rights that are confirmed and affix the court seal to each of them.

(3) The clerk, etc. of the court shall, upon receiving a claim filed by any rehabilitation creditor or any rehabilitation secured creditor, deliver to him/her an abridged copy of the table of rehabilitation creditors or the table of rehabilitation secured creditors on their rights.

**Article 168 (Effect of Entries)**

When any rehabilitation claim and any rehabilitation security right that are confirmed are recorded in the table of rehabilitation creditors and the table of rehabilitation secured creditors, such entries shall have the same effect as the effect of a final judgment on all of them recorded on the tables.

**Article 169 (Notification of Objection)**

When an objection to any rehabilitation claim or any rehabilitation security right is raised, the court shall notify the rightful claimants of such objection.

**Article 170 (Final Judgement on Inspection of Rehabilitation Claims and Rehabilitation Security Rights)**

(1) When any custodian, any rehabilitation creditor, any rehabilitation secured creditor, any shareholder or any equity right holder raises an objection to any rehabilitation claim and any rehabilitation security right that are recorded on the list or reported, the rightful claimant who holds the rehabilitation claim or the rehabilitation security right (hereinafter referred to as an "objection to claims" in this Part) may file an application with the court for a final claim inspection judgment (hereinafter referred to in this Part as a "final claim inspection judgment ") for the confirmation of his/her claim and rights with all of the objectors as the other parties: Provided, That the same shall not apply to cases under Articles 172 and 174.

(2) The application referred to in the main sentence of paragraph (1) shall be filed within one month from the last day of the inspection period or from the special inspection date.

(3) The final claim inspection judgment shall determine whether claims to which any objection is raised exist and the contents of such objection.

(4) When the court gives the final claim inspection judgment, it shall examine objectors.

(5) The court shall deliver a written decision on the final claim inspection judgment to each of the parties.

**Article 171 (Appeal against Final Claim Inspection Judgment)**

(1) Anyone who is dissatisfied with a final claim inspection judgment may file an appeal against such final claim inspection judgment within one month from the date on which he/she receives service of the written judgment thereon.

(2) The appeal referred to in the provisions of paragraph (1) shall be placed under the exclusive jurisdiction of the rehabilitation court.

(3) When anyone who files the appeal referred to in the provisions of paragraph (1) is a rightful claimant who holds any claim to which the objection is raised, all of the objectors shall be adjoined as defendants and when he/she is an objector, the rehabilitation creditors or the rehabilitation secured creditors shall be adjoined as defendants.

(4) No arguments can be presented for the appeal referred to in the provisions of paragraph (1) until after the lapse of one month from the date on which the written decision is served.

(5) When multiple lawsuits are pending on the same claim to which an objection is raised, the court shall combine arguments therefor.

(6) With respect to the appeal referred to in the provisions of paragraph (1), unless the appeal is unlawful, the court shall grant the final claim inspection judgment or make a ruling to amend such final claim

judgment inspection.

**Article 172 (Taking Assignment of Lawsuit on Objection to Claims)**

(1) Where any lawsuit on claims to which an objection is raised is pending at the time that rehabilitation procedures commence, when any rehabilitation creditor or any rehabilitation secured creditor intends to have such claims confirmed, all of the objectors shall take over the litigation procedures as other parties of the lawsuit.

(2) The provisions of Articles 167 (3) and 170 (2) shall apply mutatis mutandis to any application that is filed for taking assignment of the litigation procedures.

**Article 173 (Restrictions on Assertions)**

Rehabilitation creditors or rehabilitation secured creditors may only assert matters that are recorded in the table of rehabilitation creditors and the table of rehabilitation secured creditors, which are pertain to the grounds and details of claims to which objections are raised in the final claim inspection judgment, in the lawsuit that is filed an appeal to the final claim inspection judgment provided for in the provisions of Article 171 (1) and the litigation procedures assignment of which is taken pursuant to the provisions of Article 172 (1).

**Article 174 (Objections Raised to Claims, etc. with Title Having Executory Power)**

(1) With respect to title with executory power or the final judgment among claims to which an objection is raised, an objector is asserting of objections thereto are limited to the litigation procedures that the debtor is permitted to take.

(2) Where a lawsuit on the rehabilitation claim or the rehabilitation security right referred to in the provisions of paragraph (1) is pending in the court at the time that rehabilitation procedures commence, when any objector intends to assert the objection provided for in the provisions of paragraph (1), the objector shall take assignment of the litigation procedures for the rehabilitation creditor or the rehabilitation secured creditor who holds the rehabilitation claim or the rehabilitation security right as the other party.

(3) The provisions of Article 170 (2) shall apply mutatis mutandis to the assertion of the objections referred to in the provisions of paragraph (1) or the taking of assignment provided for in the provisions of paragraph (2), and the provisions of Articles 171 (4) and (5) and 173 shall apply mutatis mutandis to paragraphs (1) and (2). In this case, "one month after the date on which the written decision is served" in Article 171 (4) shall be deemed "the last day of the inspection period involving the claim to which an objection is raised or the invariable period of one month from the special inspection date".

(4) Where the assertion of the objection provided for in the provisions of paragraph (1) is not made or the taking of assignment provided for in the provisions of paragraph (2) is not effected within the period provided for in the provisions of Article 170 (2) that are applied mutatis mutandis under the provisions of paragraph (3), when the objector is the rehabilitation creditor or the rehabilitation secured creditor, the objection provided for in the provisions of Article 161 (1) or 164 (2) shall be deemed nonexistent and when the objector is the custodian, it shall be deemed that the custodian recognizes the rehabilitation claim

or the rehabilitation security right.

**Article 175 (Record of Result of Lawsuit Concerning Confirmation of Rehabilitation Claims and Rehabilitation Security Rights)**

Upon the clerk, etc. of the court receiving an application filed by any custodian, any rehabilitation creditor or any rehabilitation secured creditor, record the results of the lawsuit (when an appeal to the final claim inspection judgment is not filed or is declined within the period provided for in the provisions of Article 171 (1), this refers to the contents of the judgment) of the confirmation of the rehabilitation claim or the rehabilitation security right in the table of rehabilitation creditors and the table of rehabilitation secured creditors.

**Article 176 (Effect of Judgment, etc. in Lawsuit Filed for Confirmation of Rehabilitation Claims and Rehabilitation Security Rights)**

(1) The judgment in the lawsuit filed for the confirmation of the rehabilitation claims and the rehabilitation security rights shall have effect on all of rehabilitation creditors, rehabilitation secured creditors, shareholders and equity right holders.

(2) When no appeal against the final claim inspection judgment is filed within the period provided for in the provisions of Article 171 (1) or is declined, the judgment shall have the same effect as that of the final judgment on all of the rehabilitation creditors, rehabilitation secured creditors, shareholders and equity right holders.

**Article 177 (Reimbursement of Legal Costs)**

When any profit accrues to the debtor's assets from the lawsuit (including the final claim inspection judgment) on confirmation of rehabilitation claims or rehabilitation security rights, any rehabilitation creditor, any rehabilitation secured creditors, any shareholder, any equity right holder may claim for reimbursement of the legal costs as public-interest creditors within the scope of such profit.

**Article 178 (Value of Subject Matter of Lawsuit Filed for Confirmation of Rehabilitation Claims or Rehabilitation Security Rights)**

The value of the subject matter of a lawsuit filed for the confirmation of any rehabilitation claim or any rehabilitation security right shall be determined by the rehabilitation court taking into account the estimated amount of the profits to accrue from the rehabilitation plan.

**Article 179 (Claims that Become Public-Interest Claims)**

(1) Claims falling under any of the following subparagraphs shall be made public-interest claims:
*<Amended by Act No. 8138, Dec. 30, 2006; Act No. 8829, Dec. 31, 2007; Act No. 9804, Oct. 21, 2009>*

1. Claims for expenses incurred in a judgment for joint profits of any rehabilitation creditor, any rehabilitation secured creditor, any shareholder and any equity right holder;

2. Claims for expenses incurred in performing the management of the debtor's business and assets and the disposal of his/her assets after the rehabilitation procedures commence;

3. Claims for expenses incurred in implementing the rehabilitation plan: Provided, That any expenses that incurred after the completion of the rehabilitation procedures shall be excluded;

4. Claims for any expenses, remuneration, compensation and special compensation provided for in the provisions of Articles 30 and 31;

5. Claims for funds borrowed by any custodian in order to manage the debtor's business and assets after the rehabilitation procedures commence and any claim that accrues from any other act;

6. Claims that accrue to the debtor from clerical work or unlawful gains after the rehabilitation procedures commence;

7. Claims held by other parties when any custodian fulfills obligations pursuant to the provisions of Article 119 (1);

8. Claims that accrue from the supply made by the other party of a bilateral contract that obliges the continued supply before the rehabilitation procedures commence after an application is filed for commencing them;

9. Tax that falls under any of the following items and the deadline for payment thereof has yet to arrive at the time rehabilitation procedures commence:

(a) Taxes withheld: Provided, That the tax imposed on any bonus that is deemed reverted to the representative pursuant to the provisions of Article 67 of the Corporate Tax Act shall be limited to tax collected at source;

(b) Value-added tax, individual consumption tax, and liquor tax;

(c) Education tax and special tax for agricultural and fishing villages, levied and collected according to the example of a disposition taken to impose and collect the main tax; and

(d) Local tax collected and paid by the person liable for the special collection;

10. The wages, severance pay and disaster compensation of the debtor's workers;

11. The right to claim reimbursement of the bailment moneys and the money spent to guarantee the identities of the debtor's workers, which accrue from causes arising before rehabilitation procedures com mence;

12. The borrowing of funds and procurement of materials that are performed by the debtor or any preservative custodian after obtaining permission therefor from the court after an application is filed for commencement of rehabilitation procedures and prior to the commencement of rehabilitation procedures and other claims that accrue from acts that are inevitable in continuing the debtor's business;

13. Expenses determined by the court as necessary for the creditors' consultative council to carry out its activities pursuant to the provisions of Article 21 (3); and

14. Other expenses to be incurred for debtors, other than those provided for in the provisions of subparagraphs 1 through 13.

(2) In granting permission for borrowing of funds under paragraph (1) 5 and 12, the court shall hear opinions of interested parties. *<Newly Inserted by Act No. 9804, Oct. 21, 2009>*

**Article 180 (Repayment, etc. of Public-Interest Claims)**

(1) Public-interest claims shall be reimbursed frequently without restorting to rehabilitation procedures.

(2) Public-interest claims shall take precedence over rehabilitation claims and rehabilitation security rights in the repayment thereof.

(3) In any of the following cases, the court may, upon receiving an application filed by any custodian or exofficio, order the suspension or any cancellation of any compulsory execution performed against, or any provisional seizure of the debtor's assets based on public-interest claims, by requiring or not requiring security to be furnished:

   1. When the compulsory execution or the provisional seizure significantly impedes rehabilitation and the debtor has other assets that may readily be liquidated;

   2. When it becomes clear that the total value of the debtor's assets is insufficient to repay the total amount of the public-interest claims.

(4) The court may modify or rescind the suspension order referred to in the provisions of paragraph (3).

(5) An immediate appeal may be filed against the suspension or revocation order referred to in the provisions of paragraph (3) and the decision referred to in the provisions of paragraph (4).

(6) The immediate appeal referred to in the provisions of paragraph (5) shall not have the effect of suspending any execution.

(7) When it becomes clear that the total value of debtor's assets is insufficient to repay the total amount of the public-interest claim, the claim for funds, among claims under Article 179 (1) 5 and 12, borrowed with permission by the court in order to continue the debtor's business shall preferentially be repaid, and other public-interest claims shall be repaid according to the ratio of the amount of claim that is not yet repaid, notwithstanding the priority right of the public-interest claims prescribed by Acts and subordinate statutes: Provided, That this shall not affect the effects of liens, pledge rights, mortgages, security rights under the Act on Security over Movable Property, Claims, etc., and special priority rights for public-interest claims.

*<Amended by Act No. 9804, Oct. 21, 2009; Act No. 10366, Jun. 10, 2010>*

## Article 181 (Other Claims after Commencement)

(1) With respect to any property claim that accrues from causes arising after rehabilitation procedures commence, which is not a public-interest claim, a rehabilitation claim or a rehabilitation security right (hereinafter referred to as "other claims after the commencement"), the act of repaying such claim, taking the repayment of such claim or extinguishing such claim (excluding the act of excluding) shall be prohibited from being performed from the time when the rehabilitation procedures commence to the time when the repayment period has ended (referring to the time when the rehabilitation procedures are completed where the rehabilitation procedures are completed before it is decided to grant an authorization for the rehabilitation plan and the time when the repayment is completed where repayment based on the rehabilitation plan is completed before the period has expired).

(2) No application may be filed for any auction with the aim of compulsorily executing, provisionally seizing, provisionally disposing of the debtor's assets or exercising security rights against the debtor's assets based on other claims after the rehabilitation procedures commence during the period referred to in the provisions of paragraph (1).

**Article 182 (Notification of Date)**

(1) The court shall notify persons falling under each of the following subparagraphs of the date on which the meeting of persons concerned is to be held:

1. Custodians;

2. Inspectors;

3. The debtor;

4. Rehabilitation creditors, rehabilitation secured creditors, shareholders and equity right holders who are recorded on the list or are reported; and

5. When any person bears any obligation or furnishes any security for the rehabilitation, such person.

(2) Notwithstanding the provisions of paragraph (1), the court may not notify any rehabilitation creditor, rehabilitation secured creditor, shareholder and equity right holder who is prohibited from exercising his voting rights as of the date on which the meeting of persons concerned is held. In the case of the first meeting of persons concerned, the court may not notify any person who takes the delivery pursuant to the provisions of Article 51 (2) of the date on which the meeting of persons concerned is held.

**Article 183 (Notification of Date)**

The court shall notify the administrative agency in charge of supervising the business of the debtor who is a stock company, the Minster of Justice and the Financial Services Commission of the date on which the meeting of persons concerned is to be held. <*Amended by Act No. 8863, Feb. 29, 2008*>

**Article 184 (Presiding over by Court)**

The court shall preside over meetings of persons concerned.

**Article 185 (Announcement of Date and Purposes)**

(1) The court shall announce the date on which the meeting of persons concerned is to be held and the agenda of such meeting.

(2) When a declaration is made on the postponement or the continuation of the meeting of persons concerned, the delivery and the announcement thereof may be omitted.

**Article 186 (Combination of Date for Meeting of Persons Concerned and Special Inspection Date)**

When it is deemed appropriate, the court may combine the date of the meeting of persons concerned and the special inspection date ex officio or upon receiving an application filed by the custodian therefor.

**Article 187 (Objection against Voting Rights)**

Anyone falling under following subparagraphs may raise an objection to voting right of any rehabilitation creditor, rehabilitation secured creditor, shareholder and any equity right holder at the meeting of persons con cerned: Provided, That the same shall not apply to voting right of any rehabilitation creditor or any rehabilitation secured creditor who holds the rehabilitation claim or the rehabilitation security right confirmed in the inspection procedures provided for in the provisions of Section 3 of Chapter IV of this Part:

1. The custodian; and

2. Any rehabilitation creditor, rehabilitation secured creditor, shareholder and any equity right holder who are all recorded on the list or are reported.

**Article 188 (Exercise of Voting Rights)**

(1) Every rehabilitation creditor or every rehabilitation secured creditor who holds the rehabilitation claim or the rehabilitation security right that is confirmed may exercise his/her voting rights according to the amount thereof or the number thereof that is confirmed and every shareholder or equity right holder who holds the voting rights to which no objection is raised may exercise those voting rights according to the amount or the number recorded on the list or are reported.

(2) With respect to any voting rights to which an objection is raised, the court shall determine whether to permit the exercise of the voting rights and the amount or the number on which the voting rights is permitted to be exercised.

(3) The court may amend the determination referred to in the provisions of paragraph (2) at any time upon receiving an application filed by interested persons or by its inherent jurisdiction.

(4) The determination referred to in the provisions of paragraphs (2) and (3) need not be delivered.

**Article 189 (Exercise of Voting Right in Descent)**

(1) Any voting right holder may exercise his/her voting right in descent.

(2) In cases under paragraph (1), every holder of voting rights shall report in writing the gist thereof to the court at least 7 days prior to the meeting of persons concerned is held.

**Article 190 (Exclusion of Unjust Voting Right Holders)**

(1) When it is deemed that any rehabilitation creditor, rehabilitation secured creditor, shareholder and equity right holder has acquired his/her rights for the purpose of making unfair gains, including the giving and taking of asset gains with respect to any resolution in light of the time at which the right is acquired, the price therefor is paid and of other circumstances, the court may prohibit him/her from exercising his/her voting rights.

(2) The court shall examine the relevant holder of voting rights before it takes the disposition pursuant to the provisions of paragraph (1).

**Article 191 (Persons Prohibited from Exercising His/Her Voting Rights)**

Anyone falling under any of the following subparagraphs shall be prohibited from exercising his/her voting rights:

1. Anyone whose rights are not affected by the rehabilitation plan;

2. Anyone who holds a claim provided for in the provisions of Article 140 (1) and (2);

3. Anyone who holds the claim provided for in the provisions of subparagraphs 2 through 4 of Article 118;

4. Anyone who is prohibited from exercising his/her voting rights pursuant to the provisions of Articles 188 and 190; and

5. Anyone who is protected pursuant to the provisions of Article 244 (2).

**Article 192 (Exercise of Voting Rights by Proxy)**

(1) Any rehabilitation creditor, rehabilitation secured creditor, shareholder and any equity right holder may cause his/her agent to exercise those voting rights. In this case, the agent shall submit a written statement attesting to his/her agency authority.

(2) The provisions of Article 189 (2) shall apply mutatis mutandis to cases where the agent fails to exercises the delegated voting right as delegated.

**Article 193 (Contents of Rehabilitation Plan)**

(1) The matters falling under of the following subparagraphs shall be prescribed in the rehabilitation plan:

   1. Any change to all or part of the rights of any rehabilitation creditor, rehabilitation secured creditor, shareholder or any equity right holder;

   2. The repayment of public-interest claims;

   3. Means of raising fund to repay the debtor's obligations;

   4. The purpose for using profits, that exceed the amount anticipated in the rehabilitation plan; and

   5. When any other claims are known after the rehabilitation procedures commence, the details thereof.

(2) The matters falling under any of the following subparagraphs may be prescribed in the rehabilitation plan:

   1. The transfer of any business or any assets, any investment or any rent and the commission of any corporate governance;

   2. Any amendment of the articles of incorporation;

   3. Any change in directors and the chief executive officer. (When the debtor is not a stock company, anyone who holds the authority to represent the debtor shall be included);

   4. A decrease in the capital;

   5. The issuance of new shares or bonds;

   6. The all-inclusive exchange, transfer, merger, split and merger by split of shares;

   7. Dissolution;

   8. The incorporation of a new company; and

   9. Other matters necessary for the rehabilitation.

(3) When an agreement is reached among all or some creditors on the repayment order of claims that they hold by the date preceding the date on which the first meeting of persons concerned is held, any provisions shall not be prescribed against claims repayment order for which is agreed within a scope so as not to damage other creditors under the rehabilitation plan. In this case, the creditors shall submit data attesting to their agreement to the court by the date preceding the date on which the first meeting of persons concerned is held.

**Article 194 (Rights of Rehabilitation Creditors, etc.)**

(1) When any change is made in the rights of any rehabilitation creditor, rehabilitation secured creditor, shareholder or any equity right holder, such change in rights shall be expressly stated in the rehabilitation plan and the details of the altered rights shall be prescribed after the change thereof.

(2) When the rights of a rehabilitation creditor, a rehabilitation secured creditor, a shareholder or an equity right holder are not affected by the rehabilitation plan, the rights of such person shall be explicitly stated in the rehabilitation plan.

### Article 195 (Deadline for Obligations)

Where any obligations are borne and the deadline for any obligations are postponed according to the rehabilitation plan, the time limit of such obligations, when such obligations are secured, shall not exceed the period of the existence of the secured assets. When no security exists or it is not possible to determine on the period of the existence of such security, the period of existence thereof shall not exceed 10 years: Provided, That the same shall not apply to cases where bonds are issued under the conditions prescribed by the rehabilitation plan.

### Article 196 (Furnishing of Security and Bearing of Obligations)

(1) When the debtor or anyone other than the debtor furnishes any security for the rehabilitation, the person who furnishes such security shall be expressly mentioned in the rehabilitation plan and the details of such security shall be prescribed in the rehabilitation plan.

(2) When anyone other than the debtor assumes obligations, becomes a guarantor thereof and bears obligations, etc, for the rehabilitation, he/she shall be expressly mentioned and the details of the obligations shall be prescribed in the rehabilitation plan.

### Article 197 (Unconfirmed Rehabilitation Claims, etc.)

(1) When any rehabilitation claim or any rehabilitation security right to which an objection is raised and the confirmation procedures therefor are not completed, appropriate measures therefor shall be prescribed in the rehabilitation plan, taking into account the possibility of confirming such claim and such rights.

(2) Appropriate measures shall be prescribed in the rehabilitation plan for claims that are reportable pursuant to the provisions of Article 109 (2).

### Article 198 (Repaid Rehabilitation Claims, etc.)

Any rehabilitation claim and any rehabilitation security right that are repaid pursuant to the provisions of the proviso to Articles 131 and 132 (1) and (2) among the rehabilitation claims and the rehabilitation security rights shall be expressly mentioned in the rehabilitation plan.

### Article 199 (Public-Interest Claims)

Any public-interest claims that are already repaid shall be expressly mentioned in the rehabilitation plan and public-interest claims that are scheduled to be repaid in the future shall also be prescribed in the rehabilitation plan.

### Article 200 (Transfer, etc. of Business or Assets)

(1) In cases falling under any of the following subparagraphs, the subject matter, the price thereof, the other party and other matters shall be prescribed in the rehabilitation plan:

    1. Where the whole or part of the debtor's business or assets are transferred, invested or rented;

    2. Where the whole or part of the management of the debtor's business is commissioned;

3. Where any contract under which the profits and losses are shared with any other person and any other contract corresponding to the former are concluded, changed or canceled; and

4. Where the whole or part of another person's business and assets are acquired by transfer.

(2) In cases under paragraph (1), where the proceeds are distributed to any rehabilitation creditor, rehabilitation secured creditor, shareholder and equity right holder, the methods of such distribution shall also be prescribed.

### Article 201 (Rights on Which Dispute Is Not Settled)

When any dispute on the rights that belong to the debtor are not settled, matters concerning the acceptance of the compromise or the mediation or the performance of lawsuit and methods of exercising the rights custodians shall be prescribed in the rehabilitation plan.

### Article 202 (Amendment of Articles of Incorporation)

When the articles of incorporation of the debtor are amended, the details of the change in the articles of incorporation shall be prescribed in the rehabilitation plan.

### Article 203 (Change in Directors, etc.)

(1) When directors of a corporate debtor are selected and appointed or the chief executive officer thereof (when the debtor is not a stock company, anyone who holds the authority to represent the debtor shall be included; hereafter in this Article referred to as the "chief executive officer") is selected, the persons who are selected and appointed or to be selected, their terms of office or methods of their selection and appointment shall be prescribed in the rehabilitation plan.

(2) When anyone who is to remain in his/her position among the directors or the chief executive officer of a corporate debtor, he/she shall be designated, along with his/her term of office, in the rehabilitation plan: Provided, That when rehabilitation procedures commence on the grounds of the flight or concealment of the assets or intentional, poor corporate governance, etc. that are perpetrated and performed by any director or chief executive officer, such persons shall not be entitled to retain their positions.

(3) In cases under paragraphs (1) and (2), when multiple chief executive officers jointly represent the debtor, the gist thereof shall be prescribed in the rehabilitation plan.

(4) The court shall select and appoint the auditor of a corporate debtor after hearing the opinion thereof of the creditors' consultative council. In this case, the court shall determine his/her term of office.

(5) The terms of office for the directors referred to in the provisions of paragraph (1) shall not exceed one year.

### Article 204 (Matters Concerning Selection and Appointment of Directors, etc.)

The rehabilitation plan concerning methods of selection, appointment or the manner of retention of office of directors, the chief executive officer or auditors of corporate debtors or any new company (excluding any new company incorporated by merger or merger by split shall be excluded) shall conform to the principle of equity and also conform to the overall interests of rehabilitation creditors, rehabilitation secured creditors, shareholders and equity right holders.

**Article 205 (Capital Reductions of Stock Companies or Limited-Liability Companies)**

(1) When the capital of a debtor who is a stock company is reduced, matters falling under both of the following subparagraphs shall be prescribed in the rehabilitation plan:

    1. The amount of capital to be reduced; and

    2. Means of reducing the capital.

(2) The capital reduction referred to in the provisions of paragraph (1) shall be determined taking into account the debtor's assets and obligations and the debtor's profit-making ability.

(3) When the total amount of the obligations of the debtor who is a stock company exceeds the total amount of his/her assets at the time rehabilitation procedures commence, the rehabilitation plan shall include that the capital is to be reduced by retiring not less than 1/2 of the issued shares or by amalgamating not less then 2 shares into one share.

(4) When rehabilitation procedures commence due to an act for which any director or any manager of the debtor who is a stock company is totally responsible, the rehabilitation plan shall include that the capital is to be reduced by retiring not less than 2/3 of shares held by shareholders, their relatives and shareholders with a special relationship, the scope of which is prescribed by Presidential Decree, any of whom exercise influence over the conduct that causes the rehabilitation procedures; or by amalgamating not less than 3 shares into one share.

(5) When new shares are issued pursuant to the provisions of Article 206 after the capital reduction referred to in the provisions of paragraph (4), the shareholders provided for in the provisions of paragraph (4) shall not be permitted to underwrite the newly issued shares: Provided, That stock options provided for in the provisions of Article 340-2 of the Commercial Act may be granted to the shareholders referred to in the provisions of paragraph (4).

(6) The provisions of paragraphs (1) through (4) and the main sentence of paragraph (5) shall apply mutatis mutandis to limited-liability companies.

**Article 206 (Issuance of New Shares by Stock Companies and LimitedLiability Companies)**

(1) When the debtor who is a stock company issues new shares without causing rehabilitation creditors, rehabilitation secured creditors or shareholders to pay for such newly issued shares or to make investments in kind, the matters falling under each of the following subparagraphs shall be prescribed in the rehabilitation plan:

    1. The types and number of new shares;

    2. Matters concerning the distribution of new shares;

    3. The amount of capital and reserve increased by the issuance of new shares; and

    4. The amount of obligations decreased by the issuance of new shares.

(2) When the debtor who is a stock company issues new shares and causes rehabilitation creditors, rehabilitation secured creditors or shareholders to pay for the newly issued shares or to make investments in kind, the matters falling under each of the following subparagraphs shall be prescribed in the rehabilitation plan:

1. The matters referred to in paragraph (1) 1 and 3;

2. The matters concerning the amount paid, the distribution of new shares and the date on which payments are made for the new shares; and

3. When a person makes new investment in kind, the name of such person, the assets that are the object of such new investment in kind, the price thereof and the types and the number of shares that are given in return for the price.

(3) When the debtor who is a stock company issues new shares with the exception of cases under paragraphs (1) and (2), the matters falling under each of the following subparagraphs shall be prescribed in the rehabilitation plan:

1. The matters referred to in paragraph (1) 1;

2. The matters referred to in paragraph (2) 3;

3. The value of newly issued shares and the date on which such value is paid; and

4. The amount not added to the capital among the value of the newly issued shares.

(4) Where new shares are issued pursuant to the provisions of paragraph (1), the provisions falling under each of the following subpara graphs shall not apply thereto: *Amended by Act No. 8635, Aug. 3, 2007; Act No. 10682, May 19, 2011>*

1. Article 37 and subparagraph 1 of Article 38 of the Banking Act;

2. Article 19 of the Insurance Business Act;

3. Article 344 of the Financial Investment Services and Capital Markets Act;

4. Article 24 of the Act on the Structural Improvement of the Financial Industry; and

5. Other Acts and subordinate statutes that place restrictions on investments, acquisition of securities and the management of assets by financial institutions (referring to the financial institutions under Article 2 of the Act on the Efficient Disposal of Non-Performing Assets, etc. of Financial Companies and the Establishment of Korea Asset Management Corporation and Article 2 of the Act on the Structural Improvement of the Financial Industry).

(5) The provisions of paragraphs (1) through (3) shall apply mutatis mutandis to cases of limited-liability companies.

### Article 207 (All-Inclusive Exchange of Shares of Stock Companies)

When the debtor who is a stock company performs a total exchange of shares with another company, the matters falling under any of the following subparagraphs shall be prescribed in the rehabilitation plan:

1. The trading name of the other company;

2. Where other company becomes a full parent company, as detailed under the provisions of Article 360-2 (1) of the Commercial Act (hereinafter referred to as the "full parent company"), when the other company amends its articles of incorporation by way of the total exchange of shares. the regulations therefor;

3. Matters concerning the total number and types of shares and the number of shares by type that are newly issued by the company that becomes a full parent company for the total exchange of shares and

the distribution of newly issued shares to shareholders by the company that becomes a full subsidiary (hereinafter referred to as the "full subsidiary") as defined under the provisions of Article 360-2 (1) of the Commercial Act;

4. Matters concerning the amount of capital and reserve to be raised by the company that becomes a full parent company;

5. When it is prescribed to pay money or distribute bonds to shareholders of the other company, the regulations therefor;

6. The date and time on, and at which the general meeting of shareholders is held to approve a resolution for a written contract under which the total exchange of shares is performed with any other company (where the company performs the total exchange of shares without obtaining approval therefor at the general meeting of shareholders, the gist thereof);

7. The date on which the total exchange of shares is performed;

8. When the other company distributes its profits by the date on which the total exchange of shares is performed or distributes the profits in cash pursuant to the provisions of Article 462-3 (1) of the Commercial Act, the limited amount thereof;

9. When the company that becomes a full parent company pursuant to the provisions of Article 360-6 of the Commercial Act transfers its shares, the total number and the types of shares, and the number of shares by type that are to be transferred; and

10. When the company that becomes a full parent company appoints directors and an auditor, their names and their resident registration numbers.

**Article 208 (Total Transfer of Shares of Stock Companies)**

When the debtor who is a stock company incorporates a new company that is a full parent company through a total transfer of shares, the matters falling under each of the following subparagraphs shall be prescribed in the rehabilitation plan:

1. The trading name of the newly incorporated company;

2. The articles of incorporation of the newly incorporated company;

3. Matters concerning the types and the number of shares that are issued by the newly incorporated company for the total transfer of shares, the distribution of shares by the debtor who becomes a full parent company to rehabilitation creditors, rehabilitation secured creditors or shareholders;

4. Matters concerning the amount of capital and reserve of the newly incorporated company;

5. When it is decided to pay cash or distribute bonds to the shareholders of the debtor who becomes a full subsidiary, the regulations therefor;

6. The time frame during which total transfer of shares is performed;

7. When the debtor who becomes a full subsidiary distributes his/her profits by the date on which the total transfer of shares is peformed and the profits are distributed in cash pursuant to the provisions Article 462-3 (1) of the Commercial Act, the limited amount thereof; and

8. The names and resident registration numbers of the directors and auditors of the newly incorporated company.

### Article 209 (Issuance of Bonds by Stock Companies)

When a debtor who is a stock company issues bonds, the matters falling under each of the following subparagraphs shall be prescribed in the rehabilitation plan:

1. The total amount of bonds;

2. The value of each of the bonds, the interest rate of the bonds, methods of redeeming the bonds and the deadline for redeeming the bonds, methods of paying the interest thereon and the details of the bonds;

3. Methods to issue the bonds and when the bonds are issued by causing rehabilitation creditors, rehabilitation secured creditors or shareholders to make new payments or without causing them to do so, the matters concerning the distribution of such new payments; and

4. When the bonds are collateralized, the details of the security rights.

### Article 210 (Mergers of Companies by Absorption)

When a debtor, who is a company, merges with any other company and either of them survives the merger, the matters falling under each of the following subparagraphs shall be prescribed in the rehabilitation plan:

1. The trading name of the other company;

2. The types and the number of shares and equity shares that are issued by the surviving company when it merges with any other company, and matters concerning restrictions on the rights of shareholders and equity right holders to underwrite newly issued shares, or equity shares and when it is decided to grant such rights to any third person, matters concerning such rights;

3. The types, the number and the distribution of shares or equity shares that are issued to the rehabilitation creditors, rehabilitation secured creditors, shareholders and equity right holders of any company that is extinguished by merger and matters concerning the distribution of such shares or equity shares;

4. The amount of capital and reserve that are expected to be raised in the surviving company;

5. When it is decided to pay cash or distribute bonds to the shareholders and equity right holders of any company that is extinguished by merger, the regulations therefor;

6. The date and the time on, or at which the general meeting of shareholders or the general meeting of employees is held to resolve on the approval of a written merger contract;

7. The date on which a merger is effected;

8. Where surviving company decides to amend the articles of incorporation due to merger, the regulations therefor;

9. When the other company distributes its profits or distributes the profits in cash due to merger pursuant to the provisions of Article 462-3 (1) of the Commercial Act, the amount limited thereof; and

10. When any director or any auditor (including audit committee members; hereafter in this Article through Article 213 the same shall apply) who is to take office in the surviving company due to merger is selected, his/her name and resident registration number.

## Article 211 (Incorporation of Companies by Mergers)

When the debtor, who is a company incorporates a new company after his/her company merges with another company, the matters falling under each of the following subparagraphs shall be prescribed in the rehabilitation plan:

1. The trading name of the other company;

2. The trading name, purposes, the locations of the principal office and the branch offices, the amount of capital and reserve and methods of notification of the newly incorporated company;

3. The types and the number of shares and equity shares that are issued by the newly incorporated company and their distribution;

4. When matters concerning restrictions on the rights of shareholders and equity secured creditors to underwrite shares or equity shares that are newly issued by the newly incorporated company at the time that the company is newly incorporated and matters concerning the underwriting of such shares or equity shares by any specific third person are prescribed, the matters thereof;

5. The types and the number of shares or equity shares that are issued for rehabilitation creditors and rehabilitation secured creditors, the shareholders and equity right holders of the debtor or the shareholders and equity right holders of the other company and matters concerning their distribution;

6. When it is decided to pay cash or distribute bonds to shareholders and equity right holders of each company, the regulations therefor;

7. The date and the time on, and at which the general meeting of shareholders or the general meeting of employees of any other company is held to resolve on the approval for a merger contract;

8. The date on which the merger is effected;

9. When the other company distributes its profits or its profits in cash on the grounds of merger pursuant to the provisions of Article 462-3 (1) of the Commercial Act, the limited amount thereof; and

10. When any director and any auditor who are to take office in any company that survives the merger are selected, their names and resident registration numbers.

## Article 212 (Splits of Stock Companies)

(1) When a debtor, who is a stock company, incorporates a new company after a split of its stock company, the matters falling under each of the following subapragraphs shall be prescribed in the rehabilitation plan:

1. The firm name, purposes, the locations of the principal office and the branch offices, the number of shares to be issued, the value per share, the amount of capital and reserve and the methods of notification of the newly incorporated company;

2. The total number and the types of shares and the number of shares by type that are issued by the newly incorporated company;

3. The matters concerning restrictions on the rights of shareholders to underwrite new shares issued by any new company, which are prescribed at the time that such new company is incorporated and when the right to underwrite new shares is granted to any specific third person, the matters with regard thereto;

4. When the shares of any newly incorporated company are distributed to the rehabilitation creditors, rehabilitation secured creditors or shareholders of the debtor without causing them to make new payments, the matters concerning the total number and the types of shares and the number of shares by type that are issued, and the distribution of such shares and when the shares are combined or divided by their distribution, the matters with regard thereto;

5. When it is decided to pay cash and distribute bonds to the shareholders of the debtor, the regulations therefor;

6. The assets and the value thereof, which are transferred to the newly incorporated company;

7. When anything is prescribed pursuant to the provisions of Article 5309 (2) of the Commercial Act, the details thereof;

8. Persons who are expected to become directors, the chief executive officer and auditors of the newly incorporated company, ways to select and appoint them and their terms of office. In this case, their terms of office shall not exceed one year;

9. When the newly incorporated company issues bonds, the matters referred to in each subparagraph of Article 209;

10. When shares are issued by causing rehabilitation creditors, rehabilitation secured creditors, shareholders or any third person to pay for them. the matters concerning the amount of their payments, the distribution of such shares and the dates of their payments;

11. When anyone makes investment in kind, his/her name and resident registration number, the property that is the object of such investment, the price thereof and the types and the number of shares that are distributed in return;

12. The matters that are intended to be entered in the articles of incorporation of the newly incorporated company;

13. The amount of capital and reserve; and

14. The date on which the split is effected.

(2) When the debtor remains existance after a split, the matters falling under each of the following subparagraphs with respect to the debtor shall be prescribed in the rehabilitation plan:

1. The amount of capital and reserve to be reduced;

2. Ways to reduce the capital;

3. The assets that are transferred on the due to the spit and their value;

4. The total number of shares issued after the split;

5. When the total number of shares issued by the debtor is reduced, the total number and the kinds of shares and the number of shares by kind, which are reduced; and

6. Other matters that result in an amendment of in the articles of incorporation.

**Article 213 (Split and Merger of Stock Companies)**

(1) When a debtor, who is a stock company, is split and part of such stock company is merged with another company and such other company remains in existance and other company is split and part of such other company merges with the debtor who is a stock company and such debtor remains in existance, the matters falling under each of the following subparagraphs shall be prescribed in the rehabilitation plan:

1. The trading name of the other company;

2. When the total number of shares that the surviving company has to issue on the grounds of thesplit and merger increases, the matters concerning the total number of shares that increases, the types of shares and the number of shares by type that increase and restrictions on the rights of shareholders to underwrite such shares and the right of any third person to underwrite newly issued shares is given, the regulations therefor;

3. The matters concerning the total number, types of new shares and the number of shares by type issued for the rehabilitation creditors, rehabilitation secured creditors and shareholders of the debtor who is split or the distribution of such shares, and when the combination or the division of shares is performed on the grounds of their distribution, the matters thereabout;

4. When it is decided to prescribe the payment of cash and the distribution of bonds to shareholders of any company that is to split, the matters thereabout;

5. Matters concerning the total amount of capital and reserve of the surviving company, which is raised;

6. The assets and their value that the debtor who is split transfers to the surviving company;

7. When it is prescribed pursuant to the provisions of Article 530-9 (3) of the Commercial Act, the matters with regard thereto;

8. The date and time on, and at which the general meeting of shareholders of the other company is held to resolve on the approval of a written split and merger contract;

9. The date on which the split and the merger are effected;

10. Where the other company survives, when the directors and auditors of such company are selected, their names and resident registration numbers; and

11. Other matters that result in an amendment of the articles of incorporation of the surviving debtor.

(2) When the debtor is split and part of the debtor is merged with another company or part of another company to form a new company, when the other company is split and part of such other company is merged with the debtor or part of the debtor to form a new company, the matters falling under each of the following subparagraphs shall be prescribed in the rehabilitation plan:

1. The trading name of the other company;

2. The trading name, purposes, the locations of the principal office and branch offices, the number of shares to be issued, the value per share, the amount of capital and reserve, and methods of notification of the newly incorporated company;

3. Matters concerning restrictions on the rights of shareholders to underwrite shares that are issued by the newly incorporated company at the time that the new company is incorporated and when it is prescribed that the right to underwrite new shares is granted to any third person, the matters with regard thereto;

4. The assets and their value, which are transferred by the debtor or the other company to the newly incorporated company;

5. When anything is prescribed pursuant to the provisions Article 530-9 (2) of the Commercial Act, the details thereof;

6. Other matters to be entered in the articles of incorporation of the newly incorporated company;

7. Matters concerning the total number and the types of shares, and the number of shares by type issued for the rehabilitation creditors, rehabilitation secured creditors and shareholders of the debtor or the shareholders of the other company, and when the shares are combined or split upon distribution, the matters with regard thereto;

8. When it is prescribed to pay cash or distribute bonds to the debtor or the shareholders of the other company, the matters with regard thereto;

9. The date and the time on, and at which the general meeting of shareholders of the other company is held to resolve on the approval for a written split and merger contract;

10. The date on which the split and the merger are effected; and

11. Persons who are expected to become directors, the chief executive officer and auditors of the newly incorporated company, their selection and appointment, methods of selecting them and their terms of office. In this case, their terms of office shall not exceed one year.

(3) The provisions of Article 212 shall apply mutatis mutandis to cases where the part that is not subject to the split and merger of the debtor provided for in the provisions of paragraphs (1) and (2) is prescribed.

**Article 214 (Asset Spinoff of Stock Companies)**

The provisions of Articles 212 and 213 shall apply mutatis mutandis to cases where the debtor, who is a stock company to be split, acquires all of the shares of any company that is incorporated on the grounds of split or merger by split.

**Article 215 (Incorporation of New Company by Stock Companies or LimitedLiability Companies)**

(1) When a new company (limited to any stock company or any limitedliability company. hereafter in this Article the same shall apply) is incorporated by causing rehabilitation creditors, rehabilitation secured creditors, shareholders and equity right holders to underwrite its shares or its equity shares instead of causing them to make new payments or make investment in kind therein, the following matters under each of the following subparagraphs shall be prescribed in the rehabilitation plan:

1. The trading name, purposes, the locations of the principal office and branch offices and methods of notification of the newly incorporated company;

2. The kinds and the number of shares and equity shares issued by the newly incorporated company;

3. The value per share or per investment;

4. Matters concerning restrictions on the rights of shareholders to underwrite shares or equity shares or the rights of equity right holders to underwrite equity shares, each of which are issued by the newly incorporated company at the time that the new company is incorporated, and when the right of any third person to do so is prescribed, the matters with regard thereto;

5. Matters concerning the types, the number and the distribution of shares or equity shares issued for rehabilitation creditors, rehabilitation secured creditors, shareholders and equity right holders;

6. Other matters that are entered in the articles of incorporation of the newly incorporated company;

7. The amount of capital and amount of reserve of the newly incorporated company;

8. The assets, and their value, that are transferred from the debtor to the newly incorporated company;

9. Persons who are expected to become directors, the chief executive officer and auditors in the newly incorporated company, their selection and appointment, methods of selecting them and their terms of office. In this case, their terms of office shall not exceed one year; and

10. When the newly incorporated company issues bonds, the matters provided for in each subparagraph of Article 209.

(2) With the exception of cases under paragraph (1), when a new company is incorporated without resorting to the total exchange of shares, any merger, any split or any split by merger, the matters falling under each of the following subparagraphs shall be prescribed in the rehabilitation plan:

1. The matters referred to in paragraph (1) 1 through 3, 6, and 8 through 10;

2. The types and the number of shares or equity shares issued at the time the new company is incorporated and when rehabilitation creditors, rehabilitation secured creditors or equity right holders are permitted to underwrite shares or equity shares without causing them to make new payments or make investments in kind, the matters referred to in paragraph (1) 5; and

3. When anyone makes a new investment in kind, his/her name and resident registration number, the assets that are the object of his/her investment and the value thereof, and the types and number of shares and equity shares each provided in return for his/her investment.

**Article 216 (Dissolution)**

When the debtor dissolves his/her company without resorting to any merger, any split or any split by merger. the gist thereof and the time of the dissolution of his/her company shall be prescribed in the rehabilitation plan.

**Article 217 (Fair and Equal Differentiation)**

(1) The restoration plan shall provide differentiation in terms of its fairness and equality taking into account the ranking order of the rights referred to in the provisions of each of the following subparagraphs:

1. Rehabilitation security rights;

2. General preferential rehabilitation claims;

3. Rehabilitation claims, other than the rehabilitation claims referred to in subparagraph 2;

4. The rights of shareholders and equity right holders, the details of which call for the preferential distribution of the residual property; and

5. The rights of shareholders and equity right holders, other than the rights referred to in the provisions of subparagraph 4.

(2) The provisions of paragraph (1) shall not apply to claims provided for in the provisions of Article 140 (1) and (2).

### Article 218 (Principles of Equality)

(1) The conditions of the rehabilitation plan shall allow for equality between persons who hold rights of the same nature: Provided, That the same shall not apply to instances falling under any of the following subparagraphs:

1. When consent is obtained from a person who suffers disadvantage;

2. When the principles of equality are not undermined even if any rehabilitation creditor, any rehabilitation secured creditor whose claims are minor in terms of amount, or any person who holds a claim provided for in the provisions of subparagraphs 2 through 4 of Article 118 are differently prescribed or differentiated; and

3. When the principles of equality are not undermined even if persons who hold rights of the same kind are differentiated.

(2) Where a claim falling under any of the following subparagraphs is prescribed differently from other rehabilitation claims or is differentiated in the rehabilitation plan, it is recognized that such does not undermine the principles of equality, and such claim may be handled more disadvantageously than other rehabilitation claim:

1. A claim that accrues from a consumer cash loan extended to a person with a special relationship, whose scope is prescribed by the Presidential Decree, with the debtor before rehabilitation procedures commence;

2. A claim regarding guarantee obligations where the debtor becomes a guarantor without compensation for the person in a special relationship, the scope of which is prescribed by the Presidential Decree, with the former before rehabilitation procedures commence; and

3. A claim for indemnification that accrues from a guarantee liability for the debtor where the person in a special relationship, whose scope is prescribed by the Presidential Decree, with the debtor becomes a guarantor for the debtor before rehabilitation procedures commence.

### Article 219 (Setting Aside of Act of Giving Special Profits)

The act of giving special profits to any rehabilitation creditor, rehabilitation secured creditor, shareholder and equity right holder in his/her name, or the name of any third person, without resorting to the rehabilitation plan shall be set aside.

### Article 220 (Submission of Draft Rehabilitation Plan)

(1) When the value is deemed higher where the debtor's business continues than its value where the debtor's business is liquidated, the court shall order any custodian to submit without delay a draft rehabilitation plan, the contents of which are geared toward the continuation of the debtor's business through debtors being in existence, the exchange of shares. the transfer of shares, merger, split, split by merger, the incorporation of a new company and the transfer of business on or after the date on which the first meeting of persons concerned is held within a fixed period.

(2) When the court determines to grant the order referred to in the provisions of paragraph (1), it shall publish the details of such decision and the gist provided for in the provisions of Article 221 (1).

(3) The court may extend the fixed period referred to in the provisions of paragraph (1) by its inherent jurisdiction or upon receiving an application therefor.

(4) When any custodian is unable to develop the draft rehabilitation plan, he/she shall advise the court his/her inability to do so within the period referred to in the provisions of paragraph (1) or (3).

(5) The period set by the court pursuant to the provisions of paragraph (1) shall not exceed 4 months: Provided, That if the debtor is an individual, the period shall not exceed 2 months.

(6) The extension of the period referred to in the provisions of paragraph (3) shall not exceed 2 months: Provided, That if the debtor is an individual or a smalland medium-sized enterpriser, the extension of the period shall not exceed one month.

**Article 221 (Submission of Draft Rehabilitation Plan by Rehabilitation Creditors, etc.)**

(1) Anyone falling under any of the following subparagraphs may develop and submit a draft rehabilitation plan to the court within the period provided for in the provisions of Article 220 (1):

    1. The debtor; and

    2. Any rehabilitation creditor, rehabilitation secured creditor, shareholder and any equity right holder, each of whom are recorded on the list or are reported.

(2) The provisions of Article 220 (3) and (6) shall apply mutatis mutandis to cases under paragraph (1).

**Article 222 (Draft Rehabilitation Plan Whose Details Aim for Liquidation or Business Transfer, etc.)**

(1) When the value of the debtor's business is deemed higher where the business is liquidated than its value when the debtor's business continues, the court may, upon receiving an application filed by a person falling under any of the following subpapragraphs, permit the development of a rehabilitation plan, the details of which are geared toward liquidation (including the transfer of the whole or part of the business and the asset spinoff of the business): Provided, That the same shall not apply where it causes damage to general creditors' interests:

    1. The custodian;

    2. The debtor; and

    3. Any rehabilitation creditor, rehabilitation secured creditor, shareholder and any equity right holder each of whom are recorded on the list and are reported.

(2) The provisions of paragraph (1) shall apply mutatis mutandis to cases where it becomes manifestly difficult to develop a draft rehabilitation plan, the details of which are geared toward the continuation of

the business through debtors being in existence, merger, split, split by merger and the incorporation of a
new company, etc. after rehabilitation procedures commence.

(3) The court may revoke the permission referred to in the provisions of paragraph (1) or (2) at any time
prior to the draft rehabilitation plan being placed in a resolution.

(4) The provisions of Article 236 (4) shall apply mutatis mutandis to the permission referred to in the
provisions of paragraphs (1) and (2).

### Article 223 (Prior Submission of Draft Rehabilitation Plan)

(1) Any creditor who holds a claim corresponding to not less than 1/2 of the debtor's obligations may
develop a rehabilitation plan and submit it to the court from the time when rehabilitation procedures
commence until the date preceding the date on which the fist meeting of persons concerned is held.

(2) The court shall keep the draft rehabilitation plan (when the draft rehabilitation plan is revised pursuant
to the provisions of Article 228 or 229 (2), this refers to the revised draft rehabilitation plan; hereafter in
this Article refers to as the "prior draft plan") in the court in order for interested persons to inspect it.

(3) Creditors other than creditors who have submitted the prior draft plan, may express their intentions to
agree to the prior draft plan in writing to the court by the date preceding the date on which the meeting of
persons concerned is held to resolve on the draft rehabilitation plan.

(4) Where the total amount of claims held by a creditor who has submitted the prior draft plan, or who has
agree to the prior draft plan is equivalent to not less than 2/3 of rehabilitation claims and rehabilitation
security rights that are recorded on the list or reported by the date preceding the date on which the first
meeting of persons concerned is held, the period that is set by the court pursuant to the provisions of
Article 220 (1) shall not exceed 2 months, notwithstanding the provisions of paragraph (5) of the same
Article and the extension of the period referred to in the provisions of paragraph (3) of the same Article
shall not exceed one month, notwithstanding the provisions of paragraph (6) of the same Article.

(5) When the prior draft plan is submitted, the relevant custodian need not submit the draft rehabilitation
plan after obtaining exemption thereof from the court or may withdraw the draft rehabilitation plan that
he/she has submitted to the court.

(6) Any creditor who submits the prior draft plan or expresses an intention to agree to the prior draft plan
(including any creditor who expresses his/her intention of agreeing to the prior draft plan provided for in
the provisions of paragraph (3) after the date on which the meeting of persons concerned is held) shall be
deemed to have agreed to it when the prior draft plan is approved by a resolution at the meeting of persons
concerned that is called for the adoption thereof: Provided, That when the contents of the prior draft plan
are revised so as to be disadvantageous for creditors, circumstances are greatly changed and serious
grounds exist, such creditors may withdraw their agreements after obtaining the court's permission
therefor by the day preceding the date on which the meeting of persons concerned is held.

### Article 224 (Meeting of Persons Concerned Held to Examine Draft Rehabilitation Plan)

When the draft rehabilitation plan is submitted, the court shall call a meeting of persons concerned to
examine such draft rehabilitation plan on a fixed date: Provided, That the same shall not apply to cases

where it is placed on a written resolution provided for in the provisions of Article 240.

**Article 225 (Hearing of Opinions with Respect to Draft Rehabilitation Plan)**

The court shall hear the opinions of persons falling under each of the following subparagraphs concerning the draft rehabilitation plan after hearing an explanation of the draft rehabilitation plan from the submitters of such

draft rehabilitation plan at the meeting of persons concerned provided for in the provisions of Article 224:

1. The custodian;

2. The debtor; and

3. Rehabilitation creditors, rehabilitation secured creditors, shareholders and equity right holders who are entered in the list or are reported.

**Article 226 (Opinions of Supervisory Administrative Agencies, etc.)**

(1) When it is deemed necessary, the court may request any administrative agency in charge of supervising the debtor's business, the Minister of Justice, the Financial Services Commission and any other administrative agencies to state their opinions with respect to a draft rehabilitation plan. *<Amended by Act No. 8863, Feb. 29, 2008>*

(2) With respect to a draft rehabilitation plan that prescribes matters requiring permission, authorization, license and other dispositions by administrative agencies, the court shall hear the opinions of administrative agencies with respect thereto.

(3) The administrative agency in charge of supervising the debtor's business, the Minister of Justice and the Financial Services Commission may state their opinions with respect to a draft rehabilitation plan to the court at any time. *<Amended by Act No. 8863, Feb. 29, 2008>*

**Article 227 (Opinions of Debtor's Union, etc.)**

The court shall hear the opinion of the person falling under each of the following subparagraphs with respect to a draft rehabilitation plan:

1. A union comprised of a majority of the debtor' workers; and

2. When the union referred to in subparagraph 1 is nonexistent, the person who represents a majority of the debtor's workers.

**Article 228 (Revision of Draft Rehabilitation Plans)**

Any submitter of a draft rehabilitation plan may revise the draft rehabilitation plan after obtaining permission from the court therefor by the date on which a meeting of persons concerned is held to examine a draft rehabilitation plan or by the date on which it is decided to place a draft rehabilitation plan on a written resolution pursuant to the provisions of Article 240.

**Article 229 (Order Given to Revise Draft Rehabilitation Plans)**

(1) The court may order any submitter of a draft rehabilitation plan to revise it ex officio or upon receiving an application filed by interested persons.

(2) When an order is issued by the court pursuant to the provisions of paragraph (1), any submitter of a draft rehabilitation plan shall revise it within the deadline set by the court.

**Article 230 (Resumption of Meeting of Persons Concerned)**

(1) When the revision provided for in the provisions of Article 229 is made after the date on which the meeting of persons concerned is held to examine the draft rehabilitation plan, the court may call a meeting of persons concerned to examine a draft revision on a fixed date.

(2) The provisions of Article 225 shall apply mutatis mutandis to the meeting of persons concerned referred to in the provisions of paragraph (1).

**Article 231 (Exclusion of Draft Rehabilitation Plan)**

Where the draft rehabilitation plan falls under any of the following subparagraphs, the court may not place the draft rehabilitation plan under the examination or on the resolution of the meeting of persons concerned:

   1. If the draft rehabilitation plan is in violation of the Act;

   2. If the draft rehabilitation plan is unfair or is not in conformity with the principles of equality; and

   3. If it is impossible to implement the draft rehabilitation plan.

**Article 232 (Meeting of Persons Concerned Called to Resolve on Draft Rehabilitation Plan)**

(1) When the court does not order the revision of the draft rehabilitation plan that goes through an examination of the meeting of persons concerned pursuant to the provisions of Article 224 or 230, the court shall call a meeting of persons concerned to resolve on the draft rehabilitation plan after setting the date therefor.

(2) In cases under paragraph (1), the court shall deliver in advance a copy or summary of the draft rehabilitation plan to persons falling under each of the following subparagraphs:

   1. The custodian;

   2. The debtor;

   3. Rehabilitation creditors, rehabilitation secured creditors, shareholders and equity right holders (excluding anyone not entitled to exercise his/her voting rights) who are entered in the list or are reported; and

   4. Any person who bears any obligations or provides security for the rehabilitation.

(3) The delivery referred to in the provisions of paragraph (2) may be performed in the same manner as documents are mailed.

(4) The provisions of Article 8 (4) and (5) shall apply mutatis mutandis to the delivery referred to in the provisions of paragraph (3).

**Article 233 (Presence of Persons who Bear Obligations for Rehabilitation)**

(1) Anyone who bears any obligation or provides any security for rehabilitation shall be present to state the gist thereof on the date provided for in the provisions of Article 232 (1): Provided, That he/she may cause his/her agent to be present when justifiable grounds thereof exist.

(2) The agent referred to in the proviso to the provisions of paragraph (1) shall submit a written statement attesting his/her agency authority.

(3) When it is placed in a written resolution pursuant to the provisions of Article 240, the terms of an agreement of any person who bears any obligations or provides a security shall be prescribed in the draft rehabilitation plan after obtaining such agreement from such person instead of the statement referred to in the provisions of paragraph (1).

### Article 234 (Amendment of Draft Rehabilitation Plan)

Any submitter of the draft rehabilitation plan may amend such draft rehabilitation plan at the meeting of persons concerned provided for in the provisions of Article 232 (1) after obtaining permission therefor from the court only when such change does not disadvantageously affect rehabilitation creditors, rehabilitation secured creditors, shareholders and equity right holders.

### Article 235 (Timing of Resolution)

The draft rehabilitation plan shall not be placed in a resolution before the inspection period expires.

### Article 236 (Methods of Resolution and Categorization of Rehabilitation Creditors, etc.)

(1) When a resolution is placed on the agenda of a meeting of persons concerned pursuant to the provisions of Article 232 (1), or a written resolution is placed on the agenda pursuant to the provisions of Article 240, rehabilitation creditors, rehabilitation secured creditors, shareholders and equity right holders shall participate in such resolution as a group as categorized pursuant to the provisions of paragraphs 2, 3 and 5.

(2) Rehabilitation creditors, rehabilitation secured creditors, shareholders, equity right holders shall be categorized into the groups falling under each of the following subparagraphs for their participation in the development and the passing of resolutions on the draft rehabilitation plan: Provided, That the same shall not apply to anyone who holds a claim provided for in the provisions of Article 140 (1) and (2):

    1. Rehabilitation secured creditors;

    2. Rehabilitation creditors who hold general priority rights;

    3. Rehabilitation creditors other than rehabilitation creditors referred to in the provisions of subparagraph 2;

    4. Shareholders and equity right holders who hold shares or equity shares that carry priority provisions for the distribution of the residual property; and

    5. Shareholders and equity right holders other than the shareholders and the equity right holders provided for in the provisons of subparagraph 4.

(3) The court may categorize persons who fall under at least two subparagraphs into one group or persons who fall under one subparagraph into at least 2 groups taking into account the nature of the rights held by the persons referred to in each subparagraph of paragraph (2) and the relation of interest: Provided, That rehabilitation secured creditors, rehabilitation creditors, shareholders and equity right holders shall each be categorized into another group.

(4) Anyone falling under any of the following subparagraphs may state his/her opinion with respect to the categorization referred to in the provisions of paragraph (3):

1. The custodian;

2. The debtor; and

3. Any rehabilitation creditor, any rehabilitation secured creditor, any shareholder and any equity right holder who are all recorded on the list or are reported.

(5) The court may alter the categories referred to in the provisions of paragraphs (2) and (3) at any time before the draft rehabilitation plan is placed in a resolution.

(6) The provisions of Article 163 shall apply mutatis mutandis to the delivery of the decision referred to in the provisions of paragraphs (3) and (5): Provided, That when a declaration is made on the date on which the meeting of persons concerned is held, the delivery need not be made.

**Article 237 (Requirements for Resolutions)**

The draft rehabilitation plan shall be resolved upon at a meeting of persons concerned according to the classifications falling under the following subparagraphs:

1. The group of rehabilitation creditors: The agreement is required to be obtained from the persons who hold the voting rights equivalent to not less than 2/3 of the total amount of the voting rights of the rehabilitation creditors who are entitled to exercise their voting rights;

2. The group of rehabilitation secured creditors:

(a) Agreement is required from persons who hold voting rights equivalent to not less than 3/4 of the total voting rights of the rehabilitation secured creditors who are entitled to exercise their voting rights on the draft rehabilitation plan pursuant to the provisions of Article 220; and

(b) Agreement is required from persons who hold the voting rights equivalent to not less than 4/5 of the total amount of the voting rights of the rehabilitation secured creditors who are entitled to exercise their voting rights on the draft rehabilitation plan provided for in the provisions of Article 222; and

3. The group of shareholders and equity right holders: Agreement is required from persons who hold voting rights equivalent to not less them 1/2 of the total voting rights of shareholders and equity right holders who are entitled to exercise their voting rights at the meeting of persons concerned for the resolution of the draft rehabilitation plan.

**Article 238 (Designation of Extended Deadline)**

Where a meeting of persons concerned fails to resolve on the draft rehabilitation plan, when persons falling under the following subparagraphs agree to extend the deadline, the court may set an extended deadline by its inherent jurisdiction or upon receiving an application filed by the custodian or the debtor and any rehabilitation creditor, any rehabilitation secured creditor, any shareholder and any equity right holder who are entitled to exercise their voting rights:

1. Persons who hold voting rights equivalent to not less than 1/2 of the total voting rights of the rehabilitation creditors who are entitled to exercise their voting rights from among group of rehabilitation creditors;

2. Persons who hold voting rights equivalent to not less than 2/3 of the total voting rights of the rehabilitation secured creditors who are entitled to exercise their voting rights from among the group of rehabilitation secured creditors; and

3. Persons who hold voting rights equivalent to not less than 1/3 of the total voting rights of the shareholders and equity right holders who are entitled to exercise their voting rights from among the group of shareholders and equity right holders.

**Article 239 (Timing of Resolution)**

(1) The draft rehabilitation plan shall be resolved upon within 2 months from the fist day of the meeting of persons concerned provided for in the provisions of Article 232 (1).

(2) When it is deemed necessary, the court may extend the period referred to in the provisions of paragraph (1) by its inherent jurisdiction or upon receiving an application filed by any submitter of the draft rehabilitation plan. In this case, the period shall not exceed one month.

(3) The draft rehabilitation plan shall be resolved upon within one year from the date on which rehabilitation procedures commence: Provided, That the court may extend the period within the scope of 6 months on the grounds of expediency.

**Article 240 (Resolutions in Writing)**

(1) If it is deemed appropriate when the draft rehabilitation plan is submitted, the court may determine the gist of a written resolution into which the draft rehabilitation plan is placed (hereinafter in this Part referred to as the "written resolution"). In this case, the court shall publish the gist thereof.

(2) When the written resolution referred to in the provisions of para graph (1) is decided, the court deliver a copy or a summary of the draft rehabilitation plan to each of the persons provided for in Article 182 (1) and also deliver a written statement to each of the voting right holders, requesting them to confirm in writing as to whether they agree with the draft rehabilitation plan, their opinions with respect to whether authorization is granted and whether they agree with the designation of the extended deadline if the draft rehabilitation plan is not resolved within the period set by the court (hereafter referred to as the "response period" in this Article). In this case, the response period shall not exceed 2 months from the date on which the decision referred to in the provisions of paragraph (1) is made.

(3) The delivery referred to in the provisions of paragraph (2) may be made in the same manner as documents are mailed.

(4) When the draft rehabilitation plan is delivered pursuant to the provisions of paragraph (2), it shall be deemed that the meeting of persons concerned held to examine the draft rehabilitation plan provided for in the provisions of Article 224 comes to an end.

(5) When the written agreement of voting right holders to the draft rehabilitation plan delivered to the court within the response period meet the requirements for a resolution provided for in the provisions of Article 237, the draft rehabilitation plan shall be deemed resolved upon.

(6) The provision of Articles 188 (1) through (3) and 189 shall apply mutatis mutandis to every written resolution.

(7) When the extended deadline provided for in the provisions of Article 238 is designated for the draft rehabilitation plan that is not resolved upon by means of a written resolution, the draft rehabilitation plan shall be placed in a resolution on the continuation date and it shall not be placed in a written resolution again.

## Article 241 (Survival of Corporation If Draft Rehabilitation Plan Adopted)

When rehabilitation procedures commence and the draft rehabilitation plan is resolved upon for a debtor who is an incorporated association or an incorporated foundation that is under liquidation or is declared bankrupt, such incorporated association may continue to exist according to the regulations governing the amendment of its articles of association and such incorporated foundation may continue to exist after obtaining an authorization therefor from the administrative agency in charge of incorporated foundations.

## Article 242 (Whether to Grant Authorization of Rehabilitation Plans)

(1) When a draft rehabilitation plan is resolved upon at a meeting of persons concerned, the court shall determine whether to grant authorization of the rehabilitation plan immediately or on the date on which a report is made on the resolution for the draft rehabilitation plan.

(2) Persons falling under any of the following subparagraphs may state their opinions on whether to grant authorization of the rehabilitation plan on the date referred to in the provisions of paragraph (1): <*Amended by Act No. 8863, Feb. 29, 2008*>

   1. Any person under each subparagraph of Article 182 (1); and

   2. The administrative agency in charge of supervising the debtor's business, the Minister of Justice and the Financial Services Commission.

(3) When a declaration is made, the decision on the date on which it is determined whether to grant authorization of the rehabilitation plan is made needs not be published and delivered.

(4) When the draft rehabilitation plan is adopted by means of a written resolution, the court shall promptly determine whether to grant authorization of the rehabilitation plan.

(5) When the court determines whether to grant authorization of the rehabilitation plan pursuant to the provisions of paragraph (4), it shall deliver a document stating the gist of such determination and a summary of the grounds thereof to the persons provided for in the provisions of each subparagraph of Article 182 (1).

## Article 243 (Requirements for Authorizing Rehabilitation Plans)

(1) The court may determine to grant authorization of the rehabilitation plan only in cases where the requirements falling under each of the following subparagraphs are met:

   1. The rehabilitation procedures or the rehabilitation plan shall conform to the provisions of Acts;

   2. The rehabilitation plan shall be fair, equitable and executable;

   3. The resolution on the rehabilitation plan shall be passed in a sincere and fair manner;

   4. Repayment methods according to the rehabilitation plan shall be in terms geared towards making repayments more advantageously than repayments would be made to each creditors when the debtor's business is liquidated: Provided, That the same shall not apply to cases where the creditors agree to

payment methods;

5. The rehabilitation plan, the terms of which are geared for a merger or merger by split, requires a resolution passed by a general meeting of shareholders and a general meeting of employees of the other company, which approves any merger contract or a merger by split contract: Provided, That the same shall not apply to cases where the relevant company does not require such approval resolution of the general meeting of shareholders or the general meeting of employees;

6. Matters requiring permission, authorization, license or other disposition of administrative agencies in the rehabilitation plan shall be consistent with opinions of administrative agencies provided for in the provisions of Article 226 (2) with respect to major points; and

7. With respect to the rehabilitation plan, the terms of which are geared toward an exchange of shares, a general meeting of shareholders of the other company is required to pass a resolution that approves such total exchange of shares: Provided, That the same shall not apply to cases where the company performs the total exchange of shares pursuant to the provisions of Articles 360-9 and 360-10 of the Commercial Act.

(2) Even in cases where the procedures for determining whether to grant authorization for the rehabilitation plan are in violation of the provisions of Acts, when it is deemed inappropriate not to grant authorization for the rehabilitation plan taking into account the extent of the violation, the current state of the debtor and all other circumstances, the court may determine to grant such authorization.

### Article 244 (Authorization in Case of Group in Disagreement)

(1) In cases where a resolution on a draft rehabilitation plan is passed at a meeting of persons concerned or the draft rehabilitation plan is placed in a written resolution under Article 240, even when any group fails to reach agreement thereon among persons who hold voting rights that exceed the statutory amount and number, the court may amend the draft rehabilitation plan, prescribe provisons aimed at protecting the rights of the rehabilitation creditors, rehabilitation secured creditors, shareholders and equity right holders of such group in a manner falling under any of the following subparagraphs and determine to grant authorization for the rehabilitation plan:

1. The means by which assets subject to security rights are transferred to a newly incorporated company or any other person or is withheld for the debtor while keeping the security rights intact for the rehabilitation secured creditors;

2. The means by which assets subject to security rights for rehabilitation secured creditors, the debtor's assets to be appropriated for the repayment of claims for rehabilitation creditors and the debtor's assets that is to be appropriated for the distribution of residual property for shareholders and equity right holders are all sold at a price that exceeds fair value (with respect to assets that are subject to security rights, any burden incurred by such rights shall be deemed nonex istent) that is set by the court and the balance obtained by subtracting costs of sale from the sale proceeds is used for repayment, distribution and deposit;

3. The means by which proceeds of the fair trade price of the rights that is set by the court are distributed to the rightful claimants; and

4. The means by which the rightful claimants are fairly and equally protected according to the means referred to in the provisons of subparagraphs 1 through 3.

(2) In cases where a resolution is passed at a meeting of persons concerned on the draft rehabilitation plan or the draft rehabilitation plan is placed in a written resolution pursuant to the provisions of Article 240, when it is clear that it is impossible to obtain from any group the agreement necessary to meet the requirements for resolving upon the draft rehabilitation plan, the court, upon receiving an application filed by the person developing the draft rehabilitation plan, shall prescribe provisions that aim for protecting the rights of such group of rehabilitation creditors, rehabilitation secured creditors, shareholders and equity right holders by means of the ways referred to in the provisons of each subparagraph of paragraph (1) and permit developing the draft rehabilitation plan.

(3) When the application referred to in the provisions of paragraph (2) is filed, the court shall hear the opinions of the applicant and not less than one rightful claimant of the group from which it is evidently impossible to obtain an agreement.

**Article 245 (Declaration, etc. of Determination on Whether to Grant Authorization of Rehabilitation Plan)**

(1) The court shall declare its determination on whether to grant authorization of the rehabilitation plan and publish the gist thereof, a summary of the grounds, and the rehabilitation plan or a summary thereof. In such cases, no delivery needs be made.

(2) The provisions of Article 41 (1) shall apply mutatis mutandis to cases where the determination referred to in the provisions of paragraph (1) is made.

(3) Notwithstanding the provisions of paragraph (1), where the determination on whether to grant authorization for the rehabilitation plan is related to the written resolution provided for in the provisions of Article 240, the court shall deliver the gist, a summary of the grounds, the rehabilitation plan or a summary thereof to each person falling under any of the following subparagraphs: *<Amended by Act No. 8863, Feb. 29, 2008>*

1. The person provided for in the provisions of each subparagraph of Article 182 (1); and

2. In cases where the debtor is a stock company, the administrative agency in charge of supervising the debtor, the Minister of Justice and the Financial Services Commission.

**Article 246 (Timing when Rehabilitation Plans Take Effect)**

The rehabilitation plan shall take effect from the time a decision is made to grant authorization thereof.

**Article 247 (Appeal)**

(1) An immediate appeal may be filed against a decision on whether to grant authorization of the rehabilitation plan: Provided, That the same shall not apply to any rehabilitation creditor, any rehabilitation secured creditor, any shareholder and any equity right holder who are not recorded in the list or are not reported.

(2) Any rehabilitation creditor, any rehabilitation secured creditor, any shareholder and any equity right holder who do not hold voting rights shall, when they file for an immediate appeal pursuant to the provisions of paragraph (1), substantiate that they are a rehabilitation creditor, a rehabilitation secured creditor, a shareholder and an equity right holder, respectively.

(3) Any appeal against a decision to grant authorization of the rehabilitation plan shall not affect the implementation of such rehabilitation plan: Provided, That when the appellate court or the rehabilitation court deems that the appeal has grounds and the need is substantiated to urgently prevent any irrecoverable loss caused by the implementation of the rehabilitation plan, they may require any security to be furnished, suspend the whole or part of the rehabilitation plan without requiring such security to be furnished and take other necessary dispositions until it determines such appeal upon receiving an application therefor.

(4) When an appeal is filed against a decision to grant authorization for the rehabilitation plan, the rehabilitation court may order the appellant to deposit, by way of bonds, fund, or securities recognized by the court within the scope that is prescribed by the rules of the Supreme Court for a fixed period.

(5) In cases under paragraph (4), when the appellant fails to furnish the security within the period set by the court, the court shall dismiss the appeal by its determination.

(6) When the appeal referred to in the provisions of paragraph (4) is dismissed, the debtor is declared bankrupt or the rehabilitation procedures continue, the funds or securities furnished as a security shall revert to the bankrupt organization.

(7) Any protest against the judgment on the immediate appeal referred to in the provisions of paragraph (1) shall be governed by the provisions of Article 442 of the Civil Procedure Act. In this case, the provisions of paragraphs (1) through (6) shall apply mutatis mutandis to such protest.

### Article 248 (Where Decision Not to Grant Authorization for Rehabilitation Plan is Confirmed)

The provisions of Articles 291 and 292 shall apply mutatis mutandis to cases where a decision not to grant authorization for the rehabilitation plan is confirmed.

### Article 249 (Entires in Table of Rehabilitation Creditors, etc.)

When a decision to grant authorization for the rehabilitation plan is confirmed, the clerk, etc. of the court shall enter the rights recognized in the rehabilitation plan in the table of rehabilitation creditors and in the table of rehabilitation secured creditors and in the table of share holders and equity right holders.

### Article 250 (Scope of Effect of Rehabilitation Plan)

(1) The rehabilitation plan shall effect persons falling under each of the following subparagraphs:

1. The debtor;

2. Any rehabilitation creditor, any rehabilitation secured creditor, any shareholder and any equity right holder;

3. Anyone who bears obligations or furnishes security for rehabilitation; and

4. Any newly incorporated company (excluding any company that is incorporated by merger or merger by split).

(2) The rehabilitation plan shall not affect the rights or security falling under either of the following subparagraphs:

1. Rights held by any rehabilitation creditor or any rehabilitation secured creditor against a guarantor of the debtor for whom rehabilitation procedures commence and on any person who bears any obligation jointly with the debtor for whom rehabilitation procedures commence; and

2. The security furnished by any person other than the debtor for any rehabilitation creditor or any rehabilitation secured creditor.

**Article 251 (Immunity of Rehabilitation Claims, etc.)**

When it is decided to grant authorization for the rehabilitation plan, the debtor shall be exempted from his/her responsibilities under all of the rehabilitation claims and rehabilitation security rights, with the exception of rights recognized pursuant to the rehabilitation plan or the provisions of this Act and the rights of shareholders and equity right holders, and all security rights over the debtor's assets shall be extinguished: Provided, That the same shall not apply to claims provided for in the provisions of Article 140 (1).

**Article 252 (Change in Rights)**

(1) When it is decided to grant authorization for the rehabilitation plan, the rights of rehabilitation creditors, rehabilitation secured creditors, shareholders and equity right holders shall be changed according to the rehabilitation plan.

(2) The provisions of Articles 339 and 340 (3) of the Commercial Act shall apply mutatis mutandis to cash, goods, shares or equity shares, claims, and other rights and share certificates to be gained by shareholders and equity right holders on the grounds of a change in the rights pursuant to the provisions of paragraph (1).

**Article 253 (Rights of Rehabilitation Creditors and Rehabilitation Secured Creditors)**

The rights of rehabilitation creditors and rehabilitation secured creditors that are prescribed according to the rehabilitation plan shall be recognized only for persons who hold rehabilitation claims or rehabilitation security rights that are all confirmed.

**Article 254 (Rights of Shareholders and Equity Right Holders who are Not Reported)**

The rights of shareholders and equity right holders that are recognized according to the rehabilitation plan shall also apply to the rights of shareholders and equity right holders who fail to report their shares and equity shares.

**Article 255 (Effect of Entries in Table of Rehabilitation Creditors, etc.)**

(1) The entries of the table of rehabilitation creditors or the table of rehabilitation secured creditors that govern the rights recognized ac cording to the rehabilitation plan on the basis of rehabilitation claims or rehabilitation security rights shall take effect in the same manner as the final judgment on persons falling under each of the following subparagraphs when a decision to grant authorization for the rehabilitation plan is confirmed:

1. The debtor;

2. Rehabilitation creditors, rehabilitation secured creditors, shareholders and equity right holders;

3. Anyone who bears obligations or furnishes security for the rehabilitation; and

4. The newly incorporated company (excluding any company that is incorporated by merger or merger by split).

(2) Anyone who holds the rights referred to in the provisions of para graph (1), the terms of which are geared at claiming the payment of funds and any other performance, may perform compulsory execution on the debtor and any person who bears any obligation for the rehabilitation according to the table of rehabilitation creditors or the table of rehabilitation secured creditors after the rehabilitation procedures are completed. In this case, the guarantor may lodge an objection against such compulsory execution pursuant to the provisions of Article 437 of the Civil Act.

(3) The provisions of Articles 2 through 18, 20 and 28 through 55 of the Civil Execution Act shall apply mutatis mutandis to cases under paragraph (2): Provided, That the lawsuit provided for in the provisions of Articles 33, 44 and 45 of the Civil Execution Act shall be placed under the exclusive jurisdiction of the rehabilitation court.

**Article 256 (Invalidation of Suspended Procedures)**

(1) When it is decided to grant authorization for the rehabilitation plan, the auction procedures for the bankruptcy procedures, the compulsory execution, the provisional seizure, the provisional disposition and the exercise of security right, etc. that are suspended respectively pursuant to the provisions of Article 58 (2) shall lose their effect: Provided, That the same shall not apply to procedures or dispositions that continue pursuant to the provisions of paragraph (5) of the same Article.

(2) Foundations' claims (excluding any foundations' claims falling under subparagraphs 2 and 9 of Article 473) that lose their effect pursuant to the provisions of paragraph (1) in the bankruptcy procedures shall be deemed a public-interest claim.

**Article 257 (Implementation of Rehabilitation Plan)**

(1) When it is decided to grant authorization for the rehabilitation plan, the custodian shall implement the rehabilitation plan without delay.

(2) When a new company is incorporated according to the rehabilitation plan, the custodian shall perform the duties of the promoters and incorporators members.

(3) The Custodial Committee shall assess whether the rehabilitation plan is appropriately implemented each year and submit the results of such assessment to the court.

(4) The Custodial Committee may present to the court its opinion with respect to the completion or the discontinuation of the rehabilitation procedures.

**Article 258 (Court's Order Given to Implement Rehabilitation Plan)**

(1) The court may issue persons falling under any of the following subparagraphs orders necessary to implement the rehabilitation plan:

1. The debtor;

2. Any rehabilitation creditors, any rehabilitation secured creditors, any shareholders and any equity right holders;

3. Anyone who bears obligations or furnishes security for the rehabilitation;

4. A newly incorporated company (excluding any new company that is incorporated by merger or merger by split); and

5. The custodian.

(2) When it is deemed necessary to ensure the implementation of the rehabilitation plan, the court may require a considerable amount of security to be furnished for persons who hold claims pursuant to the provisions of this Act or according to the rehabilitation plan and any other persons who hold rehabilitation claims to which an objection is raised and rehabilitation security rights for which the confirmation procedures are not yet completed.

(3) The provisions of Articles 122, 123, 125 and 126 of the Civil Procedure Act shall apply mutatis mutandis to the security referred to in the provisions of paragraph (2).

**Article 259 (Inspection of Debtor)**

In cases falling under any of the following subparagraphs, the court may order any inspection commissioner to inspect assets and the current business of the debtor by its inherent jurisdiction or upon receiving an application filed by the creditors' consultative council:

1. Where the rehabilitation plan is not implemented properly;

2. Where it is necessary to determine whether to cease or discontinue the rehabilitation procedures; and

3. Where it is necessary for amending the rehabilitation plan.

**Article 260 (Exclusion of Provisions of Acts and Subordinate Statutes Governing Resolutions, etc. of General Meetings)**

In the implementation of the rehabilitation plan, notwithstanding the provisions of Acts and subordinate statutes or the articles of incorporation, a general meeting of an incorporation, a general meeting of shareholders, a general meeting of employees (including a general meeting of specific class of shareholders and a general meeting of employees corresponding thereto) or a meeting of the board of directors of the debtor who is a corporation need not resolve on anything.

**Article 261 (Special Cases Concerning Business Transfer, etc.)**

(1) When acts falling under any of the following subparagraphs are prescribed in the rehabilitation plan pursuant to the provisions of Article 200, any of such acts may be performed according to the rehabilitation plan:

1. The conclusion, amendment or revocation of contracts falling under any of the following items or the conclusion, amendment or revocation of contract corresponding to the former:

(a) Contracts by which the whole or part of the business or assets of the debtor are transferred, invested or rented;

(b) Contracts by which the whole or part of the management of the debtor's business is delegated; and

(c) Contracts by which the profits and losses of the business are shared with other persons and other contracts corresponding to the former; and

2. Agreements by which the whole or part of the business or the assets of other persons are acquired by transfer.

(2) The provisions of Articles 374 (2) and 374-2 of the Commercial Act and Article 191 of the Securities and Exchange Act shall not apply to cases under paragraph (1).

**Article 262 (Special Cases Concerning Amendment to Articles of Incorporation)**

In cases where any amendments to the articles of incorporation of the debtor are prescribed in the rehabilitation plan pursuant to the provisions of Article 202, such articles of incorporation shall be amended according to the rehabilitation plan when it is decided to grant authorization for the rehabilitation plan.

**Article 263 (Special Case Concerning Change in Directors, etc.)**

(1) In cases where the selection and appointment of directors and the selection of the chief executive officer are prescribed in the rehabilitation plan pursuant to the provisions of Article 203, they shall be deemed selected and appointed at the time authorization is granted for the rehabilitation plan.

(2) In cases where means of selecting and appointing directors or of selecting the chief executive officer are prescribed in the rehabilitation plan pursuant to the provisions of Article 203, such directors may be selected and appointed and the chief executive officer may be selected according to the means prescribed in the rehabilitation plan. In this case, the provisions of other Acts and subordinate statutes and the articles of incor poration governing the selection and appointment of directors and the selection of the chief executive officer shall not apply.

(3) When the court selects and appoints any auditor pursuant to the provisions of Article 203 (4), the provisions of other Acts and subordinate statues and the articles of incorporation governing the selection and appointment of auditors shall not apply to the selection and appoint ment of such auditors.

(4) Any director or any chief executive officer who is not prescribed in the rehabilitation plan as to remain in his/her position shall be deemed dismissed at the time that authorization is granted for the rehabilitation plan. Any auditor who is not selected and appointed pursuant to the provisions of Article 203 (4) shall be deemed dismissed at the time the court selects and appoints an auditor pursuant to the provisions of Article 203 (4).

(5) The terms of office for directors or the chief executive officer who are selected or appointed pursuant to the provisions of paragraphs (1) and (2), the terms of office for directors or the chief executive officer who are or are decided to stay in their positions and means by which the chief executive officer represents the board shall be prescribed in the rehabilitation plan and the terms of office of any auditor who is selected and appointed pursuant to the provisions of Article 203 (4) shall be prescribed by the court.

**Article 264 (Special Cases Concerning Decrease in Capital)**

(1) When any decrease in capital is prescribed in the rehabilitation plan pursuant to the provisions of Article 205, such capital may be decreased according to the rehabilitation plan.

(2) The provisions of Articles 343 (2), 439 (2) and(3), 440, 441, 445 and 446 of the Commercial Act shall not apply to cases under paragraph (1). The cases provided for in the proviso to Article 443 (1) of the same Act shall be placed under the jurisdiction of the rehabilitation court.

(3) In cases under paragraph (1), an application filed for rectifying the register on the grounds of a decrease in the debtor's capital shall be accompanied by a certified copy or an abridged copy of a written decision to grant authorization for the rehabilitation plan.

**Article 265 (Special Cases Concerning Issuance of New Shares without Payment, etc. therefor)**

(1) When it is prescribed in the rehabilitation plan pursuant to the provisions of Article 206 (1) and (4) that the debtor issue new shares without requiring rehabilitation creditors, rehabilitation secured creditors or shareholders to make new payments or investments in kind, the rightful claimants shall become shareholders at the time that it is decided to grant authorization for the rehabilitation plan: Provided, That when any specific timing is prescribed in the rehabilitation plan, the rightful claimants shall become shareholders at such specific time.

(2) The provisions of the articles of incorporation governing the underwriting of newly issued shares shall not apply to cases under paragraph (1).

(3) The provisions of Articles 440 through 444 of the Commercial Act shall apply mutatis mutandis to cases where there is an uneven number of shares to be distributed to shareholders. In this case, cases provided for in the proviso to Article 443 (1) of the same Act shall be placed under the jurisdiction of the rehabilitation court and the provisions of Article 83 of the Non-Contentious Case Litigation Procedure Act shall apply mutatis mutandis to such cases.

**Article 266 (Special Cases concerning Issuance of New Shares for which Payments, etc. are Made)**

(1) When it is prescribed in the rehabilitation plan that the debtor issues new shares pursuant to the provisions of Article 206 (2) and (3), he/she may issue such new shares according to the rehabilitation plan.

(2) The provisions of Articles 418, 422, 424, 424-2, 428, and 429 through 432 of the Commercial Act shall not apply to the cases under paragraph (1).

(3) The provisions of the articles of incorporation that govern rights to underwrite newly issued shares shall not apply to cases under paragraph (1) and cases provided for in the provisions of Article 306 of the Commercial Act that are applied mutatis mutandis under Article 425 (1) of the same Act shall be placed under the jurisdiction of the rehabilitation court.

(4) The provisions of Article 419 of the Commercial Act shall apply mutatis mutandis to the cases under paragraph (1). In this case, "share certificates" in Article 419 (2) of the Commercial Act shall be deemed "share certificates or debentures."

(5) When new shares are issued by requiring rehabilitation creditors, rehabilitation secured creditors or shareholders to make new payments or make investments in kind, the rightful claimants thereof may pay

the amount or make investments in kind as prescribed in the rehabilitation plan.

(6) The provisions of Article 265 (3) shall apply mutatis mutandis to cases where there is an uneven number of shares to be distributed to shareholders by requiring them to make payments and investments in kind: Provided. That the amount corresponding to the investment in kind to be made or the amount to be paid for a broken lot of shares shall be deducted from the price to be paid to the previous shareholders.

(7) In cases under paragraph (1), the written commission for the register of a change accruing from the issuance of shares by the debtor or an application thereof shall be accompanied by a certified copy or an abridged copy of the written decision authorizing the rehabilitation plan, a written statement attesting to the subscription and takeover of shares and a certificate attesting to the custody of payments.

**Article 267 (Special Cases concerning Issuance of Bonds without Payments, etc. by Stock Companies)**

(1) When it is prescribed in the rehabilitation plan that the debtor who is a stock company issues bonds without requiring rehabilitation creditors, rehabilitation secured creditors or shareholders to make new payments pursuant to the provisions of Article 209, these rightful claimants shall become bond right holders when it is decided to grant authorization for the rehabilitation plan.

(2) The provisions of Article 471 of the Commercial Act shall not apply to the cases under paragraph (1).

(3) In cases under paragraph (1), the amount of bonds that are issued for rehabilitation creditors or rehabilitation secured creditors according to the provisions of the rehabilitation plan shall not be included in the total amount of the bonds provided for in the provisions of Article 470 of the Commercial Act.

**Article 268 (Special Cases Concerning Issuance of Bonds with Payments, etc. by Stock Companies)**

(1) With the exception of cases provided for in the provisions of Article 267, when it is prescribed in the rehabilitation plan that the debtor who is a stock company issues bonds under Article 209, the debtor may issue such bonds according to the rehabilitation plan.

(2) When bonds are issued by requiring rehabilitation creditors, rehabilitation secured creditors or shareholders to make new payments, these rightful claimants shall become bond right holders at the time the amount prescribed in the rehabilitation plan is paid.

(3) The provisions of Articles 266 (4) and 267 (2) and (3) shall apply mutatis mutandis to the cases under paragraph (1).

(4) In the cases under paragraph (1), a written commission or an application for the registration of convertible bonds or warrant bonds shall be accompanied by the written statements falling under each of the following subparagraphs:

   1. A certified copy or an abridged copy of the written decision to grant an authorization for the rehabilitation plan;

   2. A written statement attesting to the subscription and underwriting of convertible bonds or warrant bonds; and

   3. A written statement attesting to the payment for each convertible bond or each warrant bond.

**Article 269 (Special Cases concerning Total Exchange of Shares of Stock Companies)**

(1) When it is prescribed in the rehabilitation plan that the debtor who is a stock company perform a total exchange of shares with another company pursuant to the provisions of Article 207, the debtor may perform such total exchange of shares according to the rehabilitation plan.

(2) In cases under paragraph (1), rehabilitation creditors or rehabilitation secured creditors who receive a distribution of shares of the company that becomes a full parent company shall become the underwriters of shares at the time that authorization is granted for the rehabilitation plan and become shareholders at the time that the total exchange of shares becomes effective.

(3) The provisions of Articles 360-4, 360-5, 360-7 and 380-14 of the Commercial Act shall not apply to cases under paragraph (1).

(4) In cases under paragraph (1), when the provisions of Article 360-8 of the Commercial Act apply to the debtor, the "approval provided for in the provisions of Article 360-3 (1)" in the same Article shall be deemed "the authorization granted for the rehabilitation plan, the terms of which are geared toward the total exchange of shares."

(5) The provisions of paragraphs (1) through (4) shall not affect the application of the Commercial Act to the other company that is the other party to the total exchange of shares.

(6) In cases under paragraph (1), when the debtor becomes a full parent company, the written commission or the application for registration of the company change that accrues from the total exchange of shares shall be accompanied by documents falling under each of the following subparagraphs:

1. A certified copy or an abridged copy of the written decision to grant authorization for the rehabilitation plan; and

2. The contract for the total exchange of shares.

(7) In cases under paragraph (1), when the other company that is the other party in the total exchange of shares becomes a full parent company, the application for the change registration that arises from the total exchange of shares of the company shall be accompanied by documents falling under each of the following subparagraphs:

1. A certified copy or an abridged copy of the written decision to grant authorization for the rehabilitation plan; and

2. The minutes of the general meeting of shareholders of the company (when the company performs a total exchange of shares without obtaining approval therefor from the general meeting of shareholders, the minutes of the meeting of the board of directors of the company).

**Article 270 (Special Cases concerning Total Transfer of Shares of Stock Companies)**

(1) When the total transfer of shares by the debtor who is a stock company is prescribed in the rehabilitation plan pursuant to the provisions of Article 208, the debtor may perform such total transfer of shares according to the rehabilitation plan.

(2) In cases under paragraph (1), rehabilitation creditors or rehabilitation secured creditors who receive a distribution of shares of a newly incorporated company that is a full parent company shall become the under writers of shares at the time that authorization is granted for the rehabilitation plan, and shall

become shareholders at the time that the total transfer of shares becomes effective.

(3) The provisons of Articles 360-17, 360-18, 360-5 that are applied mutatis mutandis under Article 360-22 of the same Act and 360-23 of the Commercial Act shall not apply to cases under paragraph (1).

(4) In cases under paragraph (1), with respect to the application of the provisions of Article 360-19 of the Commercial Act to companies, the "resolution provided for in the provisions of Article 360-16 (1)" in the same Article shall be deemed the "authorization granted for the rehabilitation plan the contents of which are geared toward the total transfer of shares."

(5) The written commission or the application for register of incorporation arising from the total transfer of shares shall be accompanied by the documents falling under each of the following subparagraphs:

    1. A certified copy or an abridged copy of the written decision to grant authorization for the rehabilitation plan; and

    2. The minutes of the meeting of the board of directors with respect to the chief executive officer.

**Article 271 (Special Case Concerning Mergers)**

(1) When it is prescribed in the rehabilitation plan that the debtor is to merge with another company pursuant to the provisions of Article 210 or 211, the debtor may merge with any other company according to the rehabilitation plan.

(2) In cases under paragraph (1), rehabilitation creditors or rehabilitation secured creditors who receive the distribution of shares or equity shares of any surviving company after merger or any new company that is incorporated by merger shall become underwriters of the shares or equity shares at the time it is decided to grant authorization for the rehabilitation plan and the shareholders or employees thereof at the time that the merger becomes effective.

(3) The provisons of Articles 522-2, 522-3, 527-5, 527-6 and 529 of the Commercial Act and the provisions of Article 191 of the Securities and Exchange Act shall not apply to cases under paragraph (1).

(4) Cases provided for under the provisions of Article 530 (3) of the Commercial Act or the proviso to Article 443 (1) that is applied mutatis mutandis under Article 603 of the same Act shall be placed under the jurisdiction of the rehabilitation court.

(5) Notwithstanding the provisions of Article 530 (2) or 603 of the Commercial Act, Articles 237 through 240, 374 (2), 374-2 (2) through (4) and 439 (3) of the same Act shall not apply Mutatis mutandis to the case of paragraph (1).

(6) The provisions of paragraphs (1) through (5) shall not affect the application of the Commercial Act to the company that is the other party to merger.

(7) The provisions of Article 267 shall apply mutatis mutandis to cases where bonds are distributed to shareholders pursuant to provisions of subparagraph 5 of Article 210 or subparagraph 6 of Article 211. In this case, the shareholders become the debenture holders when the merger becomes effective.

(8) In cases under paragraph (1), the written commission or the application for the register of the dissolution or the change in the debtor on the grounds of merger shall be accompanied by documents falling under each of the following subparagraphs:

1. A certified copy or an abridged copy of the written decision to grant authorization for the rehabilitation plan; and

2. The merger contract.

(9) In cases under paragraph (1), the written commission or the application for the company registration that is newly incorporated by merger shall be accompanied by documents falling under each of the following subparagraphs:

1. A certified copy or an abridged copy of the written decision to grant authorization for the rehabilitation plan;

2. The merger contract;

3. The articles of incorporation;

4. The minutes of the general meeting of incorporation;

5. The minutes of the meeting of the board of directors with respect to the chief executive officer; and

6. The written statement attesting to the qualifications of incorporating members selected and appointed by the other debtor who is the other party to merger.

**Article 272 (Special Case Concerning Merger or Merger by Split)**

(1) When it is prescribed in the rehabilitation plan that the debtor who is a stock company is to be split, or part of the debtor who is a stock company is to be merged by split with another company or part of another company pursuant to the provisions of Articles 212 through 214. the debtor may perform the merger or the merger by split as prescribed in the rehabilitation plan.

(2) In cases under paragraph (1), the surviving debtor after the merger by spit or the shareholders, rehabilitation creditors or rehabilitation secured creditors of the debtor who receive a distribution of shares of the company that is newly incorporated by the merger by split shall become underwriters of the shares at the time that it is decided to grant authorization for the rehabilitation plan, and shall become shareholders at the time that the merger by split becomes effective.

(3) The provisions of Articles 530-7 and 522-3 of the Commercial Act and the provisions of Article 191 of the Securities and Exchange Act shall not apply to cases under paragraph (1) and cases provided for under the provisions of the proviso to Article 443 (1) of the Commercial Act that applies mutatis mutandis under Article 530-11 (1) of the same Act shall be placed under the jurisdiction of the rehabilitation court.

(4) Notwithstanding the provisions of Articles 530-9 and 530-11 of the Commercial Act, the provisions of Articles 237 through 240, 374 (2), 439 (3), 522-3, 527-5 and 529 of the same Act shall not apply mutatis mutandis to cases under paragraph (1).

(5) The provisions of paragraphs (1) through (4) shall not affect the application of the Commercial Act to the company that is the other party to the merger by split.

(6) The provisions of Article 267 shall apply mutatis mutandis to cases where bonds are distributed to shareholders pursuant to the provisions of subparagraph 5 of Article 212 (1) or Article 213 (1) 4 or (2) 8. In this case, the shareholders shall become the debenture holders at the time the merger or the merger by split becomes effective.

(7) In cases under paragraph (1), the written commission or the application for registration of the debtor's dissolution or the registration of change on the grounds of split shall be accompanied by a certified copy or an abridged copy of the written decision to grant authorization for the rehabilitation plan. The written commission or the application for registration of the debtor's dissolution or registration of change on the grounds of the merger by split shall be accompanied by the written split and merger contract in addition to a certified copy or an abridged copy of the written decision to grant authorization for the rehabilitation plan.

(8) In cases under paragraph (1), the written commission or the application for registration of incorporation on the grounds of the merger by split shall be accompanied by documents falling under each of the following subparagraphs:

    1. A certified copy or an abridged copy of the written decision to grant authorization for the rehabilitation plan;

    2. The written split and merger contract;

    3. The articles of incorporation;

    4. The minutes of the general meeting of incorporation; and

    5. The minutes of the meeting of the board of directors with respect to the chief executive officer.

**Article 273 (Special Cases Concerning Incorporations of New Companies without New Investments)**

(1) When it is prescribed in the rehabilitation plan that a new company is to be incorporated only with an investment made by the debtor who is a stock company after splitting the debtor pursuant to the provisions of Article 212 (1) or 214, or it is prescribed in the rehabilitation plan that a new company is incorporated by requiring rehabilitation creditors, rehabilitation secured creditors, shareholders and equity right holders to underwrite shares or equity shares instead of getting them to make new payments or investments in kind, the new company shall be formally incorporated when it prepares the articles of incorporation and have its incorporation entered on the register after obtaining a certification from the rehabilitation court.

(2) In cases under paragraph (1), the debtor's assets that are prescribed to be transferred to the newly incorporated company in the rehabilitation plan when the new company is incorporated shall be transferred to the newly incorporated company and the rehabilitation creditors, rehabilitation secured creditors, shareholders and equity right holders of the debtor who all receive the distribution of shares, equity shares or bonds of the newly incorporated company shall become shareholders, equity right holders or debenture holders of the newly incorporated company.

(3) The provisions of Articles 263 (1), (2) and (5) and 265 (3) and 268 shall apply mutatis mutandis to cases under paragraphs (1) and (2).

(4) In cases under paragraph (1), the written commission that is aimed at placing the newly incorporated company on the register shall be accompanied by documents falling under each of the following subparagraphs:

    1. A certified copy or an abridged copy of the written decision to grant authorization for the rehabilitation plan;

2. The articles of incorporation;

3. When means of selecting and appointing directors or auditors and of selecting the chief executive officer are prescribed in the rehabilitation plan, the document pertaining to their selection and appointment; and

4. When any transfer agent is employed on payroll, a written statement attesting to his/her employment.

**Article 274 (Other Special Cases concerning Incorporation of New Companies)**

(1) With the exception of cases provided for in the provisions of Article 273, when it is prescribed in the rehabilitation plan that the debtor who is a stock company is split to incorporate a new company pursuant to the provisions of Article 212 (1) or 214 and it is prescribed in the rehabilitation plan that a new company is to be incorporated pursuant to the provisions of Article 215 without resorting to any merger, split or merger by split, a new company may be incorporated according to the rehabilitation plan.

(2) The provisions of Articles 288, 291 through 293, 295 (1), 296, 299, 300, 302 (2) 4, 310, 311, 313 (2), 314, 315, 321 through 324, 327 and 328 shall not apply to cases under paragraph (1).

(3) In cases under paragraph (1), a certification for the articles of incorporation shall be obtained from the rehabilitation court. Cases provided for under the provisions of Article 306 of the Commercial Act shall be placed under the jurisdiction of the rehabilitation court. A general meeting of incorporation shall not amend the articles of incorporation in violation of the purposes of the rehabilitation plan. The debtor shall assume the responsibilities of the promoters provided for in the provisions of Article 326 of the same Act.

(4) In cases under paragraph (1), when the debtor, rehabilitation creditors, rehabilitation secured creditors, shareholders and equity right holders are requested to underwrite shares or equity shares without being required to make new payments or investments in kind, or they are requested to underwrite bonds without being required to make new payments, the rightful claimants shall become shareholders, equity right holders or debenture holders at the time that a new company is incorporated.

(5) In cases under paragraph (1), when rehabilitation creditors, rehabilitation secured creditor, shareholders or third persons are requested to underwrite shares by being required to make new payments and investments in kind, any shares that they have not underwritten among the shares that are to be issued for them may be subtracted from the total number of shares enlisting issued at the time that a new company is incorporated without enlisting new shareholders unless this measure is contrary to the provisions of Article 289 (2) of the Commercial Act.

(6) The provisions of Articles 263 (1), (2) and (5), 265 (3), 266 (4) through (6), 267 (3) and 268 shall apply mutatis mutandis to cases under paragraphs (1) through (5).

(7) In cases under paragraph (1), the written commission or the application for registration of any newly incorporated company shall be accompanied by documents falling under each of the following subparagraphs:

1. The document provided for in each subparagraph of Article 273 (4);

2. The written statement attesting to the subscription and underwriting of shares;

3. The inspection report of directors and any auditors and other documents attached thereto;

4. The minutes of the general meeting of incorporation; and

5. The written statement attesting to the custody of payments in any financial institution.

## Article 275 (Special Cases concerning Dissolution)

(1) When it is prescribed in the rehabilitation plan that the debtor is dissolved pursuant to the provisons of Article 216 without resorting to the merger, the division or the merger by split, the debtor shall be dissolved at the time stipulated in the rehabilitation plan.

(2) In cases under paragraph (1), the application for registration of dissolution register shall be accompanied by a certified copy or an abridged copy of the written decision to grant authorization for the rehabilitation plan.

## Article 276 (Transfer of Rights to Underwrite Shares, etc.)

When rehabilitation creditors, rehabilitation secured creditors, shareholders and equity right holders hold rights to underwrite shares, equity shares or bonds of the debtor or any newly incorporated company according to the rehabilitation plan, they may transfer such rights to any other persons.

## Article 277 (Exclusion of Application of Financial Investment Services and Capital Markets Act)

When a debtor who is a stock company or any newly incorporated company issues shares or bonds, the provisions of Article 119 of the Financial Investment Services and Capital Markets Act shall not apply thereto. <Amended by Act No. 8635, Aug. 3, 2007>

## Article 278 (Special Cases concerning Restrictions on Disposal of Factory Foundation, etc.)

When the debtor's property is disposed of according to the rehabilitation plan, Acts and subordinate statutes governing restrictions on the dis posal of any factory foundation and any other foundation or the assets that belong to any foundations shall not apply thereto.

## Article 279 (Succession of Rights by Means of Permission and Authorization, etc.)

When it is prescribed in the rehabilitation plan that the debtor is to transfer any rights and any obligations that accrue from any permission, authorization, license and any other disposition that he/she has acquired from administrative agencies, the newly incorporated company shall succeed to such rights and such obligations, notwithstanding the provisions of other Acts and subordinate statutes.

## Article 280 (Succession to Tax Liabilities)

When it is prescribed in the rehabilitation plan that any newly incorporated company succeeds to the debtor's tax liabilities, the newly incorporated company shall bear responsibility for paying such tax liabilities and the debtor's tax liabilities shall be extinguished thereafter.

## Article 281 (Severance Pays, etc.)

(1) Persons who were directors, the chief executive officer, auditors and workers of the debtor and who continue to work for any newly incorporated company as directors, the chief executive officer, auditors and workers after rehabilitation procedures commence shall not receive payment of their severance pay, etc. on the basis of their retirements from the debtor.

(2) The period during which the persons referred to in the provisions of paragraph (1) have worked for the debtor shall be deemed the period during which they have worked for the newly incorporated company.

**Article 282 (Amendment of Rehabilitation Plan)**

(1) When the need arises to amend the matters that are prescribed in the rehabilitation plan on the grounds of inevitability after it is decided to grant authorization for the rehabilitation plan, the court may change the rehabilitation plan upon receiving an application filed by any custodian, the debtor or any rehabilitation creditors, any rehabilitation secured creditors, any shareholder or any equity right holder, each of whom are all entered on the list or reported only before rehabilitation procedures are completed.

(2) When an application is filed for amending the rehabilitation plan pursuant to the provisions of paragraph (1), which is deemed to prejudice any rehabilitation creditor, rehabilitation secured creditor, shareholder, or equity right holder on the grounds of such amendment, the provisions governing the procedures for submitting the draft rehabilitation plan shall apply mutatis mutandis thereto: Provided, That in such cases, any rightful claimant who is not prejudiced by any amendment to the rehabilitation plan need not be required to participate in such procedures.

(3) The provisions of Articles 246 and 247 shall apply to cases where it is decided to amend the rehabilitation plan.

(4) In cases falling under either of the following subparagraphs, anyone who agrees to the previous rehabilitation plan shall be deemed to agree to the amended rehabilitation plan:

　　1. Where he/she is absent a the meeting of persons concerned that is called to resolve on amendment to the draft rehabilitation plan; and

　　2. Where he/she fails to send a response in the written resolution procedures for an amendment to the draft rehabilitation plan.

**Article 283 (Discontinuation of Rehabilitation Procedures)**

(1) When repayments commence according to the rehabilitation plan, the court shall decide to discontinue the rehabilitation procedures by its inherent jurisdiction or upon receiving an application filed by the person falling under either of the following subparagraphs:

　　1. The custodian; or

　　2. Any rehabilitation creditor or any rehabilitation secured creditor who is entered in the list or reported.

(2) The court shall, when it makes the decision referred to in the provisions of paragraph (1), publish the main passage of such decision and a summary of the grounds. In this case, the delivery thereof need not be made.

(3) The provisions of Article 40 (1) shall apply mutatis mutandis to cases where the decision referred to in the provisions of paragraph (1) is made.

**Article 284 (Prohibition on Participation in Corporate Governance by Directors, etc.)**

Directors or the chief executive officer who fail to retain their positions pursuant to the provisions of the proviso to Article 203 (2) shall be prohibited from being selected or appointed as directors or being selected as the chief executive officer of the debtor even after it is decided to discontinue the rehabilitation

procedures.

**Article 285 (Discontinuation Prior to Order Given to Submit Draft Rehabilitation Plan)**

When the value of the debtor's business, when it is liquidated, is deemed evidently higher than the value thereof when the debtor's business continues, the court shall determine to discontinue the rehabilitation procedures by its inherent jurisdiction or upon receiving an application that is filed by the custodian and rehabilitation creditors or rehabilitation secured creditors who are entered in the list or are reported, even before the first meeting of persons concerned is held without ordering the submission of the draft rehabilitation plan provided for in the provisions of Article 220 (1): Provided, That the same shall not apply to cases where the court permits developing a draft rehabilitation plan, the details of which are geared toward the liquidation, etc. provided for in the provisions of Article 222.

**Article 286 (Discontinuation before Authorization Granted for Rehabilitation Plan)**

(1) In cases falling under any of the following subparagraphs, the court shall determine to discontinue rehabilitation Procedures by its inherent jurisdiction:

1. Where the draft rehabilitation plan is not submitted within the period or extended period respectively, set by the court or all of the draft

2. Where the draft rehabilitation plan is voted against or is not resolved upon at the meeting of persons concerned within 2 months or the extended period from the first day of the meeting of persons concerned;

3. The draft rehabilitation plan is not resolved upon at the meeting of persons concerned within the period provided for in the provisions of Article 239 (3); and

4. When it is decided to place the draft rehabilitation plan in a written resolution pursuant to the provisions of Article 240 (1), however the draft rehabilitation plan is not resolved upon according to the written resolution: Provided, That when the continuation date provided for in the provisions of Article 238 is designated with respect to the draft rehabilitation plan that is not resolved upon by a written resolution, it shall mean the time the written resolution is not passed at the meeting of persons concerned on the continuation date rehabilitation plans that are submitted within the period are so poorly developed that it does not justify placing them before the examination or in a resolution of the meeting of persons concerned;

(2) When the value of the debtor's business when if is liquidated is deemed evidently higher than the value thereof when the debtor's business continues after an order is given to submit the draft rehabilitation plan, the court may decide to discontinue the rehabilitation procedures by its inherent jurisdiction or upon receiving an application filed by any custodian before it is decided to grant authorization for the rehabilitation plan.

**Article 287 (Discontinuation by Application)**

(1) When it is evidently clear that the debtor is able to fully fulfil his/her obligations to rehabilitation creditors and rehabilitation secured creditors who are entered in the list or are reported, the court shall determine to discontinue the rehabilitation procedures upon receiving an application filed by persons

falling under any of the following subparagraphs:

    1. The custodian;

    2. The debtor; or

    3. Any rehabilitation creditor or any rehabilitation secured creditor, each of whom are entered in the list or are reported.

(2) The applicant shall substantiate the factual grounds for discontinuing the rehabilitation procedures referred to in the provisions of paragraph (1).

(3) When the application referred to in the provisions of paragraph (1) is filed, the court shall notify the debtor, the Custodial Committee, the creditors' consultative council, rehabilitation creditors and rehabilitation secured creditors who are entered in the list and are reported of the gist of such application, request them to present any opinions they may have with respect to the application and keep documents concerning the application in the court for inspection by the interested persons.

(4) The court shall be prohibited from determining to discontinue the rehabilitation procedures unless at least one month has lapsed after the notification referred to in the provisions of paragraph (3) is delivered.

**Article 288 (Discontinuation after Authorization Granted for Rehabilitation Plan)**

(1) When it is evidently impossible to implement the rehabilitation plan after it is decided to grant authorization for the rehabilitation plan, the court shall determine to discontinue the rehabilitation procedures by its inherent jurisdiction or upon receiving an application field by the custodian, rehabilitation creditors or rehabilitation secured creditors entered in the list or reported.

(2) The court may hear opinions of the Custodial Committee, the creditors' consultative council and interested persons on a fixed date before it makes the decision referred to in the provisions of paragraph (1): Provided, That when the court fails to specify the fixed date, it shall provide each of them with an opportunity to present their opinions within a specified deadline.

(3) The decision to specify the date or the deadline referred to in the provisions of paragraph (2) shall be published and such fixed date or such specified deadline shall be delivered to persons who are known as persons who hold the rights recognized in the rehabilitation plan on the basis of the rehabilitation claims or rehabilitation security rights that are confirmed respectively.

(4) The discontinuation of the rehabilitation procedures referred to in the provisions of paragraph (1) shall not affect the implementation of the rehabilitation plan and effects that accrue from the provisions of this Act.

**Article 289 (Publication of Discontinuation Decision)**

When the court it decides to discontinue the rehabilitation procedures, it shall publish the main passage of such decision and a summary of the grounds thereof. In this case, no delivery need be made.

**Article 290 (Appeal)**

(1) The provisions of Article 247 (1), (2) and (4) through (7) shall apply mutatis mutandis to the appeal filed against the decision to discontinue the rehabilitation procedures.

(2) The provisions of Article 40 (1) shall apply mutatis mutandis to cases where a decision to discontinue the rehabilitation procedures is con firmed.

### Article 291 (Repayment of Public-Interest Claims)

When a decision to discontinue the rehabilitation procedures is confirmed, the custodian shall pay public-interest claims out of the debtor's assets

and with respect to the payment of any public-interest claim to which an objection is raised, the payment in question shall be deposited for creditors, except in cases where bankruptcy must be declared pursuant to the provisions of Article 6 (1).

### Article 292 (Effect of Entires in Tables, etc. of Rehabilitation Creditors)

(1) When a decision to discontinue rehabilitation procedures is confirmed pursuant to the provisions of Article 286 or 287, with respect to the determined rehabilitation claims or determined rehabilitation security rights, the entries in the table of rehabilitation creditors or the table of rehabilitation secured creditors shall have the same effect as that of a final judgment on the debtor: Provided, That the same shall be limited to cases where the debtor does not raise any objection to such claims and such rights during the inspection period of the rehabilitation claims and the rehabilitation security rights or on the special inspection date.

(2) Rehabilitation creditors or rehabilitation secured creditors may perform the compulsory execution on the debtor based on the table of rehabilitation creditors or the table of rehabilitation secured creditors except in cases where the debtor is declared bankrupt pursuant to the provisions of Article 6 after the completion of the rehabilitation procedures.

(3) The provisions of Article 225 (3) shall apply mutatis mutandis to the cases under paragraph (2).

### Article 293 (Provisions Applicable Mutatis Mutandis)

The provisions of Article 255 (2) and (3) shall apply mutatis mutandis to cases where a decision to discontinue the rehabilitation procedures is confirmed pursuant to the provisions of Article 288 (1).

### Article 294 (Holders of Right to File Petition for Bankruptcy)

(1) Any creditor or the debtor may file a petition for bankruptcy.

(2) When any creditor files a petition for bankruptcy, he/she shall substantiate the existence of his/her claim and the factual grounds for such bankruptcy.

### Article 295 (Holders of Rights to File Petition for Bankruptcy of Corporation)

(1) With respect to any corporation that is incorporated pursuant to the Civil Act and other Acts, any director may file a petition for bankruptcy, with respect to any general partnership or any joint venture, any partner with unlimited liability may file a petition for bankruptcy and, with respect to any stock company or any limited-liability company, any director may file a petition for bankruptcy, respectively.

(2) Any liquidator may file a petition for bankruptcy on any corporation under liquidation.

### Article 296 (Petition for Bankruptcy Filed by Directors, Etc.)

When no petition for bankruptcy has been filed by any of the directors, partners with limited liability or liquidators, the fact that is the cause of such bankruptcy shall be substantiated.

**Article 297 (Mutatis Mutandis Application to other Corporations)**

The provisions of Articles 295 and 296 shall apply mutatis mutandis to any corporation, other than the corporations provided for in the provisions of Article 295, any incorporated association or any foundation that is not a corporation, each of which have its representative or custodian.

**Article 298 (Petition of Bankruptcy Filed after Corporation Dissolution)**

With respect to any corporation, any petition for bankruptcy shall be filed in any period during which the delivery or the distribution of its residual assets have not been completed even after such corporation is dissolved.

**Article 299 (Holders of Rights to File Petition for Bankruptcy on Inherited Assets)**

(1) Any inheritance creditor, anyone who receives any legacy, any in heritor, any inherited assets custodian and any executor of a will may file a petition for bankruptcy against any inherited assets.

(2) When any inherited assets custodian, any executor of a will or any inheritor, in case where the qualified acceptance is made or the property is separated, finds it difficult to fully pay back obligations with the inherited property to any inheritance creditor and any person who receives the legacy, they shall promptly file a petition of bankruptcy.

(3) Any inheritor, any inherited assets custodian or any executor of a will shall, when each of them files a petition for bankruptcy, substantiate the factual grounds for such bankruptcy.

**Article 300 (Bankruptcy Petition Period for Inherited Assets)**

With respect to inherited property, a petition of bankruptcy may be filed only within the period during which a claim may be filed for dividing up the assets pursuant to the provisions of Article 1045 of the Civil Act. In this case, when the qualified acceptance is made or the assets are divided up during the period, a petition for bankruptcy may be filed with the period during which the repayment to any inheritance creditor and any person who receives the legacy is not completed.

**Article 301 (Where Bankruptcy Is Declared Overseas)**

When the debtor has already been declared bankrupt overseas at the time that a petition for bankruptcy is filed against him/her, the factual grounds for bankruptcy shall be presumed to exist.

**Article 302 (Written Petition)**

(1) Every petition of bankruptcy shall be filed in a written statement containing matters falling under each of the following subpargraphs:

1. The names and domiciles of the applicant and his legal representative;

2. In cases where the debtor is an individual, his/her name, resident registration number and domicile;

3. In cases where the debtor is not an individual, the trading name, the location of the principal office or the place of business of the debtor and the name of the representative;

4. The purport of the petition;

5. The grounds for the petition;

6. The purposes of the debtor's business and his/her current business;

7. The total number of shares or equity shares that are issued by the debtor, the amount of his/her capital and the current state of his/ her assets, his/her obligations and property;

8. Other procedures for or any dispositions on the debtor's property, of which the applicant is aware;

9. When any creditor files a petition for bankruptcy, the amount of, and the ground for the claim that is held by him; and

10. When any shareholder or any equity right holder files a petition for bankruptcy. the number and the amount of shares or equity shares that are held by him/her.

(2) The written statement referred to in the provisions of paragraph (1) shall be accompanied by documents falling under each of the following subpargraphs: Provided, That it is impossible to annex the document at the time that the written statement is filed, such document shall be submitted promptly after the reasons therefor are substantiated:

1. The list of creditors;

2. The list of assets;

3. The list concerning the revenue and expenditure of the debtor; and

4. Other documents that are prescribed by the rules of the Supreme Court.

**Article 303 (Prepayment of Expenses for Bankruptcy Procedures)**

When anyone files a petition for bankruptcy, he/she shall prepay the amount as expenses necessary for the bankruptcy procedures, which is recognized as being appropriate by the court.

**Article 304 (Provisional Payment of Expenses for Bankruptcy Procedures)**

When anyone who files a petition for bankruptcy is not a creditor, the expenses for the bankruptcy procedures may be provisionally paid from the national treasury. The same shall apply to cases when any prepayment falls short of the fixed amount, when the court makes a declaration of bankruptcy by its inherent jurisdiction and when the petitioner of bankruptcy is the creditor and the court declares the debtor bankrupt, notwithstanding the nonpayment of the expenses,

**Article 305 (Grounds for General Bankruptcy)**

(1) When the debtor is insolvent, the court shall declare him/her bankrupt by its inherent jurisdiction or upon receiving an application.

(2) When the debtor suspends making his/her payment, it shall be presumed that he/she is unable to make such payment.

**Article 306 (Grounds for Corporate Bankruptcy)**

(1) With respect to any corporation, even when the total amount of its liabilities exceeds the total amount of its assets, such corporation may be declared bankrupt.

(2) The provisions of paragraph (1) shall not apply to the period during which any general partnership and any joint venture remains solvent.

**Article 307 (Grounds for Bankruptcy regarding Inherited Assets)**

When it is unable to fully repay the obligations to any inheritance creditor and anyone who receives a legacy with their inherited properties, the court shall makes a declaration of bankruptcy by its

determination upon receiving an application.

**Article 308 (Inheritance after Petition for Bankruptcy or Declaration of Bankruptcy)**

When any inheritance commences after a petition of bankruptcy is filed or the bankruptcy is declared, the bankruptcy procedures continue on the inherited assets.

**Article 309 (Grounds for Dismissal)**

(1) The court may, in instances falling under any of the following subparagraphs, dismiss any petition for bankruptcy:

1. When the petitioner fails to meet the expenses for the bankruptcy procedures;

2. When rehabilitation procedures or individual rehabilitation proce dures are pending in the court and the means of resorting to such procedures is compatible with the interests of all of creditors;

3. When the debtor is not responsible for the cause of the bankruptcy;

4. When it is impossible to locate the petitioner; or

5. When the petition is deemed to be not genuine.

(2) Even in cases where the debtor is responsible for the cause of bankruptcy, when it is recognized that the petition for bankruptcy amounts to an abuse of bankruptcy procedures, the court may dismiss the petition for bankruptcy after going through oral examination.

**Article 310 (Declaration of Bankruptcy)**

The year, month, date and time of the declaration of bankruptcy shall be entered in the written statement of the bankruptcy decision.

**Article 311 (Time When Bankruptcy Takes Effect)**

Bankruptcy shall take effect from the time that such bankruptcy is declared.

**Article 312 (Matters Needed to be Prescribed at Declaration of Bankruptcy)**

(1) The court shall select and appoint the trustee in bankruptcy at the time that bankruptcy is declared and prescribe the matters falling under each of the following subparagraphs:

1. The period during which claims are to be reported. In this case, such period shall be from not less than 2 weeks to not more than 3 months from the date on which the bankruptcy is declared;

2. The date on which the first meeting of creditors is to be held. In this case, the date shall be set within 4 months from the date on which the bankruptcy is declared; and

3. The date on which the claims are to be inspected. In this case, the period of between not less than one week to not more than one month is required between such date and the last date of the period during which the claims are reported pursuant to the provisions of subparagraph 1.

(2) The dates referred to in the provisions of paragraph (1) 2 and 3 may coincide.

**Article 313 (Publication and Service of Declaration of Bankruptcy)**

(1) The court shall, when it makes a declaration of bankruptcy, publish without delay the matters falling under each of the following subparagraphs:

1. The main passage of the decision on the bankruptcy;

2. The name, domicile and office of the trustee in bankruptcy;

3. The period and the date provided for in the provisions of Article 312;

4. The gist of an order that is given to the effect that the debtor of the debtor who is declared bankrupt and the owner of the assets that belong to the bankrupt organization are prohibited from making any repayments or transferring any assets to the debtor who is declared bankrupt; and

5. The gist of an order that is given to the effect that the debtor of the debtor who is declared bankrupt and the owner of the assets that belongs to the bankrupt organization report the matters falling under each of the following items to the trustee in bankruptcy within the fixed period:

　(a) Matters concerning the obligations they bear;

　(b) Matters concerning the assets they own; and

　(c) When the holders have the right to foreclose outside bankruptcy, matters concerning the claims that they hold.

(2) The court shall deliver a written statement in which the matters referred to in the provisions of paragraph (1) are entered to each creditor, the debtor and each asset owner who the court is aware of.

(3) The provisions of paragraphs (1) and (2) shall apply mutatis mutandis to cases where any change takes place in the matters referred to in paragraph (1) 2 through 5.

(4) Anyone who neglects making the report provided for in the provisions of paragraph (1) 5 shall compensate for the damage caused by his/her negligence to the bankrupt organization.

### Article 314 (Notification of Corporate Bankruptcy)

(1) In cases where any corporation is declared bankrupt, when permission for its incorporation and business which is its objectives is obtained from any administrative agency, the court shall notify such administrative agency of the declaration of its bankruptcy.

(2) The provisions of paragraph (1) shall apply mutatis mutandis to cases where a decision to revoke any bankruptcy or to discontinue any bankruptcy is confirmed or a decision to terminate any bankruptcy is made.

### Article 315 (Notification to Prosecutors)

If it is deemed necessary, the court may notify prosecutors of the fact of its declaration of bankruptcy.

### Article 316 (Immediate Appeal Filed against Judgment on Petition for Bankruptcy)

(1) An immediate appeal may be filed against any judgment on a petition for bankruptcy.

(2) The provisions of Articles 323 and 324 shall apply mutatis mutandis to cases where an immediate appeal is filed against the decision to dismiss the petition for bankruptcy.

(3) The immediate appeal referred to in the provisions of paragraph (1) shall not have the effect of suspending any execution.

(4) When the procedures for filing the immediate appeal are in violation of Acts and the immediate appeal is deemed groundless, the appellate court shall dismiss or turn down such immediate appeal by its decision.

(5) When the immediate appeal is deemed well grounded, the appellate court shall revoke its original decision and remand the case to the court of origin.

**Article 317 (Declaration of Bankruptcy and Simultaneous Discontinuation of Bankruptcy)**

(1) When the appropriation of funds for expenses for bankruptcy procedures with any bankrupt organization is deemed insufficient, the court shall determine to declare such foundation bankrupt and to discontinue such bankruptcy simultaneously.

(2) In the case of paragraph (1), the court shall publish the main sentence of the bankruptcy decision, the main sentence of the decision to discontinue the bankruptcy procedures and the summary of the reasons thereof.

(3) An immediate appeal may be filed against the decision referred to in the provisions of paragraph (1).

(4) The immediate appeal referred to in the provisions of paragraph (3) shall not have the effect of suspending any execution.

(5) The provisions of Articles 313 through 315 shall apply mutatis mutandis to cases where the decision to discontinue the bankruptcy procedures referred to in the provisions of paragraph (1) is confirmed.

**Article 318 (Exception of Simultaneous Discontinuation of Bankruptcy Procedures)**

The provisions of Article 317 shall not apply to cases where the prepayment of the amount sufficient to fully appropriate funds for expenses for the bankruptcy procedures is made.

**Article 319 (Arrest of Debtor whose Bankruptcy Is Declared)**

(1) When it is deemed necessary, the court may order the arrest of a debtor who is declared bankrupt.

(2) The provisions of the Criminal Procedure Act governing the arrest shall apply mutatis mutandis to the arrest referred to in the provisions of paragraph (1).

(3) An immediate appeal may be filed against the decision referred to in the provisions of paragraph (1).

**Article 320 (Arrest of Legal Representative, etc. of Debtor who is Declared Bankrupt)**

The provisions of Article 319 shall apply mutatis mutandis to persons falling under any of the following subparagraphs:

1. The legal representative of a debtor who is declared bankrupt;

2. The director of a debtor which is declared bankrupt;

3. The manager of the debtor who is declared bankrupt; and

4. In cases of the inherited assets that undergo bankruptcy, the inheritor, the legal representative and the manager.

**Article 321 (Obligation of Debtor, etc. to Explain)**

(1) The person falling under each of the following subparagraphs shall provide necessary explanations for the bankruptcy at the request of the trustee in bankruptcy, any audit committee member or the creditors' consultative council:

1. The debtor and his/her agent;

2. The debtor's director;

3. The debtor's manager; and

4. In cases of the bankruptcy regarding any inherited assets, the inheritors, their agents, the manager of the inherited assets and the executor of the will.

(2) The provisions of paragraph (1) shall apply mutatis mutandis to anyone to whom the qualifications referred to in the provisions of the previous paragraph (1) apply.

### Article 322 (Arrest Before Declaration of Bankruptcy)

(1) When a petition of bankruptcy is filed, the court may order the arrest of the debtor and the person provided for in the provisions of Article 320 even before the debtor is declared bankrupt.

(2) The provisions of Article 319 (2) and (3) shall apply mutatis mutandis to cases under paragraph (1).

### Article 323 (Preservation Disposition before Declaration of Bankruptcy)

(1) The court may order the provisional seizure, the provisional disposition and other necessary preservation dispositions regarding the debtor's assets, even before the debtor is declared bankrupt by its inherent jurisdiction or upon receiving an application filed by the interested persons. The same shall apply to cases where the court declares the debtor bankrupt by its inherent jurisdiction.

(2) The court may alter or rescind the dispositions referred to in the provisions of paragraph (1).

(3) The judgment on the matters referred to in the provisions of paragraphs (1) and (2) shall be made by determination.

(4) An immediate appeal may be filed against the judgment referred to in the provisions of paragraphs (1) and (2).

(5) The immediate appeal referred to in the provisions of paragraph (4) shall not have the effect of suspending any execution.

### Article 324 (Order Given to Suspend limitation of Liability Procedures)

(1) When it is deemed necessary in cases where a petition for bankruptcy is filed, the court may order the suspension of the limitation of liability procedures (hereafter referred to as the "liability procedures" in this Article, and Articles 326 and 327) provided for in Part V of the Commercial Act and the Act on the Procedure for Limiting the Liability of Shipowners, etc. by its inherent jurisdiction or upon receiving an application filed by the interested persons until a decision is made on the petition for bankruptcy: Provided, That the same shall not apply to cases where it is decided to commence the limitation of liability procedures.

(2) The court may cancel the suspension decision referred to in the provisions of paragraph (1).

### Article 325 (Publication and Service of Revocation of Bankruptcy)

(1) When a decision to revoke the bankruptcy is confirmed, the court shall publish the main passage of such decision.

(2) The provisions of Articles 313 (2), 315 and 547 shall apply mutatis mutandis to cases under paragraph (1).

### Article 326 (Suspension of Bankruptcy Procedures until Decision to Discontinue Limitation of Liability Procedures is Confirmed)

When it is decided to discontinue the limitation of liability procedures that has commenced for a debtor who is declared bankrupt, the bankruptcy procedures shall be suspended until such decision is confirmed.

**Article 327 (Measures in Cases of Discontinuation of Limitation of Liability Procedures)**

(1) When a decision to discontinue the limitation of liability procedures that has commenced for a debtor who is declared bankrupt is confirmed, the court shall prescribed the matters falling under both of the following subparagraphs for creditors with limited liability:

1. The period during which claims are reported. In this case, such period shall last for between not less than one week up to not more than 2 months from the date on which a decision to discontinue the limitation of liability procedures is confirmed; and

2. The date on which claims are inspected. In this case, the period of from not less than one week up to not more than 1 month between such date and the last date of the reporting period that is set pursuant to the provisions of subparagraph 1 shall be set.

(2) The court shall publish a period and the date referred to in the provisions of paragraph (1).

(3) The court shall deliver the written statement in which the matters falling under each of the following subparagraphs are entered to each of creditors who learn of the publication:

1. The period and the date referred to in the provisions of paragraph (1); and

2. The matters referred to in the provisions of Article 313 (1) 1 and 313 (1) 2.

(4) The written statement in which the period and the date referred to in the provisions of paragraph (1) are entered shall be delivered to the persons falling under each of the following subparagraphs:

1. The trustee in bankruptcy;

2. The debtor who is declared bankrupt; and

3. Each of the bankruptcy creditors who are reported.

(5) The provisions of paragraphs (2), (3) and the main sentence of paragraph (4) shall apply mutatis mutandis to cases where the period and the date referred to in the provisions of paragraph (1) are altered.

**Article 328 (Dissolved Corporations)**

Every corporation that is dissolved shall be deemed to still exist within the scope of the purposes of bankruptcy.

**Article 329 (Legal Act after Debtor is Declared Bankrupt)**

(1) Any legal act performed by a debtor who is declared bankrupt on the assets that belongs to the bankrupt organization after he/she is declared bankrupt cannot defeat claims of bankruptcy creditors.

(2) Any legal act that is performed by a debtor on the date on which a debtor is declared bankrupt shall be presumed to be performed after the debtor is declared bankrupt.

**Article 330 (Acquisition of Rights after Declaration of Bankruptcy)**

(1) Even in cases where rights to assets that belong to any bankrupt organization are acquired after it is declared bankrupt without resorting to the debtor's legal acts, the acquisition of such rights cannot defeat bankruptcy creditors claims.

(2) The provisions of Article 329 (2) shall apply mutatis mutandis to the rights acquired pursuant to the provisions of paragraph (1).

**Article 331 (Registration and Recording, etc. after Bankruptcy Declaration)**

(1) Any registration or any provisional registration that is effected after bankruptcy is declared by fulfilling obligations that accrue before that bankruptcy is declared with respect to any real estate or any ship cannot defeat bankruptcy creditors' claims: Provided, That the same shall not apply to any registration that is effected by the registration authority without knowledge of the fact that such bankruptcy has been declared.

(2) The provisions of paragraph (1) shall apply mutatis mutandis to the recording or the provisional recording of the establishment, transfer or change of rights.

**Article 332 (Repayment Made to Debtor after Bankruptcy Declaration)**

(1) Any repayment made to the debtor after he/she is declared bankrupt without knowledge of his/her bankruptcy may defeat claims of bankruptcy creditors.

(2) Any repayment made to the debtor after he/she is declared bankrupt with knowledge of his/her bankruptcy may defeat claims of bankruptcy creditors within the limitation of the profits that the bankrupt organization receives.

**Article 333 (Underwriting and Paying Bills after Declaration of Bankruptcy)**

(1) In cases where the issuer or the endorser of bills of exchange is declared bankrupt, when the payer or the preliminary payer underwrites or pays the bills of exchange without knowledge of the fact, he/she may exercise his/her rights as a bankruptcy creditor on the claim that accrues from such act.

(2) The provisions of paragraph (1) shall apply mutatis mutandis to the securities that are geared forwards paying checks, cash, goods and other securities.

**Article 334 (Presumption of Good Faith or Bad Faith)**

When the provisions of Articles 331 through 333 are applied, it shall be presumed that before the declaration of bankruptcy is published, the fact thereof is not known and it shall be presumed that after the declaration of bankruptcy is published, the fact thereof is known.

**Article 335 (Options Concerning Bilateral Contract Not Fulfilled by Both Parties)**

(1) When the debtor and the other party have yet to complete fulfillment of their bilateral contract at the time that they are each declared bankrupt, the trustee in bankruptcy shall cancel or terminate the bilateral contract in question or require the fulfillment of the other party's obligations after fulfilling the debtor's obligations.

(2) In cases under paragraph (1), the other party may demand that the trustee in bankruptcy cancel or terminate the contract or provide confirmation as to whether he/she will fulfill the contract within a reasonable period after stipulating such reasonable period. In this case, when the trustee in bankruptcy does not confirm within such reasonable period, the contract shall be deemed canceled or terminated.

**Article 336 (Special Rules Governing Payment and Settlement System, etc.)**

The provisions of Article 120 shall apply mutatis mutandis to cases where any participant of the payment and settlement system and the liquidation settlement system or any party of the competent financial transaction, each of which are prescribed in the same Article, are declared bankrupt. In this case, "case where rehabilitation procedures commence" in Article 120 (1) through (3) shall be deemed "case where bankruptcy is declared" and "rehabilitation creditors or rehabilitation secured creditors" in the proviso to Article 120 (3) shall be deemed "bankruptcy creditors or the holders of the rights to foreclose outside of bankruptcy".

### Article 337 (Cancellation and Termination by Trustee in Bankruptcy and Right of Other Parties)

(1) When the contract is cancelled or terminated pursuant to the provisions of Article 335, the other party may exercise his/her rights to claim compensation for damage as a bankruptcy creditor.

(2) In cases where the contract is canceled or terminated pursuant to the provisions of paragraph (1), when any benefit in return that is taken by the debtor exists in the bankrupt organization, the other party shall claim the refund thereof and when such benefit in return is nonexistent, the other party may exercise his/her rights on its value as a foundation creditor.

### Article 338 (Regular Purchase and Sale of Marketable Goods in Exchange)

(1) In cases where the failure to effect the purchase and sale of marketable goods in exchange on a fixed date, at a fixed time or within a fixed period makes it impossible to attain the purposes of the contract, when such time arises after the declaration of bankruptcy, the contract shall be deemed canceled. In this case, the amount of compensation for loss shall be determined according to the difference between the market price and the price of the purchase and sale at the time that a transaction of the same kind is effected in the same place.

(2) The provisions of Article 337 (1) shall apply mutatis mutandis to the compensation for loss referred to in the provisions of paragraph (1).

(3) In cases under paragraph (1), when the exchange differently prescribes any thing, such thing shall be governed by the prescription.

### Article 339 (Where Civil Acts Prescribe Right to Terminate or Cancel)

The provisions of Article 335 (2) shall apply mutatis mutandis to the exercise of the right to terminate or the right to cancel that is held by the other party or the trustee in bankruptcy pursuant to the provisions of Article 637, 663 or 674 of the Civil Act.

### Article 340 (Rental Contracts)

(1) When any tenant is declared bankrupt, the disposition taken to pay any rent or to claim any rent cannot defeat the claims of any bankruptcy creditor, with the exception of the payment of rent or the claim for rent of the current term and the following term.

(2) Anyone who suffers loss due to his/her inability to counter any bankruptcy creditor pursuant to the provisions of paragraph (1) may exercise his/her right to claim compensation for such loss as a bankruptcy creditor.

(3) The provisions of paragraphs (1) and (2) shall apply mutatis mutandis to the surface right.

(4) In cases where the tenant is declared bankrupt and the tenant falls under any of the following subparagraphs, the provisions of Article 335 shall not apply:

  1. When he/she meets the requirements for the counter provided for in the provisions of Article 3 (1) of the Housing Lease Protection Act; and

  2. When he/she meets the requirements for the counter provided for in the provisions of Article 3 of the Commercial Building Lease Protection Act.

### Article 341 (Contracts for Construction Works)

(1) When the debtor is liable to perform any construction work according to a contract for construction work, the trustee in bankruptcy may provide the debtor with materials necessary to perform such construction work. When the debtor is not liable to perform the construction work, he/she may cause any third person to perform the construction work.

(2) In case under paragraph (1), any remuneration that is paid by the other party to the debtor shall revert to the bankrupt organization.

### Article 342 (Delegation Contracts)

In cases where a delegating person is declared bankrupt, when the delegated person performs the delegated clerical work without receiving the notification of his/her bankruptcy and without knowledge of his/her bankruptcy, the delegated person may exercise his/her right on any claim that accrues to the delegating person who is declared bankrupt from the delegated clerical work as a bankruptcy creditor.

### Article 343 (Mutual Accounting)

(1) Mutual accounting shall be brought to a close when either of the parties thereof is declared bankrupt. In this case, each party may close the mutual accounting and claim the payment of any balance.

(2) When the debtor holds the claim referred to in the provisions of paragraph (1), such claim shall revert to the bankrupt organization and when the other part holds the claim, such claim shall become a bankrupt claim.

### Article 344 (Bankruptcy of Co-Owners)

(1) When any co-owner is declared bankrupt, even if an agreement prohibiting any split exists, such split may be effected without resorting to bankruptcy procedures.

(2) In cases under paragraph (1), any other co-owner who is not declared bankrupt may acquire the shares of the person who is declared bankrupt after paying a sustainable price therefor.

### Article 345 (Management of Property of Spouse, etc.)

The provisions of Article 829 (3) and (5) of the Civil Act shall apply mutatis mutandis to cases where anyone who manages his/her spouse's assets is declared bankrupt and the provisions of Article 924 of the same Act shall apply mutatis mutandis to cases where anyone who exercises parental authority is declared bankrupt, respectively.

### Article 346 (Bankruptcy, Qualified Approval and Property Division)

Declaration of bankruptcy with regard to any inheritor or any inherited assets shall not affect qualified acceptance or asset division: Provided, That the procedures therefor shall be suspended until a decision to cancel the bankruptcy or to discontinue the bankruptcy is confirmed or a decision to complete the bankruptcy is confirmed.

**Article 347 (Takeover of Lawsuit Involving Assets Belonging to Bankrupt Organization)**

(1) Any lawsuit pending in the court at the time that the assets that belong to the bankrupt organization is declared bankrupt may be taken over by the trustee in bankruptcy or the other party. The same shall apply to cases where a lawsuit is filed on a claim that is held by the other party when the trustee in bankruptcy fulfills his/her obligations pursuant to the provisions of Article 335 (1).

(2) The expenses of the lawsuit provided for in the provisions of paragraph (1) shall be appropriated by foundation claims.

**Article 348 (Effects of Compulsory Execution and Preservation Disposition)**

(1) Any compulsory execution, provisional seizure or provisional disposition, either of which is performed on assets that belong to the bankruptcy foundation based on bankruptcy claims shall lose its effects against the bankruptcy foundation: Provided, That the trustee in bankruptcy may continue compulsory execution procedures for the bankruptcy foundation.

(2) Expenses incurred by the trustee in bankruptcy to continue compulsory execution procedures pursuant to the provisions of the proviso to paragraph (1) shall be appropriated by foundation claims and in the lawsuit on an objection that is raised by any third person to such compulsory execution, the trustee in bankruptcy shall be adjoined as a defendant.

**Article 349 (Effect of Disposition on Default)**

(1) When a disposition for the recovery of arrears is taken on assets that belong to the bankruptcy foundation based on collectable claims (referring to claims that are collectable according to the example of collecting the national tax and a preferential collection therefor order takes precedence over the general bankruptcy claim) pursuant to the National Tax Collection Act or the Framework Act on Local Taxes, before such assets are made subject to bankruptcy. the declaration of bankruptcy shall not impede the continuation of such disposition. *<Amended by Act No. 10219, Mar. 31, 2010>*

(2) The disposition for the recovery of arrears shall not be taken based on claims (including any claim that can be collected according to the example of collecting the national taxes) that are collectable pursuant to the National Tax Collection Act or the Framework Act on Local Taxes on assets that belong to the bankruptcy foundation after such assets are made subject to bankruptcy. *<Amended by Act No. 10219, Mar. 31, 2010>*

**Article 350 (Effect on Administrative Cases)**

(1) When any case is pending in any administrative agency at the time that the assets that belongs to the bankruptcy foundation are made subject to bankruptcy, the procedures for such case shall be suspended by the time the takeover thereof or the bankruptcy procedures are completed.

(2) The provisions of Article 347 shall apply mutatis mutandis to cases under paragraph (1).

### Article 351 (Disposition Taken to Preserve Assets of Corporate Directors)

(1) In cases where the debtor who is a corporation is declared bankrupt, the court may, when it is deemed necessary, take a disposition to preserve the assets of directors, etc. by its inherent jurisdiction or upon receiving an application filed by the trustee in bankruptcy in order to preserve the rights to claim investments by the debtor's promoters, directors (including deemed directors pursuant to the provisions of Article 401-2 (1) of the Commercial Act), auditors, examiners or liquidator (hereafter referred to as "directors, etc" in this Article through Article 353) or the right to claim compensation for loss based on the responsibilities of the directors, etc.

(2) When the trustee in bankruptcy becomes aware of the existence of the claims referred to in the provisions of paragraph (1), he/she shall request the court to take a disposition to preserve such claims referred to in the provisions of paragraph (1).

(3) When it is deemed urgent, the court may take a disposition to preserve the assets referred to in the provisions of paragraph (1) by its inherent jurisdiction or upon receiving an application filed by the debtor even before the debtor is declared bankrupt.

(4) The court may decide to alter or rescind the preservation disposition referred to in the provisions of paragraph (1) or (3) after hearing the opinions of the Custodial Committee.

(5) An immediate appeal may be filed against the preservation disposition referred to in the provisions of paragraph (1) or (3) and the decision referred to in the provisions of paragraph (4).

(6) The immediate appeal referred to in the provisions of paragraph (5) shall not have the effect of suspending any execution.

(7) When a judgment is made on the immediate appeal filed against the preservation disposition referred to in the provisions of paragraph (1) or (3) and the decision referred to in the provisions of paragraph (4), a written judgment shall be delivered to each of the parties.

### Article 352 (Final Inspection Judgment on Right to Claim Compensation for Loss, etc.)

(1) When it is deemed necessary in cases where the debtor, who is a corporation is declared bankrupt, the court may issue a judgment calling for inspection and determination as to whether the right to claim invest ments by directors, etc. and the right to claim compensation for loss based on the responsibilities of directors, etc. exist and the nature of such rights.

(2) When the trustee in bankruptcy becomes aware of the claim rights referred to in the provisions of paragraph (1), he/she shall file an application with the court for the judgment referred to in the provisions of paragraph (1).

(3) When the trustee in bankruptcy files the application referred to in the provisions of paragraph (1), he/she shall substantiate the factual grounds thereof.

(4) When the court commences the inspection and confirmation proce dures by its inherent jurisdiction, it shall decide on their purport.

(5) When the application referred to in the provisions of paragraph (1) is filed or it is decided to commence the inspection and confirmation procedures referred to in the provisions of paragraph (4), it is deemed that a claim is filed for a judgment on the interruption of prescription.

(6) Any judgment that dismisses the final inspection judgment referred to in the provisions of paragraph (1) and the application filed for the inspection and confirmation shall be made by a decision that is accompanied by the grounds thereof.

(7) When the court makes the decision referred to in the provisions of paragraph (6), it shall examine interested persons in advance.

(8) The inspection and confirmation procedures (excluding any inspection and confirmation procedures after an inspection and confirmation decision is made) shall be completed when the bankruptcy procedures are completed.

(9) When an inspection and confirmation decision is made, the written decision shall be delivered to the parties.

**Article 353 (Lawsuit Filed for Objection)**

(1) Anyone who is dissatisfied with the final inspection judgment provided for in the provisions of Article 352 (1) may file a lawsuit raising an objection to such judgment within one month from the date on which he/she receives the delivery of the judgment.

(2) The period referred to in the provisions of paragraph (1) shall be an invariable period,

(3) When the director, etc. files the lawsuit referred to in the provisions of paragraph (1), the trustee in bankruptcy shall be adjoined as a defendant and when the trustee in bankruptcy files the lawsuit, the director, etc. shall be the defendant, etc., respectively.

(4) The lawsuit referred to in the provisions of paragraph (1) shall be placed under the exclusive jurisdiction of the bankruptcy court (referring to the district court in which the bankruptcy case is pending; hereinafter the same shall apply) and arguments shall not be put forward until after the lapse of one month from the date on which the decision is delivered.

(5) When multiple lawsuits are pending, the court shall merge arguments.

(6) The judgment that is given in the lawsuit referred to in the provision of paragraph (1) shall authorize, alter and rescind the decision under the same paragraph: Provided, That the same shall not apply to cases where the lawsuit is dismissed on the grounds of its unlawful.

(7) The judgment that authorizes or changes a decision on the inspection and confirmation shall have the same effect as that of a judgment ordering the implementation of compulsory execution.

**Article 354 (Effect of Final Inspection Judgment)**

When the lawsuit provided for in the provisions of Article 353 (1) is not filed or, is withdrawn or dismissed within the period provided for in the provisions of the same paragraph, the final inspection judgment shall have the same effect as that of a final judgment ordering the implementation.

**Article 355 (Selection and Appointment of Trustees in Bankruptcy)**

(1) The court shall select and appoint every trustee in bankruptcy after hearing the opinion of the Custodial Committee.

(2) Any corporation may become a trustee in bankruptcy. In this case, the corporation shall designate one of its director to perform his/her duties as a trustee in bankruptcy and report its designation to the court.

### Article 356 (Number of Trustees in Bankruptcy)

The trustee in bankruptcy shall be one person: Provided, that multiple trustees in bankruptcy may be selected and appointed when the court recognizes the need to select and appoint them.

### Article 357 (Qualification Certificates)

(1) The court shall deliver to every trustee in bankruptcy a written statement attesting to their selection and appointment.

(2) Every trustee in bankruptcy shall, while performing his/her duties, produce the written statement referred to in the provisions of paragraph (1) at the request of any of the interested persons.

### Article 358 (Supervision of Court)

Every trustee in bankruptcy shall be placed under the supervision of the court.

### Article 359 (Standing to Sue)

The trustee in bankruptcy shall become a party in and lawsuit involving the bankruptcy foundation.

### Article 360 (Performance of Duties by Multiple Trustees in Bankruptcy)

(1) When there is at least one trustee in bankruptcy is not less than one, they shall perform their duties jointly. In this case, they may share their duties after obtaining permission therefor from the court.

(2) When multiple trustees in bankruptcy perform their duties, the expression of will of any third person may be made to one trustee in bankruptcy.

### Article 361 (Obligations, etc. of Trustees in Bankruptcy)

(1) Every trustee in bankruptcy shall perform his/her duties with the due care of a good manager.

(2) When any trustee in bankruptcy neglects such due care, he/she shall be liable to compensate for loss caused to interested persons. In this case, while multiple trustees in bankruptcy are involved in the neglect of such due care, they shall be collectively liable to compensate for result at loss.

### Article 362 (Agents for Trustees in Bankruptcy)

(1) When it is deemed necessary, every trustee in bankruptcy may select and appoint an agent at his/her own ri, in order to cause him/her to perform his/her duties.

(2) Permission shall be obtained from the court for selecting and appointing any agent referred to in the provisions of paragraph (1).

(3) In cases where the debtor is a corporation, and the permission referred to in the provisions of paragraph (1) is granted, the clerk, etc. of the court shall promptly commission the registry office by their inherent jurisdiction to register the selection and appointment of the agent by providing the registry office with a written commission accompanied by a certified copy of the written decision. The same shall apply to cases where the permission for selecting and appointing such an agent is altered or rescinded.

(4) The agent referred to in the provisions of paragraph (1) may perform any act on behalf of the trustee in bankruptcy with the exception of acts involving any trial.

**Article 363 (Resignation of Trustee in Bankruptcy)**

Any trustee in bankruptcy may resign after obtaining permission therefor from the court when there are justifiable grounds for his/her resignation.

**Article 364 (Dismissal of Trustee in Bankruptcy)**

(1) The court may dismiss any trustee in bankruptcy by its inherent jurisdiction and by a resolution of the meeting of creditors or upon receiving an application filed by any member of the audit committee. In this case, the court shall examine the trustee in bankruptcy.

(2) An immediate appeal may be filed against the decision to dismiss the trustee in bankruptcy pursuant to the provisions of paragraph (1).

(3) The immediate appeal referred to in the provisions of paragraph (2) shall not have the effect of suspending any execution.

**Article 365 (Obligation to Report Accounting)**

(1) When the trustee in bankruptcy completes his/her duties, he/she or the inheritor shall promptly make a report on his/her accounting to a meeting of creditors.

(2) When the debtor, the trustee in bankruptcy or the successor of the trustee in bankruptcy do not raise any objections to the accounting at the meeting of creditors, such accounting report shall be deemed approved.

(3) Every trustee in bankruptcy shall submit the accounting report and the written opinions of members of the audit committee thereon to the court by 3 days prior to the meeting of creditors being held in order for interested persons to inspect them.

**Article 366 (Emergency Disposition Upon Completion of Duties)**

In cases where the duties of the trustee in bankruptcy are completed, when an emergency situation occurs, the trustee in bankruptcy and the inheritors shall take necessary measures to manage the assets until the time what the successor trustee in bankruptcy and the debtor manage such assets.

**Article 367 (Convocation)**

The court shall call the meeting of creditors under its inherent jurisdiction or upon receiving an application filed by the trustee in bankruptcy or any member of the audit committee. The same shall apply to cases where an application is filed by any bankruptcy creditor who holds not less than 1/5 of the amount of total claims as appraised by the court.

**Article 368 (Publication of Date and Agenda of Meeting)**

(1) The court shall publish the date and the agenda of the meeting of creditors.

(2) When an extension or continuation of the meeting of creditors is announced, the delivery and the publication of such announcement need not be made.

**Article 369 (Presiding Over by Court)**

The meeting of creditors shall be presided over by the court.

**Article 370 (Requirements for Passing Resolutions)**

(1) A resolution of the meeting of creditors requires the agreement of persons who hold not less than 1/2 of the total amount of the claims held by bankruptcy creditors who attend the meeting of creditors and are entitled to exercise their voting rights.

(2) Anyone who has any special interest in the resolution of the meeting of creditors can not exercise his/her voting rights.

**Article 371 (Independent Exercise of Voting Rights)**

(1) Bankruptcy creditors may exercise their voting rights independently.

(2) In cases under paragraph (1), the bankruptcy creditors shall report in writing the purposes of their meeting to the court 7 days prior to the date on which the meeting of bankruptcy creditors is held.

**Article 372 (Vicarious Exercise of Voting Rights)**

(1) Bankruptcy creditors may exercise their voting rights through their agents. In this case, such agents shall submit written statements attesting to their proxy rights.

(2) The provisions of Article 371 (2) shall apply mutatis mutandis to cases where agents independently exercise their voting rights.

**Article 373 (The Amount of Claims over which Voting Rights Can be Exercised)**

(1) The bankruptcy creditors may exercise their voting rights according to the confirmed amount of their claims.

(2) When the trustee in bankruptcy or any bankruptcy creditor raises an objection to the amount of claims that can not be repaid by the exercise of unconfirmed claims, condition precedent claims, future claims, the court shall determine whether to permit them to exercise their voting rights and the amount on which the voting rights are exercised.

(3) The court may alter the decision referred to in the provisions of paragraph (2) at any time upon receiving an application filed by interested persons.

(4) The decision referred to in the provisions of paragraph (2) or (3) need not be delivered when a declaration is made.

(5) The bankruptcy creditors cannot exercise their voting rights on the claims provided for in the provisions of Article 446.

**Article 374 (Effect in Lieu of Agreement of Members of Audit Committee)**

(1) Agreement by the audit committee members may be substituted for a resolution of the meeting of creditors.

(2) When the resolution of the meeting of creditors differs from the opinions of the audit committee members, the resolution shall prevail over such opinions.

**Article 375 (Prohibition on Execution of Resolution)**

(1) When any resolution of the meeting of creditors runs counter to the general interests of the bankruptcy creditors, the court may prohibit the resolution from being executed by its inherent jurisdiction or upon re

ceiving an application filed by trustees in bankruptcy, members of the audit committee, or bankruptcy creditors.

(2) When any bankruptcy creditor who does not have voting rights files the application referred to in the provisions of paragraph (1), he/she shall substantiate that he/she is a bankruptcy creditor.

(3) When a decision is declared on the prohibition referred to in the provisions of paragraph (1), the delivery thereof need not be made.

(4) An immediate appeal may be filed against the decision referred to in the provisions of paragraph (1).

### Article 376 (Resolution on Establishment of Audit Committee)

In case where it is proposed at the first meeting of creditors that the audit committee be set up, the first meeting of creditors may resolve on whether to set up the audit committee and the number of its members: Provided, That such resolution may be altered at the meeting of creditors after the first meeting of creditors.

### Article 377 (Qualifications, etc. for Members of Audit Committee)

(1) The members of the audit committee shall be selected and appointed at a meeting of creditors.

(2) All of the members of the audit committee are required to be experts in law and corporate governance who have no interest in the bankruptcy procedures.

(3) Any resolution on the selection and appointment of the members of the audit committee shall obtain an authorization thereof from the court,

### Article 378 (Methods of Performing Duties)

(1) In case where the number of members of the audit committee is not less than 3, the performance of their duties shall be decided by the agreement of a majority of them.

(2) Any member of the audit committee who is related by special interest shall be prohibited from participating in the decision referred to in the provisions of paragraph (1).

### Article 379 (Performance of Duties of Members of Audit Committee)

(1) Members of the audit committee shall oversee the performance of the duties of the trustees in bankruptcy.

(2) Each member of the audit committee may request the trustee in bankruptcy to make a report on the bankruptcy foundation and inspect the current state of the bankruptcy foundation at any time.

(3) When any member of the audit committee finds a fact that will inflict substantial loss upon any bankruptcy creditor, he/she shall promptly make a report thereon to the court or at a meeting of creditors.

### Article 380 (Dismissal of Members of Audit Committee)

(1) Any member of the audit committee may be dismissed from his/her post by a resolution of a meeting of creditors.

(2) When substantial grounds exist, the court may dismiss any member of the audit committee upon receiving an application filed by interested persons.

(3) An immediate appeal may be filed against the judgment on the dismissal of any member of the audit committee provided for in the provisions of paragraph (2).

(4) The immediate appeal referred to in the provisions of paragraph (3) shall not have the effect of suspending any execution.

**Article 381 (Mutatis Mutandis Provisions)**

The provisions of Articles 30 (1) and 361 shall apply mutatis mutandis to the members of the audit committee.

**Article 382 (Bankruptcy Foundation)**

(1) All assets held by the debtor at the time he/she is declared bankrupt shall revert to the bankruptcy foundation.

(2) Any claim based on grounds arising before the debtor is declared bankrupt and is to be exercised by the debtor in the future shall revert to the bankruptcy foundation.

**Article 383 (Assets not Belonging to Bankruptcy Foundation)**

(1) Any assets that cannot be seized shall not revert to the bankruptcy foundation.

(2) The court may exempt the assets falling under either of the following subparagraphs from reverting to the bankruptcy foundation upon receiving an application filed by an individual debtor:

1. Any portion that does not exceed the amount prescribed by the Presidential Decree within the scope of the amount preferentially repayable pursuant to the provisons of Article 8 of the Housing Lease Protection Act, which is the claim for refund of the security money for lease of a building used by the debtor or his/her defendants for residential purposes; and

2. The portion of specific assets the amount of which does not exceed the amount prescribed by the Presidential Decree, which is used to cover the living costs of the debtor and his/her dependants for 6 months.

(3) The application referred to in the provisions of paragraph (2) shall be filed in a written statement accompanied by the exempted assets, inventory and materials necessary for substantiation within 14 days from the date on which the bankruptcy is declared after a petition of bankruptcy is filed.

(4) In cases where the application referred to in the provisions of paragraph (2) is filed before the bankruptcy is declared or in cases where the application referred to in the provisions of paragraph (2) is filed after the bankruptcy is declared, the court shall decide whether to grant the exemption, and on the scope of such exemption within 14 days from the date on which such application is filed.

(5) When the decision referred to in the provisions of paragraph (4) is made, the court shall deliver a written decision to the debtor and each of the creditors who are known.

(6) An immediate appeal may be filed against the decision referred to in the provisions of paragraph (4).

(7) The immediate appeal referred to in the provisions of paragraph (6) shall not have the effect of suspending any execution.

(8) In cases where an exception application is filed before the bankruptcy is declared, the court may order the suspension or the prohibition of any compulsory execution, provisional seizure or provisional disposition on the exempted assets referred to in the provisons of paragraph (2) based on the bankruptcy claims by its inherent jurisdiction or upon receiving an application filed by the debtor by the time

bankruptcy is declared.

(9) When the exemption decision is confirmed, the procedures suspended pursuant to the provisions of paragraph (8) shall lose their effect.

(10) With respect to the assets exempted pursuant to the provisions of paragraph (4), any compulsory execution, provisional seizure or provisional disposition based on bankruptcy claims shall not be performed by the deadline when the immunity application may be filed pursuant to the provisions of Article 556 (1).

**Article 384 (Authority to Perform Management and Disposal)**

The authority to manage and dispose of a bankruptcy foundation shall be held by the trustees in bankruptcy.

**Article 385 (Absolute Acceptance after Bankruptcy Declaration)**

In cases where any inheritance commences for a debtor before the debtor is declared bankrupt, the debtor's absolute acceptance after he/she is declared bankrupt shall have the effect of performing a qualified acceptance on the bankruptcy foundation.

**Article 386 (Renunciation of Inheritance After Bankruptcy Declaration)**

(1) In cases where the inheritance commences for a debtor before he/she is declared bankrupt, any inheritance that is renounced by the debtor after he/she is declared bankrupt shall have the effect of a qualified acceptance on the bankruptcy foundation.

(2) Notwithstanding the provisions of paragraph (1), the trustee in bankruptcy may recognize the effect of the renunciation of inheritance. In this case, the trustee in bankruptcy shall report the gist thereof to the court within 3 months from the date on which he/she becomes aware of such renunciation of inheritance.

**Article 387 (Bankruptcy and General Legacy)**

The provisions of Articles 385 and 386 shall apply mutatis mutandis to a general legacy.

**Article 388 (Bankruptcy and Specific Legacy)**

(1) In cases where any specific legacy is held by the debtor before he/she is declared bankrupt, when the debtor does not approve of or renounces such specific legacy at the time that he/she is declared bankrupt, the trustee in bankruptcy may approve of or renounce the specific legacy on behalf of the debtor.

(2) The provisions of Article 1077 (1) of the Civil Act shall apply mutatis mutandis to cases under paragraph (1).

**Article 389 (Bankruptcy against Inherited Assets)**

(1) When any inherited assets are subject to declaration of bankruptcy, all of such inherited assets that pertain to such declaration of bankruptcy shall revert to the bankruptcy foundation.

(2) In cases where any inherited assets are subject to a declaration of bankruptcy, the rights held by the predecessor over the inheritor and no rights held by the inheritor over the predecessor shall be extinguished.

(3) When the inherited assets are subject to declaration of bankruptcy, the inheritor thereof shall be deemed accepted on a qualified basis: Provided, That the same shall not apply to cases where the inheritor

is deemed accepted absolutely pursuant to the provisions of subparagraph 3 of Article 1026 of the Civil Act.

### Article 390 (Disposal of Inheritor's Assets)

(1) When the inherited assets are declared bankrupt after the inheritor disposes of the whole or part of such inherited assets, rights to benefits in return held by the inheritor shall revert to the bankruptcy foundation.

(2) In cases under paragraph (1), when the inheritor has already received the benefits in return, he/she shall return such benefits in return to the bankruptcy foundation: Provided, That when the inheritor is not aware of the grounds of bankruptcy or the petition for bankruptcy when he/she receives the benefits in return, such inheritor may return such benefits in return within the limitation of the existing interest thereof.

### Article 391 (Negatable Act)

Any trustee in bankruptcy may set aside acts falling under any of the following subparagraphs for the bankruptcy foundation:

1. An act performed by the debtor with knowledge that such act causes loss to bankruptcy creditors: Provided, that the same shall not apply to cases where any beneficiary from the act does not become aware of the fact that the debtor's act causes loss to the rehabilitation creditors at the time such act is performed;

2. An act by the debtor that causes loss to bankruptcy creditors and an act of furnishing any security or extinguishing any obligation by the debtor after he/she files an application for suspending payments or a petition for bankruptcy: Provided, That it is limited to the event when any beneficiary from the act learns of the fact that the debtor files an application for suspending payments or a petition for bankruptcy at the time that the debtor performs such act;

3. The act of furnishing any security or extinguishing any debt by the debtor, which does not pertain to the debtor's obligations and whose means and time do not pertain to the debtor's obligations before or after 60 days from the date on which the debtor files an application for suspending payments or a petition for bankruptcy: Provided, That the same shall not apply to cases where creditors are not aware of the fact that the debtor files an application for suspending payments or a petition for bankruptcy and causes loss to them at the time that he/she performs such act; and

4. A gratuitous act or act for consideration that can be deemed identical to the former, performed by the debtor before or after 6 months from the date on which he/she files an application for suspending payments or files a petition of bankruptcy.

### Article 392 (Special Rules Governing Acts Performed with Specially Re lated Persons as Other Parties)

(1) When anyone who derives a profit in cases of applying the provisions of the proviso to subparagraph 2 of Article 391 is a person who is in a special relationship with the debtor (hereinafter referred to as a "specially related person"), the scope of which is prescribed by the Presidential Decree, the specially related person shall be presumed to be aware of the fact that the debtor files the application for suspending payments or a petition of bankruptcy at the time that the debtor performs such act.

(2) In the application of the provisions of subparagraph 3 of Article 391, with respect to the act performed with the specially related person as the other party, "60 days" provided for in the main sentence of the same subparagraph shall be made "one year" and in the application of the proviso to the same subparagraph, it shall be presumed that the specially related person is aware of the fact that the debtor files an application for suspending payments or a petition of bankruptcy and causes loss to bankruptcy creditors at the time that he/she performs such act.

(3) In cases under applying the provisions of subparagraph 4 of Article 391, when any act is performed with a specially related person as the other party, "6 months" provided for in the same subparagraph shall be made "one year."

### Article 393 (Exception of Payment on Promissory Notes)

(1) The provisions of Article 391 shall not apply to cases where anyone who is entitled to payment on promissory notes from the debtor fails to receive such payment from him/her, making it possible for one or multiple persons to face the loss of his/her rights or their rights over the debtor for such payment on promissory notes.

(2) In cases under paragraph (1), when any person who is obligated to make final payment or any person who commissions the issuance of promissory notes becomes aware of the fact that the debtor files an application for suspending payments or a petition for bankruptcy or does not become aware of the fact due to negligence at the time that such promissory notes are issued, the trustee in bankruptcy may require such person to refund the amount paid by the debtor.

### Article 394 (Requirements for Establishing Alteration of Rights or Negation of Requirements for Counter)

(1) In cases where any registration or any recording that has the effect of establishing, transferring or altering rights is effected after the debtor files an application for suspending payments or a petition for bankruptcy, when the act of incurring obligations by way of such registration or such recording is performed with the knowledge that the debtor files an application for suspending payments or a petition for bankruptcy, such act may be set aside: Provided, That the same shall not apply to cases where any principal registration or any principal recording is effected after any provisional registration or any provisional recording is effected based on the former.

(2) In cases where the act of establishing, transferring or altering the right is performed out of the need to counter any third person after the debtor files an application for suspending payments or a petition for bankruptcy, when such act is performed with the knowledge that the debtor files an application for suspending payments or a petition for bankruptcy after the lapse of 15 days from the date on which the act of establishing, transferring or altering the right is performed, the provisions of paragraph (1) shall apply to such cases.

### Article 395 (Negation of Act of Execution)

The right to set aside may be exercised when a title holding the executory power over an act that is subject to being set aside exists or when the act is based on the act of execution.

**Article 396 (Means of Exercising Negation Rights)**

(1) The right to set aside shall be exercised by the trustee in bankruptcy by means of lawsuit, the claim of for setting aside or protest.

(2) The court may order the trustee in bankruptcy to exercise the right to set aside by its inherent jurisdiction or upon receiving an application filed by bankrupt creditors.

(3) The lawsuits and cases of claims for negation referred to in the provisions of paragraph (1) shall be placed under the exclusive jurisdiction of the bankruptcy court.

(4) The provisions of Articles 106 and 107 shall apply mutatis mutandis to the claims for setting aside referred to in the provisions of paragraph (1).

**Article 397 (Effect of Exercise of Negation Right)**

(1) The effect of exercising the right of setting aside shall restore the bankruptcy foundation to its original status.

(2) In cases where the act provided for in the provisions of subparagraph 4 of Article 391 is set aside, when the other party is bona fide at the time that the other party performs the act, the refund may be made within the limits of the existing profit.

**Article 398 (Status of Other Party)**

(1) In cases where the debtor's act is set aside, when the benefits in return that is paid to him/her is included in the bankruptcy foundation, the other party may claim a refund thereof and when any profit that accrues from the benefit in return exists in the bankruptcy foundation, the debtor may exercise his/her rights as a foundation creditor within the limits of such profit.

(2) In cases where the debtor's act is set aside, when no profit accrues from the benefits in return, the other party may exercise his/her rights as a bankruptcy creditor to have the value of such profit refunded. In cases where the value of the benefits in return is higher than that of the existing profit, the same shall apply to the difference between them.

**Article 399 (Restoration of Claim of other Party)**

In cases where the debtor's act is set aside, when the other party returns any payment that he/she has received or refunds its value, the other party's claim shall be restored to its original status.

**Article 400 (Right of Negation where Inherited Assets Subject to Bankruptcy)**

In cases where any inherited assets are subject to a declaration bankruptcy, the provisions of Articles 391, 392, 393, 398 and 399 shall apply mutatis mutandis to an act performed by any predecessor, any inheritor, the custodian of the inherited assets and the executor of the will with respect to the inherited assets.

**Article 401 (Negation of Repayment, etc. to Person who Takes Legacy)**

In cases where the inherited assets are subject to a declaration of bankruptcy, when the act of making any repayment and extinguishing any obligation to the person who takes the legacy causes loss to any bankruptcy creditor who holds preferential claims, such act may be set aside.

**Article 402 (Repayment to other Party of Negation)**

In cases where the inherited assets are subject to a declaration of bankruptcy, when the act performed by the predecessor, any inheritor, the custodian of the inherited assets and the executor of a will on the assets property is set aside, the residual assets shall be distributed according to the value of the rights to the other party of the act that is set aside after making a repayment to the inheritance creditor.

### Article 403 (Right of Negation on Subsequent Purchasers)

(1) In the instances falling under any of the following subparagraphs, the right to set aside may be exercised on a subsequent purchaser:

1. When the subsequent purchaser is aware that the grounds for the setting aside on the former exists at the time that the subsequent purchase is made;

2. When the subsequent purchaser is a specially related person provided for in the provisions of Article 392: Provided, That the same shall not apply to instances when the subsequent purchaser is unaware of the grounds for the setting aside on the former; and

3. In cases where the subsequent purchaser performs the subsequent purchase by means of a gratuitous act or an act for consideration that is deemed identical to the former, when the grounds for setting aside on the former exists.

(2) The provisions of Article 397 (2) shall apply mutatis mutandis to cases where the right to set aside is exercised pursuant to the provisions of paragraph (1) 3.

### Article 404 (Restrictions on Negation on Grounds of Awareness of Payment Suspension)

Any act that is performed one year prior to the date on which bankruptcy is declared cannot be set aside on the grounds of awareness of the fact that the payment is suspended.

### Article 405 (Period During Which Negation Right is Exercised)

The right to set aside shall not be exercised after 2 years lapse from the date on which bankruptcy is declared. The same shall apply to cases where 10 years lapse from the date on which the act provided for in each subparagraph of Article 391 is performed.

### Article 406 (Suspension of Lawsuit to Revoke Filed by Creditor)

(1) When a lawsuit filed by any bankruptcy creditor pursuant to the provisions of Article 406 of the Civil Act is pending in the court at the time that he/she is declared bankrupt, the litigation procedures therefor shall be suspended until the litigation procedures are taken over or the bankruptcy procedures are completed.

(2) The provisions of Article 347 shall apply mutatis mutandis to cases under paragraph (1).

### Article 407 (Reacquisition of Assets Not Belonging to Debtor)

A declaration of bankruptcy shall not affect rights to reacquire from the bankruptcy foundation any assets that do not belong to the debtor.

### Article 408 (Reacquisition of Sold Goods in Transit)

(1) When the seller ships out goods that are subject to purchase and sells them to a buyer who is declared bankrupt before the latter pays the total purchase price of such goods and takes the delivery of such goods at their destination, the former may reacquire such goods: Provided, That the same shall not apply to cases

where the trustee in bankruptcy pays the total purchase price therefor and then claims delivery of such goods.

(2) The provisions of paragraph (1) shall not exclude the application of the provisions of Article 335.

### Article 409 (Rights of Commission Agents to Reacquire)

The provisions of Article 408 (1) shall apply mutatis mutandis to cases where any commission agent entrusted to purchase goods ships out such goods to any entrusting person.

### Article 410 (General Reacquisition Rights)

(1) When the debtor transfers his/her assets that are subject to the reacquisition right before he/she is declared bankrupt, the holder of the reacquisition right may claim the transfer of the right to claim the payment of the benefits in return. The same shall apply to cases where the trustee in bankruptcy transfers assets that are subject to the reacquisition right.

(2) In cases under paragraph (1), when the trustee in bankruptcy has received payment of the benefits in return, the reacquisition right holder may claim the return of the assets that the trustee in bankruptcy takes as the benefits in return.

### Article 411 (Holders of Rights to Foreclose Outside of Bankruptcy)

Anyone who holds a lien, pledge right, mortgage, security right under the Act on Security over Movable Property, Claims, etc., or a right to lease on a deposit basis over any asset that belongs to the bankruptcy foundation shall hold the right to foreclose the asset outside bankruptcy. <Amended by Act No. 10366, Jun. 10, 2010>

### Article 412 (Exercise of Right to Foreclose Outside Bankruptcy)

The right to foreclose outside of bankruptcy shall be exercised without resorting to bankruptcy procedures.

### Article 413 (Exercise of Bankruptcy Claims by Holders of Rights to Foreclose Outside of Bankruptcy)

The holder of the right to foreclose outside of bankruptcy may exercise his/her right to foreclose outside of bankruptcy as a bankruptcy creditor on the amount of a claim that can not be met by the exercise of the right to foreclose outside of bankruptcy: Provided, That this shall not affect the exercise of the right as a bankruptcy creditor on the renounced amount of the claim on which the right to foreclose outside of bankruptcy.

### Article 414 (Holders of Quasi-Rights to Foreclose Outside of Bankruptcy)

(1) Anyone who holds a pledge right, mortgage, a security right under the Act on Security over Movable Property, Claims, etc. over the debtor's assets, which does not belong to the bankruptcy foundation, may exercise his/her right only on the amount of the claim that cannot be met by the exercise of such right as a bankruptcy creditor. <Amended by Act No. 10366, Jun. 10, 2010>

(2) The provisions governing the right to foreclose outside of bankruptcy shall apply mutatis mutandis to anyone who holds the rights referred to in the provisions of paragraph (1).

### Article 415 (Housing Tenants, etc.)

(1) Any tenant who is given a confirmation date in the rental contract certificate after meeting the requirements for counterclaim provided for in the provisions of Article 3 (1) of the Housing Lease

Protection Act shall have the right to have his/her security deposit repaid more preferentially than the subsequent creditors and other creditors from the proceeds of liquidation of the housing that belongs to the bankruptcy foundation.

(2) Any tenant provided for in the provisions of Article 8 of the Housing Lease Protection Act shall have the right to have his/her security deposit as provided for in the provisions of the same Article, repaid more preferentially than other secured creditors from the proceeds of liquidation of the housing that belong to the bankruptcy foundation. In this case, the tenant shall meet the requirements for counterclaim referred to in the provisions of Article 3 (1) of the Housing Lease Protection Act by the date on which a petition for bankruptcy is filed.

(3) The provisions of paragraphs (1) and (2) shall apply mutatis mutandis to tenants who meet the requirements for counterclaim referred to in the provisions of Article 3 of the Commercial Building Lease Protection Act and has the date of confirmation entered in the rental contract certificate and other tenants provided for in the provisions of Article 14 of the same Act.

### Article 416 (Rights of Setoff)

When any bankruptcy creditor bears obligations for the debtor at the time that the debtor is declared bankrupt, such obligations may be offset without resorting to bankruptcy procedures.

### Article 417 (Setoff of Claims and Obligations Subject to Deadline and Conditions for Rescission, etc.)

Even when the claim of any bankruptcy creditor is subject to deadline or subject to recession at the time that the debtor is declared bankrupt and the claim provided for in the provisions of Article 426, such claims may be offset. The same shall apply to cases where any obligation is sub-

ject to deadline and subject to rescission or to future claims.

### Article 418 (Offset of Condition Precedent Claim and Claim of Future)

When anyone holding a condition precedent claim or future claim who fulfill his/her obligations, he/she may claim the depositing of the amount of the repayment within the limit of the amount of offset of the future claim.

### Article 419 (Offset of Claim Subject to Rescission)

When anyone holding a claim subject to rescission who offsets such claim, he/she shall furnish security or make a deposit for the amount of offset.

### Article 420 (Setoff Amount of Automatic Claims)

(1) When the claim of any bankruptcy creditor is an interest-free claim or a periodic payment claim, his/her claim may be offset within the limit of the amount obtained by deducting the portion falling under Article 446 (1) 5 through 7.

(2) The provisions of Articles 426 and 427 shall apply mutatis mutandis to the claims of bankruptcy creditors.

### Article 421 (Setoff of Rents, Security Deposits and Land Rents)

(1) When the bankruptcy creditor is a tenant, his/her rents for the current term and the following term may offset one another at the time that the debtor is declared bankrupt. In cases where any security deposit

exists, the same shall apply to rents thereafter.

(2) The provisions of paragraph (1) shall apply mutatis mutandis to land rents.

**Article 422 (Prohibition on Setoff)**

Setoff shall be prohibited in events falling under any of the following subparagraphs:

1. When a bankruptcy creditor bears obligations for the bankruptcy foundation after the debtor is declared bankrupt;

2. When a bankruptcy creditor bears obligations for the debtor with knowledge that the debtor files an application for suspending payments or a petition for bankruptcy; Provided, That the same shall not apply to events falling under any of the following items:

(a) When the bearing of obligations is based on statutory grounds;

(b) When the bearing of obligations accrues before the bankruptcy creditor becomes aware of the fact that the debtor files an application for suspending payments or a petition for bankruptcy; and

(c) The bearing of obligations accrues one year prior to the date on which the debtor is declared bankrupt;

3. When a debtor to the debtor who is declared bankrupt acquires any bankruptcy claim from another person after he/she is declared bankrupt; and

4. When a debtor to the debtor who is declared bankrupt acquires any bankruptcy claim with knowledge of the fact that the latter files an application for suspending payments and a petition for bankruptcy: Provided, That the same shall not apply to the events falling under any of the items of subparagraph 2.

**Article 423 (Bankruptcy Claims)**

Any assets claim that accrues before the debtor is declared bankrupt shall be made a bankruptcy claim.

**Article 424 (Exercise of Bankruptcy Claims)**

No bankruptcy claim shall not be exercised without resorting to bankruptcy procedures.

**Article 425 (Arrival of Repayment Period for Claims Subject to Deadline)**

Claims subject to deadline shall be deemed as arising in the repayment period when bankruptcy is declared.

**Article 426 (Amount of Bankruptcy Claim of Non-Monetary Claims, etc.)**

(1) When the purpose of any claim is not monetary and the amount of such claim is unclear or such claim is denominated in any foreign currency, the appraised amount of such claim at the time bankruptcy is declared shall become the sum of the bankruptcy claim.

(2) The provisions of paragraph (1) shall apply to events when the amount of the claim for the money payable by periodic installments or the period of existence are not confirmed.

**Article 427 (Bankruptcy Claim Sum of Conditional Claims, etc.)**

(1) The total amount of conditional claims shall become the sum of the bankruptcy claim.

(2) The provisions of paragraph (1) shall apply mutatis mutandis to future claims on the debtor.

**Article 428 (Sum of Bankruptcy Claims Where Person Liable to Fulfill Total Amount of Obligations Declared Bankrupt)**

In cases where multiple debtors are liable to fulfill the total amount of obligations, when all or some of such debtors are declared bankrupt, creditors may exercise their rights as bankruptcy creditors on the total amount of claims they hold when the debtors are declared bankrupt to each bankruptcy foundation.

**Article 429 (Amount of Bankruptcy Claim Where Guarantor Declared Bankrupt)**

When any guarantor is declared bankrupt, creditors may exercise their rights as bankruptcy creditors on the total amount of claim that he/she holds at the time that the guarantor is declared bankrupt.

**Article 430 (Persons Holding Rights to Claim Reimbursements in Future)**

(1) In cases where multiple debtors are liable to fulfill all obligations, when all or some of such debtors are declared bankrupt, persons who hold rights to future claims for reimbursements of on the debtors may exercise their rights as bankruptcy creditors on the total amount of such reimbursements on each bankruptcy foundation: Provided, That the same shall not apply to events when the creditors exercise their rights as bankruptcy creditors on the total amount of their claims.

(2) In cases under the proviso to paragraph (1), anyone who holds the right to claim reimbursements pursuant to the provisions of paragraph (1) makes the repayment, he/she shall acquire rights as creditor according to the ratio of his/her repayment.

(3) The provisions of paragraphs (1) and (2) shall apply mutatis mutandis to the right to future claims for reimbursement that is held by any third person who furnishes any security on the debtor.

**Article 431 (Amount of Bankruptcy Claims When Multiple Persons Stand as Guarantees)**

The provisions of Articles 428, 429 and 430 (1) and (2) shall apply mutatis mutandis to the portion of the guarantee that multiple guarantors stand part of obligations.

**Article 432 (Bankruptcy of Partners with Unlimited Liability)**

When any partner who has unlimited liability for the obligations of any corporation is declared bankrupt, the creditors of such corporation may exercise their rights as bankruptcy creditors on the total amount of claims held by them at the time that he/she is declared bankrupt on the bankruptcy foundation.

**Article 433 (Bankruptcy of Partners with Limited Liability)**

When any partner who has limited liability for the obligations of any corporation or such corporation is declared bankrupt, the creditors of such corporation shall not exercise their rights on the partner who has limited liability for the obligations of the corporation: Provided, That the corporation may exercise a claim to its investment as a bankruptcy claim.

**Article 434 (Bankruptcy of Inheritors)**

In case where any inheritor is declared bankrupt, even when his/her assets are divided out, inheritance creditors and persons who take the legacy may exercise their rights as bankruptcy creditors on the total amount of their claims to the bankruptcy foundation.

**Article 435 (Bankruptcy against Inherited Assets and of Inheritors)**

When any inherited assets and its inheritor are each subject to declaration of bankruptcy, inheritance creditors and persons who take the legacy may exercise their rights as bankruptcy creditors on the total amount of their claims to the bankruptcy foundation.

**Article 436 (Qualified Acceptance of Inheritors)**

In cases under the provisions of Articles 434 and 435, when any inheritor who is declared bankrupt receives qualified acceptance, inheritance creditors and persons who take the legacy shall not exercise their rights as bankruptcy creditors on the inheritance assets of such inheritor. The same shall apply to cases where the effect of the qualified acceptance exists pursuant to the provisions of Articles 385 or 386 (1).

**Article 437 (Claims, etc. of Inheritors on Predecessors)**

When any inherited assets are subject to a declaration of bankruptcy, the inheritor thereof shall have the same rights as those of inheritance creditors on claims on the predecessor and any investment that is made in order to extinguish claims on the predecessor and obligations of the predecessor.

**Article 438 (Creditors of Inheritor)**

When any inherited assets are subject to a declaration of bankruptcy, the creditors of the inheritors thereof shall be prohibited from exercising their rights as bankruptcy creditors on the bankruptcy foundation.

**Article 439 (Expenses Incurred from Participation in Bankruptcy Procedures)**

Expenses incurred from participation in bankruptcy procedures shall be covered by bankruptcy claims.

**Article 440 (Equal Repayments to Persons on Same Order)**

Claims for which repayments have to be made on the same order shall be repaid according to the ratio of the amount of such claims.

**Article 441 (Priority Bankruptcy Claims)**

Bankruptcy claims of general priority over the assets that belong to the bankruptcy foundation shall take precedence over other claims.

**Article 442 (Calculation of Priority Right Period)**

In cases where priority rights exist on the amount of claims during a certain period, such period shall be calculated retroactively from the time bankruptcy is declared.

**Article 443 (Superiority of Inheritance Creditors)**

When inherited assets are made subject to a declaration of bankruptcy, the claims of inheritance creditors shall take precedence over the claims of persons who take the legacy.

**Article 444 (Ranking of Creditors Where Inheritor Declared Bankrupt)**

When any inheritor is declared bankrupt on the grounds of a petition for bankruptcy filed within the period during which the petition of bank ruptcy is filed on the inherited assets, the claims of the inheritor as a creditor shall take precedence over claims of inheritance creditors and the person who takes the legacy on the inherited assets. The claims of the inheritance creditors and the claim of the person who takes the legacy shall take precedence over the claims of the creditors of the inheritor on the inherited assets.

**Article 445 (Ranking of Inherited Assets and Bankruptcy Foundation of Inheritors)**

When inherited assets and any inheritor are subject to a declaration of bankruptcy, the claims of the creditors of the inheritor shall take precedence over the claims of inheritance creditors and the person who takes the legacy with respect to the bankruptcy foundation of the inheritor.

**Article 446 (Subordinate Bankruptcy Claims)**

(1) Claims falling under any of the following items shall be made subordinate bankruptcy claims compared with other bankruptcy claims:

1. The interest that accrues after bankruptcy is declared;

2. The amount of compensation for loss and the penalties for failure to pay such amount after bankruptcy is declared;

3. Expenses incurred from participating in bankruptcy procedures;

4. Fines, penalties, expenses for criminal litigation costs, additional levies, and the fines for negligence;

5. In cases of interest-free claims, the deadline for which arrives after bankruptcy is declared, the portion equivalent to the interest calculated by the account that makes the total amount of the principal calculated based the statutory interest from the time bankruptcy is declared until the deadline of the claim;

6. In the case of interest-free claims the deadline for which is not confirmed, the portion equivalent to the difference between the claim amount and the amount appraised at the time bankruptcy is declared; and

7. In cases of periodic payment claims, the claim amount and period of existence of which are confirmed, when the portion equivalent to the total amount of interest calculated according to the provisions of subparagraph 5 concerning the periodic payments and the total principal calculated according to the provisions of the same subparagraph concerning the periodic payments exceeds the principal from which statutory interest equivalent accrues on the periodic payments.

(2) Any claim on which the debtor agrees with creditors to rank lower than that of other claims shall be ranked lower than that of other claims, as agreed.

**Article 447 (Means of Reporting Claims)**

(1) Every bankruptcy creditor shall report the matters falling under each of the following subparagraphs to the court within the period set by the court (hereinafter referred to as the "reporting period") and submit evidential documents or certified copies and abridged copies thereof to the court:

1. The amount of claims and the grounds thereof;

2. When claims carry general priority rights, the rights thereof; and

3. When the claims falling under any subparagraph of Article 446 (1) are included, the categorization thereof.

(2) The holder of the right to separate settlement shall report the amount of claims that cannot be repaid according to the purpose and exercise of such rights.

(3) When a lawsuit is pending bankruptcy claims at the time bankruptcy is declared, bankruptcy creditors shall report to the Court the parties, the name and the number of cases other than the matters referred to in each subparagraph of paragraph (1).

**Article 448 (Preparation of Table of Bankruptcy Creditors)**

(1) The clerk, etc. of the court shall prepare a table of bankruptcy creditors in which the matters falling under each of the following subparagraphs are entered:

    1. Names and domiciles of creditors;

    2. The amount of claims and the grounds thereof;

    3. General priority rights, if any;

    4. When claims falling under any of the subparagraphs of Article 446 (1) are included, the categorization thereof; and

    5. The amount of claims reported by the holder of the right to separate settlement.

(2) The clerk, etc. of the court shall deliver a certified copy of the table of bankruptcy creditors to the trustee in bankruptcy.

### Article 449 (Maintaining Table of Bankruptcy Creditors and Documents Concerning Claim Reports)

(1) The court shall maintain a table of bankruptcy creditors and documents concerning claim reports in order for interested persons to inspect them.

(2) The clerk, etc. of the court shall, upon receiving an application filed by any creditor deliver to him/her an abridged copy of the table of bankruptcy creditors concerning the claims of creditors.

### Article 450 (Inspection of Claims)

The matters provided for in each subparagraph of Article 448 (1) with respect to reported claims shall be inspected on the date for claim in spection.

### Article 451 (Presence of Persons Concerned)

(1) The debtor and the bankruptcy creditors who make the report or their agents may be present to state their opinions on the claim inspection date.

(2) The agents referred to in the provisions of paragraph (1) shall each submit to the court a written statement attesting to his/her agency authority.

### Article 452 (Presence of Trustees in Bankruptcy)

No claims shall be inspected without the trustee in bankruptcy.

### Article 453 (Inspection of Claims Reported After Expiration of Report Period)

(1) Claims that are reported after the expiration of the reporting period may be inspected on the general claim inspection date except when an objection is raised thereto by the trustee in bankruptcy and any bankruptcy creditor.

(2) When the trustee in bankruptcy or any bankruptcy creditor raises an objection, the court shall set a special date in order to conduct the claim inspection referred to in the provisions of paragraph (1). In this case, expenses necessary for the claim inspection shall be borne by bankruptcy creditors who report after the reporting period.

### Article 454 (Changes Causing Loss of Profits of Bankruptcy Creditors)

The provisions of Article 453 shall apply mutatis mutandis to cases where the matters reported by bankruptcy creditors cause any changes that result in losses to the profits of other bankruptcy creditors after the reporting period.

**Article 455 (Report of Claims after General Date)**

The provisions of Article 453 (2) shall apply mutatis mutandis to a case where any bankruptcy creditor reports claims after the general date on which the inspection of claims is conducted.

**Article 456 (Publication and Notification of Special Date)**

Any decision to set a special date on which claims are inspected shall be published and the trustees in bankruptcy, the debtor and the bankruptcy creditors who report their claims shall be notified of such special date.

**Article 457 (Change, etc. in Claim Inspection Date)**

The provisions of Article 456 shall apply mutatis mutandis to any change in a claim inspection date, the extension of a claim inspection and the continuation of claim inspection: Provided, That when the claim inspection date is declared, the notification and the publication therof need not be made.

**Article 458 (Confirmation of Claims)**

When the trustee in bankruptcy or any bankruptcy creditor does not raise any objection on the claim inspection date, the matters falling under each of the following subparagraphs shall be confirmed:

    1. The amount of claims;

    2. Priority rights; and

    3. The categorization of the claims that fall under any of the subparagraphs of Article 446 (1).

**Article 459 (Entry of Inspection Results in Table of Bankruptcy Creditors)**

(1) The clerk, etc. of the court shall enter the result of the claim inspection and any objections stated by the debtor in the table of bankruptcy creditors.

(2) The clerk, etc. of the court shall enter the gist of the confirmation in the documents evidencing the claims and affix the court seal thereto.

**Article 460 (Effect of Entry of Confirmed Claims in Table of Bankruptcy Creditors on Bankruptcy Creditors)**

When confirmed claims are entered in the table of bankruptcy creditors, the entries thereof shall have the same effect as that of a confirmed judgment on all of the bankruptcy creditors.

**Article 461 (Notification of Objection Raised to Bankruptcy Claims)**

(1) In cases where any bankruptcy creditor fails to be present on the claim inspection date, when an objection is raised to claims, the court shall notify such bankruptcy creditor of the fact.

(2) The notification referred to in the provisions of paragraph (1) may be made by means of the mailing of the document.

**Article 462 (Judgment on Inspection Confirmation of Bankruptcy Claims)**

(1) When the trustee in bankruptcy or any bankruptcy creditor raises an objection to the contents of any bankruptcy claim reported in the course of bankruptcy claim inspection, the bankruptcy creditor who holds such bankruptcy claim (hereinafter referred to as an "objection to claim") may file an application with the court for a final claim inspection judgment (hereinafter referred to as the "final claim inspection judgment" in this Part) with all objectors as other parties: Provided, That the same shall not apply to cases under

Articles 464 and 466.

(2) Whether any bankruptcy claim to which an objection is raised exists and the contents thereof shall be prescribed in the final claim inspection judgment.

(3) The court shall, when it gives the final claim inspection judgment, examine each person who raises an objection thereto.

(4) The court shall deliver the written decision of the final claim inspection judgment to each of the parties.

(5) The application referred to in the provisions of paragraph (1) shall be filed within one month from the general inspection date or the special inspection date set for the inspection of any bankruptcy claim to which an objection is raised.

### Article 463 (Appeal against Objection Raised to Final Claim Inspection Judgment)

(1) Anyone who is dissatisfied with a final claim inspection judgment may file an appeal against such judgment within one month from the date on which he/she receives delivery of the written decision.

(2) The lawsuit referred to in the provisions of paragraph (1) shall be placed under the exclusive jurisdiction of the bankruptcy court.

(3) When the person who files the appeal referred to in the provisions of paragraph (1) is a bankruptcy creditor who holds claims to which an objection is raised, all of the objectors shall be adjoined as defendants and when the bankruptcy creditor is an objector, the bankruptcy creditor shall be adjoined as a defendant.

(4) When multiple lawsuits are pending on the same claim, the court shall merge the arguments therein.

(5) The judgment on the lawsuit referred to in the provisions of paragraph (1) shall authorize or amend the judgment referred to in the same paragraph except when the court dismisses the lawsuit on the grounds of unlawfulness.

### Article 464 (Takeover of Lawsuit on Claims to Which Objection Is Raised)

In cases where any lawsuit is pending on the claims to which an objection is raised at the time bankruptcy is declared, when the creditor thereof seeks to have his/her right thereon confirmed, such creditor shall take over the lawsuit and ajoin all objectors as other parties.

### Article 465 (Restrictions on Grounds of Claims)

Any bankruptcy creditor may file an application for a final claim inspection judgement on the matters entered in the table of the bankruptcy creditors pursuant to the provisions of Article 459 (1), may file the lawsuit provided for in the provisions of Article 463 (1) or may take over a lawsuit pursuant to the provisions of Article 464.

### Article 466 (Ways to Raise Objections to Claims with Right of Execution in Title)

(1) Anyone who has an objection to the title of the execution right with the executory power and any claim on which a final judgment is given may raise an objection only by resorting to the same litigation procedures that the debtor can take.

(2) In cases where a lawsuit on the bankruptcy claim as provided for in the provisions of paragraph (1) is pending in the court at the time bankruptcy is declared, when any objector intends to raise the objection referred to in the same paragraph, such objector shall take over the litigation procedures with the bankruptcy creditor who holds the bankruptcy claim as other party.

(3) The provisions of Articles 463 (4) and 465 shall apply mutatis mutandis to the provisions of paragraphs (1) and (2).

### Article 467 (Entry of Lawsuit Result Confirming Bankruptcy Claim)

The clerk, etc. of the court shall, upon receiving an application filed by the trustee in bankruptcy or any bankruptcy creditor, enter the results of the lawsuit confirming a bankruptcy claim (when the lawsuit filed against the final claim inspection judgment is not filed, or is dismissed within the period provided for in the provisions of Article 463 (1), this refers to the contents of such judgment) in the table of bankruptcy creditors.

### Article 468 (Effect of Judgment, etc. on Lawsuit on Confirmation of Bankruptcy Claims)

(1) The judgment on the lawsuit filed to seek the confirmation of bankruptcy claims shall take effect on all bankruptcy creditors.

(2) When any lawsuit against the final claim inspection judgment is not filed, or is dismissed within the period provided for in the provisions of Article 463 (1), such judgment shall have the same effect on all bankruptcy creditors as that of a final judgment.

### Article 469 (Refund of Litigation Costs)

When the bankruptcy foundation receives any award from the lawsuit (including a final claim inspection judgment) that results in confirming any bankruptcy claim, any bankruptcy creditor who claims an objection may claim a refund of litigation costs as a foundation creditor within the limits of such award.

### Article 470 (Value of Purpose of Bankruptcy Claim Confirmation Lawsuit)

The value of the subject matter of a lawsuit filed to confirm a bankruptcy claim shall be determined by the bankruptcy court on the basis of the amount scheduled for distribution.

### Article 471 (Report on Fines, etc.)

(1) Anyone who holds a claim provided for in the provisons of Article 446 (1) 4 shall promptly report the amount and the grounds of such claim to the court.

(2) The provisions of Article 459 (1) shall apply mutatis mutandis to the claim that is reported pursuant to the provisions of paragraph (1).

### Article 472 (Administrative Trial or Administrative Litigation)

(1) When the grounds of a claim reported pursuant to the provisions of Article 471 (1) is a disposition subject to administrative trial or administrative litigation, the court shall promptly notify the trustee in bankruptcy of the amount and the grounds of such claim.

(2) The provisions of Articles 466 through 468 shall apply mutatis mutandis to cases where the trustee in bankruptcy claims an objection.

**Article 473 (Scope of Foundation Claims)**

Claim falling under any of the following subparagraphs shall be made foundation claim: *<Amended by Act No. 10219, Mar. 31, 2010>*

1. A claim for trial costs brought against the joint interests of bankruptcy creditors;

2. A claim that is collectable pursuant to the National Tax Collection Act or the Framework Act on Local Taxes (including a claim that is collectable according to the example of a disposition taken to collect the national tax and its collection ranking takes precedence over the collection ranking of the general bankruptcy claims, subordinate claims provided for in the provisions of Article 446 shall be excluded): Provided, That claims on grounds arising after bankruptcy is declared shall be limited to claims that accrue to the bankruptcy foundation;

3. Expenses necessary for the management, the conversion and the distribution of the bankruptcy foundation;

4. Claims arising from acts performed by the trustee in bankruptcy for the bankruptcy foundation;

5. Claims that accrue to the bankruptcy foundation after bankruptcy is declared on the grounds of clerical work or unlawful profits;

6. Claims that accrue to the bankruptcy foundation on the grounds of acts performed out of the need to deal with emergencies after the commission is terminated or the agency authority is terminated;

7. Claims held by the other party where the trustee in bankruptcy fulfills any obligation pursuant to the provisions of Article 335 (1);

8. Claims that accrue by the time when a bilateral contract is terminated on grounds of a declaration of bankruptcy;

9. The relief money for the debtor and persons who are financially supported by the debtor;

10. The wages, severance pay and disaster compensation for the debtor's workers; and

11. The right to claim a redemption of the bailment money and the personal identity guarantee money of the debtor's workers, which accrue before bankruptcy is declared.

**Article 474 (Claim for Share of Legacy that is Sharable)**

When a trustee in bankruptcy claims the implementation of any shareable legacy, a claim that is entitled to any profit from any share of the legacy shall be made a foundation claim within the limits of not exceeding the value of the subject matter of the legacy.

**Article 475 (Repayment of Foundation Claims)**

Foundation claims shall be met frequently without resorting to bank ruptcy procedures.

**Article 476 (Preferential Repayments of Foundation Claims)**

Foundation claims shall be treated with greater preference than bankruptcy claims.

**Article 477 (Ways to Make Repayments where Bankruptcy Foundation Unable to Make Full Payments)**

(1) When it is evidently clear that the bankruptcy foundation is unable to fully repay the total amount of the foundation claims, the repayment of the foundation claims shall be made according to the ratio of the

unrepaid claim amount, notwithstanding the priority right provided for in other Acts and subordinate statutes: Provided, That liens, pledge rights, mortgages, security rights under the Act on Security over Movable Property, Claims, etc., and rights to lease on a deposit basis over the foundation claims shall not be affected. *<Amended by Act No. 10366, Jun. 10, 2010>*

(2) The foundation claims provided for in the provisions of subparagraphs 1 through 7 and 10 of Article 473 shall take precedence over other foundation claims.

**Article 478 (Mutatis Mutandis Application of Provisions Governing Bankruptcy Claims)**

(1) The provisions of Articles 425, 426 and 427 (1) shall apply mutatis mutandis to the foundation claims provided for in the provisions of subparagraph 7 of Articles 473 and 474.

(2) When the foundation claims provided for in the provisions of paragraph (1) are interest-free claims or the claims for cash payable by periodic installments, if such claims are the bankruptcy claims, the amount obtained by deducting the amount falling under the portion ranked lower than that of other bankruptcy claims pursuant to the provisions of Article 446 (1) 5 through 7 shall be made the value thereof.

**Article 479 (Possession and Management of Bankruptcy Foundation)**

The trustee in bankruptcy shall commence possession and management of the assets that belong to the bankruptcy foundation immediately after he/she takes office.

**Article 480 (Seal)**

(1) When it is deemed necessary, the trustee in bankruptcy may cause the clerk, etc. of the court, the executor or the notary public to place the assets that belongs to the bankruptcy foundation under seal. In this case, anyone who performs the sealing shall prepare an investigation record.

(2) The provisions of paragraph (1) shall apply mutatis mutandis to cases where the seal is removed.

**Article 481 (Closure of Assets Book)**

The trustee in bankruptcy shall promptly close the book of the debtor's property after he/she is declared bankrupt and enter the gist of such closure on the book and subscribe his/her name and affix his/her seal to the book.

**Article 482 (Appraisal of Property's Value)**

The trustee in bankruptcy shall appraise the value of all assets belonging to the bankruptcy foundation at the time bankruptcy is declared. In this case, the debtor may be allowed to participate in the value appraisal.

**Article 483 (Preparation of Property Assets Inventory and Balance Sheet)**

(1) The trustee in bankruptcy shall prepare an asset inventory and a balance sheet.

(2) The trustee in bankruptcy shall subscribe his/her name and affix his/ her seal to certified copies of the asset inventory and the balance sheet and submit them to the court. The same shall apply to the inspection record concerning the seal.

(3) Interested persons may request an inspection of documents referred to in the provisions of paragraph (2).

**Article 484 (Management of Postal Items)**

(1) The court may commission any postal administrative agency, transporter and other person to deliver postal items, telegrams and other goods in transit, each of which are destined for the debtor to the trustee in bankruptcy.

(2) The trustee in bankruptcy may open the postal items, telegrams and other goods referred to in the provisions of paragraph (1) after receiving them.

(3) The debtor may request for an inspection of the postal items, telegrams and other goods that the trustee in bankruptcy receives and request for delivery to him/her of any thing that is unrelated with the bankruptcy foundation.

**Article 485 (Cancellation of Management of Postal Items)**

(1) The court may, upon receiving an application filed by the debtor or the trustee in bankruptcy, cancel or change the commission provided for in the provisions of Article 484 (1).

(2) When a decision to revoke or terminate the bankruptcy is confirmed or it is decided to discontinue the bankruptcy, the court shall cancel the commission provided for in the provisions of Article 484 (1).

**Article 486 (Continuation of Business)**

A trustee in bankruptcy may cause the debtor to continue his/her business after obtaining permission therefor from the court.

**Article 487 (Means of Safekeeping Valuable Goods)**

Means of safekeeping currency, securities and other valuable goods shall be prescribed by the court.

**Article 488 (Report on History of Bankruptcy)**

A trustee in bankruptcy shall report on circumstances that lead to the

declaration of bankruptcy and the past and current status of the debtors and the bankruptcy foundations at the first meeting of creditors.

**Article 489 (Matters on which Meeting of Creditors Resolves)**

The meeting of creditors may resolve upon any of the following matters:

　　1. The discontinuation and the continuation of business;

　　2. Means of safekeeping valuable goods.

**Article 490 (Presentation of Assets Subject to Right to Separate Settlement)**

(1) A trustee in bankruptcy may request the holder of the right to separate settlement to present the assets subject to his/her right.

(2) When the trustee in bankruptcy intends to appraise the property referred to in the provisions of paragraph (1), the holder of the right to separate settlement may refuse the former's wishes.

**Article 491 (Restrictions on Timing of Liquidation)**

A trustee in bankruptcy shall be prohibited from liquidating assets belonging to the bankruptcy foundation before the claim inspection date provided for in the provisions of Article 312 (1) 3 expires: Provided, That the same shall not apply to cases where an agreement is obtained from any audit committee member or permission therefor is obtained from the court.

**Article 492 (Acts Requiring Court Permission)**

In cases where any trustee in bankruptcy intends to perform the act falling under any of the following subpragraphs, he/she shall obtain permission therefor from the court and when the audit committee is set up, he/she shall obtain agreement from any member of the audit committee: Provided, That the same shall not apply to cases where the value is not more than ten million won and that it falls short of the amount set by the court among the cases falling under subparagraphs 7 through 15:

  1. The voluntary sale of goods concerning the real estate, any domestic ship and any foreign ship, the sale of which is required to be registered;

  2. The voluntary sale of the mining concession, fishing rights, patent rights, utility model rights, design rights, trade mark rights, service mark rights and copyrights;

  3. The transfer of a business;

  4. The comprehensive sale of goods;

  5. The borrowing of assets including funds;

  6. The approval granted for renouncing inheritance provided for in the provisions of Article 386 (2), the approval granted for renouncing the general legacy provided for in the provisions of Article 387 and the renunciation of the specific legacy provided for in the provisions of Article 388 (1);

  7. The voluntary sale of movable assets;

  8. The transfer of bonds and securities;

  9. A claim for the performance provided for in the provisions of Article 335 (1);

  10. The filing of lawsuits (excluding any application filed for provisional disposition and provisional seizure);

  11. A compromise;

  12. The renunciation of rights;

  13. Approval granted for foundation claims, reacquisition rights and the right to separate settlement;

  14. The retrieval of subject matter of the right to separate settlement;

  15. The conclusion of any contract that results in burdening the bankruptcy foundation; and

  16. Other acts prescribed by the court.

**Article 493 (Hearing of Debtor's Opinions)**

In cases under Article 492, the debtor may state his/her opinion to the trustee in bankruptcy.

**Article 494 (Order Given By Court to Suspend)**

Even when a trustee in bankruptcy performs acts provided for in the provisions of any subparagraph of Article 492 after obtaining agreement thereon from any member of the audit committee, the court may order the trustee in bankruptcy to discontinue performing any of such acts upon receiving an application field by the debtor or call a meeting of the creditors for a resolution on any of such acts.

**Article 495 (Protection of Bona Fide Third Parties)**

A violation by a trustee in bankruptcy of the provisions of Article 491 or 492 or a violation by a trustee in bankruptcy of an order issued under the provisions of Article 494 to suspend shall not be a valid defense

against bona fide third parties.

**Article 496 (Means of Liquidation)**

(1) The conversion of rights to cash, the means of which are prescribed in the Civil Execution Act shall be governed by the Civil Execution Act.

(2) Notwithstanding the provisions of paragraph (1), a trustee in bankruptcy may perform the conversion to cash by other means including the transfer of a business after obtaining permission therefor from the court.

**Article 497 (Liquidation of Goods Subject to Right to Separate Settlement)**

(1) A trustee in bankruptcy may liquidate assets, which are subject to the right to separate settlement pursuant to the Civil Execution Act. In this case, the holder of the right to separate settlement shall not oppose such liquidation.

(2) In cases under paragraph (1), when the amount to be paid to the holder of the right to separate settlement is not yet confirmed, a trustee in bankruptcy shall deposit the sum thereof separately. In this case, the right to separate settlement shall prevail over the sum.

**Article 498 (Designation of Disposal Period by Holder of Right to Separate Settlement)**

(1) When the holder of the right to separate settlement holds the right to dispose of good subject to the right to separate settlement without resorting to the matters that are prescribed by Acts, upon receiving an application filed by the trustee in bankruptcy, the court shall fix a period during which the holder of the right to separate settlement has to dispose of the subject matter.

(2) When the holder of the right to separate settlement fails to dispose of the subject matter during the period referred to in the provisions of paragraph (1), he/she shall lose the right referred to in the provisions of paragraph (1).

**Article 499 (Report on Current Status by Trustee in Bankruptcy)**

A trustee in bankruptcy shall report on the current status of the bankruptcy foundation to the meeting of creditors or members of the audit committee under the conditions prescribed by the meeting of creditors.

**Article 500 (Claim for Return of Bailed Goods)**

(1) When the trustee in bankruptcy intends to request for the return of currency, securities and valuable goods, each of which are bailed, he/she shall obtain agreement thereon from member of the audit committee and when such member of the audit committee is absent, he/she shall obtain permission therefor from the court: Provided, That when any other resolution is passed at the meeting of creditors, their return shall be governed by such resolution.

(2) In cases where the trustee in bankruptcy violates the provisons of paragraph (1), when the depositee is bona fide and is not negligent, the repayment shall carry its effect.

(3) The provisions of paragraphs (1) and (2) shall apply mutatis mutandis to cases where the trustees in bankruptcy issue securities in order to cause the depositee to make payments or pay benefits.

**Article 501 (Liquidation of Corporate Bankruptcy Foundation)**

The provisons of Article 258 of the Commercial Act shall apply mutatis mutandis to cases where any corporation is declared bankrupt.

### Article 502 (Claim for Investments made by Anonymous Partners)

Where the contract of an anonymous association is terminated on the grounds that any business operator is declared bankrupt, the trustee in bankruptcy may cause the members of such association to make fresh investment within the limitation of the amount of loss to be borne by the members of the anonymous association.

### Article 503 (Inheritor's Bankruptcy and Disposal of Inherited Assets)

(1) When any inheritor makes a qualified acceptance or his/her assets are separated after he/she is declared bankrupt, the trustee in bankruptcy shall dispose of such inherited assets. The same shall apply to cases where the inheritor is declared bankrupt after the qualified acceptance is made and his/her assets are divided.

(2) When the trustee in bankruptcy completes the disposal referred to in the provisions of paragraph (1), any residual assets shall be entered in the asset inventory and the balance sheet of the bankruptcy foundation.

(3) The provisions of paragraphs (1) and (2) shall apply mutatis mutandis to cases where anyone who takes a general legacy is declared bankrupt.

### Article 504 (Mutatis Mutandis Provisions)

The provisions of Article 503 shall apply mutatis mutandis to cases where the effect of the qualified acceptance accrues pursuant to the provisions of Article 385 or 386.

### Article 505 (Timing of Distributing Dividends)

The trustee in bankruptcy shall distribute dividends without delay whenever the money therefor is available after the claim inspection date provided for in the provisions of Article 312 (1) 3 expires.

### Article 506 (Permission Necessary for Distributing Dividends)

When the trustee in bankruptcy intends to distribute dividends, he/she shall obtain permission therefor from the court: Provided, That agreement thereon shall be obtained from a member of the audit committee, when he/she is accessible.

### Article 507 (Preparation of Dividend Table)

(1) The trustee in bankruptcy shall prepare a dividend table in which the matters falling under each of the following subparagraphs are entered:

    1. The names and domiciles of creditors who are entitled to the dividends;

    2. The amount of claims included in the dividends; and

    3. The amount available for distributing dividends.

(2) The claims that are available for distributing dividends shall be categorized according to their priority rights. In this case, the claims with priority rights shall be entered in the dividend table according to their priority right ranking and the claims without priority rights shall be arranged into a ranking lower than that of other claims and then entered in the table.

**Article 508 (Submission of Dividend Tables)**

The trustee in bankruptcy shall submit the dividend table to the court in order for interested persons to inspect them.

**Article 509 (Publication of Amount of Dividends)**

The trustee in bankruptcy shall publish the total amount of claims included in the dividends and the amount of the dividends: Provided, That the same shall not apply to cases where the dividend table is corrected pursuant to the provisions of Articles 513 and 527.

**Article 510 (Publication of Discontinuation of Distributing Dividends)**

When the court orders the discontinuation of a distribution of dividends pursuant to the provisions of Article 44 (1) on the grounds that an application is filed for commencing rehabilitation procedures, the court shall publish the gist thereof.

**Article 511 (Continuation of Procedures for Distributing Dividends and Publication Thereof)**

In case where an order is given to discontinue the distribution of dividends pursuant to the provisions of Article 44 (1) 1, when a decision falling under any of the following subparagraphs is confirmed, the court shall continue the procedures for distributing dividends and publish the gist thereof.

1. A decision made to dismiss an application filed for commencing the rehabilitation procedures;

2. A decision made to discontinue rehabilitation procedures pursuant to the procedures under Articles 285 through 287; and

3. A decision made not to grant authorization for a rehabilitation plan.

**Article 512 (Exclusion of Creditors and Holders of Rights to Separate Settlement with Objection to Dividends)**

(1) With respect to any claim to which an objection is raised, when any creditor fails to file an application with a trustee in bankruptcy for a final claim inspection judgment and a lawsuit pursuant to the provisions of Article 463 (1) or to attest the takeover of any lawsuit within 14 days from the date on which the dividends are published, he/she shall be excluded from receiving the dividends.

(2) When the holder of the right to separate settlement fails to attest to the commencement of a disposition of the objective of the right and to substantiate the amount of a claim that cannot be repaid on the grounds of such disposition, he/she shall be excluded from receiving dividends.

**Article 513 (Correction of Dividend Table)**

In events falling under any of the following subparagraphs. the trustee in bankruptcy shall immediately correct the dividend table:

1. When the grounds for correcting the table of bankruptcy creditors accrues within the period during which the dividends are excluded;

2. When the attestant and the substantiation provided for in the provisions of Article 512 are made; and

3. When the holder of the right to separate settlement expresses to the trustee in bankruptcy an intention to renounce his/her right and attests to the amount of claims that cannot not be repaid by the exercise of his/her right within the period during which dividends are excluded.

**Article 514 (Objection Raised to Dividend Table)**

(1) Any creditor may raise objections to the court with respect to the dividend table only within 7 days after the lapse of the dividend exclusion period.

(2) When the court orders any correction of the dividend table, it shall retain the written decision in order for interested persons to inspect it. In this case, the appeal period shall be calculated from the date on which such written decision is retained in the court.

(3) An immediate appeal may be filed against the decision made by the court upon the application referred to in the provisions of paragraph (1). In this case, the appeal period when the court orders the correction of the dividend table shall be calculated from the date on which the written decision is retained in the court.

**Article 515 (Notification of Decision on Dividend Rates)**

(1) When an objection is raised after the lapse of the period provided for in the provisions of Article 514 (1), the trustee in bankruptcy shall promptly set the dividend rates after a decision is made on such objection and notify creditors who are entitled to the dividends of such dividend rates.

(2) When the dividend rates are set, approval thereof shall be obtained from the court: Provided, That agreement thereon shall be obtained from a member of the audit committee when he/she is accessible.

**Article 516 (Distribution of Dividends to Creditors with Condition for Recession)**

Anyone who holds the claims subject to recession shall not be entitled to the distribution of dividends unless he/she furnishes substantial security.

**Article 517 (Means of Distributing Dividends)**

(1) Bankruptcy creditors shall receive the distribution of their dividends at the place in which the trustee in bankruptcy performs his/her duties: Provided, That the same shall not apply to cases where any agreement is reached between the trustee in bankruptcy and the bankruptcy creditors with respect to the place in which they receive the distribution of such dividends.

(2) The trustee in bankruptcy shall, when he/she distributes dividends, enter the amount of dividends that are distributed in the table of bankruptcy creditors and the evidential document of claims and ascribe his/her name on, and affix his/her seal to such table and such evidential document.

**Article 518 (Preferential Distribution of Dividends to Persons Excluded from Previous Distribution of Dividends)**

When any creditor excluded from a previous distribution of dividends on the grounds of his/her failure to make the attestant and substantiation provided for in the provisions of Article 512 makes such attestant and substantiation within the dividend exclusion period in which he/she is excluded, he/she shall be preferentially entitled to the distribution of the same amount of dividends as that of the dividends that he/she was to take on the same order.

**Article 519 (Bailment of Proceeds of Dividends)**

The trustee in bankruptcy shall bail the dividend proceeds for claims falling under any of the following subparagraphs:

1. Claims to which an objection is raised pursuant to the provisions of Articles 462 through 464 or 466 and for which an application is filed for the final claim inspection judgment and a lawsuit is filed and the lawsuit is taken over;

2. Claims for which any administrative trial, lawsuit and objection procedures are pending before the notification of the dividend rates are made;

3. Claim amounts that are substantiated by the holder of the right to separate settlement pursuant to the provisions of Article 512 (2);

4. Condition precedent claims and future claims; and

5. Claims subject to recession for which no security is offered pursuant to the provisions of Article 516.

### Article 520 (Permission for Final Dividends)

In cases where the trustee in bankruptcy distributes final dividends, he/ she shall obtain permission therefor from the court even if agreement is obtained form a member of the audit committee.

### Article 521 (Period During which Distribution of Final Dividends is Excluded)

The period during which the distribution of final dividends must be excluded shall be set by the court within not less than 14 days to not more than 30 days from the date on which the distribution of dividends is published.

### Article 522 (Decision on Amount of Final Dividends and Notification Thereof)

In the final dividends, the trustee in bankruptcy shall promptly set the amount of dividends for each of the creditors and notify the creditors of the amount of such dividends after any objections raised to the dividend table are settled.

### Article 523 (Exclusion of Condition-Precedent Creditors)

When condition precedent claims or future claims cannot be exercised within the dividend exclusion period for the final dividends, the relevant creditors shall be excluded from the distribution of dividends.

### Article 524 (Payments to Creditors Subject to Recession)

When conditions on the claims subject to recession are not met within the dividend exclusion period for the final dividends, any security provided pursuant to the provisions of Article 516 shall lose its effect and the sum bailed pursuant to the provisons of subparagraph 5 of Article 519 shall

be paid to creditors. The same shall apply to the security furnished and the sum bailed pursuant to the provisions of Article 419.

### Article 525 (Exclusion of Holder of Right to Separate Settlement)

When a holder of the right to separate settlement fails to express his/ her intention to renounce his/her right to the trustee in bankruptcy and to attest of the amount of claims that cannot be repaid by the exercise of his/her right within the dividend exclusion period, he/she shall be excluded from the distribution of dividends.

### Article 526 (Distribution of Bailment Funds)

The sum bailed for creditors who are excluded from the distribution of dividends pursuant to the provisions of Article 523 or 525 shall be distributed to other creditors. The same shall apply to the sum

bailed pursuant to the provisions of Article 418.

**Article 527 (Correction of Dividend Table if New Assets)**

When any assets are found to exist, which are to be appropriated for new dividends, before the notification of the dividend amount is mailed out, the trustee in bankruptcy shall correct the dividend table without delay.

**Article 528 (Deposit of Dividend Sum)**

The trustee in bankruptcy shall deposit the dividend amount falling under any of the following subparagraphs for creditors:

1. A dividend sum bailed pursuant to the provisions of subparagraph 1 or 2 of Article 519;

2. A dividend sum on any claim for which an administrative trial, lawsuit or objection procedures are still pending before the notification of the dividend amount is mailed out; and

3. A dividend sum that remains unpaid to creditors.

**Article 529 (Accounting Report at Meeting of Creditors)**

A meeting of creditors called to deliberate on the accounting report shall pass a resolution concerning the disposal of the assets that are not liquidated after the trustee in bankruptcy recognizes it as being valueless.

**Article 530 (Decision and Publication of Bankruptcy Termination)**

When the meeting of creditors is closed, the court shall decide on the termination of bankruptcy and publish the main passage of such decision and the summary of the grounds thereof.

**Article 531 (Publication of Additional Dividends and Notification of Dividend Sum)**

(1) When any new assets are found to be appropriated for dividends after the dividend sum is notified, the trustee in bankruptcy shall further distribute dividends after obtaining permission therefor from the court. The same shall apply to cases where any new assets are found to be appropriated to dividends after the termination of bankruptcy.

(2) When the trustee in bankruptcy obtains permission to make additional dividends, he/she shall promptly publish the dividend sum and then set the dividend sum for each creditor and notify such creditors thereof.

**Article 532 (Standards for Additional Dividends)**

The additional dividends shall be made according to the dividend table prepared for final dividends.

**Article 533 (Accounting Report)**

(1) When the trustee in bankruptcy distributes additional dividends, he/ she shall promptly prepare an accounting report and obtain authorization thereon from the court.

(2) An immediate appeal may be filed against the authorization referred to in the provisions of paragraph (1).

**Article 534 (Foundation Creditors Unknown to Trustees in Bankruptcy)**

Any foundation creditor who is not known to the trustee in bankruptcy before the dividend rates or dividend amounts are notified is not entitled to the repayment of any dividends.

**Article 535 (Effect On Confirmed Claims of Debtor Declared Bankrupt and Entered in Table of Bankruptcy Creditors)**

(1) When the debtor fails to state any objection to confirmed claims on the claim inspection date, his/her entry in the table of bankruptcy creditors shall have the same effect as that of final judgment on a debtor who is declared bankrupt.

(2) Any creditor may perform the compulsory execution according to entry in the table of bankruptcy creditors after the termination of bankruptcy. In this case, the provisions of Articles 2 through 18, 29, and 28 through 55 of the Civil Execution Act shall apply mutatis mutandis to such creditor.

### Article 536 (Application Filed for Restoration)

(1) When the debtor fails to be present on the claim inspection date on grounds for which he/she is not responsible, he/she may file an application with the bankruptcy court for his/her restoration in order to supplement his/her objection later within 7 days from the date on which such grounds cease to arise.

(2) The court shall deliver the application for restoration to the creditor of claims to which the debtor raises an objection by its authority.

(3) When the court permits the restoration, the court's act shall have the same effect as that of an objection that is stated by the debtor on the claim inspection date. In this case, the clerk, etc. of the court shall enter the objection in the table of bankruptcy creditors.

(4) An immediate appeal may be filed against any judgment on the application filed for restoration provided for in the provisions of para graph (1).

### Article 537 (Residual Inherited Assets)

When inherited property are subject to a declaration of bankruptcy, any inheritance creditor and any person who takes the legacy who are excluded from final dividends may exercise their rights on any residual assets.

### Article 538 (Application Filed for Discontinuation of Bankruptcy by Way of Agreement)

(1) In an event falling under either of the following subparagraphs, the court may decide to discontinue a bankruptcy upon receiving an application therefor from the debtor; When:

1. The debtor obtains an agreement from all bankruptcy creditors who report their claims within the claim report period provided for in the provisions of Article 447; and

2. If the debtor fails to obtain the agreement referred to in the provisions of subparagraph 1, he/she takes security from the bankruptcy foundation after obtaining an agreement thereon from other bankruptcy creditors.

(2) The court shall determine whether the agreement of creditors is necessary for unconfirmed claims. The same shall apply to cases whether any security offered to any bankruptcy creditor is substantial.

(3) An immediate appeal may be filed against the determination referred to in the provisions of paragraph (1).

### Article 539 (Application Filed by Corporation, etc for Discontinuing Bankruptcy)

(1) The application filed by any corporation for discontinuing the bankruptcy thereof shall require agreement from all of its directors.

(2) The application for discontinuing the bankruptcy regarding any inherited assets shall be filed by the inheritor. In this case, where there are multiple inheritors, agreement from each of them is required.

### Article 540 (Application Filed for Discontinuing Bankruptcy and Corporate Continuation)

When any corporation that has been declared bankrupt intends to file an application for discontinuing its bankruptcy, any incorporated association shall take the same procedures for its continuation as those for making an amendment in the articles of association. Any incorporated foundation shall take the procedures for its continuation after obtaining permission therefor from the competent administrative agency, respectively.

### Article 541 (Submission of Written Verification)

When an application is filed for discontinuing a bankruptcy, a written statement attesting to the fulfillment of application requirements shall be submitted.

### Article 542 (Publication of Applications for Discontinuing Bankruptcies and Keeping of Documents)

The court shall publish the gist of the applications filed for discontinuing bankruptcies and keep documents concerning the applications in order for interested persons to peruse them.

### Article 543 (Objections Raised by Creditors)

(1) Any bankruptcy creditor may raise objections to the court with respect to any application filed for discontinuing the bankruptcy within 14 days from the date on which the publication provided for in the provisions of Article 542 is made.

(2) Any bankruptcy creditor who makes a report before the period referred to in the provisions of paragraph (1) lapses may file an application with the court for objecting to any application filed for discontinuing the bankruptcy.

### Article 544 (Hearing of Opinions of Persons Concerned)

The court shall hear the opinions of the debtor, the trustee in bankruptcy and the bankruptcy creditor who raises an objection about whether the requirements necessary for a decision to discontinue the bankruptcy are met after the lapse of the period provided for in the provisions of Article 543 (1).

### Article 545 (Discontinuation of Bankruptcy for Lack of Funding)

(1) When the bankruptcy foundation is recognized as being unable to appropriate funds incurred in the bankruptcy procedures after it is declared bankrupt, the court shall decide to discontinue its bankruptcy by its inherent jurisdiction or upon receiving an application filed by the trustee in bankruptcy. In this case, the court shall hear the opinion of the meeting of creditors.

(2) The provisions of paragraph (1) shall not apply to cases where a prepaid amount is sufficient to appropriate funds for expenses incurred in the bankruptcy procedures.

(3) An immediate appeal may be filed against the decision referred to in the provisions of paragraph (1).

### Article 546 (Publication of Decision to Discontinue Bankruptcy)

When the court decides to discontinue any bankruptcy, it shall publish the main passage of the decision and the summary of reasons thereof.

**Article 547 (Repayment and Deposit of Foundation Claims)**

When a decision to discontinue the bankruptcy is confirmed, the trustee in bankruptcy shall repay the foundation claims and with respect to any claim to which an objection is raised, the trustee in bankruptcy shall deposit such claim for creditors.

**Article 548 (Mutatis Mutandis Provisions)**

(1) The provisions of Article 535 shall apply mutatis mutandis to cases where a decision to discontinue the bankruptcy is confirmed.

(2) The provisions of Article 567 shall apply mutatis mutandis to cases where a corporate debtor is dissolved on the grounds of a decision to terminate or discontinue the bankruptcy.

**Article 549 (Requirements for Summary Bankruptcy)**

(1) When the amount of assets that belong to the bankruptcy foundation are recognized as being 500 million won or less, the court shall declare the bankruptcy foundation bankrupt and determine the summary bankruptcy thereof.

(2) In cases under paragraph (1), the court shall publish the main passage of the summary bankruptcy decision in addition to the matters referred to in each subparagraph of Article 313 (1) and enter it in the written statement referred to in the provisions of paragraph (2) of the same Article.

**Article 550 (Decision on Summary Bankruptcy in Course of Bankruptcy Procedures)**

(1) When the amount of assets belonging to the bankruptcy foundation in the process of the bankruptcy are found to be 500 million won or less, the court may decide on a summary bankruptcy for it by its inherent jurisdiction or upon receiving an application filed by interested persons.

(2) When the court decides on summary bankruptcy pursuant to the provisions of paragraph (1), it shall publish the main passage of the decision and deliver a written statement in which the main passage of such decision is entered to the trustee in bankruptcy, any member of the audit committee, each creditors and the debtor each of whom is known.

**Article 551 (Cancellation of Summary Bankruptcy)**

When the amount of the assets belonging to the bankruptcy foundation are found to be, or to exceed 500 million in the process of summary bankruptcy procedures, the court may decide to cancel the summary bankruptcy by its inherent jurisdiction or upon receiving an application filed by interested persons. In this case, the provisions of Article 550 (2) shall apply mutatis mutandis thereto.

**Article 552 (Combination of Date of Meeting of Creditors and Claim Inspection Date)**

In cases of summary bankruptcy procedures, the date on which the first meeting of creditors is held and the date on which claims are inspected shall be combined, except when there are circumstances that make this impracticable.

**Article 553 (Nonestablishment of Audit Committee)**

In cases of summary bankruptcy, no audit committee shall be established.

**Article 554 (Decision in Lieu of Resolution of Meeting of Creditors)**

In cases of summary bankruptcy procedures, the decision made by the court shall be substituted for the resolution passed at the meeting of creditors, except for the resolution passed at the first meeting of creditors and the resolution passed at the meeting of creditors on the claim in spection and the accounting report.

### Article 555 (One-Time Distribution of Dividends)

In cases of summary bankruptcy procedures, the distribution of dividends shall be made once, and the final distribution of dividends shall be governed by the provisions regarding the distribution of dividends: Provided, That additional dividends may be distributed.

### Article 556 (Application for Immunity)

(1) An individual debtor may file an application with the court for his/her immunity within one month after the date on which the declaration of his/her bankruptcy is confirmed from the date on which a petition of his/ her bankruptcy is filed.

(2) When the debtor is unable to file an application for his/her immunity referred to in the provisions of paragraph (1) on grounds for which he/ she is not responsible, he/she may file an application for his/her immunity within 30 days from the date on which such grounds cease to arise.

(3) In cases where the debtor files a petition for bankruptcy, the debtor shall be deemed to file an application for his/her immunity and also to file the petition for bankruptcy, excepting cases where he/she expresses his/her intention to oppose such petition and such application.

(4) When an application is filed for any immunity, no application may also be filed for discontinuing the bankruptcy pursuant to the provisions of Article 538.

(5) When an application is filed for discontinuing the bankruptcy pursuant to the provisions of Article 538, no application for immunity may be filed before a decision to dismiss the application filed for discontinuing the bankruptcy is confirmed.

(6) The application for immunity shall be accompanied by the list of creditors: Provided, That when it is not possible to submit the list of creditors with the application for immunity, the grounds therefor shall be substantiated and then the list of creditors shall be promptly submitted.

(7) In cases where it is deemed that the application for the immunity has been filed pursuant to the provisions of paragraph (3), the list of creditors that is submitted pursuant to the provisions of Article 302 (2) 1 shall be deemed the list of creditors referred to in the provisions of paragraph (6).

### Article 557 (Suspension of Compulsory Execution)

(1) When an application is filed for immunity, a decision to discontinue bankruptcy is confirmed or it is decided to terminate bankruptcy, any compulsory execution based on bankruptcy claims, any provisional seizure or any provisional disposition on the debtor's assets shall be barred until a judgment on the application filed for immunity is confirmed and the compulsory execution, provisional seizure or provisional disposition on the debtor's assets, which have already been performed before the debtor is declared bankrupt, shall be suspended.

(2) When a decision for immunity is confirmed, the procedures suspended pursuant to the provisions of paragraph (1) shall lose their effect.

**Article 558 (Examination of Debtor)**

(1) When anyone who files an application for immunity is declared bankrupt, the court may examine the debtor on the date that it has set.

(2) When the court decides to set the date pursuant to the provisions of paragraph (1), it shall publish such date and notify such decision to the trustee in bankruptcy and bankruptcy creditors, eahc of whom are scheduled to receive the immunity and are known to the court.

(3) The provisions of paragraph (2) shall apply mutatis mutandis to any change in the date as well as the extension and the continuation of the questioning referred to in the provisions of paragraph (1).

(4) The provisions of the proviso to Article 457 shall apply mutatis mutandis to the decision referred to in the provisions of paragraphs (2) and (3).

(5) The date referred to in the provisions of paragraph (1) and the date on which the meeting of creditors is held and on which the claims are inspected may be combined.

**Article 559 (Grounds for Dismissing Application Filed for Immunity)**

(1) In the events falling under any of the following subparagraphs, the court may dismiss any application filed for immunity:

    1. When the debtor fails to qualify himself as entitled to file any application;

    2. When an application filed for bankruptcy procedures for the debtor is dismissed;

    3. When the debtor fails to prepay for expenses for the bankruptcy procedures; and

    4. When the application is not bona fide.

(2) The debtor whose application for immunity is declined pursuant to the provisions of paragraph (1) shall be prohibited from re-filing an application for immunity under the same bankruptcy.

(3) An immediate appeal may be filed against the decision referred to in the provisions of paragraph (1).

**Article 560 (Inspection Report by Trustees in Bankruptcy)**

The court may order the trustee in bankruptcy to inspect whether grounds for refusing to permit immunity exist and to report the results thereof on the examination date provided for in the provisions of Article 558.

**Article 561 (Keeping of Documents, etc, concerning Application for Immunity)**

The court shall keep documents falling under both of the following subparagraphs in order for inspection by interested persons to peruse them:

    1. Documents concerning application for immunity; and

    2. Documents concerning the reports of trustees in bankruptcy.

**Article 562 (Objection to Application for Immunity)**

(1) Any prosecutor, trustee in bankruptcy or bankruptcy creditor who is entitled to the effect of immunity may raise any objections to the court regarding the application for immunity within 30 days (in cases where the examination date is not set, the date that is set by the court) from the examination date provided for in the provisions of Article 558: Provided, That when any justifiable grounds exist, the court may

extend the period upon receiving an application therefor.

(2) When an objection is raised pursuant to the provisions of paragraph (1), the grounds for not permitting the immunity provided for in the provisions of each subparagraph of Article 564 (1) shall be substantiated.

**Article 563 (Hearing of Opinion about Objections)**

When an objection is raised pursuant to the provisions of Article 562 (1), the court shall hear the opinions of the debtor and the person who has raised such objection.

**Article 564 (Immunity Granted)**

(1) The court shall grant immunity except in the events falling under any of the following subparagraphs:

1. When it is recognized that an act falling under the offense of Articles 650, 651, 653, 656 or 685 is perpetrated by the debtor;

2. When the debtor, notwithstanding the grounds of his/her bankruptcy within one year before he/she is declared, acquires any assets through credit transaction by deceit, and concealing the fact in order to prevent other persons from recognizing such fact;

3. When the debtor submits a falsified list of creditors and other falsified application documents to the court or falsely states the current holding of his/her assets to the court;

4. When 7 years have yet to lapse for the debtor from the date on which a decision to grant him/her immunity is confirmed in cases where he/ she receives immunity pursuant to this Article before he/she files an application for the immunity, or when 5 hears have yet to lapse for the debtor from the date on which a decision to grant him/her immunity is confirmed in cases where he/she receives immunity pursuant to the provisons of Article 624;

5. When the debtor violates his/her duties prescribed by this Act; and

6. When the debtor is found to drastically decrease the value of his assets by excessive waste money, gambling or speculation or to incur excessive indebtedness.

(2) Even in cases where the grounds for not granting immunity referred to in any subparagraph of paragraph (1) exist, the court may grant immunity taking into account the circumstances and other situations that result in the debtor's bankruptcy.

(3) The court shall, when it decides to grant immunity, publish the main passage of the decision and the gist of the grounds therefor. In this case, no delivery need be made.

(4) An immediate appeal may be filed against any decision on regarding grant immunity.

**Article 565 (Timing of Effect of Decision to Grant Immunity)**

The effect of immunity shall arise only after a decision to grant such immunity is confirmed.

**Article 566 (Effect of Immunity)**

A debtor who is granted immunity shall be exempted from responsibility for the whole of his/her obligations to bankruptcy creditors except the dividends that are distributed according to bankruptcy procedures: Provided, That his/her responsibility shall not be exempted from the claims falling under each of the following subparagraphs: *<Amended by Act No. 9935, Jan. 22, 2010>*

1. Taxes;

2. Fines, penalties, criminal litigation, costs, additional levies and fines for negligence;

3. Compensation for loss incurred by the intentional, illegal conduct of the debtor;

4. Compensation for loss incurred by grossly negligent, illegal conduct of the debtor, which inflicts harm on the life and body of any other person;

5. The wages, severance pay and disaster compensation of the debtor's workers;

6. The bailment funds and personal identity guarantee funds of the debtor's workers;

7. Claims that are bad faith excluded from entry in the list of creditors by the debtor: Provided, That the same shall not apply to cases where any such creditor learns of the fact that the debtor is declared bankrupt;

8. Expenses that the debtor has to bear in raising his/her children or a person under obligation to support his/her family;

9. Principal and interest of students loans permitted to repay after employed under the Special Act on Income Contingent Loan.

**Article 567 (Effect on Guarantor, etc.)**

The immunity shall not affect the rights that are held by creditors on guarantors of the debtor and any other persons who bear obligations together with the debtor and any security that is furnished for any bankruptcy creditor.

**Article 568 (Entry of Decision to Grant Immunity)**

The clerk, etc, of the court shall, when a decision to grant immunity is confirmed, enter the gist of the confirmation of such decision in the table of bankruptcy creditors if such table is in existence.

**Article 569 (Revocation of Immunity)**

(1) When the debtor is convicted of fraudulent bankruptcy and is given a final verdict provided for in the provisions of Article 650, the court may decide to revoke his/her immunity by its authority or upon receiving an application filed by bankruptcy creditors. The same shall apply to cases where the debtor receives immunity by means of illegality, and so bankruptcy creditors file an application for the revocation of his/her immunity within one year after the debtor is granted such immunity.

(2) An immediate appeal may be filed against the decision referred to in the provisions of paragraph (1).

**Article 570 (Hearing of Opinions about Revocation of Immunity)**

The court shall hear opinions of the debtor and applicants before it grants a judgment on the revocation of the debtor's immunity.

**Article 571 (Timing for Effect of Decision to Revoke Immunity)**

The effect of a decision to revoke immunity shall accrue after such decision is confirmed.

**Article 572 (Priority Rights of New Creditors)**

When immunity is revoked, anyone who holds claims on grounds that accrue from between the time immunity is granted and the time such immunity is revoked shall entitled to greater preference for repayments than other creditors.

**Article 573 (Entry of Decision to Revoke Immunity)**

In cases where a decision to revoke immunity is confirmed. the clerk, etc. of the court shall, if they have the table of bankruptcy creditors, enter the gist of the confirmation of the decision to cancel the immunity in such table.

**Article 574 (Obligatorily Restoration)**

(1) A debtor who is declared bankrupt shall be restored, when he/she falls under any of the following subparagraphs:

1. When a decision to grant immunity is confirmed;

2. When a decision to discontinue the bankruptcy based on the application filed pursuant to the provisions of Article 538 is confirmed; and

3. When the debtor for whom 10 years have lapsed without being convicted of fraudulent bankruptcy and being given a final verdict pursuant to the provisions of Article 650 after he/she is declared bankrupt.

(2) When a decision to cancel immunity is confirmed, the restoration referred to in the provisions of paragraph (1) 1 shall lose its effect in the future.

**Article 575 (Restoration by Application)**

(1) When the debtor who is subject to a declaration of bankruptcy that cannot be restored pursuant to the provisions of Article 574 is exempted from his/her responsibility for the whole of his/her obligations by means of repayments and other methods, the bankruptcy court shall decide to restore the debtor upon receiving an application filed by the debtor who is declared bankrupt.

(2) When the debtor who is declared bankrupt files an application for his/ her restoration, he shall submit a written statement attesting to the exemption of his/her responsibility.

(3) An immediate appeal may be filed against the decision referred to in the provisions of paragraph (1).

**Article 576 (Publication of Application for Restoration)**

Upon receiving an application for restoration, the court shall publish the gist thereof and retain documents concerning the application in it in order for interested persons to inspection.

**Article 577 (Objection Raised to Application for Restoration)**

(1) Any bankruptcy creditor may file with the court an objection to the application for restoration within 3 months from the date on which the publication provided for in the provisions of Article 576 is made.

(2) When the objection is filed pursuant to the provisions of paragraph (1), the court shall hear the opinions of the debtor who is declared bankrupt and the bankruptcy creditor who files such objection.

**Article 578 (Timing of Effect of Decision on Restoration)**

A decision on the restoration shall take effect after such decision is confirmed.

**Article 579 (Definition of Terms)**

The terms used in this Section shall be defined as follows: *<Amended by Act No. 9924, Jan. 1, 2010; Act No. 10366, Jun. 10, 2010>*

1. The term "individual debtor" means a person to whom a fact pertains that is grounds for bankruptcy or it is apprehended that such fact pertains and is a wage income earner or a business income earner, either of whom bears obligations, the amount of which is less than any of the following amounts:

(a) An individual rehabilitation amount secured by any lien, pledge right, mortgage, right to property transferred for security, provisionally registered security right, security right under the Act on Security over Movable, Property, Claims, etc., a right to lease on a deposit basis, or any special priority right of one billion won;

(b) An individual rehabilitation claim, other than item (a) for 500 million won;

2. The term "wage income earner" means an individual who can earn wage, pension and other periodically and certain income similar thereto;

3. The term "business income earner" means an individual who can earn and expects to earn in the future real estate rental income, business income, agricultural income, forestry income or other continuously and repeatedly paid income or similar thereto;

4. The term "disposable income" means an amount obtained by deducting the amount referred to in items (b) through (d) below, from the amount referred to in item (a):

(a) Total amount of wage income, pension income, real estate rental, business income, agricultural income, forestry income and all other categories of reasonably anticipated income earned by the debtor;

(b) Income tax, resident tax per capita, local income tax on income, health insurance premiums and other amounts corresponding thereto, the amount of which is prescribed by the Presidential Decree;

(c) The minimum living costs published pursuant to the provisions of Article 6 of the National Basic Living Security Act, which are incurred to maintain a dignified lifestyle for the debtor and his/her dependent family, the amount of which is set by the court, taking into account the ages and number of the debtor and his/her dependent family members, their residental area, commodity prices and other necessary matters;

(d) Where the debtor runs a business, costs incurred to manage, preserve and continue such business.

### Article 580 (Individual Rehabilitation Foundation)

(1) The assets falling under both of the following subparagraphs shall belong to the individual foundation:

1. All assets held by the debtor at the time that it is decided to commence individual rehabilitation procedures for him/her and the claims to be exercised by the debtor in the future on the grounds that arise before it is decided to commence such individual rehabilitation procedures; and

2. The assets and income acquired by the debtor in the process of the individual rehabilitation procedures.

(2) The debtor shall be entitled to manage and dispose of the individual foundation: Provided, That the same shall not apply to cases where it is prescribed otherwise in the authorized repayment plan.

(3) The provisions of Article 383 shall apply mutatis mutandis to the individual rehabilitation foundation referred to in the provisions of paragraph (1) 1. In this case, "bankruptcy foundation" shall be deemed

"individual rehabilitation foundation," "bankruptcy declaration" shall be deemed "decision to commence individual rehabilitation procedures," and "bankruptcy procedures" shall be deemed "individual rehabilitation procedures," respectively.

(4) With respect to assets exempted pursuant to the provisions of paragraph (3), the compulsory execution, provisional seizure or provisional disposition based on individual rehabilitation claims shall not be per formed until a decision to discontinue the individual rehabilitation procedures or a decision on immunity is confirmed.

### Article 581 (Individual Rehabilitation Claims)

(1) Any claim on assets that accrue from causes due to the debtor before it is decided to commence individual rehabilitation procedures shall be made individual rehabilitation claims.

(2) The provisions of Articles 425 through 433, 439, 442 and 446 shall apply mutatis mutandis to individual rehabilitation claims. In this case, "bankruptcy declaration" shall be deemed "decision to commence individual rehabilitation procedures," "bankruptcy foundation" shall be deemed "individual rehabilitation foundation," "bankruptcy claims" shall be "individual rehabilitation claims," "bankruptcy creditors" shall be deemed "individual rehabilitation creditors," "amount of bankruptcy claims" shall be deemed "amount of individual rehabilitation claims" and "bankruptcy procedures" shall be deemed "individual rehabilitation procedures," respectively.

### Article 582 (Repayment of Individual Rehabilitation Claims)

With respect to individual rehabilitation claims that are entered in the list of individual rehabilitation creditors, any act extinguishing such claims by repaying for them or being repaid for them shall be prohibited from being performed without resorting to the repayment plan.

### Article 583 (Claims of Individual Rehabilitation Foundation)

(1) Claims falling under any of the following subparagraphs shall be made claims of the individual rehabilitation foundation: *<Amended by Act No. 8138, Dec. 30, 2006; Act No. 8829, Dec. 31, 2007; Act No. 9346, Jan. 30, 2009; Act No. 10219, Mar. 31, 2010>*

1. Claims for reimbursement of remuneration and expenses of rehabilitation commissioners;

2. Claims falling under any of the following items collectable pursuant to the National Tax Collection Act and the Framework Act on Local Taxes: Provided, That such claims are limited to those, the payment deadline for which has yet to arrive at the time individual rehabilitation procedures commence:

　(a) Taxes withheld;

　(b) Value-added tax, individual consumption tax, liquor tax;

　(c) Local taxes that must be collected and paid by persons liable for special collection; and

　(d) Education tax and special tax for agricultural and fishing villages levied and collected according to the example of imposing and collecting taxes referred to in the provisions of items (a) through (c);

3. Wages, severance pay and disaster compensation of the debtor's workers;

4. Claims for the redemption of the bailment money and personal identity guarantee money that accrue from grounds arising before a decision is made to commence individual rehabilitation procedures;

5. Claims that accrue from acts necessary for borrowing funds, purchasing materials and continuing the debtor's business after obtaining permission therefor from the court before a decision is made to commence individual rehabilitation procedures after an application is filed for commencing such individual rehabilitation procedures; and

6. Inevitable expenses and costs disbursed for the debtor other than the expenses and costs referred to in subparagraphs 1 through 5.

(2) The provisions of Articles 475 and 476 shall apply mutatis mutandis to individual rehabilitation foundation claims. In this case, "foundation claims" shall be deemed "individual rehabilitation foundation claims," "bankruptcy procedures" shall be deemed "individual rehabilitation procedures" and "bankruptcy claims" shall be deemed "individual rehabilitation claims," respectively.

## Article 584 (Negation Right)

(1) Section 2 of Chapter III, Part III shall apply mutatis mutandis to individual rehabilitation procedures.

(2) The right to set aside shall be exercised by the debtor.

(3) The court may order the debtor to exercise his/her right to set aside by its inherent jurisdiction or upon receiving an application filed by any creditor or any rehabilitation commissioner.

(4) Any rehabilitation commissioner may participate in the exercise of the right to set aside.

(5) The right to set aside shall not be exercised one year has lapsed from the date on which it is decided to commence individual rehabilitation procedures. The same shall apply to cases where 5 years have lapsed from the date on which an act provided for in any subparagraph of Article 391 is performed.

## Article 585 (Reacquisition Right)

The provisions of Articles 407 through 410 shall apply mutatis mutandis to individual rehabilitation procedures. In this case, "bankruptcy foundation" shall be deemed "individual rehabilitation foundation" and "bankruptcy declaration" shall be deemed "decision to commence indi vidual rehabilitation procedures," respectively.

## Article 586 (Right to Foreclose Outside Bankruptcy)

The provisions of Articles 411 through 415 shall apply mutatis mutandis to individual rehabilitation procedures. In this case, "bankruptcy foundation" shall be deemed "individual rehabilitation foundation," "bankruptcy declaration" shall be deemed" decision to commence individual rehabilitation procedures," respectively.

## Article 587 (Offset Right)

The provisions of Articles 416 through 422 shall apply mutatis mutandis to individual rehabilitation procedures. In this case, "bankruptcy petition" shall be deemed "application for commencing individual bankruptcy

procedures", "bankruptcy foundation" shall be deemed "individual rehabilitation foundation" and "bankruptcy declaration" shall be deemed "decision to commence individual rehabilitation procedure", respectively.

**Article 588 (Holder of Right to File Application for Commencing Indi vidual Bankruptcy Procedures)**

Any individual debtor may file an application with the court for commencing individual rehabilitation procedures.

**Article 589 (Written Application Filed for Commencing Individual Rehabilitation Procedures)**

(1) An application for commencing individual rehabilitation procedures shall be filed as a written statement in which the matters falling under each of the following subparagraphs are entered:

1. The name, resident registration number and domicile of the debtor;

2. The gist and grounds for the application; and

3. The assets and liabilities of the debtor.

(2) The written statement referred to in the provisions of paragraph (1) shall be accompanied by the documents falling under each of the following subparagraphs:

1. A list of the individual rehabilitation creditors (referring to a list in which the names and domiciles of creditors and the grounds for and amounts of claims are entered);

2. An asset inventory;

3. A list of the debtor's revenues and expenditures;

4. Data attesting to a wage income earner or a business income earner;

5. A written statement;

6. Related documents, where there has been a fact that application was filed for any rehabilitation case, any composition case or any individual rehabilitation case for ten years prior to the date on which an application is filed; and

7. Other documents that are prescribed by the Rules of the Supreme Court.

(3) The debtor may amend or correct the details that are entered in the list of individual rehabilitation creditors until it is decided to commence the individual rehabilitation procedures.

**Article 590 (Prepayment of Expenses)**

When an application is filed for commencing individual rehabilitation procedures, the amount of expenses necessary for such procedures that is prescribed by the Rule of the Supreme Court shall be prepaid.

**Article 591 (Report on Accounting, etc.)**

The court and any rehabilitation commissioner may request the debtor at any time to report on his/her revenues and expenditure of funds and his/her assets work, and if it is deemed necessary, may inspect the current status of his/her assets, request any correction and take other appropriate steps.

**Article 592 (Preservation Disposition)**

(1) The court may conduct provisional seizure, provisional disposal and necessary preservation disposition of the debtor's assets by its inherent jurisdiction or upon receiving an application filed by interested persons before a decision is made to commence individual rehabilitation procedures.

(2) The court may alter or rescind the decision referred to in the provisions of paragraph (1).

(3) An immediate appeal may be filed against the decision referred to in the provisions of paragraphs (1) and (2).

(4) The immediate appeal referred to in the provisions of paragraph (3) shall not have the effect of suspending any execution.

**Article 593 (Suspension Order)**

(1) In cases where an application is filed to commence individual rehabilitation procedures, if it is deemed necessary, the court may order the suspension prohibition of the procedures or acts falling under each of the following subparagraphs until when a decision is made on the application filed for commencing individual rehabilitation procedures by its inherent jurisdiction or upon receiving an application filed by interested persons: *<Amended by Act No. 10219, Mar. 31, 2010>*

  1. Rehabilitation procedures or bankruptcy procedures for the debtor;

  2. The compulsory execution, the provisional seizure or the provisional disposition conducted on, or exercised over the debtor's business and property based on individual rehabilitation claims;

  3. An auction directed at establishing security rights on the debtor's business and assets and for exercising such security rights, etc.;

  4. All acts of receiving or demanding the repayment of individual rehabilitation claims: Provided, That acts involving any lawsuit shall be excluded; and

  5. A disposition taken for the recovery of arrears, a precedent of the disposition followed for the collection of national taxes in arrears (including a precedent of the disposition followed for the collection of local taxes in arrears; hereinafter the same shall apply) and the dis posal of goods furnished as security for tax obligation provided for in the National Tax Collection Act and the Framework Act on Local Taxes. In such cases, the opinion of anyone who holds the authority to collect taxes shall be heard.

(2) During the period in which the dispositions referred to in the provisions of paragraph (1) 5 are suspended, prescriptions shall not proceed.

(3) If an application filed to commence individual rehabilitation procedures is declined, the procedures suspended pursuant to the provisions of paragraph (1) shall resume.

(4) When any justifiable grounds exist, the court may revoke or alter the suspension order or the prohibition order referred to in the provisions of paragraph (1) by its inherent jurisdiction or upon receiving an application filed by interested persons. In this case, the court may order security to be provided.

(5) The provisions of Articles 45 through 47 shall apply mutatis mutandis to individual rehabilitation procedures.

**Article 594 (Withdrawal of Application to Commence Individual Rehabilitation Procedures)**

The debtor may withdraw an application for commencing individual bankruptcy procedures before a decision is made to commence such individual rehabilitation procedures: Provided. That the debtor may withdraw his/her application after obtaining permission therefor from the court after he/she takes the preservation disposition provided for in the provisions of Article 592 or the suspension order provided for in the provisions of Article 593.

**Article 595 (Grounds for Dismissal of Applications Filed to Commence Individual Rehabilitation Procedures)**

In the events falling under any of the following subparagraphs, the court may dismiss any application filed for commencing individual rehabili tation procedures:

1. When the debtor fails to qualify himself/herself as one entitled to file the application;

2. When the debtor fails to submit any documents falling under any item of Article 589 (2), prepares and submits a falsified document and fails to comply with the deadline for submission as set by the court;

3. When the debtor fails to pay for expenses necessary for the procedures;

4. When the debtor fails to comply with the deadline for submitting a draft repayment plan;

5. When the debtor receives immunity (including a immunity pursuant to a bankruptcy procedures) within 5 years before the date on which an application is filed for such immunity;

6. When resorting to individual rehabilitation procedures is not compatible with the general profits of creditors; and

7. When the application is not bona fide and delays the procedures without justifiable grounds therefor.

**Article 596 (Decision To Commence Individual Rehabilitation Procedures)**

(1) The court shall decide whether to commence individual procedures within one month from the date on which an application therefor is filed.

(2) The court shall prescribe the matters falling under each of the following subparagraphs at the time that it decides to commence the individual rehabilitation procedures:

1. The period during which objections may be raised to individual rehabilitation claims (hereinafter referred to as the "objection period"). In this case, the period shall range from not less than 2 weeks to not more than 2 weeks from the date on which it is decided to commence the individual rehabilitation procedures; and

2. The date on which the meeting of individual rehabilitation creditors is to be held. In this case, this shall be a period ranging from not less than 2 weeks to not more than one month between such date and the end of the objection period.

(3) The court may extend the date and the period referred to in each item of paragraph (2) on the grounds of special circumstance.

(4) When a decision is made pursuant to the provisions of paragraph (1), the date and time shall be entered in a written decision.

(5) The decision referred to in the provisions of paragraph (1) shall take effect from the time it is made.

**Article 597 (Publication and Delivery of Commencement Publication)**

(1) When the court decides to commence individual rehabilitation procedures, it shall publish without delay the matters falling under each of the following items:

1. The main passage of the written decision to commence individual rehabilitation procedures;

2. The objection period is raised to them;

3. The gist that any individual rehabilitation creditor may file an application for a final claim inspection judgment on the details of claims that are held by him/her and other individual rehabilitation creditors within the objection period; and

4. The date on which the meeting of individual rehabilitation creditors is held.

(2) The court shall deliver a written statement in which the matters falling under each of the following items are entered, the list of individual rehabilitation creditors and the draft repayment plan:

1. The debtor;

2. The individual rehabilitation creditors who are known; and

3. Persons who hold the debtor's assets or bear obligations for the debtor for whom the individual rehabilitation procedures commence.

(3) The provisions of paragraphs (1) and (2) shall apply to cases where any change occurs in the matters referred to in paragraph (1) 2 and 4 and the provisions of paragraph (2) shall apply to cases where the draft repayment plan is amended.

**Article 598 (Immediate Appeal Filed against Judgment on Commencement of Individual Rehabilitation Procedures)**

(1) An immediate appeal may be filed against any judgment on the application filed for commencing individual rehabilitation procedures.

(2) The provisions of Articles 592 and 593 shall apply mutatis mutandis to cases where the immediate appeal referred to in the provisions of paragraph (1) is filed against a decision to dismiss the application filed for commencing individual rehabilitation procedures.

(3) The immediate appeal referred to in the provisions of paragraph (1) shall not have the effect of suspending any execution.

(4) When the procedures of such immediate appeal are in violation of this Act and it is recognized that the immediate appeal is groundless, the appellate court shall dismiss or decline such immediate appeal.

(5) When any such immediate appeal is deemed justifiable, the appellate court shall revoke the original decision and remand the case to the court of origin.

**Article 599 (Cancellation of Decision to Commence Individual Rehabilitation Procedures)**

When a decision to cancel the decision to commence individual rehabilitation procedures is confirmed, the court shall promptly publish the main passage of such decision and deliver the purport of such decision to the persons falling under each of the following subparagraphs:

1. The debtor;

2. Each of the individual rehabilitation creditors who are known; and

3. Persons who hold the debtor's assets or bear obligations for the debtor for whom the individual rehabilitation procedures commence.

**Article 600 (Suspension of other Procedures, etc.)**

(1) When a decision is made to commence individual rehabilitation procedures, the acts and procedures falling under any of the following subparagraphs shall be suspended or prohibited: Provided, That the procedures and the acts referred to in subparagraphs 2 through 4 shall be limited to the claims entered in the list of creditors: *<Amended by Act No. 10219, Mar. 31, 2010>*

1. Rehabilitation procedures or bankruptcy procedures for the debtor;

2. Compulsory execution, provisional seizure or provisional disposition which is performed or exercised on the assets that belong to the individual rehabilitation foundation based on individual rehabilitation claims;

3. Acts of receiving or demanding repayment of individual rehabilitation claims: Provided, That the act of filing any lawsuit shall be excluded; and

4. Dispositions taken for the recovery of arrears, dispositions taken for the collection of national taxes in arrears (including precedents for dispositions taken for the collection of national taxes and local taxes in arrears; hereinafter the same shall apply) according to the precedent for of the collection of national taxes and the disposal of goods furnished as security for tax obligations provided for in the National Tax Collection Act and the Framework Act on Local Taxes.

(2) When it is decided to commence individual rehabilitation procedures, an auction for establishing and exercising any security rights on assets that belong to the individual rehabilitation foundation shall be suspended or prohibited by the date that arrives first among the date on which it is decided to authorize the repayment plan and the date on which a decision to discontinue the individual rehabilitation procedures is confirmed.

(3) When justifiable grounds exist, the court may order the continuation or cancellation of procedures or dispositions that are suspended pursuant to the provisions of paragraph (1) or (2) by its inherent jurisdiction or upon receiving an application filed by interested persons: Provided, That in cases where the disposition is revoked, any security may be furnished.

(4) The prescription shall not continue during the period in which a disposition cannot be taken or is suspended pursuant to the provisions of paragraph (1) or (2).

**Article 601 (Selection and Appointment Dismissals)**

(1) The court may select and appoint the persons falling under any of the following subparagraphs as rehabilitation commissioners by its inherent jurisdiction or upon receiving an application filed by interested persons: *<Amended by Act No. 10303, May 17, 2010>*

1. Commissioners of the Custodial Committee;

2. The clerk, etc. of the court;

3. Qualified attorneys-at-law, certified public accounts or certified judicial scriveners;

4. Persons who have worked as assistant court clerks and assistant clerks of the prosecution;

5. Persons who have worked for banks provided for in the Banking Act and are qualified to work as rehabilitation commissioners;

6. Persons who have worked or work for institutions that educate and counsel debtors about credit management and perform the work of coordinating obligations for credit recovery and are qualified to work as rehabilitation commissioners; and

7. Persons who correspond to those referred to in subparagraphs 1 through 6 and are qualified to work as rehabilitation commissioners.

(2) When justifiable grounds exist, the court may dismiss any rehabilitation commissioner by its inherent jurisdiction or upon receiving an application filed by interested persons.

(3) When it is deemed necessary, any rehabilitation commissioner may select and appoint not less than one proxy rehabilitation commissioner at his/her own risk in order to perform his/her tasks.

(4) Permission shall be obtained for the selection and appointment of any proxy rehabilitation commissioner referred to in the provisions of paragraph (3).

(5) Any proxy rehabilitation commissioner may perform all acts, with the exception of acts involving any trial on behalf of the rehabilitation commissioners.

**Article 602 (Work of Rehabilitation Commissioners)**

(1) Every rehabilitation commissioner shall perform the work falling under each of the following subparagraphs under the court's supervision:

1. The inspection of the debtor's assets and income;

2. The application filed for exercising the right to set aside and participation in the procedures thereof;

3. Holding meetings of individual rehabilitation creditors; and

4. Other work prescribed by Acts and subordinate statutes or the court.

(2) Upon receiving an order issued by the court and a request from any rehabilitation commissioner, the debtor shall provide explanation regarding his/her assets and income, his/her repayment plan and other necessary matters.

**Article 603 (Confirmation of Individual Rehabilitation Claims)**

(1) In cases falling under either of the following subparagraphs, claims entered in the list of individual rehabilitation creditors shall be confirmed as they are entered therein:

1. Where any creditor who is entered in the list of individual rehabilitation creditors fails to file an application for a final judgment on the inspection of individual rehabilitation claims within the objection period provided for in the provisions of Article 596 (2) 1; and

2. Where any application filed for a final judgment on the inspection of individual rehabilitation claims is dismissed.

(2) When the claims referred to in the provisions of paragraph (1) are confirmed, the clerk, etc. of the court shall prepare a table of the individual rehabilitation claims in which the matters falling under each of the following subparagraphs are entered:

1. The name and domicile of the debtor; and

2. The details and grounds of the claims.

(3) In cases where the confirmed individual rehabilitation claims are entered in the table of individual rehabilitation claims, their entry in the table shall have the same effect as that of a final judgment on all of the individual rehabilitation creditors.

(4) When a decision to discontinue individual rehabilitation procedure is confirmed, the individual rehabilitation creditors may perform compulsory execution on the debtor based on the table of individual rehabilitation creditors.

(5) The provisions of Article 255 (3) shall apply mutatis mutandis to cases under paragraph (4).

**Article 604 (Confirmed Judgment on Inspection of Individual Rehabilitation Claims)**

(1) Any individual rehabilitation creditor who is dissatisfied with the contents of the list of individual rehabilitation creditors may raise an objection in writing thereto within the objection period provided for in the provisions of Article 596 (2) 1. When the debtor concedes the details of such objection, such individual rehabilitation creditor may amend the list of individual rehabilitation creditors after obtaining permission therefor from the court. In this case, the court may not determine any application for the final inspection judgment.

(2) In cases where an objection is raised to the right on which a lawsuit is already pending in the court, a separate application cannot be filed for the final inspection judgment and the provisions of the lawsuit that is already pending shall be amended into a lawsuit for confirmation of the individual rehabilitation claim inspection.

(3) In cases under paragraph (1), if any individual rehabilitation creditor files an application for a final inspection judgment on an individual rehabilitation claim, the debtor shall be adjoined as the other party and if an application is filed for a final judgment on an individual rehabilitation claim inspection, the debtor and other individual rehabilitation creditor shall be adjoined as other parties.

(4) Anyone who files an application for a final judgment on an individual rehabilitation claim inspection shall prepay procedural expenses that are set by the court. When the procedural expenses are not prepaid, the court shall dismiss such application.

(5) The court shall make the final judgment on an individual rehabilitation claim inspection after examining persons concerned and determine whether any objection is raised to the final judgment on the rehabilitation claim and the details of such objection.

(6) When the court makes the final judgment referred to in the provisions of paragraph (5), it shall deliver a written final judgment to each of the parties.

**Article 605 (Appeal against Final Inspection Judgment on Individual Rehabilitation Claim)**

(1) Anyone who is dissatisfied with a final inspection judgment on an individual rehabilitation claim may file an appeal against such final judgment within one month from the date on which he/she receives delivery of the written final judgment thereon. In this case, the lawsuit against such final judgment shall be exclusively put under the jurisdiction of the individual rehabilitation court (referring to the district court in which the individual rehabilitation case is pending; hereinafter the same shall apply).

(2) Arguments against the lawsuit referred to in the provisions of paragraph (1) shall be submitted after the lapse of one month from the date on which the delivery of the written judgment referred to in the provisions of paragraph (1) is received. When multiple appeals are pending on the same claim, the court may combine the arguments thereon.

(3) The judgment on the appeal referred to in the provisions of para graph (1) shall authorize or amend the judgment of the same paragraph, except when the appeal is dismissed on the grounds of unlawfulness.

**Article 606 (Entry of Result of Appeal on Confirmation of Individual Rehabilitation Claims, etc.)**

Upon receiving an application filed by the debtor, any rehabilitation commissioner or any individual rehabilitation creditor, the clerk, etc. of the court shall prepare a table of individual rehabilitation creditors in which the matters falling under each of the following subparagraphs are entered:

1. The result of the final inspection judgment on the individual rehabilitation claim;

2. The result of the lawsuit filed against the final inspection judgment on the individual rehabilitation claim; and

3. The result of the lawsuit filed against the final inspection judgment on the individual rehabilitation claim, other than the result of the final judgment on the individual rehabilitation claim referred to in the provisions of subparagraphs 1 and 2.

**Article 607 (Effect of Judgment in Lawsuit on Confirmation of Individual Rehabilitation Claims)**

(1) A judgment in a lawsuit on confirmation of individual rehabilitation claims shall have effect on all of individual rehabilitation creditors.

(2) When any appeal against the final judgment on an individual rehabilitation claim inspection is not filed within the period provided for in the provisions of Article 605 (1) or is dismissed, the judgment shall have the same effect as that of the final judgment on all of the individual rehabilitation creditors.

**Article 608 (Refund of Litigation Costs)**

When any profit accrue to the debtor's assets on the byway of the lawsuit filed for the confirmation of individual rehabilitation claims, any indi vidual rehabilitation creditor who files such lawsuit may claim a reimbursement of litigation costs as an individual rehabilitation creditor within the limit of the profit that accrues.

**Article 609 (Value of Subject Matter of Lawsuit Filed for Confirmation of Individual Rehabilitation Claims)**

The value of the subject matter of a lawsuit filed for the confirmation of individual rehabilitation claims shall be determined by the individual rehabilitation court based on the estimated amount of the profit that accrues according to the repayment plan.

**Article 610 (Submission and Revision of Draft Repayment Plan)**

(1) The debtor shall submit a draft repayment plan within 14 days from the date on which an application is filed for commencing individual rehabilitation procedures: Provided, That when the court recognizes that justifiable grounds exist, it may extend the period.

(2) The debtor shall be prohibited from revising the draft repayment plan before it is authorized.

(3) The court may order the debtor to revise the draft repayment plan by its inherent jurisdiction or upon receiving an application filed by interested persons.

(4) When the revision order is given pursuant to the provisions of paragraph (3), the debtor shall revise the draft repayment plan within the deadline set by the court.

(5) The provisions of Article 597 (2) shall apply mutatis mutandis to cases where the draft repayment plan is revised pursuant to the provisions of paragraphs (2) and (3).

### Article 611 (Contents of Repayment Plan)

(1) The matters falling under each of the following subparagraphs shall be prescribed in the repayment plan:

    1. Matters concerning the assets and income furnished for repaying obligations;

    2. Matters concerning the repayment of the total amount of individual rehabilitation foundation claims and individual rehabilitation claims with general priority rights; and

    3. Matters concerning the repayment of all or a part of the individual rehabilitation claims entered in the list of individual rehabilitation creditors.

(2) The matters falling under each of the following subparagraphs may be prescribed in the repayment plan:

    1. The categorization of individual rehabilitation claims into groups;

    2. The purpose for the use of property that exceed the estimated amount in the repayment plan;

    3. Matters concerning restrictions on the right to manage and dispose of assets that belong to the individual rehabilitation foundation after the repayment plan is authorized; and

    4. Other matters necessary to coordinate the debtor's obligations.

(3) When claims are categorized into groups in the repayment plan, any claims that are categorized into the same group shall be handled equally: Provided, That the same shall not apply to cases where agreement is obtained from individual rehabilitation creditors who suffer disadvantages or the amount of the individual rehabilitation claim is minimal.

(4) The repayment plan shall contain terms that require the commencement of repayments within one month from the date on which the repayment plan is authorized and periodic repayments: Provided, That the same shall not apply to cases where permission therefor is obtained from the court.

(5) The repayment period set in the repayment plan shall not exceed 5 years from the date on which the repayment commences.

(6) When it is deemed necessary, the court may order personal and impersonal securities to be furnished in order to implement the repayment plan.

### Article 612 (Invalidation of Preferential Benefits)

The act of giving special profits to some individual rehabilitation creditors without resorting to the repayment plan, in the name of the debtor or in the name of any third person shall be made invalid.

**Article 613 (Meeting of Individual Rehabilitation Creditors)**

(1) The court shall notify the debtor, individual rehabilitation creditors and rehabilitation commissioners of the date on which a meeting of individual rehabilitation creditors is held and a summary of the repayment plan.

(2) The debtor shall be present at the meeting of individual rehabilitation creditors and explain the repayment plan at the request of any individual rehabilitation creditor.

(3) The meeting of individual rehabilitation creditors shall be presided over by the court.

(4) When any rehabilitation commissioner is selected and appointed, the court may cause such rehabilitation commissioner to preside over the meeting of individual rehabilitation creditors.

(5) Any individual rehabilitation creditor may state his/her objection to the repayment plan at the meeting of individual rehabilitation creditors.

**Article 614 (Whether to Authorize Repayment Plan)**

(1) When no individual rehabilitation creditor or no rehabilitation commissioner states his/her objection to the repayment plan and all of the requirements falling under each of the following subparagraphs are met, the court shall decide to authorize the repayment plan: Provided, That the same shall not apply to cases where any individual rehabilitation creditor or any rehabilitation commissioner does not comply with an order given to revise the draft repayment plan pursuant to the provisions of Article 610 (3):

1. The repayment plan is to conform with the provisions of the Act;

2. The repayment plan is to be fair, equitable and implementable;

3. The payable expenses, fees and other amounts are to be paid before the repayment plan is authorized; and

4. The total amount to be repaid for the rehabilitation claims that are appraised as of the date on which the repayment plan is authorized is to exceed the total amount of dividends that the debtor is to take at the time that he/she enters into bankruptcy; Provided, That the same shall not apply to cases where agreement thereon is obtained from creditors.

(2) When any individual rehabilitation creditor or any rehabilitation commissioner states an objection, the court may decide to authorize the repayment plan only when the requirements falling under each of the following subparagraphs are met in addition to the requirements referred to in each subparagraph of pargraph (1):

1. The total repayment amount for individual rehabilitation creditors who state their objections, which is appraised as of the date on which it is decided to authorize the repayment plan is not to be smaller than the total amount of dividends that are distributed to the debtor at the time the debtor enters into bankruptcy;

2. The whole of the disposable income that the debtor can receive during the repayment period that is set according to the repayment plan from the first repayment date is to be used for repayments according to the repayment plan; and

3. The total amount of repayments for individual rehabilitation claims, which is appraised as of the date on which it is decided to authorize the repayment plan, is not to be smaller than the amount falling under each of the following items within the scope not exceeding 30 million won:

(a) In cases where the total amount of individual rehabilitation claims appraised as of the date on which it is decided to authorize the repayment plan is not more than 50 million won, the amount obtained by multiplying 5/100 by the total amount; and

(b) In cases where the total amount of individual rehabilitation claims appraised as of the date on which it is decided to authorize the repayment plan is not less than 50 million won, the amount obtained by adding one million won to the amount obtained by multiplying 3/100 by the total amount.

(3) The court shall decide on the draft repayment plan and publish the main passage of such decision, a summary of the grounds and a summary of the repayment plan. In this case, the delivery thereof need not be made.

**Article 615 (Effect of Authorizing Repayment Plan)**

(1) The repayment plan shall take effect from the time it is decided to authorize the repayment plan: Provided, That any change in rights according to the repayment plan shall not accrue until the immunity decision is confirmed.

(2) When it is decided to authorize the repayment plan, all of the assets that belong to the individual rehabilitation foundation shall revert to the debtor: Provided, That the same shall not apply to cases where the repayment plan is differently prescribed in the process of deciding on and authorizing the repayment plan.

(3) When it is decided to authorize the repayment plan, rehabilitation procedures and bankruptcy procedures, the compulsory execution, provisional seizure or provisional disposition, any of which are suspended pursuant to the provisions of Article 600 shall lose their effects: Provided, That the same shall not apply to cases where the repayment plan is prescribed differently in the process of deciding to authorize the repayment plan.

**Article 616 (Special Rules Concerning Assignment Order)**

(1) When it is decided to authorize the repayment plan, the assignment order that is confirmed before the individual rehabilitation procedures commence with respect to pay, pensions, salary, bonuses and wage claims the character of which is similar to the former of the debtor shall lose its effect on the portion of the labor that is provided after it is decided to authorize the repayment plan.

(2) The amount of claims that cannot be repaid to all creditors on the grounds of a decision made to authorize the repayment plan shall be made individual rehabilitation claims.

**Article 617 (Performance of Repayments)**

(1) The debtor shall deposit the money for rehabilitation commissioners, which is to be repaid to individual rehabilitation creditors according to the repayment plan authorized.

(2) Individual rehabilitation creditors shall be paid the amount that is deposited pursuant to the provisions of paragraph (1) by rehabilitation commissioners. In cases where any individual rehabilitation creditor is not paid the amount, rehabilitation commissioners shall entrust the amount for such individual rehabilitation creditor.

(3) The provisions of paragraphs (1) and (2) shall not apply to cases where any rehabilitation commissioner is not selected and appointed and the repayment plan is prescribed differently in the process of authorizing the repayment plan.

**Article 618 (Immediate Appeal Filed against Decision on Repayment Plan)**

(1) An immediate appeal may be filed against a decision on a repayment plan.

(2) The provisions of Article 247 (3) through 7 shall apply mutatis mutandis to an immediate appeal filed against a decision on whether to authorize the repayment plan.

**Article 619 (Revision of Repayment Plan after Authorization Thereof)**

(1) The debtor, any rehabilitation commissioner and individual rehabilitation creditor may submit a draft change for the authorized repayment plan before the repayment is completed according to the repayment plan.

(2) The provisions of Articles 597 (2), 611, 613, 614, 615 (1) and 617 shall apply mutatis mutandis to any draft change in the repayment plan referred to in the provisions of paragraph (1).

**Article 620 (Discontinuation of Individual Rehabilitation Procedures Prior to Authorization of Repayment Plan)**

(1) In the events falling under either of the following subparagraphs, the court shall decide to discontinue individual rehabilitation procedures by its inherent jurisdiction or upon receiving an application filed by interested persons:

　1. When the facts falling under subparagraphs 1 and 5 of Article 595 are obviously disclosed at the time individual rehabilitation procedures commence; and

　2. When it is impossible to authorize the draft repayment plan submitted by the debtor.

(2) The court may, In the events falling under either of the following subparagraphs, the Court may decide to discontinue the individual rehabilitation procedures by its inherent jurisdiction:

　1. When the procedures fall under subparagraph 2 of Article 595; and

　2. When the debtor fails to be present or to provide an explanation pursuant to the provisions of Article 613 (2) without any justifiable grounds thereof or provides any false explanation.

**Article 621 (Discontinuation of Individual Rehabilitation Procedures after Repayment Plan Authorized)**

(1) In the events falling under any of the following subparagraphs, the court shall decide to discontinue the individual rehabilitation procedures by its inherent jurisdiction or upon receiving an application filed by interested persons:

　1. When a decision not to grant immunity is confirmed;

2. When it is clearly obvious that the debtor is unable to implement the authorized repayment plan;
Provided, That the same shall not apply where the debtor is granted decision on immunity under Article
624 (2); and

3. When the debtor fails to implement the authorized repayment plan by concealing his/her assets and
income or by means of illegality.

(2) The discontinuation of the individual rehabilitation procedures re ferred to in the provisions of
paragraph (1) shall not affect any repayment that has already been made and any effect that has accrued
pursuant to the provisions of this Act.

**Article 622 (Publication of Decision to Discontinue Individual Rehabilitation Procedures)**

The court shall, when it decides to discontinue the individual rehabilitation procedures, publish the main
passage of such decision and a summary of the grounds thereof. In this case, no delivery thereof need be
made.

**Article 623 (Immediate Appeal Filed Against Discontinuation of Indi vidual Rehabilitation
Procedures)**

(1) An immediate appeal may be filed against the discontinuation of individual rehabilitation procedures.

(2) The provisions of Articles 247 (4) through (7) shall apply mutatis mutandis to the immediate appeal
filed against the discontinuation of individual rehabilitation procedures.

**Article 624 (Immunity Decision)**

(1) When the debtor completes his/her repayments according to the repayment plan, the court shall decide
to grant immunity to him/her by its inherent jurisdiction or upon receiving an application filed by the
parties.

(2) Even if the debtor fails to complete repayments according to the repayment plan, when the
requirements falling under each of the following items are met, the court may decide to grant him/her
immunity after hearing the opinions of interested persons:

1. The debtor's failure to complete his/her repayments is to be due to the grounds for which he/she is not
responsible;

2. The amount that is repaid to individual rehabilitation creditors by the date on which it is decided to
grant the debtor immunity is to exceed the amount of dividends the debtor takes in the bankruptcy
procedures where the debtor files an application for bankruptcy procedures; and

3. Any change in the repayment plan is to be impossible.

(3) Notwithstanding the provisions of paragraphs (1) and (2), in cases falling under any of the following
subparagraphs, the court may decide not to grant immunity:

1. Where the debtor holds any individual rehabilitation claim that is not entered in the list of individual
rehabilitation creditors, due to the debtor's bad faith, by the time when it is decided to grant him/her
immunity; and

2. Where the debtor fails to fulfill his/her obligations prescribed by this Act.

(4) The court shall, when it decides to grant immunity, publish the main passage of such decision and a summary of the grounds thereof. In this case, delivery need not be made.

### Article 625 (Effect of Decision to Grant Immunity)

(1) The effect of any decision to grant immunity shall accrue only after such decision is confirmed.

(2) The debtor who is granted immunity shall be exempted from responsibility for his/her obligations to individual rehabilitation creditors, except for the repayments that are made according to the repayment plan: Provided, That the debtor shall not be exempted from his/her responsibility for claims falling under any of the following subparagraphs:

1. Claims not entered in the list of individual rehabilitation creditors;

2. Claims for tax, etc. as provided for in the provisions of Article 583 (1) 2;

3. Claims for any fines, penalties, any criminal litigation costs, any additional charges and any fines for negligence;

4. Claims for the compensation for losses caused by the debtor's deliberate and illegal conduct;

5. Claims for the compensation for losses caused by the debtor's illegal conduct and gross negligence that combine to result in harm to the life and to the body of other persons;

6. Claims for any wages, severance pay and disaster compensation of the debtor's workers;

7. Claims for any rentals and any personal identity guarantee money of the debtor's workers; and

8. Claims for reimbursement of expenses the debtor must bear in raising and supporting his/her family.

(3) The immunity shall not affect the rights held by individual rehabilitation creditors on the debtor's guarantors and other persons who bear obligations jointly with the debtor and security furnished for individual rehabilitation creditors.

### Article 626 (Cancellation of Immunity)

(1) When the debtor is granted immunity by fraudulent and illegal means, the court may revoke his/her immunity by its inherent jurisdiction or upon receiving an application filed by interested persons. In this case, the court shall examine interested persons.

(2) The application referred to in the provisions of paragraph (1) shall be filed within one year from the date on which a decision to grant immunity is confirmed.

### Article 627 (Immediate Appeal Filed against Decision on Immunity)

An immediate appeal may be filed against any decision to grant immunity and any decision to cancel immunity.

### Article 628 (Definitions)

The definition of terms used in this Part shall be as follows:

1. The term "foreign bankruptcy procedures" means rehabilitation procedures, bankruptcy procedures, individual rehabilitation procedures and other procedures similar thereto for each of which applications are filed for any foreign courts (including authorities corresponding thereto; hereinafter the same shall apply) and provisional procedures;

2. The term "domestic bankruptcy procedures" means rehabilitation proedures, bankruptcy procedures or individual rehabilitation proce dures for each of which applications are filed with the courts of the Republic of Korea;

3. The term "approval for foreign bankruptcy procedures" means approval for the grounds on which a disposition for support is taken pursuant to this Part in the Republic of Korea for foreign bankruptcy procedures;

4. The term "support procedures" means procedures for a judgment on an application filed for approval of foreign bankruptcy procedures and for the disposition taken to support such foreign bankruptcy procedures for a debtor's business and assets in the Republic of Korea;

5. The term "representative of foreign bankruptcy procedures" means the person who is recognized by any foreign court as the manager or representative of foreign bankruptcy procedures; and

6. The term "international bankruptcy custodian" means the person who is given all or a part of the authority by the court to liquidate a debtor's assets, to distribute dividends or to manage or dispose of a debtor's business and assets in support of foreign bankruptcy procedures.

**Article 629 (Scope of Application)**

(1) The provisions of this Part shall apply to cases falling under any of the following items:

1. Where a representative of foreign bankruptcy procedures seeks any approval or support from a court of the Republic of Korea in connection with foreign bankruptcy procedures;

2. Where a representative of a foreign bankruptcy procedures files an application with a court of the Republic of Korea for domestic bankruptcy procedures or participates in domestic bankruptcy procedures that are in progress;

3. Where any custodian, any trustee in bankruptcy, the debtor and any other person who obtains permission from the court, etc. participates in the procedures of any foreign court and seeks approval and support from any foreign court while carrying out activities overseas; and

4. Where domestic bankruptcy procedures and foreign bankruptcy procedures for the same debtor are jointly and simultaneously pending in a court of the Republic of Korea and any foreign court and coordination between the two procedures is required.

(2) Matters not prescribed in this Part shall be governed by the provisions of other Parts of this Act.

**Article 630 (Jurisdiction)**

Cases concerning approval of, and support for foreign bankruptcy procedures shall be placed under the exclusive jurisdiction of the collegiate division of the Seoul Central District Court: Provided, That when it is deemed necessary to ensure the efficient implementation of the proce dures and to protect the rights of interested parties, the Seoul Central District Court may transfer such cases to the competent court provided for in the provisions of Article 3 at the time it decides to approve the foreign bankruptcy procedures or after it decides to approve such foreign bankruptcy procedures by its inherent jurisdiction or upon receiving an application filed by the parties.

**Article 631 (Application Filed for Approving Foreign Bankruptcy Procedures)**

(1) In cases where the debtor has his/her place of business, his/her office or his/her domicile in a nation in which an application is filed for foreign bankruptcy procedures, the representative of such foreign bankruptcy procedures may file an application accompanied by a written statements falling under each of the following subparagraphs with the court for approving the foreign bankruptcy procedures. In this case, written statements prepared in any foreign language shall be accompanied by translations of such statements:

1. A written statement concerning the legal basis and a summary of the overall foreign bankruptcy procedures;

2. A written statement attesting to the commencement of the foreign bankruptcy procedures;

3. A written statement attesting to the qualification and authority of the representative of the foreign bankruptcy procedures;

4. A written statement concerning the main points of the foreign bankruptcy procedures for which an application is filed for their approval (including statements of creditors, the debtor and interested parties); and

5. A written statement concerning all other foreign bankruptcy procedures over the debtor, which are known to the representative of the foreign bankruptcy procedures.

(2) When the details referred to in each item of paragraph (1) are altered after an application is filed for approving the foreign bankruptcy procedures, the applicant shall promptly submit a written statement in which altered matters are entered to the court.

(3) When the application referred to in the provisions of paragraph (1) is filed, the court shall promptly publish a summary of such application.

(4) The provisions of Articles 37 and 39 shall apply mutatis mutandis to the application referred to in the provisions of paragraph (1).

**Article 632 (Decision to Approve Foreign Bankruptcy Procedures)**

(1) Upon receiving an application filed for approving foreign bankruptcy procedures, the court shall decide whether to approve them within one month from the date on which such application is filed.

(2) In cases falling under any of the following subparagraphs, the court shall dismiss an application filed for approving foreign bankruptcy procedures:

1. Where expenses determined by the court are not prepaid;

2. Where each written statement provided for in each subparagraphs of Article 631 (1) is not submitted or the establishment and contents of any such written statement is not bona fide; and

3. Where approving the foreign bankruptcy procedures is contrary to the good public morals and social order of the Republic of Korea.

(3) When it is decided to approve foreign bankruptcy procedures, the court shall publish the main passage of such decision and a summary of the grounds therefor and deliver a written decision to the applicant.

(4) An immediate appeal may be filed against a decision on an application filed for approving foreign bankruptcy procedures.

(5) The immediate appeal referred to in the provisions of paragraph (4) shall not have the effect of suspending any execution.

**Article 633 (Effect of Approval for Foreign Bankruptcy Procedures)**

A decision to approve foreign bankruptcy procedures shall not affect the commencement or the proceeding of procedures pursuant to this Act.

**Article 634 (Application by Representative of Foreign Bankruptcy Procedures for Commencing Domestic Bankruptcy Procedures, etc.)**

When foreign bankruptcy procedures are approved, the representative of the foreign bankruptcy procedures may file an application for commencing domestic bankruptcy procedures or participate in domestic bankruptcy procedures that are in progress.

**Article 635 (Order, etc. Prior to Approval)**

(1) After an application is filed for foreign bankruptcy procedures, the court may order measures to be taken, as provided for in the provisions of Article 636 (1) 1 through 3 up until when a decision is made on the application for such procedures by its inherent jurisdiction or upon receiving an application filed by the representative of foreign bankruptcy procedures.

(2) The provisions of paragraph (1) shall apply mutatis mutandis to cases where an immediate appeal is filed against a decision made to dismiss an application for commencing foreign bankruptcy procedures.

(3) The court may alter or rescind the disposition referred to in the provisions of paragraphs (1) and (2).

(4) An immediate appeal may be filed against the decision referred to in the provisions of paragraphs (1) through (3).

(5) The immediate appeal referred to in the provisions of paragraph (4) shall not have the effect of suspending any execution.

**Article 636 (Support for Foreign Bankruptcy Procedures)**

(1) The court may make a decision falling under any of the following subparagraphs in order to protect the debtor's business and assets or the creditors' profits at the time that it approves the foreign bankruptcy procedures or after approving the foreign bankruptcy procedures by its inherent jurisdiction or upon receiving an application filed by interested persons:

1. The suspension of a lawsuit involving the debtor's business and assets and procedures belonging to any administrative agency;

2. The suspension or prohibition of compulsory execution, an auction for the exercise of security rights, provisional seizure, provisional disposition and preservation procedures with respect to the debtor's business and assets;

3. Prohibition of the debtor's repayment or of the disposal of the debtor's assets;

4. The selection and appointment of international bankruptcy custo dians; and

5. Other dispositions necessary to preserve the debtor's business and assets and to protect the profits of creditors.

(2) When the court makes the decision referred to in the provisions of paragraph (1), it shall take into account the profits of creditors, the debtor and other interested persons.

(3) When the support application referred to in the provisions of paragraph (1) is contrary to the good public morals and social order of the Republic of Korea, the court shall decline such support application.

(4) When the court decides to alter or rescind the prohibition order referred to in the provisions of paragraph (1) 2, it shall publish the main passage of such decision and deliver a written decision to the representative of the foreign bankruptcy procedures and the applicant.

(5) When the prohibition order referred to in the provisions of paragraph (1) is given, the prescription of the claims to the debtor shall not expire until the date on which 2 months have lapsed from the day following the date on which such prohibition order loses its effect.

(6) The court may, if it is deemed necessary, alter or rescind the decision referred to in the provisions of paragraph (1) by its inherent jurisdiction or upon receiving an application filed by interested persons.

(7) When it is deemed necessary, the court may order the cancellation of procedures that are suspended pursuant to the provisions of para graph (1) 2 by its inherent jurisdiction or upon receiving an application filed by interested persons.

(8) An immediate appeal may be filed against the decision referred to in the provisions of paragraphs (1), (6) and (7).

(9) The immediate appeal referred to in the provisions of paragraph (8) shall not have the effect of suspending any execution.

**Article 637 (International Bankruptcy Custodians)**

(1) In cases where any international bankruptcy custodian is selected and appointed, the authority to perform the debtor's business and manage and dispose of the debtor's assets shall be vested exclusively in such international bankruptcy custodian.

(2) In cases where any international custodian intends to dispose of the debtor's assets, or remove the debtor's assets from the Republic of Korea, liquidate the debtor's assets, distribute dividends and perform any act that is prescribed by the court, such international custodian shall obtain permission therefor from the court.

(3) The provisions of Section 1 of Chapter II of Part II and Section 1 of Chapter II of Part III shall apply mutatis mutandis to every international custodian.

**Article 638 (Simultaneous Proceedings of Domestic Bankruptcy Procedures and International Bankruptcy Procedures)**

(1) In cases where domestic bankruptcy procedures and foreign bank ruptcy procedures proceed simultaneously for the same debtor, the court may decide on, alter or revoke the support provided for in the provisions of Articles 635 and 636, which focuses on domestic bankruptcy proce dures.

(2) An immediate appeal may be filed against the decision referred to in the provisions of paragraph (1).

(3) The immediate appeal referred to in the provisions of paragraph (2) shall not have the effect of suspending any execution.

### Article 639 (Multiple International Bankruptcy Procedures)

(1) When an application is filed for approving multiple international bankruptcy procedures for the same debtor, the court shall conduct a combined hearing thereon.

(2) When approval is granted for multiple international bankruptcy procedures for the same debtor, the court may decide on which are to be the main foreign bankruptcy procedures taking into account the location of the debtor's principal place of business and the scope, etc. of measures taken to protect creditors in order to ensure the efficient progression of support procedures.

(3) The court may decide on or change the support, provided for in the provisions of Article 636 for the main foreign bankruptcy procedures.

(4) If it is deemed necessary, the court may change the main foreign bankruptcy procedures referred to in the provisions of paragraph (2).

(5) An immediate appeal may be filed against the decision referred to in the provisions of paragraphs (2) through (4).

(6) The immediate appeal referred to in the provisions of paragraph (5) shall not have the effect of suspending any execution.

### Article 640 (Authority for Custodians to Carry Out Activities Overseas)

Any custodian and any trustee in bankruptcy of domestic bankruptcy procedures and any other person who obtains permission from the court, shall have the authority to carry out activities overseas for domestic bankruptcy procedures under the conditions prescribed by the relevant foreign legislation.

### Article 641 (Cooperation)

(1) The court shall cooperate with any foreign court and the representative of foreign bankruptcy procedures with respect to the matters falling under each of the following subparagraphs in order to ensure the smooth and fair execution of domestic bankruptcy procedures, foreign bankruptcy procedures or between multiple foreign bankruptcy procedures that are proceeding over the same debtor and other debtors related with the former:

1. The exchange of opinions;

2. The management and supervision of the debtor's business and assets;

3. The coordination of the progression of multiple procedures; and

4. Other necessary matters.

(2) The court may exchange information and opinions directly with any foreign court or the representative of foreign bankruptcy procedures in order for the cooperation referred to in the provisions of paragraph (1).

(3) Any custodian and any trustee in bankruptcy who are in charge of domestic bankruptcy procedures may exchange information and opinions with any foreign court or the representative of foreign bankruptcy

procedures under the court's supervision.

(4) Any custodian and any trustee in bankruptcy in charge of domestic bankruptcy procedures may reach an agreement with any foreign court or the representative of foreign bankruptcy procedures on the coordination of bankruptcy procedures after obtaining permission therefor from the court.

### Article 642 (General Rules Governing Dividends)

In cases where domestic bankruptcy procedures, foreign bankruptcy procedures or multiple foreign bankruptcy procedures for a common debtor are in progress, any creditor who receives repayment from the foreign bankruptcy procedures or debtor's overseas assets shall not be entitled to take any dividend or any repayment from the domestic bankruptcy procedures until such time as other creditors who belong to the same group and the same ranking as the group and the ranking of the former receive the same percentage of repayment.

### Article 643 (Offense of Fraudulent Rehabilitation)

(1) In cases where a debtor performs an act falling under any of the following subparagraphs with the aim of seeking profits for himself/herself or any other persons and causing loss to creditors, and a decision to commence rehabilitation procedures for the debtor is confirmed, the debtor shall be punished by imprisonment with prison labor for not more than 10 years or by a fine not exceeding 100 million won:

1. The act of destroying and concealing his/her assets or disposing of his/her assets in a manner that is disadvantageous to rehabilitation creditors, rehabilitation secured creditors, shareholders and equity right holders;

2. The act of falsely increasing the debtor's obligations;

3. The act of failing to prepare the commercial book, the preparation of which is mandatory under the provisions of relevant Acts, failing to enter the current state of the debtor's assets in the commercial book, falsely entering any matter in the commercial book and destroying and concealing the commercial book; and

4. The act of filing an application for commencing the rehabilitation procedures with the primary aim of evading the punishment provided for in the Illegal Check Control Act.

(2) In cases where any person falling under any of the following subparagraphs performs an act falling under any subparagraph of para graph (1) with the aim of seeking profit for himself or any other person and causing loss to creditors, and a decision to commence rehabilitation procedures for the debtor is confirmed, the person shall be punished by imprisonment with prison labor for not more than 5 years or by a fine not exceeding 50 million won:

1. The debtor's legal representative;

2. The director of the debtor who is a corporation; and

3. The debtor's manager.

(3) In cases where the debtor performs an act falling under either of the following subparagraphs with the aim of seeking profit for himself or any other person and causing loss to creditors, and a decision to commence rehabilitation procedures for the debtor is confirmed, the debtor shall be punished by

imprisonment with prison labor for not more that 5 years or by a fine not exceeding 50 million won:

 1. The act of concealing or destroying assets or disposing of the assets in a manner that is disadvantageous to creditors; and

 2. The act of falsely increasing the debtor's obligations.

### Article 644 (Offence of Fraudulent Rehabilitation Committed by Third Person)

Where any person other than persons specified in the provisions of Article 643 commits any of the following acts and a decision to commence rehabilitation procedures for the debtor is confirmed, such person shall be punished by imprisonment with prison labor for not more than 5 years or by a fine not exceeding 50 million won:

 1. An act specified in any subparagraph of Article 643 (1);

 2. An act of falsely exercising any right that person does not hold as a rehabilitation creditor, a rehabilitation secured creditor, a shareholder, or an equity right holder with intent to make a profit for him/herself or any other person or to inflict harm on creditors.

### Article 645 (Offense of Rehabilitation Bribery)

(1) In case where any of the Custodial Committee, inspector, rehabilitation commissioner, preservative custodian, custodian (including any international bankruptcy custodian provided for in the provisions of Article 637), adviser, manager, preservative manager or any agent of the rehabilitation commissioner gives or accepts, solicits or promises any bribe in connection with the performance of his/her duties, he/she shall be punished by imprisonment with prison labor for not more than 5 years or by a fine not exceeding 50 million won. The same shall apply to cases where the person falling under any of the following subparagraphs gives, accepts, solicits or promises any bribe in connection with the resolution of a meeting of persons concerned:

 1. A rehabilitation creditor, rehabilitation secured creditor, shareholder and an equity right holder;

 2. A proxy commissioner or an agent of the person referred to in the provisions of subparagraph 1; and

 3. An officer or an employee of the person referred to in the provisions of subparagraph 1.

(2) In cases where any custodian (including any international bankruptcy custodian provided for in the provisions of Article 637), preservative custodian, inspection commissioner or rehabilitation commissioner is a corporation, if any officer or any employee who performs the duties of the custodian, preservative custodian, inspection commissioner or the rehabilitation commissioner gives, accepts, solicits or promises any bribe in connection with the performance of such duties, such officer and such employee shall be punished by imprisonment with prison labor for not more than 5 years or by a fine not exceeding 50 million won. The same shall apply to cases where the custodian, preservative custodian or inspection commissioner is a corporation, any officer or any employee thereof the custodian, preservative custodian or inspection commissioner to give, accept, solicit or promise any bribe in connection with their duties.

(3) In cases under paragraphs (1) and (2), any bribe that is given or accepted by any corporation or any third person with knowledge of its purpose shall be confiscated.

**Article 646 (Offense of Rehabilitation Bribery)**

Any person who promises, gives or expresses the intention of giving the bribe provided for in the provisions of Article 645 (1) or (2) shall be punished by imprisonment with prison labor for not more than 5 years or by a fine not exceeding 50 million won.

**Article 647 (Offense of Violating Prohibition on Management Participation)**

Any person who is selected and appointed as a director or the chief executive officer of the debtor in violation of the provisions of Article 284 after the rehabilitation procedures are completed shall be punished by imprisonment with prison labor for not more than 3 years or by a fine not exceeding 30 million won.

**Article 648 (Offense of Performing Act without Permission)**

(1) In cases where any custodian, trustee in bankruptcy (including any international bankruptcy custodian provided for in the provisions of Article 637) or any preservative custodian performs an act the performance of which requires the court's permission, without obtaining such permission, the actor shall be punished by imprisonment with prison labor for not more than 3 years or by a fine not exceeding 30 million.

(2) In cases where any custodian or any preservative custodian makes a false report to the court or fails to make the accounting report provided for in the provisions of Article 84 (1) without justifiable grounds thereof, he/she shall be punished by imprisonment with prison labor for not more than one year or by a fine not exceeding 10 million won.

**Article 649 (Offense of Refusing to Make Reports and Refusing Inspection)**

A person falling under any of the following subparagraphs shall be punished by imprisonment with prison labor for not more than one year or by a fine not exceeding 10 million won:

1. A custodian or trustee in bankruptcy who refuses, evades or impedes submitting materials provided for in the provisions of Article 22 (3) or submits false materials without justifiable grounds thereof;

2. A debtor who refuses, evades or impedes submitting materials provided for in the provisions of Article 34 (3) without justifiable grounds thereof;

3. A person who refuses, evades or impedes making the report provided for in the provisions of Article 79 (1) (including cases where the provisions are applied mutatis mutandis under Article 88) or who makes a false report without justifiable grounds thereof;

4. A debtor who refuses, evades or impedes the inspection provided for in the provisions of Article 79 (1) (including cases where the provisions are applied mutatis mutandis under Article 88) without justifiable grounds thereof; and

5. A debtor who refuses to comply with a request for a report, inspection or correction or makes a false report without justifiable grounds thereof.

**Article 650 (Offense of Fraudulent Bankruptcy)**

Where a debtor performs an act falling under any of the following subparagraphs with the aim of seeking his/her profit for himself/herself or any other person or causing loss to creditors, regardless before or after

he/she is declared bankrupt and a declaration of his/her bankruptcy is confirmed, he/she shall be punished
by imprisonment with prison labor for not more than 10 years or by a fine not exceeding 100 million won:

    1. The act of concealing or destroying the assets belonging to the bankruptcy foundation or disposing
assets in a manner that is disadvantageous to creditors;

    2. The act of falsely increasing the obligations of the bankruptcy foundation;

    3. The act of failing to prepare the commercial book required under the provisions of the Act, failing to
enter matters concerning the current state of assets in the commercial book, or entering false matters in
the commercial book, concealing and destroying the commercial book; and

    4. The act of bringing a change to the book that is closed by the clerk, etc. of the court or concealing and
destructing the book.

**Article 651 (Offense of Negligent Bankruptcy)**

In cases where a debtor performs an act falling under any of the following subparagraphs regardless of
whether before or after he/she is declared bankrupt and a declaration of his/her bankruptcy is confirmed,
he/she shall be punished by imprisonment with prison labor for not more than 5 years or by a fine not
exceeding 50 million won:

    1. The act of purchasing goods in a credit transaction and selling them under a transaction with
disadvantageous terms and conditions with the aim of delaying the declaration of his/her bankruptcy;

    2. The act of furnishing security or extinguishing his/her obligations, which do not pertain to his/her
duties, and the manner and timing of such act also do not pertain to his/her duties, with the aim of
giving preferential benefits to creditors with knowledge of the fact that grounds for his/her bankruptcy
exist;

    3. The act of failing to prepare the commercial book, the preparation of which is required under the
provisions of the Act, failing to enter matters concerning the current state of assets in the commercial
book, entering false matters in the commercial book, or concealing or destroying the commercial book;
and

    4. The act of making alterations to any book that has been closed by the clerk, etc. of the court pursuant
to the provisions of Article 481 and concealing or destroying the book.

**Article 652 (Offenses of Fraudulent Bankruptcy and Negligence Bankruptcy by Person in Certain
Position)**

When a person falling under any of the following subpragraphs performs an act provided for in the
provisions of Articles 650 and 651 and a declaration of the debtor's bankruptcy is confirmed, he/she shall
be governed by the precedent under Articles 650 and 651. The same shall apply to the inheritor and his/her
legal representative and manager in cases of bankruptcy effecting inherited assets:

    1. The legal representative of a debtor;

    2. The director of a corporate debtor; and

    3. The manager of a debtor.

**Article 653 (Offense of Resisting Arrest)**

When a person who is subject to a warrant of arrest provided for in the provisions of Articles 319, 320 and 322 absconds with the aim of delaying bankruptcy procedures and evading the execution of such arrest with knowledge of such warrant of arrest, he/she shall be punished by imprisonment with prison labor for not more than one year or by a fine not exceeding 10 million won.

**Article 654 (Offense of Fraudulent Bankruptcy by Third Person)**

Where a person who is neither a debtor nor a person specified in any subparagraph of Article 652 commits an act specified in any subparagraph of Article 650 with intent to make a profit for him/herself or for any other person or to inflict harm on creditors or falsely exercises a right as a bankruptcy creditor for a benefit of his/her own or any other person, irrespective of whether such act is committed before or after the bankruptcy is declared, and the declaration of bankruptcy of a debtor is confirmed, the person who commits such act shall be punished by imprisonment with prison labor for not more than 10 years or by a fine not exceeding 100 million won.

**Article 655 (Offense of Bankruptcy Bribery)**

(1) In cases where any trustee in bankruptcy (including any internatio nal bankruptcy custodian provided for in the provisions of Article 637) or any audit committee gives, accepts, solicits or promises any bribe in connection with his/her duties, he/she shall be punished by imprisonment with prison labor for not more than 5 years or by a fine not exceeding 50 million won. The same shall apply to cases where a person falling under any of the following subparagraphs gives, accepts, solicits or promises any bribe in connection with the resolution of a meeting of creditors:

    1. A bankruptcy creditor;

    2. An agent of the bankruptcy creditor; and

    3. A director of the bankruptcy creditor.

(2) In cases under paragraph (1), the bribe that is given or accepted by the offender or any third person with knowledge of the fact shall be confiscated. When the confiscation thereof is not possible, the value thereof shall be levied in addition thereto.

**Article 656 (Offense of Bankruptcy Bribery)**

Anyone who promises or gives any bribe, or expresses an intention to give any bribe to a person falling under any of the following subparagraphs shall be punished by imprisonment with prison labor for not more than 3 years or by a fine not exceeding 30 million won:

    1. A trustee in bankruptcy (including any international trustee in bankruptcy provided for in the provisions of Article 637);

    2. An audit committee;

    3. A bankruptcy creditor;

    4. An agent of the bankruptcy creditor; and

    5. A director of the bankruptcy creditor.

**Article 657 (Offense of Using Results of Assets Inquiry for Other Purpose)**

Any person who uses the results of the assets inquiry provided for in the provisions of Article 29 (1) for purposes than other that of inspecting the debtor's assets for rehabilitation procedures, bankruptcy procedures or individual rehabilitation procedures shall be punished by imprisonment with prison labor for not more than 2 years or by a fine not exceeding 20 million won.

**Article 658 (Offense of Breaching Obligation to Provide Explanation)**

When any person who is obliged to provide explanations pursuant to the provisions of Article 321 fails to provide such explanations or provides false explantions without justifiable grounds therefor, he/she shall be punished by imprisonment with prison labor for not more than one year or by a fine not exceeding 10 million won.

**Article 659 (Overseas Offense)**

(1) The provisions of Articles 645 and 655 shall also apply to any person who commits an offense provided for in the corresponding provisions in any country other than the Republic of Korea.

(2) The offense provided for in the provisions of Articles 646 and 656 shall be punished according to the precedent under Article 5 of the Criminal Act.

**Article 660 (Fine for Negligence)**

(1) In cases where the head of any public institution, financial institution or organization, etc. who receives any inquiry pursuant to the provisions of Article 29 (1) refuses to submit materials without justifiable grounds therefor or submits false materials, he/she shall be punished by a fine for negligence not exceeding 5 million.

(2) In cases where a person falling under any of the following subparagraphs performs the act of violating any order given by the court pursuant to the provisions of Article 258 (1) or (2), he/she shall be punished by a fine for negligence not exceeding 5 million won:

1. A debtor, director or manager of any newly incorporated company; and

2. A rehabilitation creditor, rehabilitation secured creditor, shareholder, equity right holder and person who bears any obligations or furnishes any security for rehabilitation.

(3) A person who performs an act of collection on an individual debtor who has the immunity provided for in the provisions of Article 251, 556 or 625 based on immune claims by means of compulsory execution, provisional seizure or provisional disposition with knowledge of his/her immunity shall be punished by a fine for negligence not exceeding 5 million won.


ADDENDA

**Article 1 (Enforcement Date)**

This Act shall enter into force beginning on the date on which one year lapses after its promulgation.

**Article 2 (Repeal of Acts)**

The Company Reorganization Act, the Composition Act, the Bankruptcy Act and the Individual Debtor Rehabilitation Act shall be repealed.

**Article 3 (Transitional Measures Following Repeal of Company Reorganization Act, Composition Act, Bankruptcy Act and Individual Debtor Rehabilitation Act)**

A case of reorganization for which an application is filed for commencing

reorganization procedures pursuant to the former Company Reorganization Act, a case of composition for which an application is filed for commencing composition procedures pursuant to the former Composition Act, a case of bankruptcy for which a petition for bankruptcy is filed pursuant to the former Bankruptcy Act and a case of individual rehabilitation for which an application is filed for commencing individual rehabilitation procedures pursuant to the former Individual Debtor Rehabilitation Act at the time this Act enters into force shall be respectively governed by the former Company Reorganization Act, the former Composition Act, the former Bankruptcy Act and the former Individual Debtor Rehabilitation Act.

**Article 4 (Transitional Measure concerning Penal Provisions)**

The application of the penal provisions to any act that is performed prior to this Act enters into force shall be governed by the former provisions and when the commission of any individual offense across the time committed before and after this Act enters into force, such offense shall be deemed committed before this Act enters into force.

**Article 5 Omitted.**

**Article 6 (Relationship with other Acts and Subordinate Statutes)**

Where other Acts and subordinate statutes cite the previous Company Reorganization Act, Composition Act, Bankruptcy Act, and Individual Debtor Rehabilitation Act or their provisions at the time this Act enters into force and when the provisions falling under the cited provisions exist in this Act, this Act or the relevant provisions of this Act shall be deemed to have been cited in lieu of the previous provisions.

ADDENDUM *<Act No. 7892, Mar. 24, 2006>*

This Act shall enter into force on April 1, 2006.

ADDENDA *<Act No. 7894, Mar. 24, 2006>*

(1) (Enforcement Date) This Act shall enter into force on the date of its promulgation.

(2) Omitted.

ADDENDA *<Act No. 7895, Mar. 24, 2006>*

(1) (Enforcement Date) This Act shall enter into force on the date of its promulgation.

(2) Omitted.

ADDENDA *<Act No. 8138, Dec. 30, 2006>*

**Article 1 (Enforcement Date)**

This Act shall enter into force on January 1, 2007. (Proviso Omitted.)

**Articles 2 through 6 Omitted.**


ADDENDA *<Act No. 8635, Aug. 3, 2007>*

**Article 1 (Enforcement Date)**

This Act shall enter into force one year and six months after the date of its promulgation. (Proviso Omitted.)

**Articles 2 through 44 Omitted.**


ADDENDA *<Act No. 8814, Dec. 27, 2007>*

(1) (Enforcement Date) This Act shall enter into force on the date of its promulgation.

(2) Omitted.


ADDENDA *<Act No. 8829, Dec. 31, 2007>*

**Article 1 (Enforcement Date)**

This Act shall enter into force on January 1, 2008.

**Articles 2 through 12 Omitted.**


ADDENDA *<Act No. 8863, Feb. 29, 2008>*

**Article 1 (Enforcement Date)**

This Act shall enter into force on the date of its promulgation.

**Articles 2 through 5 Omitted.**


ADDENDA *<Act No. 9804, Oct. 21, 2009>*

(1) (Enforcement Date) This Act shall enter into force on the date of its promulgation.

(2) (Transitional Measures) The previous provisions shall apply in cases of the borrowing of funds performed by the custodian for the debtor's work and property after commencement of rehabilitation procedure prior to this Act enters into force, the borrowing of funds and procurement of materials performed by the debtor or preservation custodian with permission from the court before commencement of claim or rehabilitation procedure after an application is filed therefor, and other claims that arise due to activities inevitably required to continue the debtor's business.


ADDENDA *<Act No. 9924, Jan. 1, 2010>*

**Article 1 (Enforcement Date)**

This Act shall enter into force on January 1, 2010.

**Articles 2 through 7 Omitted.**

ADDENDA *<Act No. 9935, Jan. 22, 2010>*

**Article 1 (Enforcement Date)**

This Act shall enter into force on the date of its promulgation.

**Articles 2 and 3 Omitted.**


ADDENDA *<Act No. 10219, Mar. 31, 2010>*

**Article 1 (Enforcement Date)**

This Act shall enter into force on January 1, 2011.

**Articles 2 through 12 Omitted.**


ADDENDA *<Act No. 10281, May 14, 2010>*

**Article 1 (Enforcement Date)**

This Act shall enter into force six months after the date of its promulgation.

**Article 2 Omitted.**


ADDENDA *<Act No. 10303, May 17, 2010>*

**Article 1 (Enforcement Date)**

This Act shall enter into force six months after the date of its promulgation. (Proviso Omitted.)

**Articles 2 through 10 Omitted.**


ADDENDA *<Act No. 10366, Jun. 10, 2010>*

**Article 1 (Enforcement Date)**

This Act shall enter into force two years after the date of its promulgation.

**Articles 2 through 4 Omitted.**


ADDENDA *<Act No. 10682, May 19, 2011>*

**Article 1 (Enforcement Date)**

This Act shall enter into force on the date of its promulgation.

**Articles 2 and 3 Omitted.**